Case No 14-13-00844-CR

14th District Court Of Appeals

Houston, Texas

Tyrone Berry
Appellant

V

The State Of Texas
Appellee

On Appeal In Cause No. 1019634

From The 180th Judicial
District Court Of
Harris County, Texas

# Pro Se Response To An Anders Brief

Pursuant To Anders V. California
383 U.S. 738 87 S.Ct. 1396 18 L.Ed. 2d 43 (1967)

FILED IN
14th COURT OF APPEALS
HOUSTON TEXAS

FEB 20 2015

CHRISTOPHER A. PRINE
CLERK

i

# Table Of Contents

Identities Of Parties And Counsel _ _ _ _ _ _ _ _ iii
Table Of Contents _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ ii
Index Of Authorities _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ iv-v
Authorities In Prayer For Relief _ _ _ _ _ _ _ _ _ vi
Cases _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ vii-ix
Cases In Prayer For Relief _ _ _ _ _ _ _ _ _ _ _ x
Appendix Table Of Contents _ _ _ _ _ _ _ _ _ _ xi-xiii
Statement Of The Case _ _ _ _ _ _ _ _ _ _ _ _ xix
Issues Presented _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ xiv
Statement Of Facts _ _ _ _ _ _ _ _ _ _ _ _ _ _ xv-xvii
Summary Of The Argument _ _ _ _ _ _ _ _ _ xviii
Argument On Issue No. 1 _ _ _ _ _ _ _ _ _ _ _ 1-22
Argument On Issue No. 2 _ _ _ _ _ _ _ _ _ _ _ 23-68
Argument On Issue No. 3 _ _ _ _ _ _ _ _ _ _ _ 69-81
Argument On Issue No 4 _ _ _ _ _ _ _ _ _ _ _ 82-91
Argument On Issue No. 5 _ _ _ _ _ _ _ _ _ _ 92-120
Prayer For Relief _ _ _ _ _ _ _ _ _ _ _ _ _ 121-126
Certificate Of Service _ _ _ _ _ _ _ _ _ _ _ 127
Appendix Of Exhibits _ _ _ _ _ _ _ _ _ _ _ _ 128

# Identity Of Parties And Counsel

Presiding Judge

Hon. Catherine Evans
180th Judicial District Court
Harris County Texas
1201 Franklin Av 18th Floor
Houston, Texas 77002

Defense Attorney At Trial

Richard DeToto
300 Main Street Suite 200
Houston, Texas 77002

Trial Court Prosecutor
On Motion

Inger Hampton
Assistant District Attorney
Harris County Texas
1201 Franklin Ave. Suite 600
Houston, Texas 77002

Appointed Counsel
On Motion

Leah M. Borg
874 Yorkchester #123
Houston, Texas 77079

Appointed Counsel
On Appeal

Ann Lee Moseley
1425 North Durham
Houston, Texas 77008

Appellant Pro-Se

Tyrone Berry
TDCJ# 1368050
Diboll Correctional Center
1604 South First Street
Diboll, Texas 75941

iii

# AUTHORITIES

PAGE

BLACK'S LAW DICTIONARY, 9TH EDITION
REFERENCE PG. 217, 218 .......... 3,9
        PG. 612 .......... 31
        PG 637 .......... 25

STATE BAR OF TEXAS
(a) DISCIPLINARY PROCEDURE
    RULE 1.06 (v)(i) .......... 12,68
(b) DISCIPLINARY RULES FOR PROFESSIONAL CONDUCT
    RULE 1.01 (a) .......... 37
        1.03 .......... 1,37,62
        3.03 (a)(i) .......... 12, 39
        8.04 (a)(3) .......... 12,26,34,36,37

(c) STANDARDS FOR APPELLATE CONDUCT
    RULES 1, 2, 3, 4, 5, 8, 12, 13 .......... 3,4

TEXAS ADMINISTRATIVE CODE TITLE 37 CHPT 145
    RULE 145.3 (4) .......... 62

TEXAS CODE OF CRIMINAL PROCEDURE
    ARTICLE 1.051 (a)(b) .......... 1,10,23
        2.01 .......... 91,94,113,115
        11.07 .......... 71, 92
        16.01 .......... 5,6
        26.05 (i) .......... 32,34,66
        38.23 .......... 108
        38.41 .......... 76,84,87,88,96
        38.42 .......... 14,76,83,84,87,88,96
        64.01 (a-1) .......... 44,118
        64.01 (b) .......... 92,93
        64.01 (b)(2) .......... 29
        64.01 (c) .......... 31
        64.02 .......... 49,72
        64.02 (a)(2) .......... 51,54
        64.02 (b) .......... 52,53,54,55,61
        64.03 .......... 54,72,120
        64.03 (b) .......... 59
        64.05 .......... 16,17

TEXAS CODE OF CRIMINAL PROCEDURE
    CHAPTER    18                                                                77
                     26                                                     32,35
                     64                                                   4,23,25,26,29,33,44,71

TEXAS CONSTITUTION
    ARTICLE 1 SECTION 9                                    107.
                             10                                69,93,114
                             19                                69

TEXAS GOVERNMENT CODE
    SECTION    411.1471                                7
                     411.154(c)                           7,9

TEXAS PENAL CODE
    SECTION    37.09                                    91,116,117
                     39.03                                116

TEXAS RULES OF APPELLATE PROCEDURE
    RULE        2                                                2
              3                                            12
              9.4 (i)(2)(B)                       2
              13.1(a)                            20
              34.5(a)                            87
              34.6(b)                            20,65
              38.9                                    2
              74 (f)                                3

TEXAS RULES OF EVIDENCE
    RULE        103(b)                              89
              107                               18,94
              403                               89
              901                               13,89,113

UNITED STATES CONSTITUTION
    AMENDMENT        4TH                       107,114
                        5TH                       114
                        6TH                       8,24,114
                        8TH                       114
                        14TH                    24,69,91,114

AUTHORITIES: PRAYER FOR RELIEF

TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 2.01

TEXAS PENAL CODE SECTION 2.03

TEXAS RULES OF APPELLATE PROCEDURE RULE 44.2 (a)
RULE 51.2 (c) (2)
RULE 51.2 (d)

UNITED STATE CONSTITUTION 14TH AMENDMENT

# CASES

PAGE

ANDERS V. CALIFORNIA
   383 US 738, 87 SCT 1396, 18 LED 2d 43 (1967)   1,3,4,57
ANDERSON PRODUCING INC V KOCH OIL CO
   929 SW 2d 416 (SUPP 1996)   42
AVILLA V. STATE
   18 SW 3d   13,114
BALLARD V. STATE
   23 SW 3d 178 (APP 10 DIST 2000)   15
BELL V STATE
   90 SW 3d 301,307 (TEX CRIM APP 2002)   31
BLACKLOCK V. STATE
   235 SW 3d AT 232-33 (TEX CRIM APP 2007)   26,93
BLANKENSHIP V JOHNSON
   118 F 3d 312,316 (5TH CIR 1997)   31
BONE V STATE
   77 SW 3d 828,833 (TEX CRIM APP 2002)   30,31
BRADY V MARYLAND
   373 US 83 (1963)   91,115,120,121
CALLAWAY V. STATE
   118 SW 2d 816,827 (TEX APP AMARILLO 1991)   18
CLARK V STATE
   305 SW 3d 841,846   121
CLUCK V COMMISSION FOR LAWYER DISCIPLINE
   214 SW 3d 736,739 (TEX APP AUSTIN 2007)   12,68
EUBANKS V. STATE
   113 SW 3d 562,565 (APP 5 DIST 2003)   25,30
EX-PARTE EDWARDS
   688 SW 2d 566,568 (TEX CRIM APP 1985)   52
EX PARTE STANFORD
   571 SW 2d 28,29 (TEX CRIM APP 1978)   56
GAINEOUS V. STATE
   436 SW 2d 137 (TEX CRIM APP 1969)   16
FULLER V. STATE
   829 SW 2d 191, 205 (TEX CRIM APP 1992)   24

Giglio V United States
  405 US 150, 153 92 S. Ct 763, 765 31 L. Ed 2d 1217 (1959)    112

Harm V. State
  183 SW 3d 403, 406    121

Henry V. State
  948 SW 2d 338, 341 (Tex App Dallas 1997)    3

Hines V Commission For Lawyer Discipline
  28 SW 3d 697 (Tex Crim App 2000)    63

Maine Y. Moulton
  474 US 159 at 176 106 S. Ct 477 88 L Ed 481 (1985)    7

McIntyre V Commission For Lawyer Discipline
  169 SW 3d 803, 804 (Tex App Dallas 2005)    37

Mempa V. Rhay
  389 US 128, 134 (1967)    65

Moody V Johnson
  139 F 3d 477, 484 (5th Cir 1998)    112

Moone V. Holohan
  294 US 103 S Ct 34 79 L. Ed 791 (1935)    112

Murphy V Gruber
  241 SW 3d 689, 693 (Tex App Dallas 2007)    29

Muttoni V. State
  25 SW 3d 300 (App 3 Dist 2000)    18

Newton V. Meade
  143 SW 3d 571, 574 (Tex App Dallas 2004)    29

Patel V. State
  586 SW 2d 486 (App 1 Dist 1993)    19

Perez V. Kirk Carrigan
  822 SW 2d 261, 265 (Tex App Corpus Christi 1991)    28

Roman V. State
  503 SW 2d 252, 253 (Tex Crim App 1974)    18

State V. Vasquez
  230 SW 3d 744, 752 (Tex App Houston (14 Dist) 2007)    41

Strickland V. Washington
  466 US 668 at 687 104 S Ct 2052 80 L Ed 2d 674 1984    30, 31

US V Wade
  388 US 218 87 S Ct 1926 18 L Ed 2d 1149    8

WALDROP V. STATE
  219 SW 3d 531, 532 (Tex App Texarkana 2007)        116
WEBB V. STATE
  232 SW 3d 109, 114 (Tex Crim App 2007)          121

## Cases: Prayer For Relief

Brady V. Maryland
373 US 83  83 S.Ct 1194  10 LEd 2d 215 (1963)

Cardenas V. State
30 SW 3d 384, 389-90 (Tex Crim App 2000)

Fisher V State
851 SW 2d 298, 302 (Tex Crim App 1993)

Foley V. Capitol One Bank NA
383 SW 3d 644 (Tex App Houston (14 Dist) 2012)

Guevera V. State
152 SW 3d 45, 49 (Tex Crim App 2004)

Hampton V State
86 SW 3d 603, 612 (Tex Crim App 2002)

In Re- Winship
397 US 358, 364  90 S.Ct 1068  25 LEd 368 (1970)

Jackson V. Virginia
443 US 307, 319  99 S.Ct. 2781  61 LEd 2d 560 (1979)

Matson V State
819 SW 2d 839, 846 (Tex Crim App 1991)

Moreno V State
755 SW 2d 866, 867 (Tex Crim App 1988)

Narvaiz V State
840 SW 2d 415, 423 (Tex Crim App 1992)

Reedy V State
214 SW 3d 567, 580 (Tex App Austin 2006)

Roberson V State
16 SW 3d 156, 165 (Tex App Austin 2000)

Sanders V State
119 SW 3d 818, 820 (Tex Crim App 2003)

Ward V State
143 SW 3d 271, 274 (Tex App Waco 2004)

x

# Appendix

| Apx. | Item | Page Of Brief |
|------|------|---------------|
| 1. | Agreed Setting Form (CR11) | 5 |
| 2. | Agreed Setting (CR10) | 5 |
| 3. | Indictment (CR7) | 6 |
| 4. | Docket Sheet (CR161) | 6 |
| 5. | Court Order (CR160) | 7 |
| 6. | Court Order (CR38) | 8 |
| 7. | Page 3 Anders Brief | 9 |
| 8. | Page 6 Anders Brief | 10 |
| 9. | Page 4 Anders Brief | 10 |
| 10. | Page 7 Anders Brief | 11 |
| 11. | Page 1 Anders Brief | 11 |
| 12. | Page 2 Anders Brief | 11 |
| 13a-f | Newspaper Articles | 12, 94 |
| 14. | DNA Sample Collection Form (CR18) | 13, 38, 75, 77, 88, 104, 107 |
| 15. | Evidence Records Affidavit (CR131) | 15, 88, 104, 107 |
| 16. | Evidence Records Affidavit (CR132) | 15, 88, 104 |
| 17-18 | 2 Page Letter Moseley | 16 |
| 19. | Page 8 Anders Brief | 17 |
| 20-21. | Pages 5-6 Borg's Motion | 19, 20 |
| 22-23. | Letter To Court Reporter | 20, 65 |
| 24. | Letter From Court Reporter | 20 |
| 25. | Docket Sheet, Reporter Waived (CR164) | 21, 64, 65 |
| 26. | Page 1 Borg's Motion | 27 |
| 27. | State's Motion To Deny (CR119) | 27 |
| 28. | State's Findings Of Facts (CR156) | 27 |
| 29. | Letter From Borg | 28 |
| 30. | Letter From Borg | 28 |
| 31. | Harris County Expense Claim Form | 29, 37, 54, 56 |
| 32. | Out Of Court Hours Log | 29, 37, 44, 46, 49, 56 |
| 33. | Hand Written Docket Sheet (CR163) | 32 |
| 34. | Computer Generated Docket Sheet (CR165) | 33, 99, 53, 55, 56 |

# APPENDIX

| APX | ITEM | PAGE OF BRIEF |
|---|---|---|
| 35. | ATTORNEY EXPENSE CLAIM FORM | 33 |
| 36 | LETTER FROM BORG | 33 |
| 37a-j | LETTERS FROM BORG | 33, 34, 52 |
| 37a | LETTER FROM BORG | 53, 67 |
| 37f | LETTER FROM BORG | 57 |
| 37d | LETTER FROM BORG | 58 |
| 37e | LETTER FROM BORG | 58 |
| 37h | LETTER FROM BORG | 60 |
| 37b | LETTER FROM BORG | 61 |
| 38a-j | BORG'S MOTION | 38 |
| 45. | LETTER FROM BORG | 39 |
| 46 | MOTION TO DENY (CR113) | 45, 92, 116 |
| 47 | MOTION TO DENY (CR114) | 92, 94, 116 |
| 48 | MOTION TO DENY (CR115) | 45, 92, 94, 116 |
| 49 | MOTION TO DENY (CR116) | 92, 94, 116 |
| 50 | MOTION TO DENY (CR117) | 92, 94, 109, 116 |
| 51 | MOTION TO DENY (CR118) | 92, 94, 110, 113, 116 |
| 52 | MOTION TO DENY (CR119) | 45, 92, 94, 113, 116, 117 |
| 53 | MOTION TO DENY (CR120) | 92, 94, 116, 120 |
| 54 | LETTER FROM BORG | 48 |
| 55a-b | PRO-SE OBJECTION | 50, 55 |
| 56a-g | MOTION TO DENY | 64 |
| 57 | LETTER FROM COURT REPORTER | 65 |
| 56b | MOTION TO DENY | 72 |
| 58 | HPD SUPPLEMENTAL OFFENSE REPORT (CR.134) | 76, 80, 97, 98, 99, 102, 105, 109, 111 |
| 59 | CERTIFICATION DISTRICT CLERK (CR166) | 76, 82, 101 |
| 60 | IDENTIGENE LAB REPORT (CR141) | 78, 86, 103, 105, 110, 112 |
| 61 | IDENTIGENE LAB REPORT (CR142) | 78, 79, 105 |
| 62 | IDENTIGENE LAB REPORT (CR144) | 78, 79, 86, 87, 103, 105, 110, 112 |
| 63 | HPD SUPPLEMENTAL OFFENSE REPORT (CR137) | 80, 95, 101, 103, 105 |

# APPENDIX

| Apx | Item | Page Of Brief |
|---|---|---|
| 64 | State's Finding Of Facts (CR153) | 82,88,100 |
| 65 | State's Finding Of Facts (CR154) | 88,100 |
| 66 | State's Finding Of Facts (CR155) | 88,100 |
| 67 | State's Finding Of Facts (CR156) | 88,100 |
| 68 | Records Affidavit, J. Hill (CR 123) | 82,94 |
| 69 | Records Affidavit, J. Hill (CR 124) | 82,94 |
| 70 | HPD Property (CR138) | 83,96,98,99,100 |
| 71 | HPD Property (CR139) | 83,96,98,99,100 |
| 72 | Records Affidavit Vanessa Alvarez (CR126) | 83,98,105 |
| 73 | Records Affidavit Vanessa Alvarez (CR127) | 83,105 |
| 74 | HPD Offense Report (CR137) | 85,102 |
| 75 | HPD Case Report (CR146) | 86 |
| 76a | State's Original Answer Writ 1019634A | 87 |
| 76b | State's Original Answer Writ 1019634A | 87 |
| 76c | State's Original Answer Writ 1019634A | 87,88 |
| 77a-c | Letter Requesting Supplemental Record | 88,104 |
| 78 | State's Exhibit A "Docket Sheet" | 88 |
| 79 | HPD Offense Report (CR135) | 97,104,102,110,111 |
| 80 | Certification State's Finding Of Facts (CR157) | 100 |
| 81 | Agreed Setting (CR15) | 109 |
| 82 | Identigene Lab Report (CR145) | 112 |

# ISSUES PRESENTED

1. THE ANDERS BRIEF FILED ON THE APPELLANT'S BEHALF WAS FILED WITHOUT HIS KNOWLEDGE OR CONSENT, THAT THE ANDERS BRIEF IS A FRIVILOUS APPEAL, AND THE APPELLANT WILL SHOW PROOF THAT THE ATTORNEY OF RECORD ON APPEAL IS IN VIOLATION OF THE TEXAS RULES OF APPELLATE PROCEDURE'S "STANDARDS FOR APPELLATE CONDUCT", THE STATE BAR OF TEXAS', "DISCIPLINARY RULES OF PROFESSIONAL CONDUCT", AND HAS FILED A FRAUDULENT DOCUMENT.

2. THE ATTORNEY OF RECORD APPOINTED BY THE 180th DISTRICT COURT OF HARRIS COUNTY, TEXAS, TO REPRESENT THE APPELLANT IN FILING HIS MOTION FOR POST CONVICTION FORENSIC DNA TESTING, PURSUANT TO CHAPTER 64 OF THE TEXAS CODE OF CRIMINAL PROCEDURE, INTENTIONALLY FILED A DEFECTIVE MOTION WITH THE SPECIFIC PURPOSE OF ENSURING THE MOTION COULD NOT GO FORWARD.

3. THE "STATE'S PROPOSED FINDINGS OF FACT ON THE COURT'S DENIAL OF DNA TESTING", AND IT'S CERTIFICATION AS AN ORDER FROM THE COURT BY THE DISTRICT CLERK OF HARRIS COUNTY, TEXAS, ESTABLISHING "FINDINGS OF FACT", IS ITSELF, IN ACTUALITY, BUILT ON THE BASIS OF FRAUDULENT DOCUMENTS AND FALSIFIED EVIDENCE THAT THE APPELLANT WILL EXPOSE CONCLUSIVELY, USING NOTHING MORE THAN THE EVIDENCE CONTAINED IN THE OFFICIAL RECORD IN CAUSE NUMBER 1019634.

4. THE "CHAIN OF CUSTODY" UTILIZED BY THE STATE OF TEXAS FOR THE TRANSFER, COLLECTION, TESTING AND STORAGE OF BIOLOGICAL AND FORENSIC DNA EVIDENCE IN CONNECTION WITH CAUSE NUMBER 1019634, IS OF SUCH THAT HAS RENDERED EACH AND EVERY ITEM OF EVIDENCE IN SAID CAUSE AS UNRELIABLE AND INADMISSABLE.

5. THE STATE OF TEXAS AND BY IT'S USE OF THE "STATE'S MOTION REQUESTING COURT TO DENY DNA TESTING" IS IN VIOLATION OF THE TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 2.01 "DUTIES OF DISTRICT ATTORNEYS" AND IS A VIOLATION OF "BRADY V. MARYLAND," 373 US 83 (1963).

## Statement Of The Facts

The Appellant Was Arrested On March 10th 2005 For The Offense Of Tampering With A Governmental Document, Motor Vehicle Inspection Sticker. He Was Subsequently Charged With Sexual Assault Of A Child, 14-17, On March 11th 2005. The Assault Was Alleged To Have Occurred At The Baron Motel On The Night Of February 25, 2005.

The Investigating Officers For The Houston Police Department Who Responded To The Complaint Found A Fifteen Year Old Victim At A Private Residence, Who Claimed She Had Been Sexually Assaulted That Night At The Baron Motel In Northwest Houston, But Did Not Report Until She Moved To A New Location In Kingwood, In Northeast Houston.

The Investigating Officers Never Went To The Baron Motel To Attempt To Secure Biological Evidence That Could Have Been Found In Sheets, Towels And Numerous Other Locations Within The Motel Room Where The Alleged Assault Occurred. The Investigating Officers Never Contacted The Baron Motel To Determine If The Accused Had Ever Rented A Room On February 25th 2005. The Investigating Officers Never Attempted To Interview Any Employee Of The Baron Motel In The Event They Could Identify The Accused's Presence On The Night Of February 25th 2005.

Each Of These Events Would Have Occurred Had This Been A Legitimate Sexual Assault Investigation.

There Was No Ambulance Called To Transport The Victim To A Nearby Hospital Where An Immediate Sexual Assault Evidence Kit Could Be Performed. Instead, The Investigating Officers Allowed The Complaintant To Be Driven, Unescorted,

Across Town To The Texas Children's Hospital In Southwest Houston, In A Private Vehicle Without The Presence Of Medical Or Law Enforcement Personnel, To See That The Victim Did Not Make Any Other Stops Or To Witness That She Was Driven Directly To Texas Childrens Hospital. Nor Did Any Officer From The Houston Police Department Meet The Victim At The Texas Children's Hospital To Witness The Proper Evidence Collecting Procedure.

None Of These Events Would Have Occurred In A Legitimate Sexual Assault Investigation.

Two Days Later, Officer R.A. Gonzales Of The Houston Police Department Was Sent To The Texas Childrens Hospital To Pick Up The Sexual Assault Evidence Kit. Which Contains No Documentation To Certify It's Proper Collection, And Was "Tagged In" At The Houston Police Department Property Room On February 28th, 2005.

Using Exclusively The "Official Trial Court Record," The Following Pro-Se Response To An Anders Brief Documents The Misshandled, Violated Procedures At Every Point It Was Touched By Law Enforcement And Forensic Testing Labratories To The Degree It Would Be A Mistake To Even Call It Evidence.

There Is No Valid Consent, No Valid Court Order, No Valid Search Warrant, All Evidence In The Possession Of The State Was Obtained Illegally And In Violation Of The Appellant's Constitutional Rights Under The Fourth, Fifth And Fourteenth Amendments Of The United States Constitution, Article I Section 9 Of The Constitution Of The State Of Texas And The Introduction Into Evidence Of Anything In The State's Possession

Would Be A Violation Of The Texas Code Of Criminal Procedure Article 38.23 (a) Evidence Not To Be Used, Which States: "No Evidence Obtained By An Officer Or Other Person In Violation Of Any Provisions Of The Constitution Or The Laws Of The United States Of America, Shall Be Admitted In Evidence Against The Accused On The Trial Of Any Criminal Case."

## Summary Of The Argument

The Motion For Post Conviction Forensic DNA Testing Filed By The Attorney Appointed By The Court To Represent The Appellant In Filing This Motion Was A Deliberate And Intentional Act Of Assassination On The Motion By The Conscious Omission Of Known Facts Relating To The Motion, Purposely Omitting The Required Accompaning Affidavit By The Convicted Person Pursuant To Texas Code Of Criminal Procedure Article 64.01(a-1), Purposely Omitting Documentation Of Newer Or More Advanced Testing Procedures Than Those That Were Available In 2005, And The Attorney Is In Violation Of TCCP Art. 2.03 "Neglect Of Duty."

The Record Clearly Exhibits That There Is Absolutely No Evidence Other Than DNA Evidence, And That Exculpatory DNA Testing Would Have Prevented The Prosecution Of This Case, And The Appellant Could Not Have Been Convicted By The Evidence In The Possession Of The State.

The Appellant Changed His Plea From "Not Guilty" To "Guilty" Involuntarily, Due To False Information Disclosed On Day The Trial Had Commenced By Defense Counsel, And Counsel's Failure To Get Pre Trial Motions Heard.

The Appellant Will Show He Has Practiced Due Dilligence In Seeking Post Conviction Relief Consistantly, Through His Multiple Court Filings Over The Years Encompassing His Entire Incarceration

The Office Of The District Attorney Of Harris County, Texas, Is In Direct Violation Of The Texas Code Of Criminal Procedure Article 2.01 "Duties Of District Attorney," As Well As Brady V. Maryland, 373 U.S. 83 (1963).

All Evidence In State's Possession Is Inadmissable And Must Be Abandoned. Conviction Cannot Stand.

All Of The Evidence Possessed By The State Is In No Condition For Post Conviction DNA Testing, Nor Can It Sustain This Conviction. The Appellant Will Ask This Honorable Court To Rule On The Condition Of The State's Evidence After A Preponderance Of The Revelations Regarding This Evidence Provided By The Strict Proof Contained In The District Clerk's Certified Record.

## Statement Of The Case

This Is A Pro-Se Direct Appeal Following The Denial Of A Motion For Post Conviction Forensic DNA Testing, Filed By Court Appointed Counsel, Which In Turn Resulted In An Ander's Brief Being Filed By An Additional Court Appointed Counsel, To Appeal The Denial Of The Amended Motion Filed By The Original Court Appointed Counsel, Appointed For The Sole Purpose Of Filing A Motion On Behalf Of The Appellant, Pursuant To The Texas Code Of Criminal Procedure, Chapter 64, Stemming From A Conviction For Sexual Assault Of A Child On May 2nd, 2006, In Cause Number 1019634, In The 180th District Court Of Harris County, Texas.

## Argument On Issue #1.

"The Anders Brief Filed On The Appellant's Behalf Was Filed Without His Knowledge Or Consent, That The Anders Brief Is A Frivolous Appeal; And The Appellant Will Show Proof That The Attorney Of Record On Appeal Is In Violation Of The Texas Rules Of Appellate Procedure's "Standards For Appellate Conduct," The State Bar Of Texas's "Disciplinary Rules Of Professional Conduct," And Has Filed A Fraudulent Document."

This Is The Appellant's Pro-Se Response To An Anders Brief Filed By Court Appointed Counsel Ann Lee Moseley, Who Not Once Contacted The Appellant Before Her Brief Was Filed, Thus Violating The Very Spirit Of Anders V. California, 386 US 738, 87 S.Ct. 1396, 18 L.Ed. 2d 43 (1967).

Texas Code Of Criminal Procedure Article 1.051 Right To Representation By Counsel (a): "A Defendant In A Criminal Matter Is Entitled To Be Represented By Counsel In An Adversarial Judicial Proceeding. The Right To Be Represented By Counsel Includes The Right To Consult In Private With Counsel Sufficiently In Advance Of A Proceeding To Allow Adequate Preparation For The Proceeding."

This Court Appointed Attorney Did The Absolute Minimum As Required By Law, But In This Process Violated Rule After Rule.

Texas Disciplinary Rules Of Professional Conduct Rule 1.03 Communication (a): "A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter And Promptly Comply With Reasonable Requests For Information." (b): "A Lawyer Shall Explain A Matter To The Extent Reasonably Necessary To Permit The Client To Make Informed Decisions Regarding Representation."

No Contact Is A Flagrant Violation.

This Representation Is Absolute Proof That The Intentions Of The Trial Court Are Not The Search For Justice, But A Further Attempt To "Put A Lid On" Any Legitimate, Lawful Review Of This Case From The Very Day It Was Adjudicated. This Falsified Anders Brief Is A Continuation Of The Violations Of The Appellant's Rights That Have Been Continuosly Occurring Since Before He Was Wrongly Convicted, And These Violations Are Firmly Concreted In The Trial Court Record And Along With The

1 of

Conviction Itself, Not One Single Attempt At Post Conviction Relief Has Been Legally Adjudicated, Including The 8 Writs Of Habeas Corpus Filed By The Appellant, Of Which Not One Has Been Either Properly Or Legally Adjudicated According To Law (See Issue #8), MFPAC

Because This Honorable Court Is Itself By Law Required To Do A Thorough Review Of The Record, The Appellant Remains Optimistic He Will Receive A Fair And Just Review From This Very Court. However, In It's Latest Corespondance With The Appellant, The Order Granting The Appellant's Motion For Suspension Of Rules, Pursuant To The Texas Rules Of Appellate Procedure Rule 2, Suspension Of Rules, Specifically Rule 9.4 (i) (2)(B) Length, And Within The Same Order, The Court Imposed A New Limit On The Length Of His Response To 65 Pages And A New Time Deadline Of January 12, 2015. The Appellant Asks The Honorable Court To Adapt Tex Rules Of App Proc Rule 38.9 "Briefing Rules To Be Conststrued Liberally.

Additionally, The Court Has Been Sending It's Corespondance To The Address Of The Appellant's Former Unit And Even Though The Correct Address Has Been Used In Every Communication And Filing With The Court, Resulting In The Loss Of Ten Days Toward Each Deadline, Including The Current One.

In It's Latest Letter The Court Stated, "We Grant The Motion And Order That The Appellant May File A Pro Se Response To Counsel's Anders Brief Of Not More Than 65 Pages In Length. Appellant's Pro Se Response Shall Be Due By January 12, 2015. No Further Extensions Of Time Shall Be Granted.

In Their Letter The Court Cites Ganeous V. State 436 SW 2 d, 137, (Tex Crim App 1969), "Of Course If Counsel Finds His Case To Be Wholly Frivolous, After A Contscientous Examination Of It, He Should So Advise The Court And Request Permission To Withdraw. That Request Must, However, Be Accompanied By A Brief Referring To Anything In The Record That Might Arguably Support An Appeal."

Court Appointed Appellate Counsel Both Failed And Refused To Refer To Anything In The Record That Might Arguably Support An Appeal. Because The Record Is Replete With Non Frivolous Issues, Denotes One Of Only Two Options. 1): She Did Not Conduct A

Contientous Examination Of The Record Or, 2): She Cannot Follow The Rules Or The Law. The Appellant Alleges The Latter.

Gaineous Goes On To State: "A Copy Of Counsel's Brief Should Be Furnished The Indigent And Time Allowed Him To Raise Any Points He Chooses". According To "Gaineous" An Indigent Anders Appellant Is Not Constrained By Either Time Or Page Limits.

In The Appellant's "Motion To Suspend Rules" He Cites Henry V. State 948 SW 2d 338, 341 (Tex App Dallas 1997) "Rule 74 Of The Tex Rules App Proc. Does Not Apply To A Pro Se Response To An Anders Brief In Support Of A Motion To Withdraw. This Is True Even If It Is Characterized As A Pro Se Brief. By It's Terms Rule 74 Applies To A Brief That Argues The Facts And Law. TRAP 74 (f). The Purpose Of The Rule 74 Brief Is To "Acquaint The Court With The Points Relied Upon And The Manner In Which They Arose, Together With Such Arguments Of Facts And Law As Will Enable The Court To Decide The Same."

In Black's Law Dictionary, 9th Edition, Pages 217, 218, "Anders Brief": "Anders Requires An Attorney To Assume Two Somewhat Contradictory Roles. When Filing A No Merit Brief. The First And Most Important Role Is That Of An Advocate. Anders Makes Clear That The First Duty Of Appellant Counsel Is To Study The Record And Consult With The Defehdant To Ascertain Whether There Is Anything In The Record To Support An Appeal. Counsel Should Not Consider The Case With A View Toward Finding No Merit, Or Of Acting As A Neutreal Party. Only If Counsel Can Find No Issue Of Even Arguable Merit Does He Change Hats And Become An Amicus Curiae." Johnathan M. Purver And Lawrence E. Taylor, Handling Criminal Appeals. Section 138 At 285 (1980)(Black's Reference).

Ms. Moseley Did Not Perform A Single Task As Was Her Obligation And Duty. However She Was Able To Complete Everything She Was NOT Suposed To Do.

According To The Texas Supreme Court. Are The Following Standards For Appellate Conduct: "The Appellate Lawyers Role Is To Present The Law Controlling The Disposition Of A Case In A Manner That Clearly

Reveals The Legal Issues Raised By The Record While Persuading The Courts That An Interpretation Or Application Favored By The Lawyer's Client Is In The Best Interests Of The Administration Of Equal Justice Under Law.

To That End The Following Standards Of Conduct For Appellate Lawyers Are Set Forth By Reference To The Duties Owed By Every Appellate Practitioner. Lawyer's Duties To Client: A Lawyer Owes To A Client Allegience, Learning Skill And Industry. A Lawyer Shall Employ All Appropriate Means To Protect And Advance The Client's Legitimate Rights, Claims And Objectives. A Lawyer Shall Not Be Deterred By A Real Or Imagined Fear Of Judicial Disfavor Or Public Unpopularity Nor Be Influenced By Mere Self Interest.

Without Reciting The Rules Verbatum. Ms Moseley Will Be Shown To Be In Absolute Violation Of The Following Rules: Nos. 1, 2, 3, 4, 5, 8, 12, And 13 And In Complete Violation Of The Procedures Arising Out Of Anders V. California. In Fact The Very First Rule In Both The State Bar's Rules And Anders Require The Attorney To Consult With The Client. And Since She Refused To Meet Even The Most Basic, Elementary Requirement It Would Be Impossible To Claim She Adequately Supplied The Appellant With The Minimalist Representation Allowed By Law.

She Even Went So Far As To Manipulate Statements From The Record To Transform Their Meaning To An Interpretation That Became Favorable To The State's Case.

The Appellant Will Contend That Had Court Appointed Appellate Counsel Performed Her Job, The Very First Issue Would Have Been The Chapter 64 Motion Itself. The Obviously Intentionally Defective Motion Was Denied On The Grounds Of The Intentional Defects And For No Other Reason. Because There Is Absolutely No Mention Of The Fatally Flawed Document That Was Doomed For Failure The Day It Was Filed, It Is Blatantly Obvious The Anders Brief Is Nothing More Than An Attempt To Cover Up What The Court Appointed Motion Counsel Did By Specific Design.

Counsel Goes On To Cite The "State's Finding Of Facts, A

MIRROR IMAGE OF THE MOTION REQUESTING COURT TO DENY DNA TESTING. HAD SHE REVIEWED THE RECORD SHE WOULD HAVE FOUND THAT THE "STATE'S FINDING OF FACTS" ARE NOT BASED ON FACTS. (SEE ARGUMENT #3.) THE APPELLANT WILL ALLEGE THIS HAS BEEN DONE BY SPECIFIC DESIGN AS WELL.

IF SHE HAD BEEN REVIEWING THE RECORD IN THE SEARCH FOR ARGUABLE MERIT IN THE 166 PAGE "ENTIRE RECORD" SHE COULD NOT HAVE MISSED PAGE 11 (CR11 APX 1.) AN "AGREED SETTING FOR EXAMINING TRIAL" IN THIS DAY AND AGE OF THE "INSTANT INDICTMENT" AN EXAMINING TRIAL HAS BECOME A RARE PROCEEDING, MAKING THE OMISSION OF IT IN THE ANDERS BRIEF EITHER AN ACT OF INCOMPETENCE OR INSUBORDINATION.

THIS IS THE FORM USED BY THE HARRIS COUNTY JUDICIAL DISTRICT COURTS STATING AN "AGREED SETTING" HAS BEEN SCHEDULED FOR AN EXAMINING TRIAL ON MAY 25, 2005. THIS IS A PRE INDICTMENT AGREED SETTING SCHEDULED ON MAY 11 2005 AS EVIDENCED BY THE PRESIDING JUDGE'S SIGNATURE. IF MS MOSELEY HAD BEEN WEARING THE "HAT" OF AN ADVOCATE AS REQUIRED BY ANDERS, SHE WOULD HAVE CONTACTED HER CLIENT TO ASK, WHAT HAPPENED TO THE EXAMINING TRIAL?

IT IS EASY TO SEE THAT INSTEAD OF AN EXAMINING TRIAL, THE APPELLANT IS ORDERED TO SUBMIT A DNA SAMPLE. THE TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 16.01 EXAMINING TRIAL, IN RELEVANT PART STATES: "THE ACCUSED IN ANY FELONY CASE SHALL HAVE THE RIGHT TO AN EXAMINING TRIAL BEFORE INDICTMENT IN THE COUNTY HAVING JURISDICTION OF THE OFFENSE."

HAD SHE BEEN DOING A CONTIENTOUS EXAMINATION OF THE RECORD AS WAS HER OBLIGATION, SHE WOULD HAVE EASILY SEEN ANOTHER "AGREED SETTING FORM FROM THE PREVIOUS SETTING, (CR10-APX 2.) AND PRIOR TO INDICTMENT, ON APRIL 21, 2005, THE APPELLANT'S CHARGES ARE "STILL A COMPLAINT." AGAIN, AS EVIDENCED BY THE PRESIDING JUDGE'S SIGNATURE, SHOWS KNOWLEDGE OF PRE INDICTMENT AND BEING RESET TO MAY 11, 2005, WHERE THE EXAMINING TRIAL IS SCHEDULED FOR MAY 25, 2005, STILL PRE INDICTMENT AND BY "AGREED SETTING," FIRMLY PLACES IN THE RECORD, THAT AN INDICTMENT HANDED DOWN

On May 16, 2005, Thereby Violating The Right To An Examining Trial By The Accused In The County Having Jurisdiction Of The Felony Offense, Pursuant To Article 16.01 Of The Texas Code Of Criminal Procedure.

Could This Be Construed As "Anything In The Record That Might Have Arguable Merit?" Could A VOID INDICTMENT Have "Arguable Merit?" Could Blatant Violations Of The Appellant's Rights Have Arguable Merit?

Would It Simply Be To Complicated Or Too Much Work To Bring That Up Now? Please See (CR160-Apx5) This Docket Sheet's Last Entry Is Stamped May 11, 2005. It States: "Reset - 5-25-05 Exam Trial," So There Is A Reference To An Examining Trial In The Beginning Of The Record, Page 11, And A Reference To An Examining Trial At The End Of The Record, Page 160, Yet Not A Single Reference To A Violation Of The Appellant's Right To An Examining Trial Found Anywhere In Ms Moseley's Anders Brief

The Appellant Was Indicted On May 16, 2005 (CR,7 - Apx,3). Well AFTER An Examining Trial Was "Reset To 5-25-05", "Scheduled On May 25, 2005", And "Agreed Upon" By All Parties, Including The Judge. A Reasonable Person Could Ask "What Happened To The Appellant's Right To An Examining Trial Before Indictment?" That Same Reasonable Person Could Further Ask "Why Wasn't Court Appointed Appellant Counsel Protecting Her Client's Interest's As Required By Law And Ethics?"

The Simple Answer And Proven By The Record And The Appellant's Pro Se Response In Arguments Nos. 1, 2, 3, 4, And 5. Is She Has Never Had The Client's Interest In Mind, Only The Trial Court That Appointed Her. So Since It Is Obvious Counsel Has NOT Done A Contientous Examination Of The Record What Does The Pro-Se Examination Of The Record Reveal?

Please See (CR161 Apx 4) This Is A Continuation Of The Trial Court Docket Sheet. At The Top Of The Page Stamped "May 16, 2005" In Large Bold Print Is The Caption "FELONY INDICTMENT." Under

General Orders Of The Court, Stamped "May 25, 2005". The Defendant Berry Appeared <u>WITHOUT COUNSEL</u>. De To To Reset, 6-30-05. NTRC; DNA TEST ORDERED." There Was No Counsel Present On This Day. The Appellant Was Accompanied By His Mother, Who Was Also Present At Each And Every Court Appearance.

The Bailiff Approached The Defendant And His Mother And Told Them That The Defendant Was Ordered To, "Go Across The Street To The Sheriff's Office And They Will Take A DNA Sample." The Bailiff Said That Even Without Your Attorney, If The Appellant Did Not Submit A DNA Sample At That Time His Bond Would Be Revoked. (Please See Issue # 1) MFPAC (Motion For Preservation Of Appellate Complaints)

On Page (CR 38; Apr. 6) Is The Order From The Court Pursuant To Texas Government Code Section 411.1471. According To Government Code Section 411.154 (c): "An Order Issued Under This Section Is Appealable As A Criminal Matter And If Appealed Is To Be Reviewed Under An Abuse Of Discretion Standard."

A Reasonable Person Could Ask, "Was It An Abuse Of Discretion Of The Court To Order A DNA Sample Collection On The Day Of An Agreed Setting For An Examining Trial?" "Was It An Abuse Of Discretion To Order The Accused To Submit To A DNA Sample Collection Without His Attorney Present?"

Citing Maine V. Moulton 474 US 159 at 176, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985): "The United States Supreme Court Re-Emphasized That After The Initiation Of Formal Charges, The 6th Amendment Guarantees The Accused The Right To Rely On Counsel As A "Medium" Between The State And The Accused. This Guarantee Includes The State's Affirmitive Obligation Not To Act In A Manner That Circumvents The Protections Accorded The Accused By Invoking This Right. The 6th Amendment Is Violated When The State Obtains Incriminating Statements By Knowingly Circumventing The Accused's Right To Have Counsel Present In A Confrontation Between The Accused And A State Agent."

"In Addition To Counsel's Presence At Trial, Accused Is Guaranteed That He Need Not Stand Alone Against State At Any Stage Of Prosecution, Formal Or Informal, In Court Or Out, Where Counsel's Absence Might Derogate Accused's Right To A Fair Trial." U.S. Const. Amend 6. US V. Wade 388 US 218, 87 S.ct. 1926, 18 L.ed. 2d 1149.

A Reasonable Person Could Ask, "Would Having An Accused Submit To An Order For A DNA Sample Collection Under The Threat Of Having His Bond Revoked Be An Abuse Of Discretion Without The Presence Of His Attorney?" "Would This Be An Issue That Might Have Arguable Merit In A Brief To An Appellate Court?"

The Appellant Would Ask The Honorable 14th District Court Of Appeals To Consider The Following Facts Found In The Record On This "Court Order" (CR 38- Apx 6 ) Beginning In The Middle Of The Page Is This Statement: "Accordingly, The Court Orders The Defendant To Report Immediately To The Appropriate Division Of The Harris County Sheriff's Office". Which Is Followed By "The Court Further Orders The Defendant To Provide One Or More DNA Specimens To The Sheriff's Office Upon Request." And Then, "The Court Also Orders The Clerk To Serve A Copy Of This Order On Defendant Immediately." Immediately After That, "The Court Orders The Clerk To Send A Copy Of This Order To The Sheriff Of Harris County Or His Designated Representative". This Is Followed By "The Court Orders The Harris County Sheriff's Office To Indicate In The Space Provided Above The Date A Suitable DNA Collection Was Collected From The Defendant". And Once More "The Court Further Orders The Harris County Sheriff's Office To Return A Completed Copy Of This Order To The Clerk's Office For Inclusion In The Court's File".

So This Is Actually Six Seperate Orders From The 180th Judicial District That Is In Addition To Being Directed Towards

The Then "Defendant" Has Also Been Directed Toward The "Clerk" And The "Harris County Sheriff's Office" And Is Factually Apparent That The Defendant Is The Only One Out Of The Three Parties To Whom The Order Was Directed Who Actually Obeyed It.

Since The Court Has ORDERED The Harris County Sheriff's Office To Complete The Appropriate Section, Which Has NOT Been Done, And A Completed Copy For Inclusion In The Court's File, Which Has NOT Been Done, It May Seem To A Reasonable Person Who Might Be Happening To Appeal This Order Pursuant To Section 411.154 (C) Of The Texas Government Code, That It Would Not Be Unreasonable To Ask The Court To Nullify This Incomplete, Disobeyed Order That Was Ordered To Be Completed And Included In The Court's File Of Which It Was NOT.

So Would This Seem To Be An Issue That Might Have Arguable Merit That Could Be Raised In An Anders Brief After A Thorough And Contentious Examination Of The Record Performed By Appellate Counsel?

In Appointed Counsel's Argument On Page 3 Of Her Brief, (Apx 7), Ms Moseley States: "An Attorney Has An Ethical Obligation To Refuse To Prosecute A Frivolous Appeal" The Appellant Would Ask This Honorable Court, "What Happened To The Attorney's Ethical Obligation To Her Client?" "What Happened To Texas Standards For Appellate Conduct's "A Lawyer Shall Employ All Appropriate Means To Protect And Advance The Client's Legitimate Rights, Claims And Objectives" ?"

What Happened To Black's Law Dictionary's 9th Edition Page 217 "Anders Brief" The First And Most Important Role Is That Of An Advocate. Anders Makes Clear That The First Duty Of Appellate Counsel Is To Study The Record And CONSULT WITH THE DEFENDANT.

Ms. Moseley Is Quoting Directly Out Of Anders. On Page 3 Of Her Brief She Quotes "Counsel's Obligation To The Appellate Court Is To Assure It, Through An Anders Brief, That A Complete

Review Of The Record Has Been Undertaken And That The Request To Withdraw Is Well Founded." Ms Moseley Is Very Good About Citing Rules And Obligations, She's Just Not Very Good At Following Them.

Texas Code Of Criminal Procedure Article 1.051. Right To Representation By Counsel (a): "A Defendant In A Criminal Matter Is ENTITLED To Be Represented By Counsel In An Adversarial Judicial Proceeding. The Right To Be Represented By Counsel Includes The Right To Consult In Private With Counsel Sufficiently In Advance Of A Proceeding To Allow Adequate Preparation For The Proceeding".

So A Reasonable Person Could Assume The Rules And Obligations Ms Moseley Is Proficiently Ignoring Are Also "Rights" And "Laws".

Please Refer To (Apx B) Page 6 Of Ms Moseley's Brief, Section "B", "The Appeal In This Case Is Frivolous." She Goes On To State, And If The Honorable Court Will Please Take Special And Careful Notice Of This Statement: "This Anders Brief Only Asserts That There Are No Legitimate Issues To Be Raised Regarding The Trial Court's Findings Of Fact Entered On September 16, 2013."

What Ms Mosely Has Just Stated Is That She Has Not Done And Is Not Going To Do A Professional, Conscientious Evaluation Of The Record Or A Complete Review. She Is Going To Base Her Entire Brief On This One Document, The Court's Findings Of Fact That Is Nothing More Than A Carbon Copy Of The State's Motion Requesting Court To Deny DNA Testing.

On Page 4 Of Ms. Moseley's Brief (Apx 9) She Quotes Anders: "When Discussing The Record Counsel Must Discuss The Evidence Introduced At Trial And Must Provide The Appellate Court With Ready References To The Record. CONCLUSIONARY STATEMENTS IN THE BRIEF ARE INSUFFICIENT."

Is Not" This Anders Brief Only Asserts That There Are No Legitimate Issues To Be Raised Regarding The Trial Court's Findings Of Fact

Entered On September 16, 2013 "A Perfect Example Of A "Conclusionary Statement"?"

She Is Stating She Has Drawn Her Conclusion "That An Appeal In This Case Is Frivolous" Based On Only Two Documents In The Entire 166 Page Volume Of The Official Trial Court Record. She Has Based Her Conclusion On 2 Documents In The Findings Of Fact That Are Shown To Be Purposely Omitted By The Attorney Appointed To Amend The Motion. (See Argument #2).

The "Findings Of Fact" Are Proven To Be Unreliable And Can Hold No Credibility Whatsoever. (See Argument #3) The Only Other Reference To The Record Is On (Apx 10) Page 7 Of Ms Moseley's "Argument" And (Apx 11-12) Pages 1 And 2, Her "Statement Of Facts" And "Summary Of The Argument", Where Ms Moseley Quotes From The "Document". The Only Other Document Alluded To In The Entire Record. Also Discredited As Undeniably Falsified. (See Arguments 3 And 5).

In Her First Paragraph In Her "Summary Of The Argument" (Apx 12) Ms. Mosely Completely Changes The Context And Interpretation Of The "Identigene" Lab Report (CR 144- Apx    ) This Is Ms Moseley's Statement: "The Presence Of Multiple Possible Additional Alleles In The Minor Componet Below The Threshhold For Analysis Does Not Negate This Fact."

This Is Taken From A Lab Report From "Identigene", A Forensic Testing Laboratory With A Long History Of Contamination, Falsified Reports, And Faulty Testing Procedures, Whose Reputation Became So Tainted, They Lost Not Only All Credibility, But Their Contract As A Forensic Testing Vender For The City Of Houston. Please See Houston Chronicle Published Newspaper Articles For Verification (Apx 13-    ).

This Is The Actual Statement Ms. Moseley Misquotes: "However, Due To The Numerous Possible Additional Alleles Below Threshhold, Statistical Analysis Will Not Be Performed Evaluating The Probability Of Inclusion."

This statement says absolutely NOTHING about alleles being below the threshhold for analysis. It simply states the lab has CHOSEN not to perform a statistical analysis evaluating the probability of inclusion, just like Ms. Moseley has chosen to completely change the meaning of the statement in the lab report into one that fits the interests of the state.

Texas Rules Of Appellate Procedure, Lawyers Duties To The Court, Rule 3: "Counsel should not misrepresent, mischaracterize, misquote, or miscite the factual record or legal authorities."

Texas Disciplinary Rules For Professional Conduct, Rule 8.04 Misconduct (a)(3) states: "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Rule 3.03 Candor Toward The Tribunal (a) states: "A lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal."

"The violation of one disciplinary rule is sufficient to support a finding of professional misconduct." Vernon's Texas Codes Annotated Government Code Title 2 Subtitle G App. A Disciplinary Procedure Rule 1.06 (v)(1). Cluck V. Commission For Lawyer Discipline, 214 SW 3d 736, 739 (Tex App Austin 2007).

However, Ms Moseley did manage to convieniently omit this statement found at the end of the fourth paragraph in the same document: "Alleles foreign to both Brittany Smith and Tyrone Berry were observed in the minor component of this mixture."

So what the lab report is stating without Ms. Moseley's "commentary" is there is DEFINATELY CONTAMINATION

In This Specimen.

So A Reasonable Person Could Ask "How Were These Specimens Handled?" "Could Careless Or Faulty Handling Procedures Caused The Contamination?" "Has Careless Or Faulty Testing Procedures Caused The Contamination?" "Has Anyone Considered The FACT That At The Exact Same Time These Samples Were Being Handled And Tested By The Exact Same Lab That Lost All Credibility And Their Contract To Operate For The Exact Same Reasons As We See In The Exact Same Circumstances As In This Case?"

"The Texas Rules Of Evidence Rule 901 Governs Authentification (See Tex Rules Evid. Rule 901) As A Predicate To Admissability Rule 901 Requires A Party Who Offers An Item Into Evidence To Establish To The Trial Judges Satisfaction That The Item Is What The Party Represents It To Be. When The Evidence Being Introduced Does Not Have Any Unique Characteristics A Chain Of Custody May Be Required To Prove That The Item Presented In Trial Is The Same One Involved In The Events At Issue. Likewise To Admit The Results Of Scientific Testing A Proper Chain Of Custody MUST Be Established."

Avilla V. State 18 SW 3d 736.

Since Scientifically Tested Evidence Is The Only Evidence In The State's Possession In This Case, Could Contamination Of The State's Only Evidence Have Possibly Been An Issue That Has Arguable Merit?

To Find Out Let Us Track The Sample That Was Submitted By The Appellant On May 25, 2005, The Same Day As A Pre Indictment Agreed Setting For An Examining Trial, Pursuant To An Incomplete, Not Properly Filed Court Order, Using Nothing But The Official Trial Court Record.

Please See (CR 18 Apx 14), This Is A Form Used By The Harris

County Sheriff's Office When A Defendant Submits To A DNA Sample Collection. Please Note That Under The Collecting Officer's Signature Is A Disclaimer Stating That He Has Undergone Training And That He Is Certified In The Correct Handling Procedures Used When Managing A DNA Sample That Is Required By Everyone Who Handles Such Specially Treated Evidence.

Please Look Closely Because You Will Not See Another One In The Entirety Of The Record.

Please Take Careful Notice That There Is A Thumbprint Of Both The Left Hand And The Right Hand Of The Defendant. This Is Part Of The Procedure Known As "Proof Of Identity" It Is Required Of Every Single DNA Sample Collection, And Must Be Included With All DNA Evidence.

Please Look Closely Because You Will Not See Another One In The Entirety Of The Record.

Please Take Note Of The "Chain Of Custody Affidavit" That Is Required By Every Officer Who Moves The DNA Sample From One Location To Another, As Legislatively Mandated By The Texas Code Of Criminal Procedure Article 38.42.

What! There Is Not A Single Chain Of Custody Affidavit In The Entire Record? A Reasonable Person Could Ask "Why Wasn't This Addressed By Appellate Counsel? It Certainly Seems As If This Would Be A Critical Element In Determining It's Admissability. What! Appellate Counsel Never Bothered To Contact The Appellant In Any Way? But The Rules And The Law Are Very Clear On This Issue!

"Chain Of Custody Must Be Established To Authenticate An Exhibit When There Is A Possibility Of Comingling The Item With Items Similar In Appearance. When Items Not Having Distinctive Characteristics Have Not Been Marked With Distinctive Markings By The Sponsoring Witness And When Necessary To

Refute A. Suggestion That The Evidence Has Been Tampered With Or Changed In Some Manner."

Ballard V. State 23 SW 3d 178 (App 10 Dist 2000).

Please See (CR131 Apx 15) This Is The "Evidence Records Affidavit." It Is Sworn Under Oath To Be True And Correct By Officer Q. Thigpen Of The Harris County Sheriff's Office As Evidenced By The Official Seal Of Lyndall K. Barr, A Notory Public For The State Of Texas (CR132 Apx16). It States: "The Records Of The Harris County Sheriff's Office Reflect That The Harris County Sheriff's Office NEVER Received And Is Not Presently In Possession Of Any Property And Or Evidence From Offense Report #30415605-N And Or Cause No 1019634."

Please Note The Use Of The Word "NEVER". Please Notice That There Are Three Additional Options That Could Have Been Used By Officer Q Thigpen Other Than The One He Chose. He Says The Evidence Wasn't Destroyed. He Says The Evidence Is Not In The Custody Of The Harris County Sheriff's Office.

Please Take Specific And Particular Notice Of The Final Option Not Chosen By Officer Thigpen, Particularly The Statement That Evidence Was Received On (BLANK) But Was Released To (BLANK). So What Officer Thigpen Is Saying Is That Not Only Was A DNA Sample Never Received By The Harris County Sheriff's Office But That They Never Released A DNA Sample To Anybody, And The Fact Is According To Officer Thigpen, Not Only Do They Not Have The DNA Sample Collected By The Harris County Sheriff's Office Pursuant To An Incomplete Court Order, According To Their Records, They Never Had It.

So We Have An Appealable Court Order That Was Never Completed Or Filed As Ordered. We Have A DNA Sample Collection Without An Attorney Present As By Right, Taken On A Day Of An Agreement By All Parties That A Pre-Indictment Examining Trial Was Scheduled To Occur. As By Right, We Have A DNA Sample Collection That According To The Record Has Vanished Into Thin

Air As There Is Not One Iota Of The Required Documentation That Must Be Used By Legislatively Mandated Handling Procedures, And In Addition To The Silence Of Required Documentation In The Record, There Is Not A Single Mention Of This DNA Sample, Authorized Or Unauthorized, Anywhere In The Entire Record.

A Reasonable Person Could Ask, "How On Earth Can A Lawyer Who Has Allegedly Done, In Her Own Words, "After A Thorough Review Of The Record," Fail To See All Of These Non Frivolous Issues?" Unless She Was Reviewing A "Different Record" One Could Factually Claim It Appears Ms Moseley Is Refusing To Raise Any Issue That "Might Arguably Support An Appeal".
Gaineous V. State 436 SW 2d 137 (Tex Crim. App 1969).

Please See (Apx 17-18) This Is A Two Page Letter Dated April 28, 2014 From Court Appointed Appellant Counsel Ann Lee Moseley. This Is The First, Last, And Only Correspondance Ever Received From Appellate Counsel. In Her First Paragraph She States: "Enclosed You Will Find My Motion To Withdraw From Representation And Brief In Support Thereof." In Her Second Paragraph She States: "After A Thorough Review Of The Record I Have Concluded There Is Nothing Of Merit To Argue On Appeal", And, "As Such I Have Filed What Is Commonly Called An "Anders Brief."

Texas Code Of Criminal Procedure Article 64.05 Appeal, States: "An Appeal Under This Article Is To Be To An Appellate Court As In Any Other Criminal Appeal." So There Are No Provisions For Never Contacting Your Client. This Could Cause A Reasonable Person To Ask "How Can One Expect A Fair Appeal To Be Administered If You Never Contacted Your Client?" A Reasonable Person Could Only Conclude That You Can't.

Ms. Moseley States That The Courtesy Copy Of The Record

Site Sent Is The Entire Record Consisting Of One Volume. It Consists Of Pages 1 Through 166. Ms. Moseley Has Based Her Entire Anders Brief On Just Two Documents, The Trial Court's Findings Of Fact That The Appellant Proves Is Not Factual (See Argument # 3), And A Lab Report From "Identigene" A Forensic Testing Laboratory That Lost It's Contract To Operate For The Houston Police Department For Conduct It Was Engaged In At The Exact Same Time Period As Their Tests Were Being Conducted On The Appellant's Alleged DNA. This Document Is Also Proven To Be Falsified.

On Page 8 Of Ms Moseley's Anders Brief (Apx 19) Beginning With This Statement "Thus, Because There Is No Arguable Ground To Be Raised In This Appeal Of The Trial Court's Denial Of Relief Following DNA Testing In This Case, The Undersigned Believes That An Appeal Of The Trial Courts Order Denying Retesting In This Case Is Wholly Frivolous."

This Appeal Is Made Pursuant To Texas Code Of Criminal Procedure Article 64.05 Appeals, Which States: "An Appeal Under This Chapter Is To A Court Of Appeals In The Same Manner As An Appeal Of Any Other Criminal Matter."

This Is Stating In No Uncertain Terms: That An Appeal Under This Chapter Is NOT Confined To The Subject Of The Denial Of A Motion For Post Conviction Forensic DNA Testing, But Is In Fact To Be Appealed As In Any Other Criminal Matter, Using The Entire Trial Court Record.

According To Ms. Moseley's Statement, That Is Exactly What She Has Done, Restricted This Appeal To Only One Subject Where She Was Supposed To Examine The Entire Record And Brief Any Issue That Might Arguably Support An Appeal. So Since Her Own Statement Makes It Clear She Was Confining Her Duty To Only One Subject, She Is Clearly In Violation Of Both Tex Code Of Criminal Procedure Article 64.05 And The Briefing Rules Set

Forth By Anders. Which She Liberally Quotes Throughout Her Brief, Yet Does Absolutely None Of The Things She Is Instructed To Do, Including Consulting With Her Client.

Since The State Filed A Motion Requesting Court To Deny DNA Testing, And The State's "Findings Of Fact" Are A Mirror Image Of That Motion, And As A Qualified Appellate Attorney, Why Did She Not Refer To Texas Rules Of Evidence Rule 107, "Optional Completeness"?

"The Purpose Of The Rule Of Optional Completeness Is To Correct Any Potentially Misleading Impression Created When Only A Portion Of Evidence Is Introduced."

Muttoni V. State 25 SW 3d 300 (App 3 Dist 2000).

Such As The Only Two Documents In The Entire Record Cited By Ms. Moseley, The "State's Findings Of Fact" And A Lab Report From The Disgraced Forensic Testing Laboratory, "Identigene".

Rule 107, The Rule Of Optional Completeness Provides: "When Part Of An Act, Declaration, Conversation, Writing Or Recorded Statement Is Given In Evidence By One Party, The Whole On The Same Subject May Be Inquired Into By The Other Party." See Roman V. State 503 SW 2d 252, 253 (Tex Crim. App 1974).

"Evidence That Otherwise Might Not Be Allowed Is Admissable To Explain And Clarify The Matter As A Whole."

Callaway V. State 818 SW 2d 816, 827 (Tex App Amarillo 1991).

In Other Words, Every Single "Fact" In The State's Findings Of Fact And Any Contentions Raised By The Falsified Identigene Lab Report Could Have Been Rebutted, Had Appellate Counsel Been Willing To Take On The Job She Is Being Paid Out Of Public Funds To Do, Which She Has Not Done.

18 of



"Under Rule Of Optional Completeness Party May Introduce An Entire Writing After Other Party Has Introduced Only Part, Rule Is Meant To Guard Against Confusion, Distortion, Or False Impression That Can Arise From Introduction Of Part Of Writing Out Of Context And Reduce Possibility Of Fact Finder Receiving False Impression From Hearing Evidence From Only Part Of Act" Patel V. State 856 Sw 2 d 486 (App I Dist. 1993).

This Could Cause A Reasonable Person To Ask "Was Ms. Moseley Working For The Appellant Or The Harris County District Attorney?

If Ms Moseley Was Working For The Appellant, The First Question That Should Have Been Asked Would Be "What Was Said At The Hearing Where The Motion Was Denied?" This Is Also The Same Question Any Qualified Appellate Attorney Would Be Asking About Any Adversarial Judicial Proceeding, And Would Be Part Of Any "Entire" Appellate Record.

What Is Missing In This Appellate Equation, Other Than A Total Absence Of Representation, Is The "Reporter's Record", The Only Method To Preserve Error For Appellate Review In Any Criminal Proceeding Where Actual Speaking Is Going To Occur.

However, Since There Was No Mention Of A Missing Reporters Record, Could Ms. Moseley Be Covering Up Something For Somebody? Another Court Appointed Colleague Perhaps?

Since Receiving The Anders Brief, And After Reading It, It Was Easy To See That Once Again My Attempt At Post Conviction Relief Would Not Be Fairly And Properly Adjudicated And Would Have To Look Toward A Higher Court For Justice. Hence This Pro Se Response To An Anders Brief In The 14th District Court Of Appeals.

Please See (Apx (20-21 )) Or Pages 5 And 6 Of The Motion For Post Conviction DNA Testing, Filed On Behalf Of The Appellant Without His Knowledge Or Consent By Another Court Appointed

Attorney Who Filed An Intentionally Defective Motion (See Argument #2) And The Motion Was Denied As A Direct Result Of The Fatal Defects And For No Other Reason. Would This Be Another Point Of Error That Has Arguable Merit But Was Never Even Mentioned In The Anders Brief Which Is Suposed To Raise Any And Every Issue That Even MIGHT Have Arguable Merit?

On Page 5 Of The Motion (Apx 20) At The Bottom Of The Page, Court Appointed Motion Counsel Writes: "Petitioner Requests That This Court, Should It Determine And Order That Petitioner Is Not Entitled To New DNA Testing And Denies Relief Requested Herein, That This Court Make Written Findings Of Fact And Conclusions Of Law At The Conclusion Of The Hearing In Order To Preserve Any Issues For Appellate Review."

WOW! This Sounds Like This Lawyer Is Really Doing A Great Job And Is Doing Everything She Possibly Can In Order To HELP The Appellant. Please See (Apx 22-23), This Is The Appellant's Letter Requesting The Official Court Reporter To Prepare And Transmit The Official Reporter's Record Pursuant To Texas Rules Of Appellate Procedure Rule 34.6 (b)(3). Please See (Apx ) This Is A Letter Dated September 16, 2014, From The Official Reporter Of The 180th Judicial District Court Of Harris County Texas.

It States: " In Response To Your Inquirey Postmarked 11 Sept, 2014, And Received In My Office September 16, 2014, There Is NO Reporter's Record For August 9th, 2013, For The Above Referenced Case (1019634). CC: Court File.

This Was Very Disheartening News For The Appellant Who Looked To The Texas Rules Of Appellate Procedure For An Answer And Found It In Rule 13.1, Duties Of Court Reporters And Recorders: " The Official Court Reporter MUST (a), Unless Excused By Agreement Of The Parties Attend Court Sessions And Make A Full Record Of The Proceedings."

The Appellant Never Agreed With Anyone To Excuse A Court Reporter For Any Reason And If The Appellant Had Any Say In The Matter Would Insist The Reporter Record Every Single Word. The Appellant Can Still Not Fathom How An Attorney Could Do Anything So Detrimental To Their Own Clients Interests Until He Recalled This Is The The Same Lawyer That Knowingly And Intentionally Filed A Fatally Defective Motion On His Behalf.

Now He Has Been Appointed A Lawyer Who Is Trying Her Best To Destroy Any Hope Of A Legitimate Appeal, And Is Not Even Trying To Hide It Or Mask It In Any Way.

Please See (CR 164-Apx 25) This Is A Docket Sheet For The 180th Judicial District Court. Please Note On The Entry For For August 9th, 2013: The Date The Appellant's Fatally Flawed Motion Is Heard, With The Appellant's Own Lawyer Waiving The Court Reporter Without Informed Consent Or Any Other Consent Of Any Kind. It Is Proven In Argument #2 That This Malicious Lawyer Inflicted Irreprable Harm At This Proceeding That Is Making A Mockery Of The Justice System. Had This Been Trial The Appellant Would Immediately Receive A NEW TRIAL And This Malicious Attorney Disbarred.

However, Now The Questions Turn To Court Appointed "Appellate" Counsel. How Could This Lawyer Not Have Brought Up This Most Grievous Issue? Saying She Does Not Know Anything About Any "Reporter's Record" Would Be The Same As Her Stating "I Am Too Incompetent To Be An Appellate Attorney."

So The Question Now Becomes "Why". The Appellant Believes This Is All Too "Neat" For Coincidence. He Believes

There Is A More Fitting Word Such As "Exposed". Which Brings Us To Words Like "Official And Professional Misconduct" And "Obstruction Of Justice".

If She Does Not Admit That She Has Intentionally Omitted Any Mention Of A Waived Court Reporter In Her Anders Brief, Obviously An Attempt To Keep From Providing Additional Documentation Against Her Court Appointed Colleague, Then She Is Admitting She Is Not "Qualified" To Act And Be Paid From Public Funds As An "Appellate Attorney." The Appellant Has Already Stated The Only Alternative, Is A Matter Of "Competence".

The "Standards For Appellate Conduct" Are Abundantly Clear. The "Disciplinary Rules For Professional Conduct" Are Abundantly Clear. "Anders V. California" Is Abundantly Clear, As Are The State Of Texas' And The United States' Constitutions.

The Question Now Becomes "What Is This Honorable Court Going To Do With This Relevant, Factual, Information That Points To Official Misconduct Any Way It Is Looked At?"

# Argument On Issue #2.

"The Attorney Of Record Appointed By The 180th Judicial District Court Of Harris County, Texas, To Represent The Appellant In Filing His Motion For Post Conviction Forensic DNA Testing Persuant To Chapter 64 Of The Texas Code Of Criminal Procedure, Intentionally Filed A Defective Motion With The Specific Purpose Of Ensuring The Motion Could Not Go Forward."

On The 20th Day Of January, 2012, The Appellant Filed His Pro-Se Motion For Post Conviction DNA Testing With The 180th Judicial District Court Of Harris County, And As A Direct Result Of That Filing, On The 9th Day Of February, 2012, The Court Appointed Houston Attorney Leah M. Borg To Represent The Appellant In Filing An "Amended Motion."

Texas Code Of Criminal Procedure Annotated, Article 1.051, Right To Representation By Counsel (a), States: "A Defendant In A Criminal Matter Is Entitled In An Adversarial Judicial Proceeding The Right To Be Represented By Counsel Includes The Right To Consult In Private With Counsel Sufficiently In Advance Of A Proceeding To Allow Adequate Preparation For The Proceeding."

As A Direct Result Of The Intentionally Defective Motion Filed On The 20th Day Of July, 2012, Without The Knowledge Or Consent Of The Appellant, The Appellant Remains Wrongfully Convicted, And Now A Full Two And A Half Years Have Elapsed, The Appellant Has Yet To Recover From The Harm Imposed On Him From The Intentional And Malicious Actions Of Court Appointed Counsel.

This Appeal Is Strict Proof That The Hearing To Determine The Question Of The Appellant's "Right" According To Court Appointed Counsel, Was An "Adversarial Judicial Proceeding" Is By It's Denial Of An Opportunity For The Appellant To Exculpate Himself Of The Crime In Which He Is Wrongfully Convicted, Is Another Violation Of The Appellant's Right To Due Process By The Knowing And Intentional Filing Of A Defective And Fraudulent Motion

23

On The Appellant's Behalf, Is Itself A Violation Of His United States Constitution's 6th And 14th Amendment Rights.

"6th Amendment Right To Counsel Automatically Becomes Affective At Inception Of Adversarial Judicial Proceeding And Must Be Implimented By State At Every Critical Stage Of Those Proceedings. Even Absent Special Request. Unless Accused Intentionally And Voluntarily Yields His Perogative To Assistance Of Attorney" (US Const. Amend 6).

Fuller V. State 829 SW 2d 191, 205 (Tex Crim App 1992).

It Has Been Established And Well Founded That The Assistance Of Counsel Means The "Effective" Assistance Of Counsel And The Appellant Would Agree With The State If The State Were To Argue That "Effective" Assistance Does Not Mean "Error Free" Assistance Of Counsel.

However, In This Instance, The Appellant Will Show Beyond Any Reasonable Doubt That Not Only Did Counsel File An Intentionally Defective And Fraudulent Motion Without Her Client's Knowledge Or Consent. But The Facts Provided To This Honorable Court Will Show Without Doubt, The Professional And Official Misconduct Practiced Knowingly And Intentionally To The Degree That In Addition To The Denial Of Assistance Of Counsel. This Lawyer Exhibits Willfull Conduct That Renders Her Unfit To Practice Law In The State Of Texas.

Court Appointed Representation Is Not The Court's Approval To Inflict Injury, Violate Rules Of Professional Conduct, Or To Violate The Rules Of The Court, Or To Represent A Client Without His Agreement To The Tactics And Strategies Employed By Said Attorney. Especially When They Are Violations Of Professional Ethics And The Skill And Competence Required; A Level Below Which NO Attorney May Fall; Without Being Subject To Disciplinary Action.

The Appellant Intends To Show This Honorable Court How The

24

Attorney Appointed By The 180th Judicial District Court, By Intentional Inaccuracies, Omissions. Disregarding Procedure Established By Chapter 64 Of The Texas Code Of Criminal Procedure, Failure To Provide Specific Documentation Required By Chapter 64, Lying To The Appellant, Attempting To Persuade The Appellant To Discontinue His Pursuit Of The Motion By Providing Inaccurate And False Information, Unsound, Inaccurate And Misleading Legal Advice, And Finally, The Unauthorized Waiving Of The Official Court Reporter At The Hearing Where The Motion Was Orally Argued And Denied, Guaranteeing That No Error Would Be Preserved For Appellate Review, Thus Causing Irreparable Harm To The Appellant.

The Appellant Further Contends That As A Study Of The Clerk's Record Was Required To Possess The Information Necessary To The Motion, This Attorney Acted In Collusion With The Office Of The District Attorney Of Harris County In Not Only Ensuring The Motion Could Not Go Forward, But Acted Collusively In Concealing The Exculpatory Evidence Easily Found In The Record.

Black's Legal Dictionary, 9th Edition, Page 637, Defines "Exculpatory Evidence" As: "Evidence Tending To Establish A Criminal Defendant's Innocence." It Was Court Appointed Counsel's Duty To Disclose The Fact Of Falsified Evidence, That Not Only Was It Impossible To Overlook, As She Uses The Same Inaccuracies In The Motion She Constructed, Was Told By The Appellant Specific Instances To Notice, Yet Continued To Refuse To Make This Known To The Court, And Chose To Willfully Conceal.

"Reasonable Probability Within Element For Post Conviction DNA Testing, That Reasonable Probability Exists That Exculpatory DNA Tests Would Have Proven Innocence Means A Probability Sufficient To Undermine Confidence In The Outcome Of The Trial."

Eubanks V. State 113 SW 3d 562, 565, (App 5 Dist. 2003).

In The Exact Same Way, Evidence Of Intentional,

25

ILLEGALLY FABRICATED EVIDENCE, ESPECIALLY WHEN IT IS THE ONLY EVIDENCE, UNDERMINES THE CONFIDENCE OF AN UNJUST PLEA PROCEEDING AS THE INTENDED PURPOSE OF CHAPTER 64 IS TO BE AN AVENUE IN WHICH A WRONGFULLY CONVICTED ACCUSED CAN EXCULPATE HIMSELF FROM THE CRIME.

"THE PURPOSE OF POST CONVICTION DNA TESTING IS TO PROVIDE AN AVENUE BY WHICH A DEFENDANT MAY SEEK TO ESTABLISH HIS INNOCENCE BY EXCLUDING HIMSELF AS THE PERPETRATOR OF THE OFFENSE."

BLACKLOCK V. STATE 235 SW 3d AT 232-33 (TEX.CRIM.APP 2007)

IN THIS APPEAL, USING NOTHING BUT THE OFFICIAL CLERK'S RECORD WHICH WILL SHOW BEYOND ANY REASONABLE DOUBT, IN ADDITION TO THE BLATANTLY FABRICATED AND FALSIFIED EVIDENCE THE ATTORNEY OF RECORD ENGAGED IN WILLFULL VIOLATIONS OF NOT ONLY TEXAS DISCIPLINARY RULES FOR PROFESSIONAL CONDUCT, BUT WILLFULL VIOLATIONS OF THE LAW ITSELF.

RULE 8.04 MISCONDUCT, (a)(3) STATES: "A LAWYER SHALL NOT ENGAGE IN CONDUCT INVOLVING DISHONESTY, FRAUD, DECEIT, OR MISREPRESENTATION" THE APPELLANT HAS PREPARED A FORMAL "STATE BAR GRIEVANCE" REGARDING HER CONDUCT IN THE COURSE OF HER "REPRESENTATION" OF THE APPELLANT AND IS WITHHOLDING IT'S FILING UNTIL AFTER THIS COURT MAKES IT'S FINDINGS IN THIS CASE SO IT CANNOT BE SAID THE APPELLANT IS ATTEMPTING TO USE A STATE BAR GRIEVANCE AS A "PROCEDURAL WEAPON."

THE APPELLANT WILL BEGIN HIS ARGUMENT WITH THE MOTION FILED ON HIS BEHALF DESCRIBING INTENTIONAL DEFECTS WITH ATTACHED EXHIBITS, WITH LETTERS WRITTEN TO THE APPELLANT, KNOWINGLY AND INTENTIONALLY USING FALSIFICATIONS OF FACT, INACCURATE, MISREPRESENTED LEGAL ADVICE, LEGAL ADVICE SHE CLAIMS TO HAVE BASED ON "RUMORS" SHE HEARD, AND URGED THE APPELLANT TO ACT ON IT, UNSOLICITED ERRANT LEGAL ADVICE ON

26

Subject She Was Not Appointed To Represent The Appellant On, And Urged The Appellant To Act On It, Along With A Vast Multitude Of Plain, Old Fashioned Lies, And Finally, Knowingly Waiving Known Rights Of The Appellant By The Unauthorized Abandonment Of A Reporter's Record Of The Hearing To Determine The Motion.

On Page One (CR Apx 26) Of The Motion And In Her First Ground, She Immediately Alleges "Some Evidence Was Previously Tested In May 2005, But Now, In July 2012, There Are Better Ways To Test For DNA That Could Provide More Accurate Results Than The Results Of The Previous Test(s)."

This May Give The Appearance Of A Sound Argument, But Without Documentation Of "Better Ways To Test", Or "More Accurate Results", Opposing Counsel, In His "State's Motion Requesting Court To Deny DNA Testing", In Section V, (CR 119 Apx 27), "The Defendant Is Not Entitled To Forensic DNA Testing", Simply Quotes ", The Defendant Makes No Showing That There Are Newer Testing Techniques Available That Would Provide A Reasonable Likelihood Of Results That Are More Accurate And Probative Than The Results Generated Previously."

Likewise, In The State's Findings Of Fact On The Court's Denial Of DNA Testing, (CR 156 Apx 28), Item #20, "The Court Finds That The Defendant Fails To Show That The Evidence In His Case Was Either, (1), Previously Untested: Or, (2), Previously Tested But Could Now Be Subjected To Testing With Newer Testing Techniques That Provide A Reasonable Likelihood Of Results That Are More Accurate And Probative Than The Results Of The Previous Test."

In Leah Borg's First Undated Letter To The Appellant, Informing Him She Had Been "Appointed By The Court To Represent You," Thus Establishing The Attorney-Client Relationship.

27

"Therefore The Attorney Client Relationship Is One Of Most Abundant Good Faith, Requiring Absolute Perfect Candor, Openess And Honesty And The Absence Of Any Concealment Or Deception."

Perez V. Kirk Carrigan 822 Sw 2d 261, 265 (Tex App. Corpus Christi 1991)

On Page Two Of Her Letter (Apx 29), Last Paragraph, She Quotes: "I Am Also Checking To See Whether DNA Testing Techniques And Methodology Have Changed Sufficiently Since 2005, So That I Can Also Make The Arguement Of Newer And More Accurate Testing Techniques, Require Retesting."

Ms. Borg Has Just Established In Her First Letter To The Appellant That She Is Fully Aware Of The Need To Furnish The Required Documentation Of Newer And More Accurate Testing Available In 2012 Than The Testing Done In 2005.

In Another Undated Letter, Ms. Borg Writes, (Apx 30), In Her 2nd Paragraph, "Also As I Indicated To You, I Would Research The Present Methodology For DNA Testing For Any Advances That Have Occurred Since May 31, 2005, When This Testing Was Done. I Did Find Quite A Few Scientific Papers That Discussed Contamination Of The Samples, Among Other Issues."

#1. Ms. Borg Substitutes A False Statement As Fact By Stating: "May 31, 2005, When The Testing Was Done." The Fact Is May 31, 2005, Is The Date Identigene Released A Lab Report. There Was No "Testing", Done On May 31, 2005.

#2. Ms Borg Establishes The Fact That Not Only Is She Cognizant Of The Need For Documentation Of More Accurate Testing Techniques Since 2005, But That She Has Actually "Found" Quite A Few Scientific Papers, Thereby Establishing She Is Also Able To Obtain The Required Documentation.

"A Professional Negligence Claim Arises When An Attorney Provides Improper Representation."

28

Newton V Meade 143 SW 3d 571, 574 (Tex App. Dallas 2004).
"This Can Happen By Giving An Erroneous Legal Opinion Or Advice, By Delaying Or Failing To Handle A Matter Entrusted To The Attorneys Care, Or By Not Using Ordinary Care In Preparing, Managing And Prosecuting A Case."

Murphy V. Gruber 241 SW 3d 689, 693 (Tex App Dallas 2007).

In The Accompanying Exhibits (Apx 31-32), Is The "Harris County Attorney Expense Claim For Post Conviction Proceedings." An Attachment Of That Document Is The "Out Of Court Hours Log." On Two Different Dates, Ms. Borg Claims She Spent An Hour On Each Of These Days Doing "Legal Research." The Appellant Has Timed Himself In The Unit Law Library To Find It Takes Him, An Untrained Lay Person, 10 Minutes To Read The Entire Chapter 64 Post Conviction Forensic DNA Testing Of The Texas Code Of Criminal Procedure.

He Is Able To Read In The Second Paragraph, Article 64.01 (b)(2) "Although Previously Subjected To DNA Testing, Can Be Subjected To Testing With Newer Testing Techniques That Provide A Reasonable Likelihood Of Results That Are More Accurate And Probative Than The Results Of The Previous Test," And Understands The Article Is Requiring Documentation Stating The Same.

On The Same Document, The "Out Of Court Hours Log" Under The Last Heading Of "Other" On 6·26·13, Two Months Before The Hearing That Resulted In The Motion Being Denied, Ms Borg Bills Harris County 150.00 Dollars To "Review State's Motion To Deny DNA Testing," In This Motion's Section V Which The Appellant Previously Quoted.

Now This Honorable Court Is Holding Documentation That Unquestionably Proves That Not Only Is The Attorney Cognitive Of The Fact For The Need Of The Required Documentation On Advanced Testing Techniques, She Is Fully Aware Of The State's Intent

29

To Cite The Absence Of The Required Documentation As One Of Only Two Grounds For Denial, Both Of Which Are Simply Omitted Required Documentation, And Is Fully Aware Of This Fact Two Months Before The Scheduled Hearing, Yet Still Fails To Include It With The Direct Result Being "Motion Denied".

If This Were Not Inexcusable Enough By Itself, The Simple Remedy Of Filing The Required Documentation As An Attachment To The Motion Would Have Sufficed Without A Need To Amend The Motion Once Again.

On The Very First Issue Concerning Court Appointed Counsel The Honorable Court Is Holding Evidence That Shows Beyond Any Reasonable Doubt That This Attorney *1. Knew The Need For The Documentation, *2. Had Found And Had Access To The Documentation, *3. Knew Opposing Counsel Was Using Absence Of The Documentation As A Ground For Denial Of The Motion, And *4. Had Two Months To Fix The Fatal Defect.

These Cumlative Factors Can Be Construed As Nothing Less Than The Intentional Sabotage Of This Motion And The Appellant Will Allege That This Is Not Ms. Borg's First Appointment For The Same Motion Or Her First Attempt At The Construction Of This Motion And Was More Likely Than Not To Have Already Possessed The Document She Billed Harris County 150.00 Dollars To "Review".

Citing Eubanks V. State, 113 S.W. 3d 562, 567 (Tex App Dallas 2003), "In Order To Prevail On A Claim Of Ineffective Assistance Of Counsel, An Appellant Must First Prove By A Preponderance Of The Evidence That His Counsel's Representation Fell Below The Objective Standards Of Professional Norms".

Strickland V. Washington 466 US 668, 687 104 S. Ct. 2052 80 L.Ed. 2d 674 (1984) Bone V. State 77 S.W. 3d 828, 833 (Tex Crim App 2002)   30

"He Must Then Show That The Deficient Performance Prejudiced His Defense." Strickland At US 687 S.Ct At 2052, Bone At 833.

The Appellant's Motion Was Denied Due Directly To The Deficient Performance Of Court Appointed Counsel And Has Suffered Ongoing Substantial Harm By The Continuous Loss Of His Liberty.

"The Record On A Direct Appeal Will Often Be Inadequate To Determine Whether Counsel's Representation Was So Deficient And So Lacking In Tactical Or Strategic Decision Making As To Overcome The Presumption That His Conduct Was Reasonable And Professional."

Bell V. State 90 SW 3d 301, 307 (Tex Crim App 2002).

This Entire Record Of Cause No 1019634 Turns On What It Contains And The Appellant Can And Does Show This Honorable Court Beyond A Reasonable Doubt That It Is Based Wholly On Discredited, Fabricated, Falsifications, And Inadequate, Irresponsible, Fraudulent Misrepresentation.

"A Claim Of Ineffective Assistance Of Counsel Must Be Predicated Upon An Underlying Right To The Assistance Of Counsel".

Blankenship V. Johnson 118 F 3d 312, 316 (5th Cir. 1997).

Texas Code Of Criminal Procedure Article 64.01 (c) States: "A Convicted Person Is ENTITLED To Counsel During A Proceeding Under This Chapter".

Black's Legal Dictionary 9th Edition, Page 612, Defines The Legal Term "ENTITLE" As: "To Grant A Legal Right To, Or Qualify For."

Article 64.01 (c) Continues: "The Convicting Court Shall Appoint Counsel For The Convicted Person If The Person Informs The Court That The Person Wishes To Submit A Motion Under This Chapter, The Court Finds Reasonable Grounds For The Motion

31

To Be Filed And The Court Determines The Person Is Indigent. Counsel Must Be Appointed Under This Subsection Not Later Than The 45th Day After The Court Finds Reasonable Grounds Or The Date The Court Finds The Person Is Indigent, Whichever Is Later. Compensation Of Counsel Is Provided In The Same Manner As Is Required By (2), Chapter 26, For The Representation In A Habeas Corpus Hearing Of An Indigent Defendant Convicted Of A Felony Other Than A Capitol Felony."

Chapter 26 Of The Texas Code Of Criminal Procedure Provides For The Payment To Counsel Of Funds That Are From The Counties Budget To Support The Office Of The Public Defender, And Are Without Doubt Considered To Be "Public Funds" Protected From The Offense Of "Embezlement" By Strict Accounting Practices And Harsh Penalties For Violators Of The Public's Trust.

Article 26.05, Compensation Of Counsel Appointed To Defend, In Relevant Part States: "(1) Time Spent In Court Making An Appearance On Behalf Of The Defendant As Evidenced By A Docket Entry."

If This Honorable Court Would Refer To (CR163, Apv33). This Is A Handwritten Docket Sheet Produced By The Court Coordinator Of The 180th Judicial District Court Of Harris County. This Deceptive Document Was Produced For The Specific Purpose To Give The False Illusion That This Motion For Post Conviction DNA Testing Has Not Been On The Court's Docket For Over A Year And A Half In Case Some How Someone Might Listen To This Appellant.

Please Take Notice There Are Only 6 Possible Entries That Could Even Remotely Construed As An "Appearance" A Reasonable Person Might Ask, "Is A Reset An Appearance Even If The Lawyer Did Not Physically "Appear"?

32

If The Honorable Court Would Now Please Refer To (CR165, Apx34), This Is The Computer Generated Docket Sheet For The 180th Judicial District Court. This Document States That At The Very Most There Are A Maximum Of Only 10 Possible Dates Court Appointed Counsel Could Have Possibly Made An "Appearance". Please Take Into Account That Every Single Appearance Without Exception Is "Reset"

Please See Appendix (35). This Is The "Harris County Auditor's Form", "Attorney Fees Expense Claim" Pursuant To Article 26.05. Please Note To The Right Of "DNA Motion" Is The Quotation Of "12.75 Hours + 14 Status Court Appearances.

Please See Appendix (36). This Is An Undated Letter From Leah Borg To The Appellant. Please Note The Second Paragraph That Ms Borg States: "As You Know The D.A And I Were Set For A Status Conference In Your Case On September 28th, 2012. Unfortunately, When I Arrived In Court, I Was Informed That The D.A Was Not In Town And Therefore Was Unavailable For The Status Conference.

Your Case Has Therefore Been Reset. The New Date Is Nov. 9, 2012".

Please Return To (CR165 Apx34) The Harris County District Court Sheet's Entry Shows The New Court Date Of Nov. 9 2012. However, It Too Is Reset By The Court Until The New Date Of February 8th, 2013.

Please See Appendix (37). This Is Leah Borg's Letter Dated Dec. 17th 2012. She States "This Is To Let You Know What Happened With Respect To Our Last Scheduled Court Appearance On Friday, Dec. 14, 2012."

The Harris County Docket Sheet Claims There Was No Scheduled Court Appearance On Dec. 14 2012. Texas Code Of Crim In al Procedure Article 26.05 States: "Compensation Of Counsel Appointed To Defend. (1): Time Spent In Court Making An Appearance On Behalf Of A Defendant As Evidenced By A Docket Entry."

Please Refer To Appendix (32) The Out Of Court Hours Log Of

33

Attorney Leah Borg's Payment Request Form Pursuant To Art. 26.05. Please Notice The Second Box On The Page Marked In Hand Stating "Status" Court Appearances. In Parenthisis Is The Notation (14) As Is On Her Bill A Total Of 14 Appearances. Please Note Directly Under The Notation Of (14) There Appears The Date Of "12-14-2012". We Allready Know This Is A Ficticious Court Date.

Please Return To Appendix (37). Leah Borg's Letter Dated Dec. 17, 2012 In The Second Paragraph Is This Statement. "On Thursday, Dec 13th, I Was Called By The Court's Coordinator And Was Advised That The D.A. Had Indicated That He Still Has Not Received The Affidavits In Your Case. The Coordinator Said It Was Not Necessary For The D.A. And I To Go To Court The Next Day, Since There Was Nothing That Could Be Done."

It Seems Ms. Borg's Hand Is Caught Squarely In The Proverbial "Cookie Jar", Except This Is No Cookie Jar! This Is An Intentional Act Of Embezzlement Of Public Funds And Is Evidence Of A Need To Audit This Less Than Honorable Officer Of The Court.

The State Bar Of Texas Has Set A Standard Below Which No Lawyer May Fall Without Being Subject To Disciplinary Action The Texas Disciplinary Rules Of Professional Conduct. Rule 8.04, Misconduct (a)(3) States: "A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deciet Or Misrepresentation.

This Lawyer's Dishonesty Has Caused The Appellant Irreparable Harm.

So Now That It Is Established That It Was A Physical Impossibility For Ms. Borg To Have Made 14 Court Appearances As Her "Bill" Reflects. Exactly How Many Appearances Did She Make On Her Client's Behalf? The Appellant Will Assert That She Never Made A Single Appearance On His Behalf, Because It Was Not His "Interests" She Was Representing And Never Was From The Very Day She Was Appointed.

34

Ms. Borg Billed Harris County To "Review" The State's Motion Requesting Court To Deny DNA Testing, A Document She More Likely Than Not Has In Her Possession. And Even If It Wasn't, She Still Did Not Address The Only Two Grounds The State Was Using As Their Basis For The Court To Deny On; Which In Fact They Did Just That, The Court Denied The Motion Citing The Omitted Documentation. Did She Really Review These Documents?

Regardless, These Are Public Funds And The Texas Legislature, In The Language Tracked In The Statute Chapter 26, State's: "Qualified Attorneys Willing To Accept The Stated Rates." If The Legislature Expected These Attorney's To Be "Qualified" Should Not Their Clients Be Able To Expect Them To Be Effective?

Would The Public Be Expected To Pay For Appearances By A Qualified Attorney That Were Never Made? Would The Public Be Expected To Pay A Qualified Attorney For Legal Research That Was Never Done? Would The Public Be Expected To Assume Liability For A Qualified Attorney Who Knowingly And Intentionall Violates The Constitutional Rights Of Her Client?

Therefore, The Appellant, Using Only The Very First Section Of The Motion For Post Conviction Forensic DNA Testing Has Established As Fact That The Attorney Who Was Appointed By The 180th Judicial District Court Of Harris County To Construct The Motion Has Knowingly And Intentionally Constructed And Filed A Defective Motion Doomed For Failure The Very Moment It Was Filed.

Because She Had A Two Month Window Of Opportunity To Provide The Purposely Omitted Documents That Were The Only Factors Cited For The Motion's Denial Is A Willfull And Malicious Act Designed To Not Only Increase The Likelihood Of A Negative Outcome At The Motion's Hearing. But A Deliberate And Premeditated Act With The Specific Intent To Cause Official Oppression And Obstruction Of Justice.

Because The Appellant Has Entered The Arena Of Official And Professional Misconduct Regarding The Intentional Actions

35

Of Court Appointed Counsel The Appellant Refers To Disciplinary Rules Of Professional Conduct Rule 8.04 Misconduct, Which States: "A Lawyer SHALL NOT," The State Bar Claims These Rules Are "Imperitives" Black's Law Dictionary 9th Edition Page Defines Imperitives As: "A Rule In The Form Of A Command, A Rule Of Action Imposed On People By Some Authority That Enforces Obedience." (And Likewise Punishes Disobedience)

The State Bar Continues: "Cast In Terms Of Shall And Shall Not." So, Rule 8.04 States The Lawyer Will Imperitively "SHALL NOT"(1), Violate These Rules SHALL NOT (3) Engage In Conduct Involving Dishonesty, Fraud, Deceit, Or Misrepresentation. SHALL NOT (4) Engage In Conduct Constituting Obstruction Of Justice.

The State Bar Has Listed Definitions Of The Terminology Used In It's Rules And The Following Are Repeatedly Attached To The Actions And Representation Received By The Appellant But Was Actually Misrepresentation He Was Subjected To. Here Are A Small Number That Apply Directly To This Lawyer And Specific To This Case.

1. Competent Or Competence: Denotes Possession Or The Ability To Timely Acquire The Legal Knowledge, Skill And Training Reasonably Necessary For The Representation Of The Client.

2. Consult Or Consultation: Denotes Communication Of Information And Advice Reasonably Sufficient To Permit The Client To Appreciate The Significance Of The Matter In Question.

3. Fitness: Denotes Those Qualities Of Physical, Mental, And Psychological Health That Enables A Person To Discharge A Lawyer's Responsibilities To Clients In Conformity With The Texas Disciplinary Rules Of Professional Conduct. Normally A Lack Of Fitness Is Indicated Most Clearly By A Persistant Inability To Discharge Or Unreliability In Carrying Out Significant Obligations.

4. Fraud Or Fraudulent: Denotes Conduct Having A Purpose To Decieve And Not Merely Negligent Misrepresentation Or

36

Failure To Apprise Another Of Relevant Information.

5. Knowingly, Known, Or Knows: Denotes Actual Knowledge Of The Fact In Question. A Person's Knowledge May Be Inferred From Circumstances.

6. Should Know: When Used In Reference To A Lawyer Denotes That A Reasonable Lawyer Under The Same Or Similiar Circumstances Would Know The Matter In Question.

Because Of Documentation Provided By The Appellant From The District Clerk Of Harris County. Appendix (31-32) Showing Ms. Borg Has Billed Harris County For #1. Legal Research And #2. Reviewing The State's Motion Requesting Court To Deny DNA Testing, Shows Willfull Conduct Far Beyond "Knowingly" Or Even "Should Have Known" But Enters The Realm Of "Intentional Misconduct" And Unless Ms Borg Would Perfer To Admit She Is Billing Harris County For Work That Has Not Been Performed, Then She Is Simply Too Incompetent To Understand The Legal Research She Has Done, And Is Too Incompetent To Understand What Grounds To Deny A Motion Are.

" Violation Of Conduct Rules Regarding Accepting Work Beyond An Attorney's Competency, Maintaining Adequate Communication With Client, And Representing To Or Withholding From Tribunal Facts Necessary To Informed Decision, Warranted Partially Probated Eighteen Month Suspension Of Attorney Who Purported To Represent Interests Of Absent Client In State Court And Bankruptcy Proceeding." Rules Of Professional Conduct Rules 1.01(a),1.03(a)(3), And 8.04(4)(3).

McIntyre V. Commission For Lawyer Discipline 169 SW 3d 803, 804 (Tex App. Dallas 2005).

Please Note That The State Bar's Definition Of "Adequate Communication" Does Not Include Blatant Lying, False Representation, Or Untrue And Inaccurate Legal Advice.

The Second Sentence In The Attorney's First Ground Showing "Why" The Court Should Grant This Motion, Right After The

37

Intentional Omission Of Documentation Of Advanced Testing Techniques, Contains 3 Mistatements Of Fact All Within The Same Sentence.

The Motion Is Numbered Pages 1-7 And Is (Apx 38 (a-j)). Beginning On Page One, Section 1, Item 1, Second Sentence, Quoting: "Further, Some Of This Evidence, Namely Buccal Swabs, Is Purported To Have Been Taken From Petitioner On March 29th 2005, Were Taken Without The Presence Of Petitioner's Attorney, Rick DeToto, To Observe And Make Certain That The Warrant To Take Such Evidence From Petitioner Was A Valid Warrant, And Further To Make Certain That The Methodology And (Page 2 Apx 38a Apx 38b) Procedures Utilized By HPD Officer T. Guerrero Taking The Swabs Were Correct And Without Question."

The Only Factual Statement In This Entire Sentence Is That There Was No Lawyer Present When Buccal Swabs Were Taken From The Appellant On May 25th 2005. March 29th, 2005 Is A Date Some "Evidence" Was Transferred From The Houston Police Dept. Crime Lab To "Identigene" Where False And Fabricated Evidence Is Manufactured. There Were No Buccal Swabs Taken From The Appellant On March 29, 2005.

HPD Officer T. Guerrero Is Not The Sample Collecting Officer In This Case. HPD Officer T. Guerrero Drove The Evidence From HPD Crime Lab To Identigene. The Buccal Swabs Collected From The Appellant Were Taken On May 25, 2005, See (CR 18 Apx 14), By Officer Delrymple Of The Harris County Sheriff's Office. There Was No Attorney Present To Witness This Sample Collection.

The Warrant Ms Borg References Is Non Existant.

However, This Completely Inaccurate, Untrue Statement That Cannot Benefit The Motion In Any Way, Does Provide Proof That Ms Borg Is In Fact Using The Official Clerk's Record To Construct Her Intentionally Defective Motion, Or Admit That She Is Not Competent Enough To Copy Facts From One Sheet Of Paper To Another, Unless Your Intention Is For The Motion To Fail, Why Bother With Facts?

38

Texas Disciplinary Rules Of Professional Conduct, Rule 3.03, Candor Toward The Tribunal, (a). State's: "A Lawyer Shall Not Knowingly: (The State Bar Quotes "Shall Not" Is An Imperative And "Knowingly" In This Instance Should Know) (1) Make A False Statement Of Fact Or Law To A Tribunal."

Again Ms. Borg Is Faced With A Dilemma. She Is Either In Violation Of Rule 3.03 Candor Toward The Tribunal Or She Is Incompetent. There Are No Other Options.

The Whole Point Of The Chapter 64 Motion For Post Conviction Forensic DNA Testing Is The Fact That The Underlying Issue Is The Conviction Is Being Challenged. The DNA Test Is Just An Avenue For The Convicted Person To Exculpate Himself, That DNA Testing Will Exclude Him As The Perpetrator Of The Crime He Was Convicted Of.

In This Case The Appellant Has Been Diligently Seeking Post Conviction Relief Since 2009, And Finally, In 2012 Was Able To Convince The Court He Should Be Allowed To Have The Evidence In His Case To Be Re-Tested And As Such Qualified For Court Appointed Counsel, Which He Moved The Court To Provide, And The Court Granted.

The First Thing To Transpire Would Be To Provide Court Appointed Counsel With The Entire Trial Court Record, Without Which It Would Be Impossible To Construct A Motion Based On The Record.

When Ms Borg Wrote Saying She Had Been Appointed By The Trial Court She Used Pecular Language Saying Nothing About A Post Conviction Forensic DNA Testing Motion Pursuant To Chapter 64, But Specifically "To Represent You Regarding The Various DNA Motions You Have Filed." (See Appendix 45)

This Exposes Her Ulterior Motive And Shows That Her Interest Is Not Getting New DNA Testing But Is More Concerned About The Past Writs That Have Been Filed By The Appellant.

39

In The Second Paragraph Of Ms. Borg's First Undated Letter, She Makes This Statement, "I Have Read Through The Documents You Have Filed As Well As The Court's File In This Case And Have Read Through Several Post Conviction Files Of Yours Regarding Writs You Have Filed. I Have Done This To Best Understand Any Basis For Post Conviction DNA Testing."

This Establishes As Fact That Not Only Does Ms. Borg Possess The Entire Record And Every Post Conviction Writ The Appellant Has Filed, But That She Has Also Read Everything. This In Turn Leaves Only 3 Possible Explainations For Her Inexcusable Behavior:

 *1: She Is Totally And Hopelessly Incompetent.
 *2: She Is A Pathalogical Liar.
 *3: She Is Knowingly And Intentionally Assisting Opposing Counsel To Make Certain The Appellant Remains Wrongfully Convicted.

Please Note: The Appellant Does Not Believe Ms. Borg Is Incompetent, But Is In Fact A Cunning And Calculating Manipulater In Her Every Exercise And Has A Specific Purpose For Every Act She Performs, Down To The Omission Of The Date On Her Letters.

The Appellant Does Not Believe Ms. Borg Is A Pathological Liar, And Will Prove Without Doubt She Uses The Lie As Her Number One Tool To Achieve Her Ends. A Pathological Liar Lies For No Reason, Even When The Truth Is A Better Fit. Although Ms. Borg's Practice Is Similar In Nature, Again She Has A Specific Aim And Purpose For Proficient And Expert Use Of The Lie.

In The Motion Filed On The Appellant's Behalf Without His Knowledge Or Consent, In Her Second "Ground" To Convince The Court That DNA Testing Is Warranted, In Item *1, Ms Borg Immediately Points The Court To The Only Place The Appellant's DNA Can Be Found, The Panties Allegedly Worn By The Complaintant, And The Vaginal Swabs Purported To Have Been Taken Taken From The Complaintant.

40

Ms. Borg Knows The Appellant's DNA Can Be Found There Because She Is Aware Of The Fact That Someone From Within The Harris County District Attorney's Office Is Responsible For Having It Put There, Using The Sample That Was Collected On May 25, 2005, But Subsequently "Dissappeared" According To The Record.

Item # 2. Ms Borg States For The Second Time In This Motion That Quote: "The Evidence Was Subjected To Previous DNA Testing By Techniques That Are Now Superceded By More Accurate Techniques That Are Less Prone To Contamination By Unknown Sources." Yet She Continues To Fail To Offer Any Documentation Stating The Same.

Citing State V. Vasquez. 230 SW 3d 744,752 (Tex App Houston (14 Dist) 2007), In His Opinion. Charles Seymour Justice Quotes: "The Instant Case Arises At A Time When Texas Has Acheived An International Reputation For It's Flawed Crime Lab Processes, Misrepresented Results, And Lost Or Destroyed Evidence."

The Honorable Justice Is Making Reference To The Exact Same Houston Police Department Crime Lab, The Exact Same Forensic Testing Laboratory, In The Exact Same Time Period As The Case He Is Referancing, As The Appellant's Evidence, In His Wrongfull Conviction. The Appellant Proves Beyond Any Reasonable Doubt, The Fact That All Of The Evidence In His Case Is Also Falsified And Fabricated Evidence In Arguments 3, 4, And 5.

Once Again, To The Untrained Observer, This May Sound Good, But Ms Borg Is A Seasoned, Licensed Professional, Whose Job It Is Is To Know That With This Motion Documentation MUST Be Provided And Since Ms. Borg Has Billed Harris County To "Review" The Very Document That States In It's Only Grounds To Deny This Motion Is The Missing Documentation Leaves Only One Of Two Possible Scenarios Ms. Borg Has Available To Her:

* 1.: She Is Completely And Utterly Incompetent; Or,
* 2.: She Is Intentionally Assisting Opposing Counsel.

41

Either Way, And There Are No Possible Other "Alternatives", The State Bar Of Texas And The Supreme Court Of Texas Insists That This Conduct Has Fallen Below A Standard Of Which No Lawyer May Fall Without Being Subject To Disciplinary Action.

"Texas Disciplinary Rules Of Professional Conduct Establish Minimum Standards Of Conduct Below Which No Lawyer Can Fall Without Being Subject To Disciplinary Action."
Anderson Producing Inc. V. Koch Oil Co. 929 SW 2d 416 (Sup. 1996)

Item #3.: Ms Borg States: "The Evidence Held By The Houston Police Department And Or Sorenson Forensics, Formerly Known As "Identigene" (The Same Identigene That Lost It's Contract To Operate As A Vender For The City Of Houston Due To Falsified Evidence And Falsified Documents.) Should Be In A Condition Making DNA Testing Possible."

This Is Tantamount To Stating "Maybe It Is And Maybe It Isn't". Factually Speaking, Arguments #3, #4, And #5, In This Pro Se Direct Appeal Prove Without Doubt The Evidence Is Not Now, Nor Was It Ever In A Condition For DNA Testing. Fabricated And Falsified Evidence Is Never In A Condition To Be Tested In Any Way Other Than To Test The Capacity Of A Waste Can.

This Lawyer Claims To Have Not Only Studied The Trial Court Record But All Of The Post Conviction Writs Filed By The Appellant. So Even That Would Have To Be A Blatant Lie, Or She Is Assenting To The Concealment Of Falsified Evidence By The State. (See Arguments On Issues 3, 4, And 5.).

If She Had Made The Slightest Study Of The Record (The Appellant Believes She Has, But Was Appointed For Her Willingness To Cooperate With The State In Keeping The Appellant Convicted) Then She Would Be "Screaming Bloody Murder", So To Speak, About What Is Obviously Falsified, Fabricated Evidence.

Along With Her Failure To Report This Falsified Evidence To

42

The Court Is Her Negligent Construction Of The Motion, Which Can Only Point To Her Direct Involvement With Opposing Counsel, And The Total Absence Of Any Legitimate Excuse Because Of Her "Out Of Court Hours Log", She Allegedly Reviewed The State's Motion Requesting Court To Deny DNA Testing Two Months Before The Motion Was Heard. Unless She Is Billing Harris County For Work That Was Never Performed.

Item #4.: "The Chain Of Custody Of The Evidence By The Houston Police Department And Or Sorensen Forensics And Or The Harris County District Clerk's Office, Should Be Sufficient To Establish That The Evidence Has Not Been Substituted, Tampered With, Replaced Or Altered In Any Material Respect."

Again "Maybe It Is Or Maybe It Isn't". That Is What Leah Borg Is Stating When It Is Her Job To Say Conclusively Whether It Is Or It Isn't. "Should Be" Is Simply Not Good Enough Period. It Either Is Or Isn't And It Was Leah Borg's Responsibility And Obligation To Make The Determination Whether It Was Or Wasn't, And Her Failure To Do So Points Directly To Only One Logical Explaination.

The FACT Is There Is No Possible Way, According To Law, The Texas Code Of Criminal Procedure, And The Texas Rules Of Evidence, That ANY Of The State's Evidence Is In Any Condition To Be Tested For Anything By Anyone. A Simple Review Of The "Chain Of Custody" Contained In The Record Shows Every Single Piece Of Evidence Possessed By The State Was Mishandled At Every Conceivable Point By Every Entity That Touched It And There Is Not One Iota Of Acceptable Documentation Provided In The "Official Record" To Establish The State's Evidence Is What It Is Purported To Be. (See Arguments For Issues 3; 4, And 5).

In Fact, All Of The Documentation In The Official Record Shows The Exact Opposite, That None Of The Evidence Is

43

What It Is Purported To Be.

However, Ms Borg Is Doing A Brilliant Job Of Backing Herself Into A Corner She Will Be Unable To Explain Or Lie Her Way Out Of.

Item #5.: Ms Borg States: "Identity Was And Remains An Issue In The Underlying Criminal Case, Despite Petitioner's Plea Of Guilty, Because As The Lone Accused In This Case, Exculpatory DNA Testing Would Prove Petitioner's Innocence.

Here Again We Will See Strict Proof Of What Can Only Be "One Or The Other" And Nothing Else. Either Ms. Borg Will Have To Admit She Is Indisputably And Without Question Cripplingly Incompetent, Or She Is In Direct Collussion With The State In The Certainty This Motion Fails.

In The Very First Paragraph Of The Texas Code Of Criminal Procedure's Chapter 64 Motion For Post Conviction Forensic DNA Testing Article 64.01 (a-1), States: "A Convicted Person May Submit To The Convicting Court A Motion For Forensic DNA Testing Of Evidence Containing Biological Material. The Motion Must Be Accompanied By An Affidavit Sworn To By The Convicted Person Containing Statements Of Fact In Support Of The Motion."

This Is Also Known As An "Affidavit Of Innocence", That Without One No Motion For Post Conviction DNA Testing Will Be Granted. Please Take Note Of The Statutory Language Of The Legislated Requirement: "The Motion MUST Be Accompanied By An Affidavit Sworn To By The Convicted Person Containing Statements Of Fact In Support Of The Motion."

Please See Apx (32). The "Out Of Court Hours Log" Under "Legal Research", Ms. Borg Has Again Billed Harris County 150.00 Dollars To Obtain Information That Is Supplied In The 1st Paragraph Of Art. 64.01 (a-1), Yet Still Fails To Include This Vitally Important Document In Her Motion As Instructed.

44

Again, the appellant will allege this is not Ms. Borg's 1st appointment to file this same motion. He will also state that the public would probably find it very interesting that a profession such as a licensed attorney, can bill public funds for their own "Continuing Education", immediately discard what they have just charged the public funds to learn, and fail to use what they have charged to learn as specifically instructed to do on a motion they are being paid more public funds to file.

The rest of the world has to pay for their own continuing education and then take what they learn and attempt to generate an income using what they have learned. This ingenious lawyer is able to get paid to do a job, get paid to learn how to do the job she is getting paid to do, discard what she was paid to learn, do the job completely incorrect and still get paid, all with public funds.

Please turn to (CR115 Apx4B), this is page 3 of the "State's Motion Requesting Court To Deny DNA Testing." At the top of the page under Section II "Applicable Law" at the second sentence, ADA Inger Hampton, the author of the motion to deny, simply writes: "The motion must be accompanied by by an affidavit sworn to by the convicted person and contain statements of fact in support of the motion.

Please turn to (CR119 Apx52) this is page 7 of the motion to deny. Under Section V, "The defendant is not entitled to forensic DNA testing." Please note at the conclusion of the 2nd paragraph this statement: "Even if the only remaining evidence were subjected to DNA testing, defendant fails to show, nor does he even allege, how any possible result would exculpate him from this crime."

45

ADA Hampton Has Made A Direct Reference To The Missing Affidavit Ms Borg Has Been Well Compensated To Learn About, Not Once But Twice In The Motion To Deny And Is One Of The Only Two Grounds Brought To The Court To Support The Denial, And Both Defects Could Have Been Easily Overcome By Simply Submitting The Missing Required Documentation.

Please Refer Once Again To (Apx 32) The "Out Of Court Hours Log." Please Note Under The Heading Of "Other" At The Date Of 6.26.13, Two Months Before The Motion Is Denied, Ms Borg Now Bills Harris County 112.50 One Hundred Twelve Dollars And Fifty Cents, To "Review" The State's Motion Requesting Court To Deny DNA Testing."

It Takes The Appellant Less Than 9 Minutes To Read The Entire Motion And Was Able To Understand The Only 2 Grounds, Both Missing Documents, The Motion Clearly Instructs Must Be Included, The First Time He Read It.

So Now, The Lawyer Who Is Able To Get Paid By Appointment To Perform A Specific Task Because She Is "Qualified", According To The Texas Code Of Criminal Procedure, Get Paid More To "Learn" What She Is Already Supposed To Know, While Still Getting Paid For What She Was Appointed To Do, Get Paid Even More To See How She Is Doing It Wrong, Even Though She Was Paid To Learn How To Do What She Was Already Supposed To Know, Right, Continues To Do It Wrong And Still Gets Paid. All With Public Funds. So Much For That Old Saying "Crime Doesn't Pay." At Least In Ms. Borg's Case.

This Conduct May Not Bother Whoever Is Supposed To Be "Watching" The Public Funds In Harris County, But It Is A Huge Bother To This Appellant, Who Is Suffering The Worst Imaginable Harm As A Direct Result Of Her Dishonest Conduct, The Continual Loss Of His Liberty All The While His "Attorney"

46

Is Making Money However She Pleases At The Direct Expense Of The Appellant Who Remains Wrongly Convicted And Incarcerated. As Their Is No Motivation Whatsoever For This Attorney To Act In An "Ethical" Fashion Because She Is Going To Get Paid Whether She Does Her Job Or Not.

This Treatment Of The Appellant Goes Far Beyond Incompetence And Negligence But Is Nothing Less Than Malicious Malpractice And If Ms Borg Wants To Claim She Is Not In Direct Collusion With The State, Then That Is An Admission That She Is Not Fit To Practice Law In The State Of Texas According To The State Bar's Definition Of The Term "Fit."

Item #6.: Ms Borg States: "The Petitioner Is Presently In The Custody Of The Texas Department Of Criminal Justice, Serving His Sentence In This Case."

If Ms. Borg Had The Slightest Concern For The Administration Of Justice, Or The Welfare Of Her "Client" She Would Have Brought To The Court's Attention That During Her Review Of The Record, That "Anyone" Could Recognize The Fact That Not Only Is The State's Evidence Illegally Falsified And Fabricated, That The Only "Properly" Collected DNA Sample Was In Fact Collected Illegally And Was Then Used For The Specific Purpose Of Contaminating The State's Fabricated Evidence.

In Section III Of Ms. Borg's Intentionally Defective Motion, She Skirts All Around The Issue Of The "Possibility" Of Contamination That Would Obviously Require New Testing If There Was Any Evidence In The Proper Condition To Be Tested, Or Re-Tested, Of Which There Is NONE, She Uses Phrases Like "These Statements Indicate" And "It Is Highly Likely" In Her References To The "Possibility Of Contamination."

In A Statement Made By Ms Borg In Her First

47

Undated Letter To The Appellant (Apx54). In Obvious Reference To Her Review Of Post Conviction Litigation Filed By The Appellant And Illegally Adjudicated By The State, She States: "Of Particular Importance To Me Was Your Statement That Your Trial Attorney Had Advised You That DNA Testing Revealed That There Were Several Sperm Donors In The Sample That Was Tested. If Correct, This Would Be Extremely Important In Getting New Testing Done."

She Then Makes This Statement: "I Have Obtained A Copy Of The Report From Identigene, Which Did The DNA Testing In Your Case, In Order To Ascertain Whether There Was More Than One Sperm Donor."

She Makes This Statement To Give The "Appearance" That She Has Gone Out Of Her Way And Applied Some Kind Of Special "Lawyer Technique" To Gain Access To The Document She Is Referring To When In Truth It Is A Part Of The Record Given To Her When She Was Appointed To Assassinate This Motion And Deceive The Appellant Into Thinking This Lawyer Was "Trying" To Help Him.

She Goes On To List 6 Items From The Report That All Seem To Inculpate Him Of This Crime And The "Bad News" That The Appellant Cannot Be "Excluded" And "This Is Like Saying One Chance Out Of Several Billion People."

Her Very Next Statement, Another Blatant Lie, "The Report Says Nothing About DNA From Another Male Source Being Observed In Any Of The Samples Taken From The Complainant."

Please Refer To (CR144 Apx62) This Is The Same Lab Report Ms. Borg Was Able To "Obtain". Please Read The Last Sentence Of The Fourth Paragraph. In Clear And Plain Legible English It States: "Alleles Foreign To Both Brittany Smith And Tyrone Berry Were Observed In The Minor Component Of This Mixture"

48

This is irrefutable, undeniable proof of contamination of the DNA testing by "Identigene"; that provides irrefutable, undeniable proof of court appointed counsel's deceitfulness, and knowing and intentional concealment of exculpatory evidence.

Please refer to (Apx32) This is the "Out of Court Hours Log," where under the heading "Records Research", where court appointed counsel has billed Harris County another 112.50 One hundred twelve dollars and fifty cents to "obtain" a copy of the report from "Identigene"; A report that has already been given to her as a part of the "Record" she has already admitted to having.

The Appellant will not ascertain whether or not she read the report. He will just ascertain that she lied about it, including where and how she got it.

In Section IV of Ms Borg's intentionally fatally defective motion, Ms Borg is asking the court to "order" all entities in custody of evidence "seized" in this case, ie: the Houston Police Department, Sorenson Forensics Ect. Ect. with "written inventories" and "written descriptions" and so on and so on, is just more of her skilled practice of, unfortunately, elevated to, the "art" of deception.

This attorney is doing nothing more than creating the false illusion that she is an advocate for the Appellant and has only his best interests at heart, when all the while she is providing the Appellant with indisputable proof of her exercise as a master craftsman in the inoble art of deception.

Proof of her fraudulent and devious intentions lie right within Article 64.02 "Notice to State Response". Please refer to (CR165 Apx34) This is the Computer Generated "Harris

49

County Criminal District Docket Sheet." Please Note Under The Heading "Date". The Second Line Denotes The 1st Court Setting Involving Newly Appointed Counsel Leah M. Borg. The Date Is April 20 2012. Please Note In The Collumn Under The Heading "Comment". It States : "Defendant Berry, Tyrone Appeared With Counsel Borg, Leah M." The Docket Sheet Entry States The Court Setting Is Reset Until July 20, 2012.

Please Note That Every Single Docket Entry With The Exception Of One States That The Defendant, Berry, Tyrone, Appeared With Counsel Borg, Leah M. It Would Not Be Difficult For The Honorable Court To Verify With The Custodian Of Records, TDCJ, That The Appellant Has Not Left The Custody Of The TDCJ During The Entire Duration Of His Incarceration, Making Each One Of These Docket Entries A Falsification Of A Government Document.

The Docket Sheet Reflects That The Court Date Set For July 20, 2012. Is Reset Until September 28, 2012. However, Apparently Ms Borg Has Completed Her Research Of The Record And Her Construction Of The Motion And Files The Motion Without The Knowledge Or Consent Of The Appellant. Without Any Notification Or Providing An Opportunity To Review The Motion Before It Is Filed.

It Was Continuously Reset For An Entire Year Until July 12, 2013, When The Appellant Filed His Pro-Se Objection To The Unnecessary And Continual Resets And Continuances. Please See Apendix (55). The Pro Se Objection Is Omenously Absent From The Record Where It Belongs By Law. The One And Only Docket Entry That States Berry, Tyrone Dio Not Appear Is The Exact Same Time As His Pro-Se Objection. The Motion Would Be Denied At It's Very Next Setting.

To Prevent Unnecessary Delays And The Deferment Of Justice, Such As Exactly What Is Evidenced On The Harris County Docket Sheet, The Texas Legislature Designed Chapter

64 With A "Built In Safeguaurd" To Block Such Hinderances Usually Conducted By The State, But In This Case Ms Borg Was A Willing Participant In The Obstruction Of Justice By Her Obvious Alliance With The State.

This "Safeguaurd" Is Legislated In Article 64.02 "Notice To State And Response", Subparagraph (a) States: "On Receipt Of The Motion The Convicting Court Shall: (1) Provide The Attorney Representing The State With A Copy Of The Motion And (2): Require The Attorney Representing The State To Take One Of The Following Actions In Response To The Motion, NOT LATER THAN THE 60TH DAY AFTER THE DATE THE MOTION WAS SERVED On The Attorney Representing The State. (A) Deliver The Evidence To The Court, Along With A Description Of The Condition Of The Evidence, Or (B) Explain In Writing To The Court Why The State Cannot Deliver The Evidence To The Court."

(b): "The Convicting Court May Proceed Under Article 64.03 After The Response Period Described By Subsection (a) (2) Has Expired, Regardless Of Whether The Attorney Representing The State Submitted A Response Under That Subsection."

This Is Statutory Law In The State Of Texas And For Court Appointed Counsel And The Harris County District Attorney's Office Both To Not Have Followed It, Place Both Of Them In Violation Of It. This Presents A Two-Fold Major Dilemma For Court Appointed Counsel.

The Office Of The District Attorney Of Harris County, Texas, The Attorney Representing The State, Did Not Comply, Nor Have They Ever Been In Compliance With, Texas Code Of Criminal Procedure Annotated, Article 64.02 (a)(2), So, Had Court Appointed Counsel Ever Been An Advocate For The Appellant, Had Court Appointed Counsel Ever Had The Best Interests Of Her Client, This Appellant, Taken Into Account. Had Court Appointed Counsel Simply Followed Procedure As Instructed By Article

51

64.02 (b). All That Would Have Had To Taken Place For The Appellant To Have Prevailed In This Proceeding Would Have Been Simply To Ask The Honorable Court To Proceed To Article 64.03 Testing, Once 60 Days Had Expired Without A Response From The State, Which Was In Fact Exactly The Case, And Her Failure To Do So Is Not Just Ineffectiveness, It Is Both Denial And Abandonment Of Counsel.

"Failure To Accomplish Certain Procedural Steps Constitutes Abandonment." Ex Parte Edwards 688 SW 2d 566.568 (Tex Caim App 1985).

Because Of Her Failure To Simply Take Advantage Of A Legislated Statute, That Was Both Available To The Appellant And The Appellant Qualified For The Benefit, The Statute Provided, And Her Refusal To Act In The Interest Of Her Client Which Led To The Direct Result Of The Motion Being Denied, Ms Borg Once Again Proves It Is Not Her Client's Wishes She Is Concerned With.

This Brings Us To The Second Part Of Her Two-Fold Dilemma; Since It Is Painfully Obvious Her Allegence Is Not With The Appellant, Who Exactly Is Ms. Borg Representing?

This Too Is Painfully Obvious As Evidenced By The Entirety Of Her False And Misleading Representation. Her Every Action Is A Direct Benefit To The Attorney Representing The State And Her Every Failure To Act Has Left Opposing Counsel Facing No Opposition Whatsoever, Throughout The Entire Course Of This Proceeding, From The Day She Was Appointed Until The Motion Was Denied There Is Not A Single Shred Of Evidence Of A Single Act Perfomed By Attorney Leah M. Borg That Was To The Slightest Benefit To The Appellant.

The Following Documents Are Appendix (37a-37j) These Are Four Letters From The Attorney Leah M. Borg As Evidenced By Being On Her Letterhead And Each Containing Her Signature, This Is Said Because It Is So Hard To Believe That Anyone Would Provide This Kind Of Documented Evidence Against Themselves, Especially A Real Lawyer. But Ms. Borg Has Been Doing This

For So Long, Unabated. Her Arrogance Has Surpassed Her Common Sense, And She Believes She Is "Above" Being Disciplined, And She Is Far Too Smart To Be Caught.

Ms Borg Uses A Clever Ploy In Her Role As A Master Craftsman In What She Is Apparently Best At: Deceit And Deception. She Purposely Leaves The Dates Off Of Her Letters To Create Difficulty In Sorting Out Timelines, Deadlines And She Hopes To Confer A Degree Of Confusion On Her Clients. Since There Is Only One Letter Out Of The Four, He Will Begin With That One, That Has A Date On It.

In The First Sentence Of Her Letter Dated December 17, 2012, (Apx37a) 10 Months After Her Appointment, 5 Months After Her Filing Of A Fatally Defective Motion, 3 Months After She Could Have Moved The Motion Forward According To Texas Code Of Criminal Procedure Article 64.02 (b), She States, "This Is To Let You Know What Happened With Respect To Our Last Scheduled Court Appearance On Friday, December 14, 2012."

Please Refer To (CR165, Apx34), The Harris County Criminal District Docket Sheet. Please Note On Line 7, The Date Of November 9, 2012. Please Note On Line 7 Under The "Comment" Heading The Notation: Reset By Court, February 8th 2013, 0900 A.M., Other."

This Means That A Scheduled Court Appearance On November 9th, 2012, Was Rescheduled To February 8th, 2013, At 9:00 O'Clock In The Morning. Had There Ever Been A Court Date Scheduled For December 14, 2012, As Ms Borg States In Her Letter, The Reset That Occurred On November 9th Would Have Reflected That Fact.

One Sentence, One Blatant Lie.

Ms Borg Continues In The Second Paragraph Of Her Letter,

53

" On Thursday December 13th, I was called by the Court's Coordinator, and was advised that the D.A. had indicated that he has still not received the affidavits in your case."

The court coordinator is not authorized by the Harris County District Attorney's Office to make calls to defense attorneys advising them of what an assistant district attorney had or did not have in a pending criminal matter. Especially for a setting that is not on the docket.

Two sentences, two blatant lies.

Ms. Borg continues in the second paragraph, second sentence: " The coordinator said it was not necessary for the D.A. and I to go to court the next day, since there was nothing that could be done."

Please refer to Texas Code of Criminal Procedure Article 64.02 (b): " After 60 days of the filing of the motion, the convicting court may proceed under Article 64.03 "testing" after the response period described by subsection (a)(2) has expired, regardless of whether the attorney representing the state submitted a response under that subsection."

(a): Unless Ms Borg has left the practice of law to an unlicensed to practice law court coordinator and;

(b) The same court coordinator has been appointed to represent the appellant, then this is an obtrusive falsification.

However, all is not lost. Ms Borg still managed to get paid from public funds for a court date that did not exist. See Appendix (31).

Three sentences, three blatant lies.

In Ms Borg's third paragraph, the only sentence, she states: " Therefore since we are still waiting on the affidavits from the various agencies that handled the evidence in your case, the case was reset."

54

The Fact Is The Case Was Reset On November 9th 2012, To A New Date Of February 8 2013. And If The Appellant May Remind The Court, This Letter Is Dated 5 Full Months After The Filing Of The Motion. The Court Could Have Proceeded Regardless Of The States Position According To Established Law.

Four Sentences, Four Blatant Lies.

In The Fourth Paragraph, 1st Sentence, Ms Borg States: "These Affidavits Are Absolutely Necessary Because They Are Supposed To Advise The Court Of Several Things Regarding The Evidence."

Please See Texas Code Of Criminal Procedure Article 64.02(b).

Five Sentences, Five Blatant Lies. And So On And So On, Throughout The Remainder Of Not Only This Letter, In Fact Every Single Letter Received From Attorney At Law Leah M. Borg Is Overflowing With Blatant Lies.

In Her Letter Ms Borg States She Is Taking Legal Advice From An Unlicensed To Practice Law Court Coordinator Concerning The Appellant's Then Pending Legal Proceeding And Acted Upon That Advice Even Though It Was In Total Error. See Art. 64.02(b).

Also A Quick Review Of (CR165, Apx34) Reveals That According To The Harris County Criminal District Docket Sheet. The "Defendant, Berry, Tyrone" Appeared With Counsel "Borg, Leah M." A Total Of Nine Times In The Year It Was On The Docket. The Appellant Never Made A Single Appearance And Has Never Even Seen Ms. Borg.

In Fact The Only Time The Docket States He Did Not Appear Is Also The Same Day The Appellant Filed His Pro-Se Objection To The State's Unnecessary Delays And Continuances And Motion To Proceed. See Appendix (55a). The Appellant Is Providing The Honorable Court A Copy As It Is Illegally And Ominously Omitted From The Official Record.

55

This Is The Appellant's Pro-Se "Petitioner's Objections To The State Of Texas' Continuance, Resets And Motion To Proceed." This Motion Was Made In Advance Of The Appellant Having Obtained A Copy Of The Official Clerk's Record And Is Now Able To See That It Included His Own Attorney's Involvement In The Multiple And Unreasonable Delays.

Because Of Her Unethical And Dishonest Billing Practices It Became In HER INTEREST To Have The Case Reset Right Along With The State. See (CRIGS, App.34) And Appendix (31-32). Harris County Auditer's Form Pursuant To TexCode Crim Proc Art. 26.05.

Because The Attorney Was Working Toward Her Own Interests And Not Her Client's, Whose Interests Were Being Wholely Neglected, Constitutes Denial Of Counsel And The Appellant Remains Harmed As A Direct Result Of The Denial Of Counsel.

"Denial Of Counsel At Any Critical Stage Entitles The Aplicant To Relief."

Ex Parte Standford 571 SW 2d 28, 28-29 (Tex Crim App 1978).

And Proceed It Did. At The Very Next Setting A Hearing Was Held On The Following Day And The Motion Denied.

Because Of The Many Opportunities To Have The Motion Advanced Prior To The Hearing Where It Was Denied, Yet Failed To Take Advantage Of None Of Them, It Is Obvious The Attorney Leah M. Borg Is Working Very Hard, However It Is Equally As Obvious It Is Not Her Client's Interests But Her Own, She Is Working Hard For.

Because The Appellant Remains Harmed As A Direct Result Of Court Appointed Counsel's Failure To Act In The Interest Of Her Client And By Her Blatant Misrepresentation Of Facts And Her Willfull And Intentional Concealment

56

Of Exculpatory Evidence, Causing Even Further Harm To The Appellant, Additional Issues Will Be Documented As Exhibits And Attached To This Pro-Se Direct Appeal As Guaranteed To Him By The Filing Of An "Anders Brief" By Court Appointed Appellate Counsel. Please See:

Anders V. California 386 US 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493, (1967) And Texas Rules Of Appellate Procedure Rule 47.1, Written Opinions: "The Court Of Appeals Must Hand Down A Written Opinion That Is As Brief As Practicable But That Addresses Every Issue Raised And Necessary To Final Disposition Of The Appeal."

The Following Issues Are Directly Related And Relevant To The Issue Of A Post Conviction Motion For DNA Testing Being Denied For No Other Reasons But For The Intentional Acts And Omissions Executed For The Sole Purpose Of Killing The Motion Initiated By Court Appointed Counsel.

Please See Apx (37A) This Is Another "Undated" Letter From The Attorney Of Record Who Was Appointed By The 180th Judicial District Court Of Harris County, Texas, To Represent The Appellant In That Court For The Specific Purpose Of Preparing, Submitting, And Arguing For, On The Appellant's Behalf, An Amended Motion For Post Conviction Forensic DNA Testing And For No Other Reason.

Please Note The First Sentence Of Ms. Borg's Letter, "Enclosed Please Find The Writ Documents You Provided Me For Review." According To Various Dates Within Each Letter You Are Able To Figure Out The Sequence They Belong, Because The Letters Are Intentionally Undated. This Is Her 2nd Letter To The Appellant And Still Before The Motion Was Filed.

Please Take Specific Notice Of Her Next Sentence: "You Understand That I Am Not Appointed To Represent You For

58

The Purpose Of Any Pending Writ, But For The Purpose Of The DNA Motion. In Other Words, I Am Trying To Get New DNA Testing Done For You."

This Is Ms Borg's Second Letter To The Appellant And She Immediately Establishes As Fact That She Has Been Appointed For A Specific Purpose And For That Purpose Only, And In A Condescending, Almost Scolding Tone, Let's The Appellant Know In No Uncertain Terms That That Purpose Is "To Get New DNA Testing Done For You" Having To Use "Other Words" Because She Does Not Believe The Appellant Possesses The Intelect To "Understand" What She Has Been Appointed To Do.

It Is Abundantly Clear To This Appellant What Ms. Borg Was Appointed To Do.

If The Honorable Court Would Please Return To Apx (37 d ), Ms Borg's First Letter. On The Second Page Of The Letter, Apx (37d) Below The 6 Listed Items. And Directly Below The Errant Statement: "The Report Say Nothing About DNA From Another Male Source Being Observed In Any Of The Samples Taken From The Complaintant" Is The Following Statement "Because Of The Report, I NEED TO KNOW FROM YOU Whether There Is Another Basis For Attacking The DNA Results, Or If You Have Any Facts That I Can Argue To Make Identity An Issue And Get New DNA Testing Done."

Then Please Procede To The 3rd Page Of The Same Letter, Apx (37e) And In The 2nd Paragraph, 1st Sentence "PLEASE WRITE AND GIVE ME WHATEVER INFORMATION YOU HAVE OR YOU THINK I SHOULD KNOW."

The First Point The Appellant Would Make Is Ms Borg's Asking For "Any Facts I Can Argue To Make Identity An

Issue," When Article 64.03 (b) Clearly States: "A Convicted Person Who Pleaded Guilty Or Nolo Contendere, Or, Whether Before Or After Conviction, Made A Confession Or Similar Admission, In The Case May Submit A Motion Under This Chapter, And The Convicting Court Is PROHIBITED From Finding That Identity Was Not An Issue In The Case Solely On The Basis Of That Plea, Confession, Or Admission, As Applicable."

So The Fact Is, That Not Only Was The Information She Was Asking For To Make A Specific Argument To The Court Not Only Not Needed, The Court Was Barred By Statute From Using The Absence Of Any Such Information Against The Appellant.

The Second Point Is The Capitolized Text That Shows The Attorney Specifically Instructing The Appellant To "Write" And Send Her "Facts" That She Can "Argue", But Her Very Next Letter She Sends All Of This Information "Right Back" To The Appellant, Rebuking Him For Sending Her "Writ Documents."

The Appellant Will Begin By Stating He Did EXACTLY What The Lawyer Instructed Him To Do.

At The Time Of Ms. Borg's Letters, The Appellant Was Not In The Possession Of The "Official Clerk's Record", As Was Ms. Borg. However, This Lawyer Received Exactly What She Was Looking For, And That Was How Much Did The Appellant Know About Falsified Evidence And Where It Was Located.

She Was Condescending Because She Was Already In Possession Of The Same Documents The Appellant Sent Her, And Now That She Knows The Appellant Does Not Know "Where" The Falsified Evidence Is Located, She Is Free To Treat Him Any Way She Pleases, "String Him Along", As Long As She Wants, As Long As The Appellant Does Not Know The Exact Location Or The Methods Used To "Fabricate" This "Evidence". Both

Leah Borg and the Office of the Harris County District Attorney can have their way, and take as long as they want because in the Appellant's unknowing state, he is no threat to them or his wrongful conviction.

Ms. Borg is on nothing other than a "Fishing Expedition" in her representation as she makes an immediate "About Face" and states she has found certain "Findings" and "Notes" "Interesting" and even goes on to name specific items. Of course she already knows exactly where the evidence is, and exactly how it got there. She just wants to know exactly what the Appellant knows about it.

Then, on the last page of this letter (Apx 37h) and although she has stated in no uncertain terms, that she has been appointed to represent the Appellant on absolutely no other subject under any circumstances, other than DNA Testing, going so far as to using "Other Words" to make sure he is able to "Understand", suddenly has, "Another Concern."

Unsolicited, she brings up the issue of "Parole," an unrelated issue that has absolutely no relevance to a Post Conviction Motion for DNA Testing. She has also "just happened", to do the Appellant the favor of, "Mentioning This To Your Mother", telling her that if the Appellant would, "Just Drop This Motion" he would make his next parole.

She goes on to state how the length of his incarceration "Seems Unusual" and "However" some other attorney just "Happened To Mention" that he has "Heard" that "TDC WILL KEEP INMATES IN CUSTODY LONGER WHILE POST CONVICTION MATTERS ARE PENDING."

She continues by stating that she does "NOT KNOW" if this is Real Policy or whether this is just a "Rumor", but it

60

Is Overwhelmingly Obvious That Ms. Borg Is Suggesting To The Appellant That If He Wants To Get Out Of Prison, All He Has To Do Is Discontinue His Motion For Post Conviction DNA Testing.

The Appellant Is Certain Ms. Borg Was Not Appointed To Represent Him In Any Matters Involving Parole, And Further Hopes That Counsel Appointed To Represent Him In A Then Pending Matter Involving Post Conviction DNA Testing, Did Not Rellegate Her Responsibilities And Obligations To "Hearsay" And "Rumors" As She Has Just Represented Herself As Doing.

Please See Apx (37b), This Is The Last Page Of Ms. Borg's Letter Dated December 17, 2012, That Is 3 Months Beyond The Deadline Imposed By Article 64.02 (b) Where Ms. Borg Would Have Long Since Proceeded Had She Had The Interests Of Her Client In Mind, Regardless Of The State's Response Or Lack Thereof.

In Her Second Paragraph Ms Borg Now Takes Her Non Appointed Position Of Representation As The Appellant's "Parole Lawyer", She Quits "Beating Around The Bush," So To Speak, And Comes Right To The Point To Tell The Appellant He Needs To Make A Decision Whether Or Not He Wants To "Continue Pursuing New DNA Testing Or Discontinue Our Efforts And Get Released On Parole."

She Is Telling The Appellant To Make A Decision On *1, A Subject She Does Not Represent Him On, *2, To Make A Decision In One Instant Is Stated As Factual," Discontinue Our Efforts And Get Released On Parole"; And *3, The Very Next Instant Make A Decision Based On," Because I Have Heard Rumors In The Past "And" I Do Not Know If This Is True, It Is Just What I Have Heard."

Since There Is No Question An Attorney Client Relationship

Exists, (The Attorney Is Even Attempting To Recruit The Appellant's Mother To Convince Her Son To Terminate The Pursuit Of DNA Testing So He Can Be Released On Parole) Should Not This Attorney Be Advising Her Client To Make Decisions Based On Facts And Not Rumors And Hear Say? Since The Attorney Is Not Offering Any "Facts", The Appellant Simply Looked Them Up Himself.

The Facts Are, According To The Texas Administrative Code, Title 37, Chapter 145, Subchapter A, Rule 145.3, Subparagraph (4), States: "Any Consideration By A Board Member Or A Parole Commissioner Of An Offender's Litigation Activities When Determining An Offender's Candidacy For Parole Is Strictly Prohibited. No Offender Will Be Denied The Opportunity To Present To The Judiciary, Including Appellate Courts, His Or Her Allegations Concerning Violations Of Fundamental Constitutional Rights, Any Consideration Of Such Legal Activities During The Parole Review, Supervision, Or Revocation Process, Is A Violation Of Board Policy."

That Is, Unless You Are Represented By Houston Attorney Leah M. Borg.

Texas Disciplinary Rules For Professional Conduct, Rule 1.03, States: (a) "A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter, And Promptly Comply With Reasonable Requests For Information. (b), A Lawyer Shall Explain A Matter To The Extent Reasonably Necessary To Permit The Client To Make Informed Decisions Regarding The Representation."

Not Only Was Ms. Borg Not Authorized To Broach The

SUBJECT OF PAROLE, HER INFORMATION WAS DEAD WRONG.

"EVIDENCE WAS SUFFICIENT TO FIND THAT ATTORNEY FAILED TO KEEP CLIENT REASONABLY INFORMED ABOUT STATUS OF HER CASE, FAILED TO EXPLAIN MATTER TO EXTENT REASONABLY NECESSARY TO PERMIT CLIENT TO MAKE INFORMED DECISIONS REGARDING REPRESENTATION OF HER CASE AND FAILED TO TAKE STEPS TO EXTENT REASONABLY PRACTICABLE TO PROTECT CLIENT'S INTERESTS UPON TERMINATION OF ATTORNEY'S REPRESENTATION THOUGH THERE WAS NO WRITTEN CONTACT BETWEEN ATTORNEY AND CLIENT AND HE WAS NEVER PAID FOR APPELLATE REPRESENTATION. GIVEN THE ATTORNEY DID ACCEPT MONEY TO REPRESENT CLIENT AND FAILED TO FILE NECESSARY AMENDMENT TO CLIENT'S PLEADINGS TO KEEP CASE FROM BEING DISMISSED, FAILED TO INFORM HER OF HER OPTIONS AFTER ADVERSE RULING DISMISSED CASE SO THAT SHE COULD MAKE AN INFORMED DECISION AND THEREAFTER FAILE TO PROMPTLY COMPLY WITH REASONABLE REQUESTS FROM CLIENT FOR INFORMATION AFTER HE STOPPED REPRESENTING HER."

HINES VS. COMMISSION FOR LAWYER DISCIPLINE
28 SW 3d 697 (APP 13 DIST 2000).

IN LIKE MANNER, THE APPELLANT HAS OFFERED UNDENIABLE PHYSICAL EVIDENCE THE ATTORNEY OF RECORD COMMUNICATED WITH HER CLIENT IN SUCH A MANNER AS TO DECEIVE, MAKE CRITICAL LEGAL DECISIONS BASED ON FALSE, INACCURATE AND INTENTIONALLY DECEPTIVE ADVICE, INFORMATION SHE KNEW TO BE FALSE AND URGED APPELLANT TO ACT ON IT, EVEN PRESSURING THE APPELLANT'S FAMILY MEMBERS TO CONVINCE THE APPELLANT TO ACT ON IT, ALL WITH A WILLFUL, KNOWING, INTENT TO CAUSE SUBSTANTIAL HARM TO APPELLANT.

SHE ENDS HER LETTER BY STATING TO HER CLIENT THAT IF HE TAKES HER ERRANT, INACCURATE AND UNTRUE ADVICE TO DISCONTINUE HIS LIGITIMATE ATTEMPTS TO PROVE HIS INNOCENCE, SHE WILL NEED THAT IN WRITING.

63

In Her Final Request In Ms. Borg's Defective, Inaccurate, And Falsified Motion For Post Conviction Forensic DNA Testing, At The End Of Section VI (CR113-120 Apx 56a-9) Ms Borg States: "Petitioner Requests That This Court, Should It Determine And Order That Petitioner Is Not Entitled To New DNA Testing And Denies Relief Requested Herein, That The Court Make Written Findings Of Facts And Conclusions Of Law At The Conclusion Of The Hearing In Order To Preserve Any Issues For Appellate Review."

This Is Ms. Borg's Final Act In This Motion And That Is Exactly What It Is, An "Act." The Record, Along With The Appellant's Documentation, Clearly And Irrefutably Show That This Attorney Has Not "Acted" On Her Client's Behalf For One Second Of Her So Called "Representation" If Anyone Would Dare To Call It That, But Has Instead Left Proof After Proof Of Her Willfull, Malicious, And Intentional Acts Of Sabotage Of Any And Every Reasonable Expectation Of The Motion's Advancement.

Because These "Findings Of Fact And Conclusions Of Law" Are A Carbon Copy Of The "State's Motion Requesting Court To Deny DNA Testing", With Absolutely No Investigation Whatsoever By Counsel Or Court Of The Factual Content Or The Verity Of It's Conclusions And The Complete Failure To Preserve Any Issues For Appellate Review And Because The Hearing To Determine The Motion Entailed "Oral Arguments" Where The Motion Was DENIED BY ORAL RULING See (CR 164 Apx 25) The Appellant Could Only Naturally And Logically Assume He Would Be Able To RELY On The Reporter's Record Produced By The Official Court Reporter For The 180th Judicial District Court Of

84

Harris County, Texas.

Please See Appendix (22-23) This Is A Copy Of The Appellant's Request Pursuant To Texas Rules Of Appellate Procedure Rule 34.6 (b)(1) To The Official Court Reporter To Transcribe The Record Of A Proceeding That Occurred On The 9th Day Of August, 2013, In The 180th Judicial District Court Of Harris County, Where The Appellant's Motion For Post Conviction Forensic DNA Testing Was Denied After Oral Arguments, Thus Establishing As Fact This Was An "Adversarial Judicial Proceeding".

"The Sixth Amendment Guarantees Each Defendant The Right To Effective Assistance Of Counsel At Every Critical Stage Of The Proceedings In His Defense."
Mempa V. Rhay 389 US 128, 134 (1967).

Please See Appendix (57) This Is The Response From The Official Court Reporter. As The Court Can See There Is No Reporter's Record. Texas Rules Of Appellate Procedure Rule 13.1 Duties Of Court Reporter's States: The Official Court Reporter MUST: (a) Unless Excused By Agreement Of The Parties Attend Court Sessions And Make A Full Record Of The Proceedings.

Please See (CR164 Apx25) This Is A "General Orders Of The Court" Docket Sheet Showing The Court Reporter Was Waived By Attorney Of Record Leah M. Borg On The 9th Day Of August 2013.

It Is An Established Fact That Not Only Is The Appellant A "Party" To This Proceeding, He Is The Initiator Of This Proceeding As Evidenced By His Pro-Se Filing On January 20, 2012, Where The Appointment Of Counsel Was A Direct Result. There Was Not Then Nor Has There Ever Been An Agreement, Permission, Or Any Other Indication, Orally Or In Writing, That The Appellant Would Consider The Waiving Of A Court Reporter Under Any Circumstances, And Any Implication That He Would Or Did Is Fraudulent.

65

Because It Was Court Appointed Counsel's "Concern" Regarding "Preserving Issues For Appellate Review" And Because Issues Are Being Brought Before The Honorable Court Of Appeals In The 14th Judicial District For The State Of Texas, And In The Interest Of Justice Concerning The Knowing And Intentional Waiver Of The Official Court Reporter For The 180th Judicial District Court Of Harris County WITHOUT THE INFORMED CONSENT Of Her Client, This Appellant, And Because This Attorney Is Licensed By The State Of Texas To Receive Compensation According To The Texas Code Of Criminal Procedure Article 26.05 Which States The Attorney Must Be A Qualified Attorney. That This VERY COURT WILL ORDER Attorney At Law Leah M. Borg To Provide To This Court An Affidavit In Response To The Appellant's Allegation That A Waiver Of A Court Reporter Has Absolutely No Benefit For The Appellant And Could In No Way Preserve An Issue For Appellate Review And Would Only Be Done To Prevent The Appellant From Raising Such Issue And Was Done With The Specific Intent To Cause Unrecoverable Harm.

Ms. Borg's Intentional Waiver Of The Official Court Reporter In The Oral Arguments At The Hearing Where The Amended Motion Was Orally Denied Without The Informed Consent Of The Appellant Is "Iron Clad Proof" Of The Deliberate And Intentional Sabotage Of The Appellant's Every Legal Effort And Constitutional Right To Challenge A Wrongful Conviction And Is Strict Proof Of Unrecoverable Harm Inflicted Upon The Appellant By Effectively Destroying Any Hope Of Preserving Error For Appellate Review And By Her Own Malicious Words Found In Her Letter,

66

(Apx37a) 2ND FROM LAST PARAGRAPH ATTACHED TO A BLATANT LIE IS HER COMMENT "AND YOU REMAIN CONVICTED"... HER SOLE OBJECTIVE FROM THE DAY SHE WAS APPOINTED.

THE FOLLOWING IS A BRIEF SUMMARY OF THE "REPRESENTATION" ENDURED BY THE APPELLANT FROM COURT APPOINTED HOUSTON ATTORNEY LEAH M. BORG AND AS A DIRECT RESULT THE APPELLANT WAS DENIED IN HIS BID FOR POST CONVICTION RELIEF, AND REMAINS INCARCERATED:

* 1. FILED AN INTENTIONALLY DEFECTIVE MOTION, OMITTING REQUIRED DOCUMENTATION, THAT WAS DOOMED FOR FAILURE THE DAY IT WAS FILED AND UNNECESSARILY CONTINUED AND DELAYED IT FOR WELL OVER A YEAR.

* 2. IGNORED LEGISLATED 60 DAY RESPONSE PERIOD FROM STATE AND FAILED TO MOVE COURT TO PROCEED AFTER RESPONSE PERIOD HAD EXPIRED.

* 3. BLATANTLY LIES TO APPELLANT ABOUT NEED FOR STATE'S RESPONSE IN ORDER TO PROCEED

* 4. FILED MOTION CONTAINING KNOWN FALSE AND INNACCURATE INFORMATION.

* 5. LIED TO APPELLANT ABOUT "FACTS" CONTAINED IN IDENTIGENE LAB REPORT.

* 6. URGED APPELLANT TO ACT ON UNSOLICITED, MISREPRESENTED AND FALSE INFORMATION.

* 7. REPRESENTED HERSELF AS AUTHORITY ON ISSUE NOT APPOINTED TO ADDRESS.

* 8. ADVISED FAMILY MEMBERS TO CONVINCE APPELLANT TO ACT ON FALSE INFORMATION.

* 9. BY HER BILLING ADMITS TO BILLING HARRIS COUNTY FOR WORK NEVER PERFORMED.

* 10. FAILED TO INFORM COURT OF DOCUMENTED FALSIFIED AND FABRICATED EXCULPATORY EVIDENCE.

* 11. WAIVED COURT REPORTER AT HEARING TO DETERMINE MOTION WITHOUT INFORMED CONSENT OF THE APPELLANT

* 12. INTENTIONAL OBSTRUCTION OF JUSTICE

67

"The Violation Of One Disciplinary Rule Is Sufficient To Support A Finding Of Professional Misconduct." Vernon's Texas Codes Annotated Government Code Title 2 Subtitle G App A. Disciplinary Procedure Rule 1.06 (v) (1)

Cluck V. Commission For Lawyer Discipline. 214 SW 3d. 736, 739 (Tex App Austin 2007).

## Argument On Issue #3.

The "State's Proposed Findings Of Fact On The Court's Denial Of DNA Testing", And It's Certification As An Order From The Court, By The District Clerk Of Harris County, Texas Establishing "Findings Of Fact," Is Itself, In Actuality Built On The Basis Of Fraudulent Documents And Falsified Evidence That The Appellant Will Expose Conclusively, Using Nothing More Than The Evidence Contained In The Official Record In Cause Number 1019634.

The State Quotes: "Having Reviewed The Defendant's Motion For DNA Testing Of Evidence, The State's Motion Requesting That This Court Deny DNA Testing, The DNA Lab Report From Identigene, And The Official Trial Court Records In Cause Number 1019634, The Court Enters The Following Findings Of Fact."

The Appellant Contends That It Is His Right According To The Constitution Of The United States, Amendment 14, Due Course Of Law, And The Texas Constitution's Article One, Section 10, Rights Of The Accused, And Section 19, Equal Protection Of The Law, And Because Of The State's Failure To Disclose Evidence Favorable To The Accused, And Has In Fact Knowingly Used Fraudulent, Falsified Evidence As Their Basis For This Inaccurate "Finding Of Fact," Gives Him Every "Right" To Proceed Through The "Door" The State Has Opened By Their Knowing And Intentional Use Of Fraudulent, Falsified Documents And Exhibiting Them As "Factual", And By His Right To Due Process And Equal Protection, Will Show This Honorable Court, Beyond Any Reasonable Doubt, That The Truth Of The Matter Is, The State's "Facts" Are An Undeniable Lie.

#1. "On May 2, 2006, The Defendant, Tyrone Berry, Plead Guilty To The Felony Offense Of Sexual Assault Of Of A Child In Cause Number 1019634 In The 180th District

Court Of Harris County Texas."

The 1st Lie Is The Defendant's Plea Of Guilty. He Did Not Plead Guilty Because He Was Guilty, But Only Because Of "The Threat" From His Own Attorney That If He Did Not "Take This Ten Years You Are Definately Going To Get 20." This Was After A Jury Had Been Seated And The Trial Commenced Did The Attorney Of Record Say To His Client, Quote: "They Have Your DNA. There Is The 15 Year Old White Girl Who Is Going To Testify That You Raped Her. The Jury Is Going To Believe Her Over You. There Are The State's First Three Witnesses. They Are All DNA Experts And Each One Is Going To Testify That It Is Your DNA In The Rape Kit. And Since You Don't Have The Money For Your Own DNA Expert It Is Going To Be Your Word Against Theirs And The Jury Is Going To Believe Them. In Fact Every Word They Say The Jury Is Going To Believe As Fact."

Even Though The Admonishments May Tell A Different Story, The Appellant Plead Guilty Under Fear Of "Threat", And Not Of His Own Free Will.

#2.: "Pursuant To A Plea Bargain Agreement Entered Into After A Jury Had Been Seated And The Presentation Of Evidence Had Begun, The Defendant Was Sentenced To Ten Years Confinement In The Texas Dept. Of Criminal Justice Institutional Division."

Sexual Assault Of A Child Is Probably One Of The Most Heinous Crimes In All Of Society. If Not The Worst It Would Certainly Rank Amongst Them. Now If The State Had In Fact Possessed The "Rock Solid DNA Case Against The Defendant" Then Why On Earth Would The State Let Someone They Claim To "Have His DNA" Walk Out Of A Courtroom With Only Half The Available Sentence Of A Crime They Were Prepared To "Prove Beyond A Reasonable Doubt" Unless There Was A

70

Real Possibility, That They Have So Far Been Successful In Concealing, That The Abominable Lie Might Be Exposed.

By Agreeing To A "Plea Bargain" The State Get's Their Conviction With No Risk Of Exposure, The Defendant "Waives" His Right To Appeal, And All The State Has To Do To Ensure The "Lie" Is Not Exposed, Is To Keep The Defendant From Ever Getting "Access" To The Record. And At All Costs, To Keep Him From Getting Into A "Court" Where He Could "Make His Case".

#3.: "No Direct Appeal Was Taken In This Case; However, The Defendant Has Filed 8 Pro-Se Applications For Writ Of Habeas Corpus, Cause Numbers 1019634A Through 1019634H, All Of Which Have Been Denied By The Texas Court Of Criminal Appeals."

Had The Appellant Not Waived His Right To Appeal (A Condition Of The Plea Bargain), There Would Have No Doubt Been An Appeal By This Time. However, If The Court Would Take Note That The 8 Applications For Writ Of Habeas Corpus Filed By The Appellant Pro Se Have Not Been Properly Administrated Or Adjudicated By The State According To The Law. (See Texas Code Of Criminal Procedure Article 11.07).

#4.: "On February 9th, 2012, The Trial Court Appointed Leah Borg As Counsel To Represent The Applicant For The Purpose Of Filing A Motion For Forensic DNA Testing Under Chapter 64 Of The Texas Code Of Criminal Procedure.

Fact #4 Is An Excellent Example Of The State's Suttle Practice Of The "Art" Of Deception By Omission. The Harris County District Attorney's Office Would Have This Honorable Court Believe That The 180th District Court, Just "Right Out Of The Blue" And For No Other Reason Than "In The Interest Of Justice" Would Just Up And Appoint Counsel To "Help This Poor Defendant" With His Motion For Post Conviction Forensic

DNA Testing.

The Fact Is, The Appellant Filed His Pro-Se Motion For Post Conviction Forensic DNA Testing On January 20, 2012, And By His Motion For Appointment Of Counsel Did The Court Appoint Counsel On February 9 2012. The Omission Here And Repeated In The "State's Motion Requesting Court To Deny DNA Testing;" (CR-114 Apx-566) At The Bottom Of The Page's Last Two Lines, " The Defendant Subsequently Filed A Motion For Post Conviction DNA Testing And The Trial Court Appointed Counsel To Represent The Applicant For The Purpose Of His Motion."

These Are Not Accidental, Random Omissions, But Skillfully And Intentionally Applied To, Number One, Give The Illusion The Court Is Trying To "Help" The Appellant And Number Two, The State Does Not Want To See The Words " January 20, 2012 Appearing In Print In Regards To The Motion, Where A Reasonable Person Might Ask, What On Earth Could Be Taking So Long For This Motion To Be Heard?"

" Subsequently, The Court Appointed A Seasoned, Professional " Motion Assassin " To Represent The Appellant For The Purpose Of His Motion." (See Argument On Issue 2.).

#5.: " On July 20 2012 The Defendant Filed His First Amended Motion For Forensic Testing."

Without The Appellant's Knowledge Or Consent, The Attorney Appointed By The 180th District Court Filed A Knowingly And Intentionally Defective Amended Motion, Because Of The Blatant Omission Of An Affidavit Of Innocence, The Blatant Omission Of Documentation Of Newer Or More Advanced Testing Procedures, The Blatant Failure To Notify The Court It Could Proceed Under Article 64.02 To 64.03 " Testing" If The State Failed To Provide A Response At The End Of 60 Days Of The Filing Of The Motion, Regardless Of The State's Response Or The Lack Thereof.

The Motion That Was Filed On The Appellant's Behalf, On

72

July 20 2012, Without His Knowledge Or Consent, Was Intentionally Doomed For Failure The Very Moment It Was Filed. The Appellant Was Then Intentionally And Deceptively Led To Believe She Was "Still Working On It" Right Up To The Time Of It's Denial A Year Later On August 6 2013. (Please See Argument On Issue #2 And Exhibits).

The Appellant Filed Nothing On July 20, 2012.

#6.: "The Court Finds, Based On The Official Trial Court Records, That The Above Styled And Numbered Cause Is Associated With Houston Police Department Incident Report Number 030415605 N, Houston Police Department Crime Labratory Number L05-3609, And Identigene Case Number 67135."

The Appellant Will Agree That His Wrongfull Conviction Is Based On These Very Documents. However, His Agreement Does Not Include The "Factual" Content. These Documents Will "Tell On Themselves" As To Being Exactly What They Are, Fraudulent, Fabricated Physical Evidence (See This Argument And Argument On Issue #5 And Exhibits).

#7.: "The Court Finds That, According To The Records Of The Houston Police Department Property Room, The Houston Police Department Property Room Is Currently In Possession Of The Following Evidence In Connection With The State Of Texas V. Tyrone Berry, Cause No 1019634 And Relating To Incident Report Number 030415605 N, "One Sexual Assault Evidence Kit And Clothing, 2 Buccal Swabs From Tyrone Berry.""

The Appellant, In The "Argument Of Issue #5" Proves Irrefutably That Whatever This Is In The Houston Police Department Property Room, Is The Furthest Thing From Evidence It Can Possibly Be, And Would Not Be Allowed In Any Legitamate Court Of Law, Not Just In Texas, But The Entire United States.

#8.: "The Court Finds That, According To The

73

Records Of The Houston Police Department Crime Labratory, The Houston Police Department Crime Labratory Is Currently In Possession Of The Following Evidence In Connection With The State Of Texas V. Tyrone Berry, Cause Number 1019634 And Relating To Incident Report Number 030415605 And Or Labratory Number L05-03609:
* One Sealed White Envelope Containing: * One Clear Ziploc Bag Labeled "2/3" Containing: * One Sealed Brown Envelope Labeled "Item L Vaginal Swabs #1-4; Item R: Panties (Cutting ~3" x ~3") 1/3" * One Sealed Brown Envelope Labeled "Staincard Made From Known Blood From Compl. Brittany Smith: Known 2/3" * One Parafilm Tape Sealed Microcentrafuge Tube Labeled "Berry Tyrone" Said To Contain DNA Extracts."

Once This Honorable Court Completes The Reading Of The Appellant's Brief And Does It's Own Examination Of The Record, It Will Find Itself Thoroughly Disgusted By The Reprehencable Acts That Are The Cause Of An Innocent Man's Continual Incarceration, Due To This Travesty Of Justice, By The Deplorable Condition Of The State's So-Called "Evidence" That Could Not Be Allowed, Once Exposed, In Any Legitimate Court On Earth.

#9.: "The Court Finds That. According To The Records Of Of The Harris County District Clerks Office, The Harris County District Clerk's Office Is Not Currently In Possession Of Any Evidence In Connection With The State Of Texas V. Tyrone Berry, Cause Number 1019634 Or Relating To Incident Report Number 30415605 N."

It Is Not Possible For The Preceeding Statement To Be Further From The Truth. The Undeniable Fact Of The Matter Is, The Office Of The Harris County District Clerk Is In Fact In Possession Of Every Single Item Of Evidence In

74

This Entire Case That Can Carry The Slightest Iota Of Credibility Or Weight. It Is The Official Clerk's Record That Contains Each And Every Document, That By Simple Observation And Comparison Exposes It For Exactly What It Is, Fraudulent, Falsified And Fabricated Physical Evidence That Cannot Be Refuted, Disputed Or Denied.

*10.* "The Court Finds That According To The Records Of The Harris County Sheriff's Office Property Room, The Harris County Sheriff's Office Property Room Is Not Currently In Possession Of Any Property And Or Evidence In Connection With The State Of Texas V. Tyronie Berry, Cause Number 1019634 Or Relating To Incident Report Number 30415605 N."

The Harris County Sheriff's Office Is The Agency That Collected The Only Legal And Properly Documented Sample Collection In The Entirety Of This Behemoth Collection Of Fraud And Falsifications. Please See (CR 18 APx14) There Are Two Major Problems For The State Concerning This "Properly Documented" And "Legally Collected" DNA Sample.

Number One: It Was Taken On May 25th, 2005, After An Order By The Court For The Defendant (Now Appellant), To Submit To A DNA Sample Collection On That Day And Of Which He Complied. There Is No Other Court Order, Search Warrant Or Recorded Sample Collection Prior To May 25, 2005. Unimpeachable Proof That All Of This "Tagged In", "Received", "Transferred", "Analyzed" "Compared" "Stored", All Prior To May 25, 2005, All Lies.

Number Two: Other Than The Recorded Collection Itself, There Is Not Another Single Appearance, Not A Single Document, That Ever Mentions This Single Sample Or It's Collection, In The Entire Record. Not One.

That Is, Until An Affidavit Is Produced To Support The "State's Motion Requesting Court To Deny DNA Testing." (CR131-132 APx 15-16) In This Sworn Affidavit From Officer

75

Q. Thigpen of the Harris County Sheriff's Office, the Agency That Collected the DNA Sample That Has None of the Legislated Documentation Of Ever Being "Picked-Up," No Documentation Of Ever Being "Delivered". No "Chain Of Custody Affidavit" Pursuant To Texas Code Of Criminal Procedure Article 38. 42, No "Certificate Of Analysis", Pursuant To Texas Code Of Criminal Procedure Article 38.41, No "Documentation For Transfer Of Evidence" As Per Houston Police Department's Evidence Handling Procedure, No "Lab Reports" Or "Comparisons," Only Officer Q. Thigpen "Swearing" That Not Only Does The Harris County Sheriff's Office NOT Have This Vitally Important Piece Of Forensic DNA Evidence, But That They NEVER Had It.

It Seems That The Harris County Sheriff's Office, Once Realizing What Is Really Going On In This Case, Prefers To Completely, "Wash Their Hands," Of Any Knowledge, Or Anything Else To Do With This Case.

#11.: "The Court Finds That Prior To The Defendant's Plea Of Guilty And In Connection With The Investigation Of The Offense In This Case, The Houston Police Department Crime Laboratory Analyzed The Complaintant's Sexual Assault Kit For The Presense Of DNA."

Begging This Honorable Court's Pardon, But The "Court," The 180th "District Court Of Harris County, In Their "Finding Of Fact" Need To Be More Specific In Their "Findings" As The "Official Record" (CR166 Apx 59) Clearly Indicates That There Are In "Fact" Two Seperate Sexual Assault Kits. One Is Clearly Marked "Bar Code RTT9" (CR139, Apx 71), While The Other Is Clearly Identified As "Bar Code RTTA" (CR134, Apx 58).

Since It Is Legislated That Forensic DNA

Evidence Is To Be Strictly Handled, Identified And Documented, The State Should Be Required In Their "Findings Of Fact To Identify Exactly Which Sexual Assault Kit They Are Referring To, Or Is The State Allowed In Their "Finding Of Fact", That The Meaning Of Speculation Is Equal To That Of Fact?

#12.: "The Court Finds That On March 28, 2005, Juli Refuss, A Chemist With The Houston Police Department Crime Laboratory, Reported That "Spermatozoa, Cellular Constituants Of Semen Were Detected On The Vaginal Swabs (Item L) And The Crotch Area Of The Panties (Item R)."

At This Time There Is No Establishment Of Fact Who Is The Contributor Of The "Spermatozoa".

#13.: "The Court Finds That On March 29, 2005 The Complaintant's Vaginal Swabs, A Cutting From The Complaintant's Panties, A Staincard Made From The Known Blood Of The Complaintant, And Two Buccal Swabs Containing The Defendant's Saliva Samples Were Transferred To The Identigene Labratory For DNA Analysis And Comparison."

Number One: The Record Is Silent Of Any Search Warrant Pursuant To Texas Code Of Criminal Procedure Chapter 18, Any Court Orders, Or Any Documented Forensic DNA Sample Collection Prior To The Date Of May 25, 2005, At Which Time The 180th District Court Of Harris County Ordered The Defendant To Submit A Forensic DNA Sample.

Number Two: A Forensic DNA Sample Was Collected And Documented By The Collecting Agency, The Harris County Sheriff's Office On May 25, 2005 (CR 18 Apx 14), Thereby Making It A Physical Impossibility To Have "Transferred" On March 29, 2005, 2 Buccal Swabs

77

Containing The Defendant's Saliva To Identigene Or Anywhere Else On That Day.

Number Three! The "Findings Of Fact" Alleges That A "Staincard Made From Known Blood Of The Complaintant" Was "Transferred To The Identigene Labratory For DNA Analysis And Comparison" On The Day Of March 29 2005.

However, If This Honorable Court Will Please Inspect The "Documents", Purported To Be "Lab Reports", From "Identigene", A Forensic Testing Labratory With A Long History Of Contamination, Falsified Reports And Improper Testing Procedures, Which Are (CR 141-145 Apx 60-63), Please Note On Pages (141 And 144 Apx 60 And 62) There Are Three Horizontial Lines And Four Horizontial Lines Respectively In The Boxes At The Top Of The Pages, Under The Caption "The Following Items Were Analyzed:

Inside Each "Box" And On The 1st Line Is The Following Notations! Item Number; Description; Sample Type; Received From; And Received On; Inside The Collumns Marked "Received From". In All Seven Lines In Each Collumn Marked "Received From", Is The Same Notation Of "In Person From T. Guerrero." In All Seven Lines In Each Collumn Marked "Received On", Is The Same Notation Of "3/29/05".

If The Honorable Court Would Pay Specific Notice To The Fact That The "Staincard Made From Known Blood Of The Complaintant" Which Is Listed As A Specific "Fact" To To Have In Fact Been Transferred To Identigene, Is In Fact Nowhere To Be Found In Either Of These "Lab Reports."

So In Actuality, Item #13 In The State's "Findings Of Fact" Is In Fact A "Physically Impossible Fact" And A Positively Disappeared Fact.

78

#14.: "The Court Finds That On May 10 2005, Identigene Released A Forinsic Laboratory Report Containing The Results Of The DNA Analysis And Comparison Performed On The Complaintant's Vaginal Swabs, The Complaintant's Panties And The Complaintant's Known DNA Profile."

If The Honorable Court Will Please Take Careful Notice Of The Following "Facts". Number One: The Appellant Is Well Acquainted With The Term "Complaintant's Vaginal Swabs". The Appellant Is Very Familiar With The Term: "The Complaintant's Panties". However, It Is This Third Term That As A "Finding Of Fact", Certified By The Court On The 16th Day Of September, 2013 (CR 157 Apx 80), And Certified As Part Of The "Official Record" With The Official Seal Of The Harris County District Clerk, (CR 166 Apx 59), Is This "Brand New," Or "Never Seen Before", "Fact" Described As "Complaintant's Known DNA Profile."

Looking Over The Documents From The "Official Record", (CR 141 And 144 Apx 60 And 62), There Is No Listed Arrival, Or "Received From" Of Any "Complaintant's Known DNA Profile". Looking Back To The "Official Record's", "Documentation For Transfer Of Evidence" (CR 137, Apx 74), There Is No Record Of A "Complaintant's Known DNA Profile" Being Transferred To Identigene On 3/29/05, Or Any Other Day.

So The State's "Findings Of Fact" Include Facts That Have Just "Appeared Out Of Thin Air" As Well As Having Absolutely No Documentation Whatsoever Of Where It Came From Or Of Any Authentification That Must Be Attached To Every Piece Of DNA Evidence.

Upon Further Examination Of (CR 141 And 144, Apx 60 And 62), These "Forensic Laboratory Reports" From "Identigene" The Forensic Testing Labratory With The

79

Record Of Contamination, Falsified Reports And Improper Testing Procedures. The Court Will Find Another "Brand New, Never Seen Before" Item, Listed As "Item Number 159084, Buccal Swabs Labeled Brittany Smith."

The Appellant Will Point Out That If The Honorable Court Were To Inspect The "Documentation For Transfer Of Evidence (CR137 Apx    ) It Will Find No Such Reference To "Buccal Swabs Labeled Brittany Smith", And Just As The State Is Keenly Aware, That If The Court Will Inspect (CR134 Apx    ), Which Is The Houston Police Department's Own Crime Laboratory's "Supplemental Report," And Examine The "Contents" Of The Sexual Assault Evidence Kit, They Will Find That "Item N: Oral Swabs" And "Item O: Known Saliva Swabs" Are Not Even Used By The Texas Children's Hospital's "Sexual Assault Evidence Kit."

This Is An Obvious Example Of Indisputable "Falsified Evidence" And Is Not Based On Fact But On Deception, And The State Should Be Ashamed By Not Only Their Knowledge Of It But By Their Attempt To Conceal It By Changing Their Wording From "Staincard Made From Known Blood" To The "Complainant's Known DNA Profile."

Since The State Is Now Exposed In Their Willfull Participation And Their Intentional Acts Of Using Fraudulent Documents As Certified Facts, The Appellant Should Not Have To Go One Step Further In His Claim Of Wrongfull Conviction As This Case Should Be Immediately "Thrown Out" And The Parties Responsible For This Miscarriage Of Justice Be Held Accountable For Their Illegal Actions.

It Is The Appellant's Hope That The Honorable Court Will Find The State's "Findings Of Fact" In Fact, Holds

80

No Credibility Whatsoever.

### Argument On Issue #4.

"The Chain Of Custody Utilized By The State Of Texas, For The Transfer, Collection, Testing And Storage Of Biological And Forensic DNA Evidence, In Connection With Cause No. 1019634, Is Of Such A Nature That Has Rendered Each And Every Item Of Evidence In Said Cause As Unreliable And Inadmissable."

The Appellant Will Show This Honorable Court By Evidence Contained In The Official Clerk's Record (CR 166, Apx    ) And By The Certified "Findings Of Fact" (CR 153-157, Apx 64-67 ) As Signed Into Order (CR 157, Apx 67), The Facts Will Show The State's Case Is Built Entirely On Evidence It Was Physically Impossible To Have Had In Their Possession As Well As The Impossibility For The Houston Police Department Crime Lab And The Contract Forensic Testing Labratory "Identigene" To Have Possessed The Evidence They Claimed To Have Possessed.

Impermissable, Defective And Fraudulent Procedures In Collecting, Handling, Transferring, Testing, And Storage Of All Of The State's Evidence Has In Fact Left Not One Piece Of This Biological Evidence As Reliable, Factual Or Usable. It Is No Coincidence That All Of These Impermissable Procedures Were Employed During The Same Time Period That Both Of These Labratories Had Lost All Credibility Of Being Factual Or Reliable, Documented By The Local Newspaper, The Houston Chronicle, (See Apx 13a - 13f ).

If The Court Will Kindly Oblige The Appellant By Taking Maticulous Notice Of Each Document As The Appellant Describes What It Is And Pay Special Attention To The Details Of The Striking Revelations Being Exposed, Allowing The Court To Clearly See And Easily Recognize What The Appellant Alleges.

The First Documents Are (CR 123-124, Apx 68-69 ). This Is An Affidavit Concerning The Custody And Location Of Evidence By The Houston Police Dept. Property Room In Cause No. 1019634, Related To Houston Police Dept Offense Report # 030415605. The Affiant, J. Hill, Swears Under Oath The Following Statement Is True And Correct: "Two Buccal Swabs From Tyrone Berry Were Tagged

82

INTO THE HPD PROPERTY ROOM ON 03/11/05 BY OFFICER M. GALLAGHER. THE LISTED PROPERTY IS IN THE POSSESSION OF HPD PROPERTY ROOM."

THE RECORD IS SILENT OF ANY "CHAIN OF CUSTODY AFFIDAVITS" REQUIRED FOR THE HANDLING OF DNA EVIDENCE, PURSUANT TO TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.42.

THIS AFFIDAVIT WAS SWORN ON THE 22ND DAY OF APRIL, 2013. THE AFFIDAVIT MAKES NO MENTION OF THIS EVIDENCE HAVING BEEN TAKEN TO THE CRIME LAB OR TO IDENTIGENE OR ANY OTHER LOCATION. IN FACT, THIS AFFIDAVIT COULD ONLY LEAD A REASONABLE PERSON TO BELIEVE THAT THIS EVIDENCE WAS CHECKED INTO THE HPD PROPERTY ROOM ON 03/11/05 BY OFFICER M. GALLAGHER AND HAS REMAINED THERE EVER SINCE.

THE RECORD IS SILENT OF ANY SEARCH WARRANT OR COURT ORDER FOR THE COLLECTION OF A DNA SAMPLE ON OR BEFORE 03/11/05. THE RECORD IS SILENT OF THE PROPER DOCUMENTATION REQUIRED TO ESTABLISH WHEN AND BY WHOM THIS SAMPLE WAS TAKEN AS WELL AS THE ABSENCE OF THE DOCUMENTED "PROOF OF IDENTITY" OF THE SUBJECT THE SAMPLE WAS TAKEN FROM.

PLEASE NOTE (CR 138-APx 70), THIS IS THE "HOUSTON POLICE DEPT PROPERTY AND EVIDENCE RECORD". CASE NO: 30415605N - DATE TAGGED: 03/11/05 - TIME: 1330 - SUSPECT NAME: TYRONE BERRY - OFFICER'S NAME: M. GALLAGHER.

THIS IS A PHOTO COPY OF AN ENVELOPE PURPORTED TO CONTAIN "2 BUCCAL BUCCAL SWABS OF TYRONE BERRY" OF WHICH A REFERENCE DNA SAMPLE WAS DERIVED. PLEASE NOTE THE STICKER ON THE ENVELOPE WHICH STATES, "INVENTORY TRACKING", THERE IS A BAR CODE WITH THE IDENTIFYING MARK, OF "R2ZZ". IN THE COLUMN DIRECTLY TO THE LEFT OF THE ENVELOPE AND BAR CODE STICKER, IS THE MARK OF "SE460". DIRECTLY UNDERNEATH THAT MARK IS ANOTHER MARK OF "FZ193" WITH A HORIZONTAL LINE DRAWN THROUGH IT. THIS COULD LEAD A REASONABLE PERSON TO CONCLUDE THAT THERE HAS BEEN SOME CONFUSION OVER THE CORRECT IDENTIFICATION MARK AND AS A RESULT. CONFUSION ON WHETHER THIS ENVELOPE HAS BEEN CORRECTLY IDENTIFIED.

PLEASE NOTE (CR 126-127. APx 72-73) THIS IS THE EVIDENCE RECORDS AFFIDAVIT OF VANESSA ALVAREZ. AN EMPLOYEE OF THE HOUSTON POLICE DEPT. CRIME LABORATORY. SHE CERTIFIES THAT THE FOLLOWING REFLECTS THE STATUS OF PROPERTY AND OR EVIDENCE RELATED TO OFFENSE REPORT No. 030415605 AND OR L 05-03609. ON LINES 22 AND 23 OF THIS

Statement Is "One Parafilm Tape Sealed Microcentrifuge Tube Labeled Berry, Tyrone", Said To Contain "DNA Extracts".

There Is No Indication In This Affidavit Or In The Clerk's Record Of "When" The Crime Lab Received This "Evidence". There Is No Indication In This Affidavit Or In The Record Of "Where" This "Evidence" Came From. There Is No Indication In This Affidavit Or In The Record On "Who" Collected This "Evidence". There Is No Indication In This Affidavit Or In The Record Of Proof Of Identity Of The Subject From Whom This Sample Was Derived, Other Than A "Label".

So By Reading This Affidavit, A Reasonable Person Could Conclude That The Houston Police Dept Crime Lab Has Evidence Stored That Just "Appeared", Because There Is None Of The Required Documentation In This Affidavit Or On The "Record" Of "How", "When", And By "Whom", This Evidence Was Taken And "How", "When" And By "Whom" Was It Delivered. There Are No Certificate Of Analysis Pursuant To Texas Code Of Criminal Procedure Article 38.41 And There Are No Chain Of Custody Affidavits Pursuant To Texas Code Of Criminal Procedure Article 38.42.

The Affidavit Goes On To State, Line 24 "HPD Crime Laboratory Records Appear To Reflect That The Following Evidence Related To Offense Report # 030415605 And Or Lab # L05-03689 Was Received By The HPD Crime Laboratory On 03/22/05." Since There Is A Total Absence Of The Required Documentation For Proper Handling Of DNA Evidence And By The Statement Of The Affiant "HPD Crime Laboratory Records Appear To Reflect" A Reasonable Person Could Assume The Affiant's "Best Guess" Would Be Just As Accurate.

On Lines 28 And 29 Of This Affidavit Describes The Evidence As: "One Sealed Envelope Labeled "2 Buccal Swabs From Tyrone Berry" Unopened Not Inventoried." (By The HPD Crime Lab).

So, What The Affiant Has Sworn To, Is That The HPD Crime Lab Is In Possession Of: "One Parafilm Tape Sealed Tube Labeled "Berry, Tyrone", Said To Contain "DNA Extracts", That They Can't Say How It Got There, When It Got There, Or Who Collected The Sample, (If In Fact It Contains A Sample) Or Who Delivered It To The Lab, Or Where It Originated From. The Affiant States Under Oath That The Lab Is In Possession Of "One Sealed Envelope Labeled "2 Buccal Swabs From Tyrone Berry" UNOPENED NOT INVENTORIIED (By HPD Crime Lab). If This "Evidence

84

Was Not Opened Or Inventoried, Who Could Say They "Know" What It Did Or Did Not Contain?

There Is No Reference To Any Barcode Identifying Numbers Or Letters, No Chain Of Custody Affidavits Pursuant To T.C.C.P. Art. 38.42 That Prescribes The Proper Procedure And Documentation Required When Handling D.N.A. Evidence. No Documentation Of Where It Came From, Who It Came From Or Who Collected The Purported Sample, Only That It Was Received On 03/22/05.

Finally, On Line 32 Affiant States "HPD Crime Laboratory Records Further Appear To Reflect That The Above Evidence Was Returned To The HPD Property Room By The HPD Crime Laboratory On 07/21/05." Because Of The Absence Of Chain Of Custody Affidavits Or Any Other Transfer Of Evidence Documentation, And The Affiant's Repeated Use Of The Term "Appear To Reflect" This Affidavit Is Not An "Assurance" But An "Assumption."

Aside From The Fact The Affiant Makes No Mention Of This Evidence's "Trip" To Identigene Or Say Nothing About An Officer T. Guererro's Picking Up The Sample To Transfer To Identigene Or It's Return From Identigene To The Crime Lab. The Appellant And The Honorable Court Can Only Assume The Affiant Is Referring To The Same HPD Property Room, Who By Sworn Affidavit Never Knew The Evidence Had Left.

On Page (CR 137, Apx 74), Is An "Original Information Report", Non Public, Houston Police Dept. Offence Report, Incident No. 030415605N, Supplement No. 0015, Supplement Narrative, "Documentation For Transfer Of Evidence" Reference LOS 3609, Date Of Release: 03/29/05 By HPD T. Guererro P.R. #121608, Receiving Agency: Identigene By M. Bussey On 03/29/05, Date Of Return: Blank, Description And Condition Of Evidence: #3. Sealed Envelope Containing "2 Buccal Swabs From Tyrone Berry" Known Reference Sample, Barcode R-300" DNA Analysis Requested.

The HPD Crime Laboratory Evidence Records Affidavit Contains No Reference To The Identifying Mark "R-300" As Described By T. Guererro Nor Does The HPD Crime Laboratory Evidence Record Affidavit Contain A Reference To The "Return" Of This Evidence By Any Agency, Only That The Houston Crime Lab Returned This Envelope To The HPD Property Room On 07/21/05, The Same

Property Room That According To The Sworn Affidavit, And Apparently Their Records, Never Knew The Evidence Had Left Or Returned.

On Page (CR 146, Apx 75) Is A Houston Police Dept Case Report Dated 04/22/13 Case No. 030415605. On Line 25 Is "Case Items." Line 26 States "Item R2 ZZ - R300." Container # 26,940, Status/Location: Stored In Location G5 Row 30 Shelf F02 Collection Date/Time: 03/11/2005. 1357 Hours. Collected By: Blank. Collection Location: Blank. Packaging/Quantity/Type: The Following Item Was Collected: 1-Biological. Detail Description: 2 Buccal Swabs From Tyrone Berry. Collection Purpose: Investigation. To The Right Of The Preceeding Description Is The Hand Written Notation "Put Hands On Property 04/22/13."

Please Note This HPD Case Report States "1-Item Biological Collected On 03/11/2005 1357 Hrs.

On Page (CR 141, Apx 60), Is A Lab Report From "Identigene" A Contract Forensic Testing Labratory For The Houston Police Dept. With A Long History Of Contamination, Falsified Reports And Improper Testing Procedures. The Report Is Dated May 10, 2005. The Location Of This Lab According To The Address On The Report Is 5615 Kirby, Suite 800, Houston, Texas 77005.

It States The Following Items Were Analyzed: Item Number 159080, 159081, 159082, 159083, And 159084. It States "Received From" In Person From T. Guerrero, "Received On" 03/29/05. There Is No Mention Or Documentation Of "Buccal Swabs From Tyrone Berry." There Are No Chain Of Custody Affidavits Pursuant To T.C.C.P Art. 38.42. There Are No Certificate Of Analysis Pursuant To T.C.C.P Art. 38.41.

On Page (CR 144 Apx 62) Is Another Lab Report From "Identigene" The Same Contract Forensic Testing Labratory With A Long History Of Contamination, Falsified Reports, And Improper Testing Procedures. The Report Is Dated May 31, 2005.

However, The Location Of This Lab According To The Address On The Report Is 7400 Fannin Suite 1250, Houston, Texas 77054 This Location Is Not Only A Different Street. It Is Located In

86

An Entirely Different Zip Code.

This Report States: "The Following Items Were Analyzed: Item Number 159080, 159081, 159082, 159083, 159084 And 161926." The Last Item On This Column Is Described As "Buccal Swabs From Tyrone Berry" Reference Sample. Received From "In Person From T. Guerrero". Received On 03/29/05. There Is No Mention Of Bar Code R2ZZ Or R300.

Please Note! This Report Also Purports To Receive All Of The Other Biological Evidence Noted Above "In Person From T. Guerrero, Received On 03/29/05." There Are No Certificate Of Analysis Pursuant To TCCP Art. 38.41 And There Are No Chain Of Custody Affidavits Pursuant To TCCP Art. 38.42.

In Addition To Having None Of The Proper Documentation For Any Of This DNA Evidence, Please Re-Examine (CR 137 Apx 74). This Is The Supplement Narrative, Documentation For Transfer Of Evidence, The Closest Thing To A Chain Of Custody Affidavit In The Entire Record.

Please Note The "Date Of Release On 03/29/05 By HPD, T. Guerrero, PR# 121608" And "Receiving Agency: Identigene, By M. Bussey On 03/29/05." There Is No Mention Of Delivering Evidence To Two Different Locations. In Fact The Out Of Sequence "Item Numbers" On The Identigene Lab Report (CR 144, Apx 62), Suggests That The "Buccal Swabs From Tyrone Berry" Were Not Delivered On 03/29/05. However, The Wording On This "Documentation For Transfer Of Evidence" Implies All Of The Evidence Was Dropped At A Single Location To One "M. Bussey" On 03/29/05. So Even If The Evidence Was Dropped At One Location, Moving It To Another Without Proper Documentation Is Impermissable.

The Following Document Is Appellant's Appendix Page 76a-76, This Is The "State's Original Answer" In Cause No. 1019634G In The 180th District Court Of Harris County, Texas, And Should Have Been Included In The Official Clerk's Record Pursuant To Texas Rules Of Appellate Procedure Rule 34.5 (a). "Contents": Unless The Parties Designate The Filings In The Appellate Record By Agreement Under Rule 34.2 (There Is No Such Agreement In This Case), The Record Must Include Copies Of The Following: #6. Any Request

87

For Findings Of Fact And Conclusions Of Law; Any Post Judgement Motion And The Court's Order On The Motion.

However, This Document Is Not Found In The Clerk's Record, Along With The Seven Other Post Conviction Motions That Are Ominously Omitted (See C.R.153, Item # 3), Even Though The Appellant Made A Specific Request Pursuant To Texas Rules Of Appellate Procedure, Rule 34.5(c), "Supplementation": (1. If A Relevant Item Has Been Omitted From The Clerks Record, The Trial Court, The Appellate Court Or Any Party May By Letter Direct The Trial Court Clerk To Prepare, Certify And File In The Appellate Court A Supplement Containing The Omitted Item. (See Apx77a-c) Nevertheless The Request Was Ignored.

Please Note In This "State's Original Answer" Is Stamped As "Filed" With The Harris County District Clerk's Official Seal And A Deputy Clerk's Signature, Dated 12/14/10 And On Page 3 Of This Document (Apx76c) Is A Certificate Of Service Signed By Assistant District Atty. Joshua Hill Dated 12/14/2010.

On Page 2 (Apx   ), See Lines 7 And 8 Which State" In Addition The Record Makes It Clear That Applicant Appeared With Counsel On May 25th 2005 When The DNA Test Was Ordered." See State's Exhibit A, Docket Sheet Entry In Cause No. 1019634." (State's Exhibit A = Apx 76b).

The Appellant Steadfastly Denies That Counsel Was Present And Will Prove This Fact By Eyewitness Testimony Along With Handwriting Comparison Pursuant To Texas Rules Of Evidence Of The "Case Reset Forms" That Are A Part Of This Record But Will Defer This Demonstration To Another "Issue Presented" In Order To Remain Focused On The Issue At Hand, An Impermissable Chain Of Custody.

The Reason This Document, "State's Original Answer" Is Brought To The Attention Of This Honorable Court, Is Specifically To Bring To The Court's Attention Line 5 Of The "General Orders Of The Court, Under The Date Stamp Of May 25th, 2005, The Document States, "DNA Test Ordered."

Next Is (C.R.18, Apx 14), The Heading States "State Of Texas Restricted DNA Database". This Document Is Also Dated May 25 2005. It States On Line Nine, "Date Sample
88

Collected. On Line 10: "Collected By," Printed Name, JC Delrymple. Underneath The Officer's Signature Is This Disclaimer, " I Hereby Certify That I Have Been Properly Trained In Restricted DNA Sample Collection Procedures And That This Restricted DNA Specimen Was Taken In Compliance With Current DPS Guidelines."

On Line 11, "Agency Name" It Lists The Sample Collecting Agency As The "Harris County Sheriff's Dept." This Is The Only Document Throughout The Entire Record That Evidences The Proper Handling Of DNA Evidence. The Record Is Silent Of Any Chain Of Custody Affidavits Pursuant To TCCP Art. 38.42 Or Certificate Of Analysis Pursuant To TCCP Art 38.41.

Please Note That This Document Includes The Defendant's Left And Right Thumbprint Required As Proof Of Identity On Every DNA Sample Collection. Furthermore, This Is The Only Document Contained In The Official Clerks Record Using Proof Of Identity.

Page (CR 131-152, Apx 15-16) This Is The Sworn Affidavit Of Officer Q. Thigpen Of The Harris County Sheriff's Dept Custodian Of Property Stating: " Not Only Does The Harris County Sheriff's Dept NOT Have Any Evidence Connected To This Case, But That They NEVER Had Any Evidence In This Case. (Although The Harris County Sheriff's Dept Is The Agency That Took The Only Properly Documented DNA Sample Collection.).

There Is No Documentation In The Record Memorializing The Transfer Or Custody Of The DNA Evidence Taken On May 25, 2005. There Is No Documentation In The Record Of Any Entity Or Agency Including: Nothing From HPD Property. Nothing From HPD Crime Lab. Nothing From Identigene, Nothing From Harris County Sheriff's Dept. No Certificate Of Analysis. No Chain Of Custody Affidavits Or Any Other Affidavits Or Statements Conerning The Wherabouts Of The DNA Sample Taken For The State Of Texas Restricted DNA Database On May 25, 2005. In Fact, Other Than The Only Documented Sample Collection Itself, The Record Is Silent Of Any Other Mention Of This Evidence.

Pages (CR 153-157, Apx 64-67), Is The "State's Proposed Findings Of Fact On The Courts Denial Of DNA Testing." On Page (CR 155, Apx 66), Item #13, States: " The Court Finds That On

March 29, 2005, The Complaintant's Vaginal Swabs, A Cutting From The Complaintant's Panties, A Staincard Made From The Known Blood Of The Complaintant, AND TWO BUCCAL SWABS CONTAINING THE DEFENDANT'S SALIVA SAMPLES WERE TRANSFERRED TO THE IDENTIGENE LABRATORY FOR DNA ANALYSIS AND COMPARISON."

The Trial Court Is In Error For It's Denial Of The Appellants Motion For Post Conviction Forensic DNA Testing By The Preponderance Of The Evidence Contained In The Record Of Cause No 1019634.

The Fact Is The Court Has Based It's Denial On An Unreliable Record And Evidence That Would Be Inadmissable In Any Court Of Law In The State Of Texas, According To The Texas Code Of Criminal Procedure And The Texas Rules Of Evidence, Including But Not Limited To: Rule 103 (d), Fundamental Error In Criminal Cases, Rule 403, Exclusion Of Relevant Evidence On Special Grounds, Rule 901, Requirement Of Authentification Or Identification, Among Many Others.

It Is An Established Fact That DNA Evidence Is Exactly The Kind Of Evidence That Require Authentication And Identification And To Be Handled Only By Personel Who Are Trained And Certified In The Proper Documentation And Handling Of This "Special Evidence" That Can Easily Be Excluded On "Special Grounds."

Each And Every Entity That Touched This Evidence FAILED To Follow Established Procedure And With The Silence Of The Record For The Proper Documentation Not Even The State Can Positively Conclude Who's DNA They Have Tested Or Even Who's DNA They Possess.

Scientific Facts And Accurate Mathematics Cannot Lie. A DNA Sample Collected On May 25, 2005 Could Not Be "Tagged Into The HPD Property Room On 03/11/05." A DNA Sample Collected On May 25, 2005 Could Not Have Been "Received By The HPD Crime Labratory On 03/22/05." A DNA Sample Collected On May 25 2005 Could Not Have Been "Transferred To And Received By Identigene By M. Bussey On 03/29/05."

An Involuntary Plea Of Guilty On May 2, 2006, Cannot Stand

UNDER THE WEIGHT OF FALSIFIED AND FRAUDULENT EVIDENCE.

# Argument On Issue #5

The State Of Texas And By It's Use Of The "State's Motion Requesting Court To Deny DNA Testing" Is In Violation Of The Texas Code Of Criminal Procedure Article 2.01 "Duties Of District Attorneys" And Is A Violation Of Brady V. Maryland 373 US 83 (1963), Resulting In A Violation Of The Appellant's Right To Due Process Of Law Guaranteed By The Fourteenth Amendment To The United States Constitution.

The Appellant Will Show By Strict Proof Contained In The Official "Clerk's Record" Of Trial Court Cause No 1019634 The Undeniable Facts Are, Both The Houston Police Department's Crime Lab And The Contract Forensic Testing Labratory "Identigene" Have Knowingly And Intentionally Submitted Falsified Reports And Fraudulent Documents As Factual Evidence In Violation Of Texas Penal Code 37.09.

The Office Of The District Attorney Of Harris County, With Full Knowledge Of The Fact That This Evidence Was Fraudulently Fabricated, Continued This Denial Of Justice By The Opposition Of The Appellant's Every Attempt At Post Conviction Relief. Their Intentional Failure To Disclose These Exculpatory Facts In Truth Is A Malicious Violation Of Tex Code Crim Proc. Art 2.01, A Deliberate Brady Violation And A Denial Of Due Process.

Article 2.01 "Duties Of District Attorneys" States: "It Shall Be The Primary Duty Of All Prosecuting Attorneys, Including Any Special Prosecutors, Is Not To Convict, But To See That Justice Is Done. They Shall Not Supress Facts Or Secrete Witnesses Capable Of Establishing Innocence Of The Accused." This Includes Prosecutors In The Appellate Division Who Have Come To Realize That The Evidence Used In Securing A Conviction Is In Fact Falsified Evidence. It Is Their Duty Under The Law To Immediately Disclose This Fact, And A Failure To Do So Is Unethical, Immoral And Illegal.

92

The Motion Requesting Court To Deny DNA Testing Is Pages (CR113-121 Apx.46-53). The Author Of The Motion Is Identified As Harris County Assistant District Attorney Inger M. Hampton. (CR121, Apx. ) In Section I. Procedural History (CR113, Apx46), Mr. Hampton Begins His Motion By Describing The Appellant's Filing Of 8 Individual Writs Of Habeas Corpus And Goes On To Maticuously Detail The Dates Each Writ Was Filed And The Date Each One Was Denied. (Tex Code Crim Proc Art 11.07).

What Mr. Hampton Has Shown Is #1. The State Has Been Denying The Appellant Post Conviction Relief Since October, 2009. #2. The Appellant Has Practiced Due Diligence In Seeking Post Conviction Relief With Determined Consistancy Since 2009. #3. Mr. Hampton Has Established The Fact He Is Maticulous In His Recordation Of Documentation And His Proficient Attention To Detail. He Will Be Left With No Excuse When The Appellant Clearly Reveals His Undeniable Knowledge Of Falsified Evidence.

On Page (CR114 Apx47), Immediately Following The Detailed Description Of The 8 Writs Filed By The Appellant, Mr. Hampton States: "The Defendant Subsequently Filed A Motion For Post Conviction Forensic DNA Testing And The Trial Court Appointed Counsel To Represent The Applicant For The Purpose Of His Motion."

Please Note How Mr. Hampton Has Conspicuously Omitted The Date The Motion Was Filed. He Does Not Want To Add To The Record His Acknowledgement Of How Long This Motion Has Been Waiting To Be Heard. The Motion Was Filed On 7/20/12 And Denied On 8/9/13. This Motion Was On The Docket For Over A Year And A Half And Had It Not Been For The Appellant's Pro-Se Objection To Needless Continuances, Might Well Still Be Sitting There. (See Argument On Issue #3).

According To The State's Motion To Deny. Section II, "Applicable Law." Quoting From Tex. Code Crim Proc. 64.01 (b), (CR115 Apx48), Beginning On Line 4: "However, A Convicted Person May ONLY Request Forensic DNA Testing Of Evidence That Was Secured In Relation To The Offense That Is The Basis Of The Challenged

93

CONVICTION."

Because The State Finds It Permissable To Capitolize And Underline Specific Instances Of Text, ( The Word ONLY), To Prejudicially Enhance Their Position, When The Statutory Language Of Tex Code Of Crim Proc Art 64.01(b), Is Not Tracked Using All Capitol Letters And Underlining, It Is The Appellant's Contention That Under The Texas Constitution's Article 1 Section 10, "Equal Protection Under The Law" He Be Permitted To Bring To This Court's Attention That It Was Not Intended, By The Texas Legislature For This Word To Have Any More Significance Than Any Other In This Chapter.

He Would In Like Manner As The State, Be Allowed To Magnify The Phrase Found On Line 5, Directly Below The State's Use Of The Word "Only", And Acknowledge, "BASIS OF THE CHALLENGED CONVICTION", As The Operative Idiom; And The Fact The State, By It's Motion To In Fact Deny Justice, Has "Opened The Door" For The Appellant To Rebut Each And Every Claim The State Makes In Their Motion Requesting Court To Deny Forensic DNA Testing, And In That Process This Honorable Court Will Find A Direct Challenge To This Erroneous Conviction.

"The Purpose Of Post Conviction DNA Testing Is To Provide An Avenue By Which A Defendant May Seek To Establish His Innocence By Excluding Himself As The Perpetrator Of The Offense."

Blacklock V. State 235 SW 3d 232-33

As The Record Will Clearly Show By The State's Own Documentation, The State Cannot Declare Any Of The Evidence In The State's Possession Is What It Is Purported To Be. Nor Is It Possible For Anyone To Authenticate That The Evidence Was Ever In The Proper Condition To Have Been Admissable In Any Court Of Law Because Of The Documented Misapplication Of The Established Procedural Guidelines Used In Handling Biological And DNA Evidence.

The Appellant Will Simply Prove To The Court Using Only The

Evidence Contained In The Official Clerk's Record How It Is Physically Impossible For The Houston Police Department's Crime Laboratory To Have Analyzed DNA Material They Did Not Have In Their Possession At The Time Of The Purported Testing, Nor Could Have "Identigene" Possessed Any DNA Material Purported To Have Been The Appellant's.

The Appellant Will Also Bring To The Court's Attention That At The Same Period Of Time As The Appellant's DNA Evidence Was Being Handled, The Tarnished History Of The Houston Police Dept's Own Crime Lab. As Well As The Long, Documented Reputation Of Cross Contamination, Falsified Reports And Improper Testing Proceedures, Employed By The Forensic Testing Laboratory "Identigene", Whose Standing Became So Tainted. They Lost All Credibility, Along With Their Contract To Operate As A Vendor For The City Of Houston. (See Appendix 13a-f).

Because The Record Has Been Misrepresented As Fact, And The Use Of Suttle Manipulations By The Office Of The District Attorney And Their Knowledge Of The Facts Used To Orchstrate And Facilitate This Monumental Deception. And Because They Used These Known Falsifications Parading As Fact In The State's Motion To Deny DNA Testing Is In Itself A Denial Of The Appellant's Right To Due Process.

The Motion Requesting Court To Deny The Appellant's Motion For Post Conviction DNA Testing Is A Violation Of Tex Code Of Crim Proc. Art. 2.01 And The District Attorney's Office, By It's Use Of Known Falsifications As Fact. Has Given The Appellant The Right To Adress These Lies In The Appeal Of The Denial Of The Appellants Motion For Post Conviction Forensic DNA Testing. (Tex.Rules Of Evidence Rule 1.07).

If The Court Would Please See (CR 113-121 Apx 46-53), In The State's Motion To Deny. Section III, "Evidence In States' Possession" (CR 116-117. Apx 49-50), The State Claims That Based On An Affidavit Of Joseph Hill Houston Police Dept Property And Records Custodian (CR 123-124, Apx 68-69), Sworn On The

95

22ND DAY OF APRIL 2013, THE HOUSTON POLICE DEPT IS IN POSSESSION OF "2 BUCCAL SWABS FROM TYRONE BERRY WERE TAGGED INTO THE HPD PROPERTY ROOM ON 03/11/05 BY OFFICER M. GALLAGHER. THE LISTED PROPERTY IS IN THE POSSESSION OF HPD PROPERTY ROOM."

IF THE COURT WOULD PLEASE INSPECT (CR 138 Apx 70), "HOUSTON POLICE DEPT. PROPERTY AND EVIDENCE RECORD." THE COURT CAN EASILY SEE THE CASE NO. IS 30415605N. DATE TAGGED IS 03/11/05 SUSPECT NAME: TYRONE BERRY. OFFICER'S NAME: M. GALLAGER. THIS IS UNDOUBTEDLY THE SAME EVIDENCE REFERRED TO IN THE AFFIDAVIT OF JOSEPH HILL. PLEASE NOTE THIS DOCUMENT IS ABSENT ANY REFERANCE TO "BAR CODE R 300."

PLEASE INSPECT (CR 137 Apx 63), THIS IS A HOUSTON POLICE DEPT. OFFENSE REPORT SUPPLEMENT "DOCUMENTATION FOR TRANSFER OF EVIDENCE" REFERANCE: L05- 3609 DATE OF RELEASE: ON 03/29/05 BY HPD T. GUERRERO PR# 121608. RECEIVING AGENCY: IDENTIGENE BY M. BUSSEY ON 03/29/05. DATE OF RETURN TO HPD: (BLANK). DESCRIPTION AND CONDITION OF EVIDENCE:

THERE ARE THREE DISTINCTLY NUMBERED ITEMS ON THIS DOCUMENT. IT STATES ITEM # 1 AS BEING: "SEALED ENVELOPE CONTAINING ITEM "L": VAGINAL SWABS # 1-4. AND ITEM "R" PANTIES CUTTING -3" X -3"."

IT STATES ITEM # 2. AS BEING: "SEALED ENVELOPE CONTAINING STAINCARD MADE FROM KNOWN BLOOD (ITEM K) FROM COMPLAINTANT BRITANY SMITH."

IT STATES ITEM # 3. AS BEING: "SEALED ENVELOPE CONTAINING "2 BUCCAL SWABS FROM TYRONE BERRY" KNOWN REFERANCE SAMPLE BAR CODE R 300."

IT IS NECESSARY FOR THE COURT TO HAVE A CLEAR UNDERSTANDING OF THE "MECHANICS" OF USING FALSIFIED EVIDENCE, AND BECAUSE THE ONLY EVIDENCE CONNECTED WITH THIS CASE IS DNA EVIDENCE AND THERE IS NO OTHER EVIDENCE, IT IS IMPERITIVE THAT IT BE HANDLED IN STRICT COMPLIANCE WITH PRESCRIBED PROCEDURES. SINCE DNA EVIDENCE IS INVISIBLE TO THE NAKED EYE, IT REQUIRES SCIENTIFIC AND MICROSCOPIC EXAMINATION IN ORDER TO IDENTIFY IT'S

96

MANY COMPONENTS. CONVERTING THE ACTUAL EVIDENCE TO PAPER DOCUMENTATION.

ONCE ON PAPER, SLIGHT CHANGES IN IDENTIFIABLE MARKERS OR CODES IS EASILY ACCOMPLISHED, AND ONCE USED REPETITIVELY, CAN BE EASILY OVERLOOKED BY AN UNTRAINED EYE, WITH THE RESULT BEING WHAT SOMEONE IS LED TO BELIEVE TO BE FACT, IS ACTUALLY A DECEPTION, OR NOT WHAT THE IDENTIFIABLE MARKER OR CODE CLAIMS IT TO BE. THIS CONSTITUTES A NEED FOR AN ACCURATE CHAIN OF CUSTODY AND STRICT HANDLING PROCEDURES.

THERE IS A SIMPLE YET INFALLIBLE PROCEDURE IN PLACE SPECIFICALLY ESTABLISHED FOR THIS TYPE OF BIOLOGICAL EVIDENCE, AND WHEN PROPERLY IMPLEMENTED PREVENTS THE EXACT SCENARIO THE COURT IS BEING EXPOSED TO. THESE "CHECKS AND BALANCES" ARE KNOWN AS TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.41 "CERTIFICATE OF ANALYSIS" AND ARTICLE 38.42 "CHAIN OF CUSTODY AFFIDAVITS". THEY ARE SPECIFICALLY DESIGNED TO PREVENT THE EXACT "SMOKE AND MIRRORS" THAT IS THE HALLMARK OF THE STATE'S CASE, AND A REASONABLE PERSON MIGHT ASK, "WHY WERE'NT THEY USED IN THIS CASE?"

THERE IS IN FACT ONLY ONE DOCUMENT IN THE ENTIRE OFFICIAL CLERK'S RECORD WHERE THE PROPER PROCEDURE FOR HANDLING DNA EVIDENCE WAS FOLLOWED. THIS IS A KEY DOCUMENT VERIFYING THE IMPOSING ERROR OF THE STATE'S CASE AND THEIR ABSOLUTE UNWILLINGNESS TO CONCEDE WHEN THEY ARE WRONG.

BEGINNING WITH DOCUMENT (CR.138 APx70), IS THE HOUSTON POLICE DEPT. PROPERTY AND EVIDENCE RECORD WITH THE "DATE TAGGED" AS 2/28/05. IT STATES THE OFFICERS NAME AS "R.A. GONZALES". HOWEVER, TO THE RIGHT OF "DESCRIPTION" OF THE 1ST ITEM, IN DIFFERENT HANDWRITING THAN THAT OF OFFICER GONZALES IS THE LETTER "X" (AS IN "BY") AND TO THE RIGHT OF THE X IS THE NAME "M. GALLAGHER" (ILLEGIBLE). THIS IS REPEATED TO THE RIGHT OF THE DESCRIPTION OF THE 2ND ITEM. THERE ARE NO CHAIN OF CUSTODY AFFIDAVITS, EVEN THOUGH THE DESCRIPTION OF THE 1ST ITEM IS A "SEXUAL ASSAULT KIT". A REASONABLE PERSON COULD ASSUME THIS TO BE A VERY IMPORTANT PIECE OF

97

EVIDENCE AND THAT GREAT CARE WAS BEING TAKEN TO INSURE IT COULD NOT BE CAST IN DOUBT.

HOWEVER, A REASONABLE PERSON COULD ALREADY ASK: "WHO EXACTLY TAGGED IN THIS EVIDENCE, OFFICER GONZALES OR OFFICER GALLAGHER?"

PLEASE NOTE THE "BAR CODE STICKER" COLLUMN, ON THE LEFT SIDE OF THE DOCUMENT. IT IS SAFE TO SAY THE PURPOSE OF THE BAR CODE STICKER IS INTENDED FOR THE ACCURATE TRACKING AND IDENTIFICATION OF EVIDENCE. PLEASE NOTE THE BAR CODE STICKER "RTT 9" IS TO THE LEFT OF THE DESCRIPTION "SEXUAL ASSAULT KIT. PLEASE NOTE THE SECOND BAR CODE STICKER, "RTTB" IS TO THE LEFT OF THE DESCRIPTION "CLOTHING (3 BAGS)".

IF THE HONORABLE COURT WOULD PLEASE NOTE THE COLLUMN DIRECTLY TO THE LEFT OF THE COLLUMN CONTAINING THE BAR CODE STICKERS ABOVE THE COLLUMN IS THE HAND WRITTEN "TV. 247." BELOW THAT IN THE COLLUMN IS WHAT APPEARS TO BE HAND WRITTEN "EZ 274"? THIS CANNOT BE CONFIRMED DUE TO BEING "CROSSED OUT". BELOW THAT IS THE READABLE "TV 255" AND HAS BEEN COMPLETELY SCRATCHED OUT BY HAND. BELOW THAT IS THE CLEAR, HANDWRITTEN MARK OF "242".

THE APPELLANT BELIEVES THAT ANY REASONABLE PERSON COULD FIND THIS IDENTIFICATION TO BE DIFFICULT AT BEST, IF NOT IMPOSSIBLE, TO DETERMINE EXACTLY WHAT IT IS AND EXACTLY WHO CHECKED IT IN. REGARDLESS, THIS IS DEFINITELY NOT AN AN EXAMPLE OF PROPER PROCEDURE FOR TRACKING AND IDENTIFYING DNA EVIDENCE, BUT MORE LIKE WHAT NOT TO DO. THE ONLY THING THIS DOCUMENT CLEARLY PROVES IS, ASIDE FROM OBVIOUS CONFUSION ON HOW TO NUMBER IT, DNA HANDLING PROCEDURE WAS NOT FOLLOWED.

IF THE COURT WOULD PLEASE NOTE, PAGES (CR 134 - 135, ADV 58-79) THIS IS A 2 PAGE "SUPPLEMENT NARRATIVE" OF INCIDENT NO. 030415605 N. DATE OF SUPPLEMENT: 3/28/05.

IN THE MIDDLE OF THE 1ST PAGE (CR 134) IS THIS STATEMENT: "AT THE REQUEST OF OFFICER M. GALLAGHER, PR#109111, THE FOLLOWING ITEMS WERE ANALYZED" PLEASE PAY PARTICULAR

98

Attention To The Very Next Statement: "One Sexual Assault Evidence Kit (Bar Code RTTA), From Complaintant Brittany Smith..." The Appellant Would Direct The Court's Attention To A Bar Code Inside The Parenthisis Stating The Identifying Marker Of The Sexual Assault Evidence Kit Is Specifically "RTTA".

Please Return Back To (CR139 Apx71), The Sexual Assault Evidence Kit's Bar Code Sticker Is Clearly Marked As RTT9 Not RTTA.. If The State Still Wants To Argue That The Record Is Reliable And Based On Fact, And That Their Chain Of Custody Is Sufficient, Then They Have Simply Anylyzed The Wrong Sexual Assault Evidence Kit. If They Would Argue "Someone Just Marked It Wrong." And Since There Are No Certificates Of Analysis Or Chain Of Custody Affidavits, They Cannot Prove It Is What It Is Purported To Be. This Is Strict Proof Of Misshandled Evidence And Failure To Follow Establshed Procedure, And Nothing In The Sexual Assault Evidence Kit Is Admissable In Any Texas Court Of Law.

Please Return To (CR134 Apx58), On The Very Last Line Of This Document, The Houston Police Dept's Crime Labratory's "Inventory" Of Evidence States "One Sealed Box (Bar Code RTTC), Labeled "Clothing (3 Bags) From The Complaintant." Please Note The Bar Code Sticker Is Plainly Marked "RTTC".

Please Return To (CR139 Apx71), Please Note The Bar Code Sticker For "Clothing (3 Bags) Is Clearly Marked "RTTB" Not "RTTC". It Would Not Be "Out Of Line" For A Reasonable Person To Ask "How Can Someone Who Has Susposedly Been Trained In The Proper Handling And Identification Of Biological DNA Evidence Mistake A "B" For A "C"? Would It Be Reasonable For A Reasonable Person To Ask "Has This Evidence Been Tampered With Or Altered In Any Way?"

Please Return To The "Supplemt Narrative" (CR134 Apx58)

99

Please Note The Contents Of The Sexual Assalt Kit Are Itemized Alphabetically. Please Take Special Notice Of The Items Listed As "Not Used By Hospital" As Items Not Included In The Sexual Assault Kit.

Please Note The Inventory Of The Sexual Assault Kit As Follows: Item "A": Vaginal Smear; Item "B": Anal Smear; Item "J": Pubic Hair Combing; Item "K": Known Blood; Item "L": Vaginal Swabs; Item "M": Anal Swabs; Item R: Undergarments Bag Labeled "Black Panties", Containing Panties.

Underneath The Sexual Assault Kit Inventory And The Word "And" Is The Statement "One Sealed Envelope, (Bar Code R300) Labeled "2 Buccal Swabs From Tyrone Berry" Unopened Not Inventoried." Please Note This Is Very Clear That The Bar Code Sticker Is R300 And Does Not Mention Any Other Number Identifying This Piece Of Evidence. Please Take Notice Of The Statement "Unopened Not Inventoried."

Please Return To (CR 138 Apx 70). Please Take Notice Of The Only "Bar Code Sticker" In This Document Is Clearly "R2ZZ" With Absolutely No References To A Bar Code "R300". A Reasonable Person Could Ask " Since You Claim This Evidence Was "Unopened. Not Inventoried", How Did It Leave The Houston Police Dept. Property And Evidence Room In A "Sealed Envelope", As Clearly, "R2ZZ" And Arrive At The Houston Police Dept Crime Laboratory, Still "Unopened Not Inventoried", But Has Become Clearly "R300?"

It Would Not Be "Out Of Line" For A Reasonable Person To Believe This To Be Far More Than A "Suttle Manipulation.

Please Return To (CR 134 Apx 58) Supplement Narrative, In The Middle Of The Page Is The Statement "At The Request Of Officer M Gallagher PR# 109111 The Following Items Were Analyzed." Please Note The Term "Were Analyzed" Has The Clear, Past Tense Meaning Of In Fact Having

99

Already Been Analyzed, Not "Going To Be" Or "Is Being" But Unmistakenly As If The Task Had Been Completed.

Please Note The Statement "And One Sealed Envelope (Bar Code R300) Labeled "2 Buccal Swabs From Tyrone Berry" Unopened Not Inventoried" Listed Immediately After The Inventoried Items From The "Sexual Assault Kit." Since This "Official" Report States Unequivocally That This "R300", Even Though Unopened, Not Inventoried", Was In "Fact" Analyzed. (The Harris County District Attorney's Office Claims The Record Is Based On Fact (Please See CR153-157, Apx 64-67)), Could Only Lead A Reasonable Person To Ask The Question "How Does An Accreditted Forensic Crime Laboratory Analyze A Biological DNA Sample Without Opening The Envelope That Contains It?"

The Exhibit The Appellant Has Alluded To (CR153-157, Apx 64-67) Is The "State's Proposed Findings Of Fact On The Court's Denial Of DNA Testing", On Page (CR157. Apx 80) Is The Court's Order Certifying The "Findings Of Fact" As Actual "Fact", And, As His Right To Appeal And Challenge The Conviction, So Is The Appellant's Right To Due Process In Rebutting The Factual Claims Of The State, And In So Doing Is Proving To This Honorable Court That It Is The Conviction On Which His Motion For Post Conviction Forensic DNA Testing Was Based, Is What Cannot Stand. It Is Not The "Motion" Itself That The Appellant Is Seeking Relief And Again, Because The State Is Using The Only Evidence Available And Their Claim That It Is Factual, Gives The Appellant The Right To Argue That It Is Not Based On Fact But Is In Fact Falsified And Fraudulent.

Please Return To (CR138 Apx70) Houston Police Dept. Property And Evidence Record. Please Note The Bar Code Sticker Minus The Obvious Confusion, It Is Clearly Marked As "R222. Again, If The State Continues To Claim The Record Is Reliable And Based On "Fact", According To

100

(CR166Apx59), The Record Has Been Certified As "True And Correct". Then According To The State's Own Documentation, The Wrong Evidence Has Been Analyzed, Or, The Only Logical Alternative, Someone Has "Tampered With Or Altered The Evidence".

Please Return To (CR134Apx58). In The Inventory Of The Sexual Assault Evidence Kit That Is Clearly Labeled "(Bar Code RTTA)" In This Document, But Is Clearly Marked "RTT9" In The Houston Police Dept Property And Evidence Record As Well As "TV247" Or Possibly "EZ274" Or Maybe "TV255" But Definately NOT "RTTA". Is An Item That Was Contained In The Sexual Assault Evidence Kit As "Item K, Known Blood".

On Page 2 Of This "Official" Report, (CR135 Apx79), Found In The Middle Of The Page Is This Statement " A Staincard Was Made From The Known Blood (Item K) From The Complaintant Brittany Smith."

The Next Line States " Disposition Of Evidence". Below That Is The Statement " The Following Items Are Being Retained Frozen In The Labratory." And Goes On To List Four Items As: "1. Item "L": Vaginal Swabs Labeled #1-4 By Analyst" "2. Item "R" Cutting From The Crotch Area Of The Panties "3. Staincard Made From Known Blood (Item K) From The Complaintant Brittany Smith." "4. 2 "Buccal Swabs From Tyrone Berry" Know Suspect Reference Samples." Bar Code R300." The Last Statement On This Report : "All Other Items Of Evidence Will Be Returned To The Property Room In The Original Packaging."

Please Refer To Document (CR137 Apx63) This Is Another " Supplement Narrative" Of A Houston Police Dept Offense Report From Incident No. 030415605N And In The Middle Of The Page States: " Documentation For Transfer Of

101

EVIDENCE." NEXT LINE: "REFERENCE: L05-3609."
"DATE OF RELEASE: ON 03/29/05 BY HPD T. GUERRERO PR121608."
"RECEIVING AGENCY: IDENTIGENE BY M. BUSSEY ON 03/29/05."
"DATE OF RETURN TO HPD: (BLANK)."
"DESCRIPTION AND CONDITION OF EVIDENCE:"
"1. SEALED ENVELOPE CONTAINING ITEM "L" VAGINAL SWABS #1-4 AND ITEM "R" PANTIES CUTTING -3"x -3"."
"2. SEALED ENVELOPE CONTAINING STAINCARD MADE FROM KNOWN BLOOD (ITEM K) FROM COMPLAINTANT BRITTANY SMITH."
"3. SEALED ENVELOPE CONTAINING "2 BUCCAL SWABS FROM TYRONE BERRY" KNOWN REFERENCE SAMPLE BAR CODE R300."
"DNA ANALYSIS REQUESTED."

THE FIRST ITEM OF INTEREST ON THIS DOCUMENT IS ITEM #1 OF THE "EVIDENCE BEING TRANSFERRED" HAS NOW BECOME ONE ITEM FROM TWO SEPERATE ITEMS. (CR135 APX79) ITEMS #1 AND #2 HAVE NOW BECOME ITEM #1, AND BEING SEALED TOGETHER IN A SINGLE SEALED ENVELOPE CONSTITUTES ANOTHER FAILURE TO FOLLOW ESTABLISHED PROCEDURE, RESULTING IN PROBABLE CONTAMINATION OF DNA EVIDENCE RENDERING THESE ITEMS AS "INADMISSABLE".

PLEASE GIVE SPECIAL ATTENTION TO ITEM #2. ON THE "DOCUMENTATION FOR TRANSFER OF EVIDENCE", AS "SEALED ENVELOPE CONTAINING STAINCARD MADE FROM KNOWN BLOOD (ITEM K) FROM COMPLAINTANT BRITTANY SMITH." HERE WE ARE ABLE TO SEE CLEARLY, THAT THE BLOOD EVIDENCE HAS BEEN INVENTORIED (CR134 APX58) HAS BEEN PREPARED FOR TRANSFER (CR135 APX79) AND IS IN FACT INCLUDED IN THE DOCUMENTATION FOR TRANSFER OF EVIDENCE (CR137 APX74) DATE OF RELEASE: ON 03/29/05 BY HPD T. GUERRERO, RECEIVING AGENCY: IDENTIGENE BY M. BUSSEY ON 03/29/05 WITH THE NOTATION OF "DNA ANALYSIS REQUESTED."

HOWEVER, IF THE COURT WILL NOW PLEASE INSPECT THE

102

"Lab Reports" From Identigene (CR 141-144 Apx 60-62), At The Top Of The Page On Each Of These Reports Is The Inventory Received "In Person From T. Guerrero On 03/29/05", Yet There Is No Mention Of "Z. Sealed Envelope Containing Staincard From Know Blood (Item K) From Complainant Brittany Smith."

Upon Further Examination Of These Two "Lab Reports" Even Though The Documentation Of Transfer Of Evidence Is Specific In It's Request For DNA Analysis, And Clearly Includes The Staincard Made From Known Blood (Item K), There Is No Analysis Report Or Any Further Mention Of This Item Of "Evidence". More Documented Proof Of Of The Careless Misshandling Of Biological DNA Evidence.

Please Refer To (CR 137 Apx 63) "Documentation For Transfer Of Evidence", Reference L05-3609:
Date Of Release: On 03/29/05 By HPD T. Guerrero PR# 121608
Receiving Agency: Identigene By M. Bussey On 03/29/05.
Date Of Return To HPD: (BLANK).
Description And Condition Of Evidence:

The Following Is The Appellant's Contention Of The Actual And Factual Condition Of The Evidence:

#1.: Sealed Envelope Containing Item "L" Vaginal Swabs #1-4 And Item "R" Panties Cutting -3"x -3". Actual Condition: At One Time 2 Seperate Pieces Of Evidence, Now Packaged In One Sealed Envelope For Ensuring Cross Contamination: Documented Failure To Follow Procedure.

#2: Sealed Envelope Containing Staincard From Known Blood (Item K) From Complainant Brittany Smith. Actual Condition: Definately Left The Houston Police Dept. Crime Lab As Item #Z But Never Arrives At The Destination "Identigene" On 03/29/05. (CR 141-144, Apx 60-62).

#3. Sealed Envelope Containing "2 Buccal Swabs From Tyrone Berry" Known Reference Sample Bar Code R300.

103

ACTUAL CONDITION: NON EXISTANT. PLEASE SEE (CR 18 Apx 14), THIS IS A DOCUMENT RECORDING THE ONLY LEGALLY COLLECTED, AND PROPERLY COLLECTED FORENSIC DNA REFERENCE SAMPLE IN THE ENTIRE RECORD. THE "STATE OF TEXAS RESTRICTED DNA DATABASE", AND ACCORDING TO THE STATE'S OWN DOCUMENTATION WAS NEVER TRANSFERRED TO OR RECEIVED FROM ANYONE OR ANYWHERE, AS HOUSTON POLICE DEPT PROPERTY AND EVIDENCE ROOM HAS NO DOCUMENTED ARRIVAL OR POSSESSION, THE HOUSTON POLICE DEPT. CRIME LABRATORY HAS NO DOCUMENTED ARRIVAL OR POSSESSION, NOR DOES THE FORENSIC TESTING LABRATORY IDENTIGENE HAVE ANY DOCUMENTATION OF THE ARRIVAL OR POSSESSION OF THE ONLY LEGALLY OR PROPERLY COLLECTED DNA REFERENCE SAMPLE, TAKEN ON MAY 25, 2005.

THE HARRIS COUNTY SHERIFF'S DEPT. THE AGENCY RESPONSIBLE FOR COLLECTING THE ONLY LEGALLY OR PROPERLY COLLECTED FORENSIC DNA REFERENCE SAMPLE IN THE ENTIRE HISTORY OF CAUSE NO 1019634, BY THEIR OWN SWORN AFFIDAVIT (CR 131-132, Apx 15-16) DECLARE THAT NOT ONLY DO THEY NOT POSSESS ANY EVIDENCE RELATED TO INCIDENT NO. 30415605, BUT THAT THEY HAVE NEVER EVEN RECEIVED ANY PROPERTY OR EVIDENCE IN THIS CASE.

IN FACT, THE ONLY OTHER REFERENCE, EXCLUDING THE ORDER FROM THE 180TH DISTRICT COURT FOR THE ACCUSED TO SUBMIT TO A DNA REFERENCE SAMPLE, IS NOT EVEN FOUND IN THE OFFICIAL CLERK'S RECORD BUT IN A "FINDING OF FACT CONCLUSION OF LAW" OR "STATE'S ORIGINAL ANSWER" TO A WRIT FILED AS NO 1019634 G. THIS "ORIGINAL ANSWER" WAS PRODUCED IN OPPOSITION TO THE POST CONVICTION RELIEF BEING SOUGHT BY THE APPELLANT. THIS DOCUMENT IS NUMBERED AS APPELLANT'S "(Apx 76 b)". IN IT THE STATE CLAIMS " IN ADDITION THE RECORD MAKES IT CLEAR THAT APPELLANT APPEARED WITH COUNSEL ON MAY 25, 2005 WHEN THE DNA TEST WAS ORDERED."

AGAIN THE APPELLANT DENIES COUNSEL WAS PRESENT AND NOW THAT HE HAS IN HIS POSSESSION A CERTIFIED COPY OF THE CLERK'S RECORD CAN PROVE BY A SIMPLE HANDWRITING COMPARISON OF THE APPELLANT'S ATTORNEY'S HANDWRITING ON THE CASE RESET

Form From The Preceding Month, The Months After And Even A Year Later Will Confirm That The Attorney Signs His Name Using A Unique And Specific Style, While The Signature On The Form Dated May 25th 2005 Is Definately Not That Of The Accused's Attorney.

Regardless, The Point Cannot Be Denied, With Or Without Counsel, The Sample Collection Documented On May 25th 2005 Is The <u>ONLY</u> Documented Sample Collection Of The Appellant's DNA Contained In The Entire Record, And Other Than The Collection Itself, Has No Other Appearance Nor Any Further Mention Throughout The Entire "Official Record."

Once Again, Using Only The "Certified Official Record" (CR166 Apx 59), The Appellant Proves Beyond Reasonable Doubt Of Falsified, Fraudulent Evidence By The Physical Immpossibility Of Having "Tagged In" (CR138 Apx 70) Evidence On 03/11/05 Or Analyzed Evidence (CR134 Apx 58), On 03/28/05, Or Transferred Evidence (CR137 Apx 63), On 03/29/05, Or Received Evidence (CR144 Apx 62), That Did Not Exist Until 05/25/05.

Because There Is No Documentation Of Not Just The "Missing" Staincard Made From Known Blood, But Every Item Of Evidence Transferred From The Houston Police Dept's Crime Labratory To Identigene On 03/29/05 Showing It's Return, Thereby Requiring It's Exclusion Of Admissability Of Every Item Transferred On That Day.

The "Evidence Records Affidavit" (CR126-127 Apx 72-73) Of Vanessa Alvarez, Records Custodian For The Houston Police Dept's Crime Labratory States That The Item Missing From Identigene's Inventory (Staincard Made From Known Blood) Is In Fact Being Stored At The HPD Crime Lab, Along With All Of The Other Evidence That Are We Just Supposed To "Assume" It Was Handled Properly? Since There Is No

105

Documentation Of Any Of This DNA Evidence's Return To HPD, Are We To Assume A Taxi-Cab Was Hired To Pick It Up And Deliver It?

This Is Said Only To Illustrate The Importance And Need To Adhere Unswervingly To The Strict Guidelines In Place For The Proper Handling And Documentation Of The Proper Handling Of Forensic DNA Evidence That Must Be Disallowed When It Is Not.

In Yet Another Instance Of Proof Of Evidence Mishandling And Falsification, Please Refer To Documents (CR 141-145 Apx 60-62) Please Notice On Pages 141 And 144 Of The Clerk's Record Are The "Lab Reports" From Identigene. At The Top Of Each Page Is A Box Labeled "Item Number". On The 3rd Line In Each Box Is Item Number 159084.

The "Description" Of Item No. 159084, States This Item To Be "Buccal Swabs Labeled "Brittany Smith"" These Documents State Item No 159084 Is A "Reference Sample" That Were Received From "In Person From T. Guerrero" And Received On "03/29/05.

However, There Is No Such Item Anywhere Else In The Entire Record Describing "Buccal Swabs Labeled Brittany Smith" Again, DNA Evidence Is Of Such A Nature That Nothing Is Permitted To Be Left To "Assumption, Speculation Or Guessing". It MUST Be Controlled By Strict Guidelines Accompanied By Maticulous Documentation.

The Procedures For The Correct Handling And Documentation Of Forensic DNA Evidence Are Securely In Place And Due To The Total Failure To Implement These Strict Guidelines Renders Every Piece Of Evidence Connected With This Case As Useless, Unadmissable Conjecture

The Only Piece Of Evidence In This Entire Collection

106

Of Mishandled, Undocumented, Inadmissable Evidence That Even Comes Close To The Procedural Guidelines Set Forth Specifically For The Handling, Documenting, Analyzing, Interpreting And Authenticating Forensic DNA Evidence Is Found On ONLY One Page Throughout The Entire Record, Is (CR18, Apx14) A DNA Sample Collection Performed By The Harris County Sheriff's Dept Pursuant To The ONLY Court Ordered Sample Collection Via The 180th District Court Of Harris County, Texas.

There Is No Other Court Order Or Search Warrant In Accordance With The Texas Code Of Criminal Procedure Chapter 18 Ordering Or Authorizing The Collection Of A DNA Sample Prior To 5/25/05 Anywhere Within The Official Record Regarding This Case.

Therefore, Whatever The HPD Property And Evidence Room, The HPD Crime Laboratory, And The Forensic Testing Lab, Identigene, Purports To Be "Buccal Swabs From Tyrone Berry", The Appellant Vehemenently Denies As Being His Own, In Addition To The Absence Of Proper Documentation For The Collection And Handling Of Whatever These Entities Purport To Possess Is Inadmissable According To The Texas Constitution's Article One Section Nine And The 4th Amendment To The United States Constitution.

According To (CR131 Apx15) Is The "Evidence Records Affidavit" Of Harris County Sheriff's Dept, Property And Evidence Custodian Q. Thigpen, Swears: Not Only Is The Harris County Sheriff's Office NOT In Possession Of Any Evidence Related To Cause No 1019634, The Fact Is, The Harris County Sheriff's Office Was Never In Possession Of Any Evidence.

Nor Is There Any Other Reference Anywhere In The

107

Entire Record. Nor Is There A Single Chain Of Custody Affidavit, Or Documentation For Transfer Of Evidence Or Anywhere In The Record Stating That Any Representitive Of The Collecting Agency, The Harris County Sherriff's Dept. Deliver To, Hand Over Or Pass Off To Any Other Agency. Including HPD Property And Evidence, HPD Crime Lab Or Identigene Or Any Other Agency Certified For The Proper Handling Of Forensic DNA Evidence.

The Fact Is, According To The Texas Code Of Criminal Procedure Article 38.23, "Evidence Not To Be Used" Is Every Single Item The State Possesses. The Simple Truth Is, Had The State Not Had To Produce Evidence In Reverse, Ie: Backtrack. Then Procedural Guidelines Could Have Easily Been Followed, If There Had Actually Been A Crime Committed.

In Section IV Of The State's Motion Requesting Court To Deny DNA Testing: "Background". It Is True That On May 2nd 2006, After A Jury Had Been Seated And The Presentation Of Evidence Had Commenced, The Defendant Plead Guilty To The Offense Of Sexual Assault Of A Child. 14-17, And, Pursuant To A Plea Bargain Agreement, Was Sentenced To Ten Years Confinement In The Texas Dept. Of Criminal Justice - Institutional Division.

The Reason This Appellant Stopped The Trial, Plead Guilty, And Accepted A Ten Year Sentence Is Because The Appellant Was Certain His Attorney Was Not Prepared To Adequately Represent Him When His Attorney Made These Statements After The Trial Had Begun? They Have Your DNA. There Is The 15 Year Old White Girl Who Is Going To Testify Against You. The Jury Is Going To Believe Her Over You. The State's First 3 Witnesses Are "DNA Experts" All Three Of Them Are Going To Testify It Is Your DNA. The Jury Is Going To

108

Believe Them Over You. Since You Don't Have The Money To Hire Your Own DNA Experts, Everything They Say Will Be Considered As Fact.

The Appellant Told His Attorney To Ask The State If He Could Sign For The 6 Year Sentence They Had Previously Offered (CR 15 Apx81) He Came Back And Said That Offer Was No Longer "On The Table" And That They Said "If You Don't Take This Ten Years They Will See That I Get 20 Years."

This Is Actually Further Evidence Of Fraudulent Evidence Because If The State Had Truly Possessed The Appellant's DNA There Would Have Been No Plea Bargaining. The Appellant Knows That It Is Impossible For The State To Have Had His DNA, But In 2006 He Felt Not Only Had He Been "Framed" But That His Situation Was Hopeless. On The Day Of Trial, Because Of These "Disclosures" His Attorney Made After The Trial Had Begun, That Not Only Had He Been Betrayed By His Attorney, But That He Had No Other Choice Except To Take The State's Offer.

Now, In 2014, The Appellant Has Acquired The "Official Clerk's Record" And By Pointing Out The Discrepancies In In Their Own Documentation, Is Able To Prove What He Has Maintained From The Day Of His Arrest.

The Appellant Apologizes For The Repetitiveness Of Of Having To Go Over And Over The Same Documents Again And Again, But Only After Painstaking Observation Is One Able To Realize The Nuances That Expose The Expertly Crafted Lie.

If The Court Will Please Take Note Of (CR117 Apx50). This Is Page 5 Of The "State's Motion To Deny". In The 3rd Paragraph Under The Heading "Background," ADA Hampton States: "On March 29, 2005, The Complaintant's Vaginal Swabs, A Cutting From The Complaintant's

109

Panties. A Staincard Made From The Known Blood Of The Complaintant And Two Buccal Swabs Containing The Defendant's Saliva Samples Were Transferred To The Identigene Labratory For DNA Analysis And Comparison. See Supplement 0015, Houston Police Dept Incident Report Number 030415605 N Attached Hereto As State's Exhibit "F"."

This Document Is Also (CR 134-135 Apx 58-79) The Appellant Has Been Making Continuos Reference To.

Please Refer To Page 6 Of The Motion To Deny (CR 118, Apx 51) In The 1st Paragraph ADA Hampton States: "On May 10, 2005 Identigene Released A Forensic Labratory Reports Containing The Results Of The DNA Analysis And Comparison Performed On The Complaintant's Vaginal Swabs, The Complaintant's Panties And The Complaintant's Known DNA Profile. See May 10, 2005 Identigene Forensic Report # 67135 Attached Hereto As States Exhibit "G"."

If The Court Will Take Careful Notice Of This Fact: Suddenly, ADA Hampton No Longer Makes Mention Of A "Staincard Made From Known Blood Of The Complaintant", But Has Now Become "The Complaintant's Known DNA Profile."

Please Refer To (CR 141-144 Apx 60-62) Identigene's "Lab Reports" As Brought To The Court's Attention In The Motion To Deny, Section III, "Evidence In Possession Of The State" And The Appellant's "Improper Handling Of DNA Evidence" The "Staincard Made From Known Blood Of The Complaintant" Dissapears En Route From The Houston Police Dept Crime Labratory And Is Absent From Identigene's Inventory "Received In Person From T. Guerrero" On 03/29/05.

However, A "New Item" Magically Appears As: "Item No. 159084, Description, Buccal Swabs Labeled

110

Brittany Smith; Sample Type: Reference Sample, Received From: In Person From T. Guerrero; Received On: 03/29/05."

Please Refer Back To (CR134 Apx 58) This Is Page 1 Of Supplement 0014 Of Incident No. 030415605 N. Under The Heading Of Supplement Narrative Is The "Inventory" Of The Sexual Assault Evidence Kit Taken By The Texas Children's Hospital In Relation To This Case. This Is The Same "Inventory" That Included The "Known Blood (Item K) From Which A Staincard Was Made For DNA Analysis That Has Subsequently Disappeared.

Please Give STRICT ATTENTION To Items "N" And "O" Of The Inventory List. Item "N": Oral Swabs, "Not Used By Hospital". Item "O": Known Saliva Swabs, "Not Used By Hospital." Please Refer To (CR 135 Apx 79) This Is Page 2 Of The Supplement Narrative 0014.

Under "Disposition Of Evidence Are Items 1-4. This Is The Inventory Of Evidence Being Prepared For Transfer To "Identigene" For DNA Analysis And Comparison. Item #3 Is Identified As A "Staincard Made From Known Blood (Item K) From The Complaintant Brittany Smith."

Please Note: There Is No Mention Of An "Oral Swab (Item N)" Or A "Known Saliva Swabs (Item O)," Because The Texas Children's Hospital Does Not Use Oral Swabs Or Saliva Swabs In Their Sexual Assault Evidence Kits.

It Is The Appellant's Hope That The Court Will Agree That If The State Wants To Continue In It's Claim That The Record Is Reliable And The Chain Of Custody Is Sufficient, That An Accreditted Forensic Testing Laboratory That Can Not Tell The Difference Between A "Staincard" And A

III

"Buccal Swab" Cannot Hold Any Credibility Whatsoever.

Please Refer To (CR 144, 144 And 145, Apx 60, 62 And 82), These Are 2 "Identigene", A Company With A Long History Of Falsified Reports, Contamination And Improper Testing Procedures, Lab Reports, Dated May 10, 2005, And May 31, 2005, Beside The Fact There Is No Reference To Any "Staincard Made From Known Blood (Item K) Of The Complaintant Brittany Smith," Please Note The "New" Entry Of Item Number 159084, Description: Buccal Swabs Labeled Brittany Smith, Sample Type, Reference Sample, Received From: In Person From T. Guerrero, Received On: 03/29/05.

This Is Unquestionably Known In General Legal Terms As: Falsified Evidence. And Because It Has Been Filed In The Office Of The District Clerk Of Harris County, Texas, It Is Also In Violation Of Texas Penal Codes

Citing Moody V. Johnson 139 F3d 477, 484 (5th Cir. 1998) "It Is Well Settled That The State Is Not Permitted To Present False Evidence Or Allow The Presentation Of False Evidence To Go Uncorrected." See Giglio V. United States. 405 US 150, 153, 92 S.Ct. 763, 765, 31 L. Ed. 2 d 104 (1972) Citing Napue V. Illinois, 360 US 264, 79 S. Ct. 1173, 3 L.Ed 2d 1217 (1959), And Mooney V. Holohan 294 US 103 S.Ct. 34 79 L.Ed 791 (1935).

In Addition To Having Destroyed Any Credibility Whatsoever Any Of This Evidence May Have Had, The Lab Goes On In Their Report, (CR 141-145 Apx 60-62 82), To Have Tested And Extracted DNA From Samples It Was Impossible For Them To Possess, And Likewise Impossible For Them To Have Mistaken A "Staincard", For Buccal Swabs.

This Is Absolute Infallible Proof Of Falsified Evidence Which In Turn Removes All Credibility Of Every Piece Of Evidence In The State's Possession, If It Wasn't Allready

112

DISCREDITED, TO SUPPORT THIS WRONGFULL CONVICTION.

PLEASE REFER BACK TO (CR118, Apx51) PAGE 6 OF THE STATE'S MOTION TO DENY AND TO THE 1st PARAGRAPH WHERE ADA HAMPTON CHANGES HIS USE OF WORDS FROM "STAINCARD MADE FROM KNOWN BLOOD OF THE COMPLAINTANT" TO "THE COMPLAINTANT'S KNOWN DNA PROFILE".

THE REASON FOR MR. HAMPTON'S CHANGE IN USE OF VOCABULARY IS BECAUSE NOW HE IS FULLY AWARE AND WITHOUT DOUBT, THAT HE TOO, IS LOOKING AT FALSIFIED EVIDENCE, AND CHOOSES NOT TO USE THE WORDS; "REFERENCE BUCCAL SWABS LABELED BRITTANY SMITH", BECAUSE HE KNOWS THEY DON'T EXIST ACCORDING TO THE TEXAS CHILDREN'S HOSPITAL'S SEXUAL ASSAULT EVIDENCE KIT.

HE KNOWS THAT IF HE USES THE WORDS "REFERENCE BUCCAL SWABS LABELED BRITTANY SMITH" HE WILL ONLY INCREASE THE ODDS THAT THIS FALSIFIED EVIDENCE WILL BE EXPOSED.

SO FROM THIS POINT FORWARD, EVERY WORD ADA HAMPTON USES IS A LIE. AND BECAUSE HE IS AWARE OF THE TRUTH, YET CONTINUES TO PROPEGATE THE LIE, ENFORCES THE APPELLANT'S CONTENTION OF THE STATE'S VIOLATION OF TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 2.01, DUTIES OF DISTRICT ATTORNEY AND THE WILLFUL DENIAL OF THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW.

ADA HAMPTON GOES ON TO LIST ALL OF THE INCRIMINATING FACTORS THAT THIS EXPOSED, CORRUPT, FORENSIC LYING LABRATORY HAS SUPOSEDLY SCIENTIFICALLY REACHED SAID RESULTS, BUT BECAUSE OF THE IRREFUTABLE PROOF OF FALSIFICATION OF EVIDENCE, NOT A SINGLE WORD OF ANY REPORT, ALLEGING THE APPELLANT'S DNA BEING CONNECTED TO A CRIMINAL OFFENSE, DOES NOT CARRY THE SLIGHTEST BIT OF WEIGHT.

"THE TEXAS RULES OF EVIDENCE RULE 901 GOVERNS AUTHENTIFICATION; SEE TEXAS RULES OF EVIDENCE RULE 901, AS A PREDICATE TO ADMISSABILITY RULE 901 REQUIRES A PARTY WHO OFFERS AN ITEM INTO EVIDENCE, TO ESTABLISH TO THE

113

Trial Judges Satisfaction That The Item Is What The Party Represents It To Be. When The Evidence Being Introduced Does Not Have Any Unique Characteristics A Chain Of Custody May Be Required, To Prove That The Item Presented At Trial Is The Same One Involved In The Events At Issue. Likewise, To Admit The Results Of Scientific Testing A Proper Chain Of Custody Must Be Established."

Aviles V State 18 SW 3d 736

Leaving The Houston Police Department Crime Laboratory As A "Staincard Made From Known Blood (Item K) From The Complaintant Brittany Smith", And Arriving At The Forensic Testing Laboratory, Identigene, As "Buccal Swabs Labeled Brittany Smith". Cannot Establish A; "Proper Chain Of Custody," However, It Can And Does Establish, "Falsified Evidence."

Please Refer To (CR 119 Apx 52), Section V Of The State's Motion To Deny. ADA Hampton States "The Defendant Is Not Entitled To Forensic DNA Testing". Because The Prosecutor Is Aware Falsified Evidence Was Used Not Only To Convict, But To Continuously Uphold The Wrongful Conviction; Since The Appellant Began Seeking Post Conviction Relief Consistantly And Dilligently Since 2009, And By His Willful Failure To Disclose This Vital Information, Is An Intentional Violation Of Not Only Brady, But An Intentional Violation Of The Appellant's Right To Due Process Under The Texas Constitutions Article One Section 10, And The 4th, 5th, 6th, 8th And 14th Amendments To The United States Constitution.

ADA Hampton Goes On To State "In This Case, DNA Testing Was Performed In 2005 By The Houston Police Dept. Crime Laboratory. And Identigene." The Appellant Has Shown By A Preponderance Of The Evidence Contained In The "Official Record" And Possessed By The State, IE: The

114

Houston Police Dept's Crime Labratory And The Houston Police Dept's Property And Evidence Room. In Addition To The Falsification Of Evidence, Faulty Handling, Cross Contamination, Absence Of Proper Chain Of Custody. Absence Of Proper Certificate Of Analysis And The Unreliability Of The Entire Record. The Appellant Believes That He Too, Is In Need To Prove Anything Further.

Yet Mr. Hampton Continues: "The Defendant Makes No Showing That There Are Newer Testing Techniques Available That Would Provide A Reasonable Likelihood Of Results That Are More Accurate And Probative Than The Results Generated Previously."

The Appellant Was Appointed Counsel To File An Amended Motion For Post Conviction DNA Testing As A Result Of Filing His Own Pro-Se Motion For Post Conviction DNA Testing On Jan 20, 2012. The Same Motion Mr. Hampton Convieniently Ommitted The Date Of It's Filing.

It Was The Responsibility Of Appointed Counsel To Correctly Amend The Motion And Her Deliberate Failure To Do So Is No Fault Of The Appellants. (See Argument For Issue No. 2).

Mr. Hampton Persists: "Furthermore, To Be Entitled To Any Additional DNA Testing The Defendant Must Also Show That By A Preponderance Of The Evidence (The False Evidence), The Defendant Would Not Have Been Convicted If Exculpatory Results Had Been Obtained Through Additional DNA Testing."

It Is The Appellant's Contention That No 1: Had The Authorities That Were In Place In 2005 Had Not Fabricated False Evidence, Had The Appellant's Own Lawyer Not Lied To And Betrayed His Own Client, There Would Never Had Been A Conviction In The First Place. And No. 2: Had This Prosecutor NOT Been In Violation Of The Texas Code Of Criminal Procedure Article 2.01 Duties Of District Attorney, And Had Not Been With Forethought And Malice, In Direct Violation Of Brady V. Maryland. 373 US 83 (1963), Failure

115

To Produce Evidence Favorable To The Accused And By Not Only His Failure To Disclose Exculpatory Evidence, But By His Knowing And Intentional Attempt To In Fact Conceal Exculpatory Evidence Apart From The Substantial Harm Suffered As A Direct Result Of The Intentional Element, Is Another Violation Of Texas Penal Code Annotated, 39.03, Official Oppression.

"Under The Statute Criminalizing The Fabrication Of Evidence Which Provides That A Person Commits An Offense If, Knowing That An Investigation Or Official Proceeding Is Pending Or In Progress, He Or She Presents Any Record, Document, Or Thing With Knowledge Of It's Falsity And With Intent To Affect The Course Or Outcome Of The Investigation Or Proceeding. If The Link Between The Person Or Persons Becomes To Whom An Actor Presents The Falsified Material Becomes To Tenuous, Then The Issue Raised Will Go To The Intent Element Of The Offense Rather Than The Presentment Element, ie: If The Actor Gives The Falsified Evidence To Someone Who Is Not Directly Connected To The Investigation Or Proceeding, Then The Issue May Arise Whether The Actor Intended That Such Evidence Affect The Outcome Of The Investigation Or Proceeding."

Waldrop V State 219 SW 3d 531, 532 (TexApp Texarkana 2007).

There Is Not A "Tenuous Link" In This Case But A Direct One, As Evidenced By The "State's Motion Requesting Court To Deny DNA Testing" And That It Is Itself Now A Part Of The "Official Record", (CR 113-121 Apx 46-53), In Cause No 1019634, And According To (CR 121 Apx 53) Was In Fact Filed By ADA Hampton On The 12th Day Of July 2013, Thereby Establishing The Fact That Not Only Was ADA Hampton Attempting To Affect The Outcome Of An "Official Proceeding" But Was An "Accomplice" In Assuring Justice Would Be Denied To The Appellant.

The Texas Penal Code Annotated Section 37.09, Tampering With Or Fabricating Physical Evidence, States: "(a), A Person Commits An Offense If Knowing That An Investigation Or Official Proceeding Is Pending Or In Progress, (1), Alters Destroys Or Conceals Any Record Document Or

116

Thing With Intent To Impair It's Verity, Legibility Or Availability As Evidence In The Investigation Or Official Proceeding; Or, (2), Makes, Presents, Or Uses Any Record, Document, Or Thing With Knowledge Of It's Falsity And With Intent To Affect The Course Or Outcome Of The Investigation Or Official Proceeding.
(c): An Offense Under Subsection (a) Is A Felony Of The 3rd Degree.

On Page (CR119 Apx 52), ADA Hampton States In The Motion Requesting Court To Deny DNA Testing, Section $V$, "The Defendant Is Not Entitled To Forensic DNA Testing."

It Would Not Be Unreasonable For A Reasonable Person To Ask, As A 3rd Degree Felony Offender, Should ADA Inger M. Hampton Be Entitled To Practice Law?"

ADA Hampton States: "The Defendant Cannot Meet This Burden." Mr. Hampton Would Be Right If The Appellant Had To Rely Solely On The Counsel Appointed To Him By The 180th District Court Of Harris County, Texas. Thankfully The United States Of America Is Still A Free Country Where A Wrongfully Convicted Appellant Can Still Approach The Courts As Pro-Se In Their Search For Justice, And Not Only Does The Appellant Meet This Burden, He Has Overwhelmingly Surpassed It.

Mr. Hampton Wears On By Stating: "Even If The Only Remaining Evidence Were Subjected To DNA Testing, Defendant Fails To Show. Nor Does He Even Allege How Any Possible Result Would Exculpate Him From This Crime."

A Reasonable Person Could Ask "What Exactly Does Mr. Hampton Mean When He States "The Only Remaining Evidence"? The Record Is Very Specific That Every Single Piece Of Evidence Collected In Reference To Cause No 1019634 And According To The Official Record Is Still Intact And In The Possession Of The State. That Is, Except For One Key Piece. The Only Legally, Properly

117

Collected Forensic DNA Sample Taken In The Entirety Of This Case Yet Was Not Received By HPD Property And Evidence, It Was Not Received By The HPD Crime Laboratory, It Was Not Received By The Forensic Testing Laboratory "Identigene", In Fact, That Very Agency That Took This Sample Now Claims That Not Only Do They Not Possess It, They Have Never Possessed It.

Does Mr. Hampton's Use Of Terminology That Makes No Sense Indicate That He Knows What Happened To The ONLY Piece Of Evidence That According To The Official Record Is Missing?

In Rebuttal To The Second Half Of The Statement That Indicates Mr. Hampton Knows Something About Missing Evidence That He Is Not Sharing: Defendant Fails To Show Nor Does He Even Allege, How Any Possible Result Would Exculpate Him From This Crime."

No. 1: Again, A Lawyer Was Appointed For The Sole Purpose Of Preparing And Filing A Post Conviction Motion For Forensic DNA Testing And Is No Fault Of The Appellant's If Said Attorney Is Incapable Of Reading Article 64.01 (a), (a-1), Which States In Part "The Motion Must Be Accompanied By An Affidavit, Sworn To By The Convicted Person Containing Statements Of Fact In Support Of The Motion."

The Appellant Is Well Aware That The Intentionally Defective Motion Filed On His Behalf Was Doomed For Failure The Day It Was Filed.

No. 2: The Preceding Statement Made By ADA Hampton Does Nothing More Than Provide Additional Evidence Of His Blatant And Deliberate Concealment Of Exculpatory Evidence.

118

No. 3: The Appellant Is Not Guilty Of Sexual Assault Of A Child (14-17). Were It Not For Violations Of The Appellant's Constitutional Rights, Violations Of The Texas Code Of Criminal Procedure And Violations Of The Texas Penal Code, There Could Not Have Possibly Been A Conviction. And If The State Had Ever Possessed The DNA Evidence They Claimed They Had, There Would Have Been No Plea Bargain Either.

Finally, If The Court Would Proceed To (CR120 Apx53), Page 8 Of The Motion To Deny, Section VI, Conclusion. Again, ADA Hampton Is Still Discussing What He Claims Is The Appellant's Failure To Meet "Requirements" Of Texas Code Of Criminal Procedure Article 64.03 When All The While He Has Already Exposed Himself And His Willingness To Propagate A Lie In Not Only The Falsification Of Evidence But The Concealment Of Evidence Favorable To The Appellant.

Along With The Unreliability Of Every Single Piece Of Evidence Associated With This Case, Including The Unreliability Of The Entire "Official Clerk's Record," Together With The Continual Supplementation Of His Own Evidence Against Himself, For ADA Hampton's Intentional Failure To Disclose The Condition Of The Evidence, That Not Only Cannot Support This Conviction, But In Fact, Exxonorates The Appellant.

Texas Appeals, Houston 14th District, 2010: "To Establish A Brady Violation, Appellant Had To Show That: (1), The State Failed To Disclose Evidence In It's Possession; (2), The Withheld Evidence Is Favorable To The Defendant; (3), The Evidence Is Material, That Is, There Is A Reasonable Probability That Had The Evidence Been Disclosed, The

Outcome Of The Trial, (Or Proceeding) Would Have Been Different" Citing Webb V. State 232 SW 3d 109, 114 (Tex. Crim. App. 2007). "The Evidence May Be Material To Either Guilt Or Punishment" Citing Brady V. Maryland 373 US at 87, 83 S. Ct. At 1196-97." The State's Duty To Disclose Such Evidence Applies Irrespective Of The Good Faith Or Bad Faith Of The Prosecution And Regardless Of Whether The Defendant Has Requested It." Io At Harm V. State 183 SW 3d 403, 406. (Tex. Crim. App. 2006)." From Clark V. State 305 SW 3d 841, 846.

## PRAYER FOR RELIEF

The Appellant Will Humbly Pray This Court To Implement Their Powers As A "Due Process Safeguard", And Rule On This Case As Such, Because The Appellant Has Shown Beyond Any Reasonable Doubt And In No Uncertain Terms, He Has Endured An Enormous Obstruction Of Justice And The Total Denial Of His Due Process, Inflicted Intentionally Upon Him By The Appointment Of Not One But Two Attorneys Who Could Not Have Possibly Taken It Upon Themselves To Inflict Such Harm Unless A Higher Authority Had Instituted It. (See Argument On Issues #1 And #2.)

This Appeal Has Not Even Touched On The Fact Of The Consistant Denial Of Justice Due To The Improper And Illigitimate Adjudication Of 8 Writs Of Habeas Corpus By The 180th Judicial District Court Of Harris County, Texas. An Abatement Of This Case Back To The Trial Court Will Only Prolong The Inevitable, That A Conviction Found On Falsified Evidence Cannot Stand.

Citing Reedy V. State, 214 SW 3d 567, 580, (Tex App Austin 2006)

"The Due Process Clause Of The 14th Amendment To The United States Constitution Requires Every State Criminal Conviction To Be Supported By Evidence That A Rational Trier Of Fact Could Accept As Sufficient To Prove All The Elements Of The Offense Charged Beyond A Reasonable Doubt." In Re Winship 397 US 358 at 364, 90 S. Ct. 1068, 25 L.Ed 2d 368 (1970) Fisher V. State 851 SW2d 298, 302 (Tex Crim App 1993) See Texas Penal Code 2.01 (West 2003) Ward V. State 143 SW 3d 271 at 274 (Tex App Waco 2004). The Rulings Go On And On...

"Under The 14th Amendment, The Task Of The Appellate

121

Court Is To Consider All Of The Evidence In The Light Most Favorable To The Verdict And Determine If Any Rational Trier Of Fact Could Have Found Beyond A Reasonable Doubt All Of The Essential Elements Of The Offense." Jackson V. Virginia 443 US 307 at 319 99 S Ct 2781 61 L Ed 2d 560 (1979). Sanders V. State 119 SW 3d 818 at 820 (Tex Crim App 2003) Cardenas V. State 30 SW 3d 384, 389-90 Tex Crim App 2000). "Reviewing Courts Are Not Fact Finders. Our Role Is That Of A Due Process Safeguard, Ensuring Only The Rationality Of The Trier Of Facts Finding Of The Essential Element Of The Offense Beyond A Reasonable Doubt." See Moreno V. State 755 SW 2d 866, 867 (Tex Crim App 1988).

The Appellant Is Only Trying To Highlight This Honorable Court's Authority. " If Based On All The Evidence, A Reasonably Minded Jury Must Entertain A Reasonable Doubt Of The Defendant's Guilt, Due Process Requires That We Reverse And Order A Judgement Of Acquittal." Fisher 851 SW 2 d at 302. Quoting Narvaiz V. State 840 SW 2d 415, 423 (Tex Crim App 1992), See Also Guevara V. State 152 SW 3d 45 at 49 (Tex Crim. App 2004.) Roberson V. State 16 SW 3d 156 at 165 (Tex App Austin 2000) Citing Matson V. State 819 SW 2d 839 at 846 (Tex Crim App 1991), "The Legal Sufficiency Of Evidence Is A Question Of Law."

A Reasonable, Rational Juror Would Be Outraged By The Trial Court's Handling Of This Case. Please See The Argument On Issues # 4 And #5.

The Court Can Also See That In Addition To The "Findings Of Facts" Being Able To Hold No Credibility Whatsoever, It Was An Abuse Of Discretion For The Trial

122

Court To Have Certified Them As Such. See Argument On Issue #3.

"Findings Of Fact Have The Same Force And Dignity As A Jury's Verdict And Are Reviewable Under The Same Standards Of Legal And Factual Sufficiency." Foley V. Capitol One Bank NA 383 SW 3d 644 (TexApp Houston (14 Dist) 2012).

Not Only Are The Findings Of Fact Thoroughly Discredited, Every Single Piece Of "Evidence", Bar None, Have Been Mishandled, Comingled, Confused, Collected Illegally, And Nothing, Not One Single Item, Is In Any Condition To Be Presented As "Evidence" In Any Legitimate Court Of Law.

Citing Foley: "No Evidence Challenges To The Legal Sufficiency Of The Evidence Must And May Only Be Sustained When The Record Discloses ONE Of The Following Situations: (a) A Complete Absence Of Evidence Of A Vital Fact. (b) The Court Is Barred By Rules Of Law Or Of Evidence From Giving Weight To The Only Evidence Offerred To Prove A Vital Fact, (c) The Evidence Offerred To Prove A Vital Fact Is No More Than A Mere Scantilla, Which Means That Jurors Would Have To Guess That Vital Facts Existed (d) The Evidence Establishes Conclusively The Opposite Of The Vital Fact."

Foley Is A Case That Is Being Used Not Because It Exhibits Any Of The Characteristics Of The Appellant's Case, But Exclusively To Show How This Very Court Has Ruled On The Same Legal Issues As The Appellant Is Praying This Court To Recognize As Recently As 2012. And Just As This Court Ruled That Only One Of The Factors Are Necessary For A Favorable Ruling By This Court, The Appellant

123

Has Shown Unequivocally That He Has Satisfied All Four Of The Required Criteria, And As Such, Through Foley, This Court Has Ruled, "Generally, The Proper Remedy For Legal Insufficiency Is Rendition Of Judgemen For The Appellant."

The Appellant Has Also Left No Doubt That The State Has Violated The Spirit Of The Texas Code Of Criminal Procedure Article 2.01 Duties Of District Attorneys, Who Have Violated Brady V. Maryland 373 US 83 (1963), Not Only In The Motion Requesting Court To Deny Post Conviction DNA Testing, But In The State's Findings Of Fact In The Denial Of The Motion, And Since The Very Inception Of This Case.

Citing Hampton V. State 86 SW 3d 603 at 612, (Tex Crim App 2002), "The Three Pronged Test For Reversable Error For A Brady Violation Is Entirely Different From The Constitutional Harmless Error Standard Set Out In Texas Rules Of Appellate Procedure Rule 44.2 (a). To Find Reversable Error Under Brady And Bagley, A Defendant Must Show That, #1. The State Failed To Disclose Evidence Regardless Of The Prosecution's Good Faith Or Bad Faith #2. The Withheld Evidence Is Favorable To Him, And #3 The Evidence Is Material, That Is, There Is A Reasonable Probability That Had The Evidence Been Disclosed, The Outcome Of The Trial Would Have Been Different."

Under Brady The Defendant Bears The Burden Of Showing That, In Light Of All The Evidence, It Is Reasonably Probable That The Outcome Of The Trial Would Have Been Different

124

Had The Prosecutor Made A Timely Disclosure.

Because There Is No Other Evidence Other Than Falsified And Inadmissible Evidence, There Could Have Been No Prosecution Without It, And Because During The Course Of The Adjudication Of The Appellant's Motion For Post Conviction Forensic DNA Testing, A New Cycle In The Succession Of Contemporaries Within The Prosecutor's Office, Working Alongside Court Appointed Counsel, Became Aware Of It, And By Their Intentional Concealment Of These Exposed Facts, Goes Far Beyond Brady Into Deliberate Obstruction Of Justice, Resulting In Egregeous Harm To The Appellant. The Appellant Has Overwhelmingly Surpassed Any Possible Burden.

The Harm Has Been Compounded By The Blatant "Sham" Of The Representation By Not One But Two Corrupt And Misleading, Intentional Acts Of Subversion By Two Licensed Attorneys, Who Have Used The "Official Record" In A Malicious And Prejudicial Manner, Omitting The Fact Of Clearly Falsified, Mishandled, Contaminated, Comingled, Confused, And Manufactured Evidence, And The Intentional Omissions Are Nothing Short Of The Deliberate Violations Of The Appellant's Constitutional And Civil Rights And An Organized, Direct, Obstruction Of Justice.

How Could This, Or Any Reasonable Court, Abate This Case Back To The Trial Court, After Witnessing Firsthand The Deplorable Conduct And The Irrefutable Physical Evidence These Two Lawyers Have Provided To The Appellant And This Honorable Court, Against Themselves, And Expect Him To Have Any Form Of Trust In Any Action That Court

125

Could Possibly Take?

WHEREFORE, The Appellant Humbly Prays This Honorable Court Take One Of The Two Courses Of Action Available To Them Authorized By The Texas Rules Of Appellate Procedure, Rule 51.2 (c)(2) Or 51.2 (d).

Rule 51.2 (c) Judgement Of Reversal (2) When Case Dismissed: States: "When The Appellate Court Reverses The Trial Court's Judgement And Order The Case To Be Dismissed, The Defendant, If In Custody Must Be Discharged, And No Further Order Or Judgement Of The Trial Court Is Necessary;" Or, Rule 51.2 (d) Judgement Of Acquittal: "When The Appellate Court Reverses A Judgement And Orders The Defendant's Acquittal, The Defendant, If In Custody Must Be Discharged And No Further Order Or Judgement Of The Trial Court Is Necessary."

It Is The Humble Hope Of This Appellant That The Honorable Court Agree With Their Own Ruling: "Process Which Is A Mere Gesture Is Not Due Process."

The Appellant Would Thank The Honorable Court For Their Most Careful Consideration That Could End Once And For All This Monumental Injustice.

Case No. 14.13.00844-CR

## Certificate Of Service

I Tyrone Berry TDCJ #1368050 Appellant Pro-Se, Do Hereby Certify That A True And Correct Copy Of The Appellant's Pro-Se Response To An Anders Brief Has Been Delivered To The Office Of Devon Anderson, The Harris County District Attorney At 1201 Franklin, Suite 600, Houston, Texas, 77002 On This The 19th Day Of February 2015, By U.S. Mail.

Tyrone Berry #1368050
Appellant Pro-Se
Diboll Correctional Center
1604 South First St.
Diboll, Texas 75941

127

# APPENDIX OF EXHIBITS

1019583

Apx 1
Tamp Govt Rec.

CAUSE NO. 10A9634          CHARGE Sex Asslt child

180 DISTRICT COURT

THE STATE OF TEXAS

OF HARRIS COUNTY, TEXAS.

VS.

Tyrone Berry
Defendant

AGREED SETTING

The undersigned Counsel hereby agrees this case is reset for

Exam. Trial to May 25, 2005
(Type of Setting)          (Date)

_____
Attorney for the State

Still a complaint

X _Tyrone Berry_
Defendant

Rick Detoto
(Print) Attorney for Defendant

RD
(Signature) Attorney for Defendant

712 Main St., 31st Fl
(Street Address)

Houston     TX     77002
(City)          (State)          (Zip)

(713) 228-8500
(Phone Number)

24005020
(Bar Card/SPN Number)

**F I L E D**
CHARLES BACARISSE
District Clerk

MAY 1 1 2005

Time _____
Harris County Texas
By _____
          Deputy

APPROVED BY THE COURT:

_____
Judge Presiding

5-11-05
Date

"As a condition of release on bond, all defendants will be required to submit to random screening for the presence of controlled substances. Refusal to submit to testing or positive test results will cause bond to be revoked."

11

DISTRICT CLERK

1019583    Tamp Gvt Record
1019634    CHARGE Sex Asslt Child
                                74-17

CAUSE NO. 1019634

180 DISTRICT COURT

THE STATE OF TEXAS

OF HARRIS COUNTY, TEXAS.

VS.

Throne Berry

Defendant

**AGREED SETTING**

The undersigned Counsel hereby agrees this case is reset for

Arrs

(Type of Setting)

to May 11, 2005

(Date)

_____
Attorney for the State

Still a complaint

D.A. to talk to
complaints

X _dyron By____
Defendant

Rick DeToto
(Print) Attorney for Defendant

RD
(Signature) Attorney for Defendant

712 Main St, 31st Fl
(Street Address)

Houston   Tx   77002
(City)      (State)      (Zip)

(713) 228-8520
(Phone Number)

24005020
(Bar Card/SPN Number)

F I L E D
CHARLES BACARISSE
District Clerk

APR 2 1 2005

Time _____
Harris County Texas

By _____
Deputy

APPROVED BY THE COURT:

_____
Judge Presiding

4-21-05
Date

"As a condition of release on bond,
all defendants will be required to
submit to random screening for the
presence of controlled substances.
Refusal to submit to testing or
positive test results will cause bond
to be revoked."

10



THE STATE OF TEXAS
VS.
· TYRONE BERRY

SPN: 01089196
DOB: BM 5-24-66
DATE PREPARED: 3/11/2005

D.A. LOG NUMBER:1036856
CJIS TRACKING NO.:9035785444-A001
BY: VM  DA NO: 001701766
AGENCY:HPD
O/R NO: 030415605N
ARREST DATE: 3/11/05

NCIC CODE: 1100 90          RELATED CASES:

FELONY CHARGE: SEXUAL ASSAULT - CHILD
CAUSE NO:     1019634
HARRIS COUNTY DISTRICT COURT NO:     230xx     180
FIRST SETTING DATE:

Vol 267 Page 95 AXGiM
BAIL: SNO BOND 60,000
PRIOR CAUSE NO:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, TYRONE BERRY, hereafter styled the Defendant, heretofore on or about FEBRUARY 25, 2005, did then and there unlawfully, intentionally and knowingly cause the penetration of the FEMALE SEXUAL ORGAN of BRITTANY SMITH, hereinafter called the Complainant, a person younger than seventeen years of age and not his spouse by placing HIS SEXUAL ORGAN in the FEMALE SEXUAL ORGAN of the Complainant.

FILED
CHARLES BACARISSE
DISTRICT CLERK
HARRIS COUNTY, TEXAS
05 MAY 16  AM 10: 50
BY_____ DEPUTY

AGAINST THE PEACE AND DIGNITY OF THE STATE.

230TH                    FOREMAN

CR Cortogaser

FOREMAN OF THE GRAND JURY

INDICTMENT                                      7

Apx 4.

FELONY INDICTMENT

GENERAL ORDERS OF THE COURT

MAY 1 6 2005

MAY 2 5 2005

THE DEFENDANT, _____ APPEARED _____
PERSON WITHOUT COUNSEL Ofebdo cout 6-30-05-AJTU

DNA TEST ORDERED

JUN 3 0 2005  THE DEFENDANT, _____ APPEARED _____ Rs 7/20 drg
PERSON WITHOUT COUNSEL

JUL 2 0 2005  THE DEFENDANT, _____ APPEARED _____ least 8-18-05 mature
PERSON WITHOUT COUNSEL

8/18/5  prec cmpute  Rs 8/22 ct

AUG 2 2 2005  THE DEFENDANT, _____ APPEARED _____ RS 9/15 PTMO
PERSON WITHOUT COUNSEL

SEP 1 5 2005  THE DEFENDANT, _____ APPEARED _____ least 1-27-06 JTTU
IN PERSON WITH COUNSEL

JAN 2 7 2006  THE DEFENDANT, _____ APPEARED _____ least 5-1-06 JTTU
IN PERSON WITH COUNSEL

S:\Forms\L6\CRIMINAL\Counsel\District\Complaint docket sheet.doc

Apx5

# FELONY COMPLAINT FILED MAR 1 1 2005

## THE STATE OF TEXAS VS.

NAME: BERRY, TYRONE

DCC# 180    CAUSE NO: 10196340101O

OFFENSE: SEX ASSLT CHILD 14-1    F2

FILED: 03/11/05    BAIL: 000000

### PRELIMINARY ASSIGNED COURT APPEARANCE SETTING    MAR 1 4 2005

### GENERAL ORDERS OF COURT

3-10-05 P.C. found & Read warning

9 395095 TEST NMC

MAR 1 4 2005

THE DEFENDANT _____ APPEARED
PERSON WITHOUT COUNSEL

Atty Appeared per State / atalminotall by appd
NO CONTACT: BRITTANY SMITH

Bond: I. ORDERED RAISED SET REDUCED
New bond set at ____ 60,000 =

APR 0 1 2005

THE DEFENDANT _____ APPEARED
PERSON WITHOUT COUNSEL

R. De Jo Jo Reset 4-21-05 auy

APR 2 1 2005

THE DEFENDANT _____ APPEARED
PERSON WITHOUT COUNSEL

R. De Jo Jo Reset 5-11-05 auy

MAY 1 1 2005

THE DEFENDANT _____ APPEARED
PERSON WITHOUT COUNSEL

R. De Jo Jo Reset 5-X-05 Examstial

S:\Forms\LIb\CRIMINAL\Courts\District\Complaint docket sheet.doc    12/18/03

160

B

| THE STATE OF TEXAS | § | IN THE 180 DISTRICT COURT |
|---|---|---|
| | § | |
| VS. | § | COUNTY COURT OF LAW NO. ____ |
| | § | |
| TYRONNE BERRY | § | |
| DEFENDANT | § | OF HARRIS COUNTY, TEXAS |
| SPN 01089191 | § | |

## ORDER

☐ You have been convicted or granted deferred adjudication for a misdemeanor offense under section 21.07 (Public Lewdness) or 21.08 (Indecent Exposure) of the Texas Penal Code.

☐ You have been indicted or waived indictment for one of the felony offenses listed below.

☒ You have been (indicted) or ~~waived indictment~~ and released on bond for one of the felony offenses listed below. See TEX. CODE CRIM. PROC. art 17.47.

☐ You have been placed on deferred adjudication for one of the offenses listed below.

      (A) TEX. PENAL CODE § 20.04(a)(4) (Aggravated Kidnapping w/ bodily injury or sexual abuse);
      (B) TEX. PENAL CODE § 21.11 (Indecency w/ a Child);
      (C) TEX. PENAL CODE § 22.011 (Sexual Assault);
      (D) TEX. PENAL CODE § 22.021 (Aggravated Sexual Assault);
      (E) TEX. PENAL CODE § 25.02 (Prohibited Sexual Conduct);
      (F) TEX. PENAL CODE § 30.02(d) (Burglary of a Habitation);
      (G) TEX. PENAL CODE § 43.05 (Compelling Prostitution);
      (H) TEX. PENAL CODE § 43.25 (Sexual Performance by a Child);
      (I) TEX. PENAL CODE § 43.26 (Possession or Promotion of Child Pornography).

Section 411.1471 of the Texas Government Code directs this Court to order you to provide to a law enforcement agency one or more DNA specimens. These specimens will be used to create a DNA record.

Accordingly, this Court ORDERS the defendant to report immediately to the appropriate division of the Harris County Sheriff's Office. The Court further ORDERS the defendant to provide one or more DNA specimens to the Sheriff's Office upon request.

The Court also ORDERS the Clerk to serve a copy of this Order on defendant immediately.

| ☒ Not in custody | ☐ In custody |
|---|---|
| Harris County Sheriff's Office | Harris County Sheriff's Office |
| Identification Division | Inmate Housing |
| 1301 Franklin, 1st Floor  Testing _____ | 1201 Commerce / 1200 Baker St. / 1207 Baker St. |
| Houston, Texas 77002   Date _____ | / 701 N. San Jacinto    Testing _____ |
| | Houston, Texas 77002   Date _____ |

The Court ORDERS the Clerk to send a copy of this Order to the Sheriff of Harris County or his designated representative.

The Court ORDERS the Harris County Sheriff's Office to indicate in the space provided above the date a suitable DNA specimen was collected from the defendant. The Court FURTHER ORDERS the Harris County Sheriff's Office to return a completed copy of this Order to the Clerk's Office for inclusion in the Court's file.

Date signed: 05-25-05 .

_____,
Judge Presiding

Rev. 09/02/04DPS / CC

COURT

33

A.                                      *Anders* briefs generally
                    To CLIENT To RESEARCH RECORD

An attorney has an ethical obligation to refuse to prosecute a frivolous

appeal. *In re Schulman*, 252 S.W.3d 403, 407 (Tex. Crim. App. 2008). If an

appointed attorney finds, following a professional, conscientious evaluation of

the record, that a case is wholly frivolous, his obligation to his client is to seek

leave to withdraw. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493

(1967). Counsel's obligation to the appellate court is to assure it, through an

*Anders* brief, that a complete review of the record has been undertaken and that
AND THAT A BRIEF ON ANY POSSIBLE MERIT TO ARGUE BE SUBMITTED.
the request to withdraw is well-founded. *Id.*

                                    THE ANDERS BRIEF IN THIS CASE

A wholly frivolous appeal is one that "lacks any basis in law or in fact." *See*

*McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 438 n.10 (1988). A reviewing

court must resolve doubtful issues in the appellant's favor. *Id.* In the brief which

accompanies his motion to withdraw, counsel must make references to the

appellate record as well as to any applicable statutes, rules, and cases that lead

counsel to the conclusion that the appeal is frivolous. *Currie v. State*, 516 S.W.2d

684, 684 (Tex. Crim. App. 1974).

3

The appellate court does not make a decision on the merits of any issue, except to determine whether an appeal is wholly frivolous and that there either are or are not arguable grounds for appeal. *Anders v. California, supra; Stafford v. State, supra.* An appellant may challenge a holding that there are no arguable grounds for appeal by filing a petition for discretionary review in the Court of Criminal Appeals. *See Bledsoe, supra,* at 827-828, fn 6.

**B.          The appeal in this case is frivolous**

This *Anders* brief only asserts that there are no legitimate issues to be raised regarding the trial court's findings of fact entered on September 16, 2013. The trial court found that the Appellant had failed to show that the evidence was previously untested; or if evidence was previously tested that it could be subjected to newer testing techniques that provide a reasonable likelihood of results more accurate and probative than those of the original test.  (C.R. 156).

The Court further found that the Appellant failed to show by a preponderance of the evidence that he would not have been convicted if exculpatory results were found through additional testing.  (C.R. 156).

6

The brief must contain references to anything in the record that may arguably support the appeal, even though counsel believes that the appeal is frivolous. *Anders v. California, supra; Stafford v. State*, 813 S.W.2d 503 (Tex. Crim. App. 1991). Counsel is not required to make arguments that would not be made on behalf of a client who has retained counsel for the appeal; counsel is not required to make arguments for which there is no merit. *Currie v. State, supra.* If counsel concludes that there are no arguable grounds for appeal, then counsel should so state and should make references to the record, statutes, and cases which support that conclusion. *Stafford v. State, supra; High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978). When discussing the record, counsel must discuss the evidence introduced at trial and must provide the appellate court "with ready references to the record." *Stafford v. State, supra* at 510 n.3; *High v. State, supra.* Conclusory statements in the brief are insufficient. *Anders v. California, supra; High v. State, supra; Currie v. State, supra.*

Counsel must furnish a copy of the motion to withdraw and a copy of the brief to appellant and must advise appellant of his right to review the record and to file a *pro se* brief. Counsel must certify or otherwise show the appellate court that appellant has been furnished with a copy of the motion and brief and that

4

At the time of trial, it was known that the Appellant could not be excluded as the DNA donor to the major component of the mixture (C.R. at 144). The statistical likelihood of the DNA gleaned from the major component coming from an individual unrelated to the Appellant is less than 1 in 51,000,000,000,000,000 (C.R. at 144).

Though foreign alleles were found in the sperm cell fraction taken from the complainant's panties, a defendant cannot meet the requirement of showing that he would not have been convicted if exculpatory results had been obtained through additional DNA testing if exculpatory testing would only "muddy the waters." *Bell v. State*, 90 S.W.3d 301 (Tex. Crim. App. 2002)(the presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence).

In light of the facts available at the time of trial, there is no apparent argument by which the Appellant can establish that further testing would prove exculpatory (C.R. at 144). Further, the Appellant failed to offer anything suggesting newer testing techniques existed that would provide a reasonable likelihood of results more accurate and probative than the results at trial.

APX 10.

OMITTED DOCUMENTATION L. BORG

WHAT ABOUT THE DEFECTIVE MOTION?

LEAK BORG'S RESPONSIBILITY AND FAILURE

#1. NO AFFIDAVITS PRESENT AT DNA SAMPLE COLLECTION

#2 DNA SPECIMEN ORDEALS APPLICABLE ISSUE.

#3. EXAMINING TRIAL
#4 CHAIN OF CUSTODY
#5 EVIDENCE TAMPERING
#6 FALSIFIED EVIDENCE
#7 CREDIBILITY OF CPD
8. CREDIBILITY OF CRIME LAB
9. DETECTIVE MOTION
10. BRADY VIOLATION

SINCE MANY LIKE-WITHIN-LIKE... APPLICABLE ISSUES IN THE RECORD SUKE SHOULD BE HELD TO APPLICABLE ISSUES

7

## Statement of Facts

APx 11

Mr. Berry was convicted of sexual assault in 2006 pursuant to a plea bargain in cause number 1019634 (C.R. at 76-78). The 180th District Court sentenced him to ten (10) years in the Texas Department of Criminal Justice, Institutional Division (C.R. at 76-78). There was no direct appeal.

On February 9, 2012, the trial court appointed counsel to represent Mr. Berry for purposes of filing a Chapter 64 motion for DNA testing in cause number 1019634 (C.R. at 97). Biological evidence was tested at the time of trial *FALSIFIED* by both the Houston Police Department Crime Laboratory and Identigene (C.R. at 134-135, 141-142, 144-145). The Houston Police Department determined that spermatozoa were detected on the complainant's vaginal swabs as well as the cuttings from the crotch area of the complainant's panties (C.R. at 135). The vaginal swabs and cuttings from the complainant's panties were sent to Identigene for further analysis (C.R. at 141). The epithelial cell fractions from the from the vaginal swabs matched the profile of the complainant in this case (C.R. at 141). The sperm cell fraction of the vaginal swab showed a mixture of male and female DNA (C.R. at 144). The Appellant could not be excluded as a possible contributor to that mixture (C.R. at 144).

1

On the panties, a mixture of male and female DNA was again ~~~~~
from the sperm cell fraction (C.R. at 144). The DNA recovered from the major  *Apx|*
component of the sperm cell fraction is consistent with that of the Appellant's
DNA profile (C.R. at 144). The report available at the time of trial reflects that
alleles <u>foreign</u> to the <u>Appellant</u> and the <u>complainant</u> were also evident in the
minor component (C.R. at 144). *CONTAMINATION*

## Summary of the Argument

There is no arguable ground to be raised in this appeal of the trial court's
denial of relief following a request for additional DNA testing in this case. The
DNA testing at the time of trial <u>implicated</u> the Appellant (C.R. at 144). His DNA
*IT ALSO IMPLICATED A 3RD INDIVIDUAL UNKNOWN*
profile is consistent with the major component found in the sperm cell fraction
taken from the complainant's panties (C.R. at 144). The presence of multiple
possible additional alleles in the minor component below the threshold for
analysis does not negate this fact. *QUESTION CONTAMINATION ARGUECPOINT*

The undersigned thereby requests that this Court follow the procedures
prescribed in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493
(1967) and *Stephens v. State*, 35 S.W.3d 770 (Tex.App.-Houston [1st Dist.] 2000, no
pet.), as discussed *infra*.

2

# ʼSTON ★ CHRONICLE

HoustonChronicle.com and Chron.com | Vol. 113, No. 257 | $1.00 ★★     Chance of storms: High 87, Low 75

## HPD lab tech done in by own words

### Revelation leads defense attorney to call for deeper probe of scandal

**By Brian Rogers**

It was at a happy hour in February, over drinks, that Houston police crime lab technician Peter Lentz told two colleagues he knew he was not following lab protocols after one of his test results was found to be faulty.

The admission was so stunning to the other technicians that they paid their tabs and left as soon as Lentz got up from the table, according to an HPD internal investigation report reviewed this week by the Houston Chronicle. One immediately called his supervisor to report Lentz.

Weeks later, he would resign and HPD investigators would find evidence of lying, improper procedure and tampering with an official record.

The Harris County District Attorney's Office since has notified suspects in 185 cases, including 51 murders or capital murders, that tests connected to Lentz would be redone.

**📖 How scandal developed**

›› Read recent coverage on the problems at the crime lab at HoustonChronicle.com/crimelab

But the revelation that the technician was brought down by his own words has prompted one defense attorney to call for a deeper investigation, including giving Lentz immunity in exchange for information about possible misconduct at the lab.

"He got caught because he opened his mouth at a beer joint," said attorney Gerald Bourque. "My issue is that it's bigger than that. Who taught him how to do this?"

Bourque has several cases affected by Lentz's DNA

*Attorney continues on A13*

*Attorney continues on A13*

---

**Dozens hurt in collapse of house garage in Katy**



## Limiting power of

# Attorney wonders if others are involved

*Attorney from page A1*

testing, including a September conviction in a capital murder case.

The revelation of Lentz's admission renewed calls by defense attorneys to shut down the Houston Police Department lab because of systemic, long-running complaints. In 2002, revelations that a leaky roof was dripping water on evidence, among other serious problems, temporarily shuttered the lab.

"Our concerns are less about this particular technician and more about the fact that this is the 10th time this has occurred," said Carmen Roe, president of the Harris County Criminal Lawyers Association. "It's now clear that HPD and (the DA's office) can never ensure that the tests conducted at the crime lab are treated with the fairness and independence that scientists are supposed to provide..."

## Procedures changed

The findings from HPD's investigation of Lentz were given to the district attorney's office, which put them before a grand jury, which declined to indict him for any wrongdoing.

At the center of the scandal is an aggravated assault case in which a switchblade and bloody clothes were tested for DNA, according to the internal affairs report. After Lentz's first test

do a retest, which also was not right.

It was after the retest that Lentz told colleagues at the restaurant that he had used a solution of chemicals different from what he was supposed to use, said lab director Irma Rios at a board meeting of the Houston Forensic Local Government Corporation earlier this month.

She speculated that Lentz did the test incorrectly to get out of extra work associated with reporting a contamination.

After more than a year of transition, oversight of the perennially troubled lab was transferred from HPD to the civilian forensic corporation on April 3.

During a presentation about Lentz that Rios gave to the board on June 13, a board member asked, "How would we have found out and caught this but for the conversation with the two co-workers?"

"That would have been an issue, yes," Rios answered.

She told board members that Lentz was relatively new at the lab, working from January 2013 until he resigned in March. She said operating procedures were changed in the wake of the revelation.

"We had not anticipated that a person would not follow procedure to re-extract a sample," Rios said. Now a second tech does the retest.

Melissa Phillip / Houston Chronicle

Defense attorney Gerald Bourque, left, says he has clients whose cases have been affected by revelations of possible crime lab misconduct, including Larry Lee Lewis, right, who is accused of capital murder.

back and how many technicians might have been involved.

"Someone had to teach this young man how to cut corners," he said. "Is there another guy doing it? Four other guys? Ten other guys?"

## Immunity suggested

If crime lab administrators wanted to investigate the problem, Bourque said, they would ask the DA's office to offer Lentz immunity in exchange for information about misconduct.

"This is not a question that the crime lab is interested in having answered," the defense attorney said.

"Their controls didn't re-

tigation continued.

"He's not a 'cut-corners' kind of guy. He's a scientist," attorney Greg Cagle said of Lentz. "He didn't engage in any misconduct. He's the one who brought the issue with the first sample to his supervisor."

## Internal affairs case.

The attorney had not heard the allegation that Lentz told co-workers he intentionally used the wrong solution of chemicals, but he maintained that Lentz did nothing wrong.

Instead, the lawyer said, Lentz was trying to figure out why the contamination during the DNA test of the switchblade and bloody clothes seemed to match DNA from a co-worker in a separate area of the lab. To weed out bad results, everyone with access to any part of the lab has a DNA profile on file, including the cleaning staff, Cagle said.

"I don't know if they're

catch the fraud that was committed."

Lentz's attorney said the former technician did nothing wrong, and quit after being told he would be reassigned while the inves-

making him a scapegoat for something or what," Cagle said. "He told me there was no plausible explanation for her DNA to be in there."

Dan Garner, executive director of the civilian forensic corporation, said the investigation surrounding Lentz was handled by Houston police internal affairs before the lab was transferred in April.

"They had good systems in place, and are fully accredited, and that goes to a quality assurance program that is robust and makes sure things are reviewed and double-checked and triple-checked before they go out the door," Garner said. "That's the way HPD set it up, and I think they did a good job."

He said the investigation was appropriate, and he does not expect any further action to be taken.

brian.rogers@chron.com
twitter.com/brianjrogers

# More HPD cases are in peril

## Investigation finds evidence of lying, tampering by ex-lab technician

**By Brian Rogers**

Scores of pending criminal cases and past convictions could be in jeopardy in the wake of revelations that a former Houston Police crime lab technician resigned after an internal investigation found evidence of lying, improper procedure and tampering with an official record.

Former DNA lab technician Peter Lentz worked on 185 criminal cases, including 51 murders or capital murders, according to letters sent out by the Harris County District Attorney's Office and obtained by the Houston Chronicle through an open records request.

"It's a mess," said Gerald Bourque, an attorney who has several cases in which Lentz tested the DNA evidence, including two capital murder cases, one of which went to trial this year. "If you're not following protocol, there's potential for contamination, transference, all kinds of stuff."

This is the latest in a series of problems to surface in recent months at HPD. A city-commissioned study showed the department failed to investigate 20,000

***HPD continues on A8***

# HPD control of crime lab transferred

*HPD from page A1*

crimes with workable leads.

Earlier this year, Harris County prosecutors identified nearly two dozen criminal cases that could be in jeopardy after they linked them to a Houston homicide detective fired for lying and conducting shoddy investigations.

The disclosure about the technician's resignation comes as control of the perennially troubled lab was transferred in April from HPD to a civilian-led board of directors.

## Testing suspended

In 2002, forensic testing at the lab was temporarily suspended because of a number of serious management, employee and structural problems, including a leaky roof that for years dripped water on stored evidence. There was also a backlog of untested rape kits, which at one point totalled 6,600, and persisted until August 2013 when the work was outsourced.

HPD spokesman Victor Senties said Lentz worked for the lab from January 2012 until he resigned in March 2013. He said the department investigated Lentz and forwarded the findings to the district attorney's office. He said the department would not release any further information about the allegations against Lentz or comment on the situation.

Lentz could not be reached for comment.

The district attorney's office in April and May sent notices to alert defendants and their attorneys that Lentz falsified a worksheet, failed to recalibrate a machine and was untruthful. A Harris County grand jury investigated the technician for tampering with a gov-

## By the numbers

**185:** cases affected (172 felonies)
**51:** capital murder/murder cases
**57:** guilty pleas
**120:** still pending

may be affected.

One of those defense attorneys, Bourque, scheduled a hearing Thursday on the issue. He is expected to question prosecutors about whether there are other cases in which protocol was not followed and about other possible problems with the technician and the lab.

Bourque questions whether anything Lentz touched can be used as evidence, even if it is retested.

"I don't know how they can rely on anything," Bourque said. "If you can't eliminate that there may have been contamination or transfer, what difference does it make if you retest it?"

Assistant Harris County District Attorney Jennifer Falk, who has two capital murder cases that are affected by the allegations including Bourque's, said the office is looking at all of the technician's cases and retesting anything it has doubts about.

"If the evidence has been tainted to such a degree that we don't have confidence in it, then of course we're not going to use it," Falk said.

But, she said, she expects most of the issues with the DNA samples can be remedied by retesting.

## Civilian oversight

Last year, Mayor Annise Parker received City Council backing to transfer management of the scandal-plagued lab from HPD to a government corporation — a nine-member independently appointed board — and make a forensic scien-

The district attorney's office in April and May sent notices to alert defendants and their attorneys that Lentz falsified a worksheet, failed to recalibrate a machine and was untruthful. A Harris County grand jury investigated the technician for tampering with a government record but did not indict him on any charge, according to the letter.

By law, prosecutors have to disclose evidence that could be helpful to the defense.

Because the department would not answer questions about the investigation, the allegations remain unclear. The problem appears to have arisen over one case, but the technician's fingerprints are on dozens of others, leading defense attorneys to ask how their cases



al Cataract Month.

**Civilian oversight**

Last year, Mayor Annise Parker received City Council backing to transfer management of the scandal-plagued lab from HPD to a government corporation — a nine-member independently appointed board — and make a forensic scientist the executive director.

Control of the lab was transferred to Houston Forensic Science LGC on April 3. The lab employs 85 civilian lab workers and 48 HPD officers and still operates on the upper floors of the downtown HPD headquarters.

Chairman Scott Hochberg credited HPD with finding Lentz's mistake before the management of the lab was transferred to Houston Forensic LGC.

"It was caught by the normal process of full technical review, which every test now goes through," Hochberg said. He said the board was briefed earlier this month that the allegations involved one control sample in one case and was caught by a routine check.

# How billions

Apx 13f

# CITY/STATE

## Local exonerations fuel U.S. record

### Wrongful convictions in low-level Harris County cases account for about a quarter of total in national report

By Mike Tolson and Anita Hassan

Criminal exonerations often make big news because of the agonizing years that those falsely convicted have spent behind bars — sometimes under the specter of a death sentence.

But for those who keep track of them, it was a slew of low-level cases from Harris County that proved to be the most interesting among those recorded in 2014.

"The 33 exonerations in drug convictions in which issues had been raised over testing of the alleged illegal substances. Erroneous lab or field testing results had been involved in several Harris County exonerations in previous years.

The big jump over the previous year's total, occurred because of the efforts of the Harris County District Attorney's Office.

relatively minor drug possession cases pushed the nationwide total to 125 for the year, the highest ever recorded by the National Registry of Exonerations, whose annual report was released Tuesday.

Even if those cases were not counted, the 2014 total later proved to be not guilty of the charged crime. "The number of CIUs and the number of exonerations they generated increased to review numerous old drug convictions, many of which were drug cases or sexual assault cases. Six were homicides.

A major reason for the record number of exonerations is the impact of prosecutorial Conviction Integrity Units (CIUs), stated the report, which includes only cases where a convicted offender was dramatically in 2014. "These units were established in the wake of a series of high-profile exonerations brought about by expanded DNA testing. In some jurisdictions, public concern about sloppy testing procedures or bad police work led local district attorneys

10 erroneous convictions in federal courts. About 60 were homicides, half — 60 — were homicides.

Read more in Texas prisons spent years in Texas prisons for crimes they didn't commit.

at Chron.com/exonerees.

**40 Faces behind convictions**

»Learn about 24 people who spent years in Texas prisons for crimes they didn't commit, at Chron.com/exonerees.

*False continues on B3*

Apx 139

# False convictions often come when 'wheels of justice' move slowly

False from page B1

to institutionalize some internal method of finding bad convictions. One such unit in Brooklyn created in 2011 but beefed up under a new DA in 2014, had 10 exonerations last year, all murder convictions.

"Harris County is a totally different story," said Samuel Gross, a University of Michigan law professor who oversees the registry. "These were guilty pleas by people who were shown to be not guilty when test results came back."

### Chance for injustice

Murder and rape cases get the most attention when those convicted are exonerated. But by far the greater likelihood of injustice, numerically speaking, occurs in lesser offenses, both felonies and misdemeanors, Gross said. What the Harris County exonerations show is that the accused often are willing to plea either to get out of jail or speed up the resolution of their cases, he said.

"I don't have a solution," Gross said. "But I can see how to start crafting one. To drug cases? The drug cases are easy. But what about everybody else? That's a harder problem. I don't think we can say it's impossible until we try to deal with it."

Inger Chandler, chief of the Harris County District Attorney's Office conviction review section, said she believes problems in

drug cases are not unusual. She began looking at drug convictions when a newspaper reporter from Austin called her in 2013 to inquire about a dozen cases that had been overturned by the Texas Court of Criminal Appeals because lab testing showed that the substance tested was not an illegal drug. What she found troubled her.

"I literally found cases, with just the handful that I had been asked to look at, where I found a problem at every single stage," Chandler said. "It wasn't like I found the same clog in every case, but what alarmed me was because there were so many steps, it increased the possibility that something might be missed."

Chandler's unit reviewed 130 to 150 drug cases in which there were questions about lab results. She hoped to identify patterns in them and learn why mistakes were occurring, but there was no simple flaw.

Information on these drug cases passed through many people, from the crime laboratories to the defense attorneys to prosecutors and the court.

"In my opinion, there were way too many places where the information was changing hands, where the information could fall through the cracks and was falling through the cracks," Chandler said.

### A $40,000 check

One case in particular that bothered her was that of a woman who spent six months in a state jail on a drug case in which she pleaded guilty before an indictment. When the lab report came back, it showed the evidence was not a controlled substance. That woman then received a $40,000 check from the state for reparations.

Another 40 Harris County convictions were dismissed after Chandler's unit found testing problems, according to the report. Those dismissals did not meet the standard of exoneration, however, be-

cause of other evidence of guilt.

The number of bad convictions could be reduced, Gross said, if they can be in pretrial custody, results are turned in before the person charged pleaded guilty, Chandler said.

"But that is easier said than done."

Because of the volume of tests to be done, months can pass before results come in. And because many defendants cannot make bail and might not be eligible for a recognizance bond, they remain in jail.

Between January 2013 and November 2014, the DA's office handled just under 8,000 felony drug cases that were disposed of through plea agreements. Roughly half of those pleas occurred before an indictment was returned, Chandler said. She did not have figures for misdemeanor



drug cases.

"It could be that pretrial release is a key to this problem," Gross said. "If they can be in pretrial custody, longer than the sentence they would get at trial, that is something that has to be changed."

Even where that is not the case, the speedy testing of all suspected drugs is crucial, he said, arguing that a more robust testing system only requires more resources to be allocated. The more vexing issue is low-level offenses where no simple test can prove guilt or innocence.

### Opting out

People awaiting trial in Harris County jail often receive cursory legal counsel early on and often have little idea when their cases might be resolved. If they insist on a trial, the wait can

be much longer.

"We don't know the rate at which people who are not guilty plead guilty to low-level crimes," Gross said. "No one would plead guilty for a crime they didn't commit except those who believe there is a substantial chance of getting convicted anyway, or the cost of going through that on their lives is so high they opt to get out as quickly as possible."

Injustice on some level likely is part and parcel of the wholesale processing of defendants, he said. There may be a fix, he said, if someone spent enough time thinking about.

"I think it's possible to come up with one," he said. "It could be done, maybe. No one has tried."

*mike.tolson@cbron.com*
*anita.hassan@cbron.com*

SEARCH     LOG IN | REGISTER

DAILY LISTINGS FOR THE WEEK-MINDED

DOWNLOAD OUR NEW CHRONICLE CALENDAR APP FOR IOS AND ANDROID

HOME    NEWS    FOOD    MUSIC    SCREENS    ARTS & CULTURE    DAILY    CALENDAR    SPECIAL    PROMO    ADS    CLASSIFIEDS    DATING

MUSIC POLL BALLOT | NEW YEAR'S GUIDE | WISH LIST | FREE WEEK | MASTER PANCAKE MOVIE NIGHT | AC CALENDAR APP | NEWSLETTERS

DOWNLOAD OUR CHRONICLE CALENDAR APP FOR IOS AND ANDROID

FEATURED CONTENT


**news**
Top 10 Local Stories: The top 10 Austin-Area Stories


**food**
The 2014 Tastes We Couldn't Stop Thinking About


**music**
The Best Albums of Our Lives – and the Afterlife


**screens**
The Year in Film: *Chronicle* Critics Throw In for *Boyhood*


**arts**
Top 10 Creative Things I Lucked Into in 2014

## news

# Justice for HPD Lab Victim?

Josiah Sutton waits on state leaders to clear his name

BY JORDAN SMITH, FRI., APRIL 16, 2004

Harris Co. District Judge Joan Huffman on April 12 recommended the Court of Criminal Appeals vacate the rape conviction of 22-year-old **Josiah Sutton**, who was falsely imprisoned for four years for a rape he did not commit before DNA evidence exonerated him last year. Sutton was convicted based on faulty DNA testing conducted by the now-infamous and recently reorganized Houston Police Department crime lab. Although Sutton was exonerated and released from jail, he will remain a convicted felon unless the CCA or the Board of Pardons and Paroles steps in to wipe the slate clean.

State Sen. **Rodney Ellis**, D-Houston, applauded Huffman's decision and chastised the BPP for its failure to act on Sutton's behalf – the board "has chosen to sit idly by, claiming that it is limited by self-imposed procedural guidelines," he said in a press release. If the court and BPP fail to act, lawmakers may come to Sutton's aid, crafting legislation to erase his conviction, similar to a move legislators undertook last spring to clear the records of 13 defendants from the infamous Tulia drug sting. "The incarceration of innocent persons is a threat to the integrity of our entire criminal justice system, and we should therefore take all steps to rectify the problem," said Ellis, while renewing the call for lawmakers to create an innocence commission to study cases of false imprisonment. A revenue-neutral bill that would've created such a commission languished in committee last spring.

### Naked City
Headlines and happenings from Austin and beyond
BY MIKE CLARK-MADISON

**Bitter Buzzing in Bee Cave**
Local politicos, enviros sting each other over controversial mall project
BY AMY SMITH

**Tomatown Suits Go Forward**
A Travis Co. judge declines TRMPAC's motions for summary judgment
BY MICHAEL KING

**Which Austin Congressman?**
Which Austin Congressman?
BY MIKE CLARK-MADISON

**Canchola, McNeill Triumph**
Canchola, McNeill Triumph
BY MIKE CLARK-MADISON

**Justice for HPD Lab Victim?**
Josiah Sutton waits on state leaders to clear his name
BY JORDAN SMITH

**Jim Bob, Gettin' Paid Again**
Times may change, but Moffett's gargantuan salary remains a constant
BY ROBERT BRYCE

**Scalia's Dirty Little Secrets**
The justice's favorite kind of government is one you can't see
BY JORDAN SMITH

**Demographic Change Shapes AISD Bond Debate**
Is the district really growing? And will $420 million be spent in the right place?
BY RACHEL PROCTOR MAY

**Tax Laws? What Tax Laws?**
Corporations still get very gentle treatment from the IRS
BY JORDAN SMITH

**Texas to World: Drop Dead!**
The world court sides with Mexican nationals on death row
BY RITA RADOSTITZ

**UT Bus Battle Turns Nasty**
Shuttle drivers fired after taking part in student solidarity protest
BY JORDAN SMITH

## FOLLOW US

## READMORE

KEYWORDS FOR THIS STORY
Josiah Sutton, innocence commission, Rodney Ellis, Board of Pardons and Paroles, Court of Criminal Appeals, Joan Huffman

MORE NEWS
Awaiting the New Rules at TCSO
Sheriff's Office awaits implementation of Priority Enforcement Program
TONY CANTÚ, FRI., JAN. 2, 2015

NEWS ARCHIVES ›

MORE BY JORDAN SMITH
"Chrome Underground" Goes Classic Car Hunting
Motoreum's Yusuf & Antonio talk about the biz end their reality TV debut
THU., MAY 22, 2014

ALL STORIES BY JORDAN SMITH ›

NEWS ARCHIVES ››



## PHOTOGALLERIES



1) Subject's Name: (Please Print)

LAST _Berry_

FIRST _Tyrone_ MIDDLE

2) SID Number: _TX 04583148_

3) Sex: ☑ Male ☐ Female    4) Race: ☐ Caucasian
☐ Hispanic
☑ African American
☐ Asian
☐ Other

5) Subject's Date of Birth: _05·04·66_

6) Subject's Signature: _Tyrone By_

7) Subject's Thumbprint:

| Left | Right |
|------|-------|

8) Offense of Record: _Sex. Asslt Child 14-17_

9) Date Sample Collected: _5·25·05_

10) Collected By: _J.C. Delrymple_
Name (Printed)

_(signature)_
(Signature)

I hereby certify that I have been properly trained in restricted DNA sample collection procedures and that this restricted DNA specimen was taken in compliance with current DPS guidelines.

11) Agency Name: _Harris Co Sheriff Dept._

12) Agency Phone Number: _713 755 7334_
LAB-13R

DNA0TX(BS): DCC.1 11/0

18

## "EVIDENCE RECORDS AFFIDAVIT"
Tyrone Berry / Cause # 1019634

STATE OF TEXAS )(

COUNTY OF HARRIS )(

My name is Q. Thigpen.

I am employed as the property and/or evidence records custodian for the Harris County

Sheriff's Office, my address and telephone number is 601 Lockwood Dr., Houston,

Texas 77011, (713) 967-5709. In my capacity as property and/or evidence records

custodian, I have care and custody of those records for Harris County Sheriff's Office

Evidence/Property Room and I certify that the following reflects the status of property

and/or evidence related to: Houston Police Department offense report number 30415605-N

and/or cause # 1019634 in the 180th District Court. The offense date is on or about

02/25/2005.


(please select and complete the proper category)


☐ ~~According to the records of the Harris County Sheriff's Office, on          the following~~

~~evidence in relation to Harris County Sheriff's Office offense report #          and/or~~

~~cause #          was destroyed:~~

☒ The records of the Harris County Sheriff's Office reflect that the Harris County Sheriff's

Office never received and is not presently in possession of any property and/or evidence

from offense report # 30415605-N and/or cause # 1019634.


(continued on page 2)


131

☐ ~~According to the records of the Harris County Sheriff's Office, the following property~~
~~and/or evidence from Harris County Sheriff's office offense report #     and/or~~

~~cause #      is in the custody of the Harris County Sheriff's Office      .~~

☐ ~~According to the records of the Harris County Sheriff's Office, the following property~~
~~and/or evidence in relation to Harris County Sheriff's Office offense report #     and/or~~
~~cause #      was received on     but was released to     on     .~~

"I have completed and read the above affidavit and have found it to be true and correct to the best of my knowledge."

SIGNED: _____

SUBSCRIBED AND SWORN TO before me the undersigned authority on this _23_ day of _May_ , 20_13_

_____
NOTARY PUBLIC FOR HARRIS COUNTY

LYNDALL K. BARR
Notary Public
STATE OF TEXAS
Commission Exp. 11-09-2013

# ANN LEE MOSELEY
Attorney and Counselor at Law
1425 N. Durham, Houston, Texas 77008
phone: 713-677-0765 fax: 713-677-0754

LEGAL MAIL

April 28, 2014

Tyrone Berry, TDCJ# 01368050
Diboll Correctional Center
1604 South First Street
Diboll, Texas 75941

Mr. Berry:

Enclosed you will find my Motion to Withdraw from Representation and brief in support thereof. I am also including as a courtesy a copy of the entire record from this case, which consists of one volume. Finally, I am including a Motion for Extension of Time Within Which to File Appellant's Brief.

After a thorough review of the record, I have concluded there is nothing of merit to argue on appeal regarding the trial court's denial of your request for additional DNA testing. As such, I have filed what is commonly called an *Anders* brief.

You may still file a *pro se* brief in this matter. I have included the record so that you can review it and make a determination whether to proceed with a *pro se* appeal. This should typically be done within 30 days, however I have provided you with a Motion for Extension of Time Within Which to File Appellant's Brief.

Once the Court of Appeals has issued their opinion in this case (based on the *Anders* brief, or on any *pro se* brief you file), and depending on the outcome, you may want to continue to ask for review by filing a *pro se* Petition for Discretionary Review (PDR). A PDR is filed with the Court of Criminal Appeals, asking them to review the Court of Appeals decision.

Be advised, though, that the Court of Criminal Appeals will not just review a case because you ask them to do so. The Court of Criminal Appeals will only review cases for error if there is a disagreement in the law or an issue of constitutional dimensions.

If you choose to file a PDR, you must do so within 30 days of the date the Court of Appeals issues their opinion in your case, or the day the last timely motion for rehearing was overruled by the Court of Appeals had one been filed. Texas Rule of Appellate Procedure 68 sets forth guidelines for filing a PDR.

A PDR must be filed in the Court of Criminal Appeals, P.O. Box 12308, Austin, Texas 78711.

Sincerely,

Ann Lee Moseley

Thus, because there is no arguable ground to be raised in this appeal of the trial court's denial of relief following DNA testing in this case, the undersigned believes that an appeal of the trial court's order denying retesting in this case is wholly frivolous.

A copy of the entire appellate record (which consists of one volume of the Clerk's Record), and a copy of this brief has been mailed to the Appellant on April 27, 2014, as well as a Motion to Withdraw. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967) and *Stephens v. State*, 35 S.W.3d 770, 771 (Tex.App.-Houston [1st Dist.] 2000, no pet.)(motion to withdraw pursuant to *Anders* brief is properly directed to the appellate court, not the trial court).

Should this Court grant the undersigned's Motion to Withdraw, the undersigned will inform the Appellant of the result of his appeal and will also inform the Appellant that he may, on his own, pursue discretionary review in the Court of Criminal Appeals. *See Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex.Crim.App. 1997).

## V.

PETITIONER further requests that new buccal swabs from him be obtained pursuant to a new warrant signed by this Court and that the taking of such swabs be done only in the presence of his undersigned attorney of record, Leah M. Borg.

## VI.

PETITIONER therefore requests that this Court set this matter for a hearing thereon to determine:

1. that evidence still exists in a condition making D. N. A. testing possible and to determine the entities ( and contact information) in possession of all such evidence;

2. that the evidence in possession of such entities has been subjected to a chain of custody sufficient to establish that it has not been tampered with, replaced, or altered in any material respect;

3. that identity is an issue in the underlying criminal case;

4. that PETITIONER was the lone accused and as such, would not have been found guilty if exculpatory D. N. A. testing results would have been obtained;

5. the request for and performance of new D. N. A. testing would not unreasonably delay the execution of PETITIONER'S sentence or the administration of justice since PETITIONER is presently serving the sentence assessed in the underlying criminal case;

6. the Lab Report from Identigene, which performed the original D. N. A. testing in 2005, indicates the possibility, if not probability, of contamination in the testing procedures.

PETITIONER requests that this Court, should it determine and order that PETITIONER is not entitled to new D. N. A. testing and denies the relief requested herein, that this Court make

written findings of fact and conclusions of law at the conclusion of the hearing in order to
preserve any issues for appellate review.

WHEREFORE, premises considered, the PETITIONER prays that this Court grant all relief requested herein and for such and other relief, whether general or special, at law or in equity, to which this Court deems PETITIONER justly entitled.

Respectfully submitted,

LEAH M. BORG
ATTORNEY FOR PETITIONER, TYRONE BERRY
874 YORKCHESTER NO. 123
HOUSTON, TEXAS 77079
TEL. & FAX: 713-468-3618
TEXAS BAR NO. 02667800

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and forgoing Motion was mailed/ delivered to the Assistant District Attorney, Baldwin Chin, on the 20 day of July, 2012.

LEAH M. BORG

6

DISTRICT COURT ADDRESS:
KATHLEEN POWERS CRIM. DIV.
CRIMINAL JUSTICE CENTER
1201 FRANKLIN 18th FLOOR
HOUSTON, TEXAS 77002

Apx 22

Re: TYRONE BERRY V. STATE OF TEXAS
   COA No. 14-13-0084 CR
   TRIAL COURT No. 1019634    180th DISTRICT COURT

DEAR MS. POWERS,
   GREETINGS! I HOPE THIS LETTER FINDS YOU IN THE BEST OF HEALTH AND SPIRIT. I AM WRITING YOU TODAY TO ASK THAT YOU PREPARE AND TRANSMIT TO THE COURT OF APPEALS FOR THE FOURTEENTH DISTRICT THE REPORTER'S RECORD OF THE HEARING THAT OCCURRED ON THE 9th DAY OF AUGUST, 2013, WHERE THE PETITIONER'S MOTION FOR POST CONVICTION FORENSIC DNA TESTING WAS DENIED IN THE 180th DISTRICT COURT OF HARRIS COUNTY PURSUANT TO THE TEXAS RULES OF APPELLATE PROCEDURE RULE 34.6 (b) (3)

   THE APPELLANT BELIEVES IT IS IMPAIRITIVE THAT HE IS ABLE TO CLOSELY INSPECT THE ENTIRE REPORTER'S RECORD TO ENABLE HIM TO ESTABLISH EXACTLY WHAT TRANSPIRED AT SAID HEARING THAT DENIED HIS MOTION FOR POST CONVICTION DNA TESTING.

   THE ATTORNEY OF RECORD ON APPEAL IS ANN LEE MOSELY, ATTORNEY AND COUNSELOR AT LAW, WHO MAY BE CONTACTED AT, 1425 N. DURHAM, HOUSTON, TEXAS, 77008 PHONE No.: 713-677-0765 FAX: 713-677-0754. MS MOSELEY WILL BE ABLE TO CONFIRM THAT #1:

The Appellant Is Indigent And Is Entitled To A Free Copy Of The Reporter's Record Which Is To Be Paid For Through Funds Derived From The County's General Funds Account. T.R.A.P. Rule 20.1 (k).

#2. The Vital Importance And Significance The Reporter's Record Is In Establishing Facts That Can Be Brought To The Appellate Court For Review.

#3. The Egregeous Harm The Appellant Will Suffer By His Inability To Establish Facts For Review That Can Only Be Found In The Reporter's Record.

The Appellant Apologizes For This Late Request For The Record As Appellant's Court Appointed Attorney Has Filed An "Anders Brief" In This Case And The Appellant Is Filing A Pro-Se Direct Appeal.

The Appellant's Need For The Record Is An Urgent Issue Protected By His Right To Due Process And Implores This Reporter To Transmit The Record At Her Earliest Possible Convienence.

Thank You For Your Prompt Attention In This Important And Urgent Legal Matter.

Best Regards,

Tyrone Berry

Tyrone Berry #1368050
Diboll Correctional Center
1604 South First St,
Diboll, Texas 75941

cc: 14th District COA
Harris County District Clerk
Ann Lee Moseley Attorney

Kathleen O'Connor Powers,
Official Court Reporter
180th District Court
1201 Franklin, 18th Floor
Houston, Texas 77002

Apx 24

September 16, 2014

Tyrone Berry 1368050
Diboll CC S. First St.
Diboll TX 75941

RE: Trial Court Cause No. 1019634, State of Texas v Tyrone Berry

Dear Mr. Berry:

In response to your inquiry postmarked 11 SEP 2014 and received in my office September 16, 2014, there is no reporter's record for August 9, 2013 for the above-referenced case.

Thank you,

Kathleen O'Connor Powers,
Official Court Reporter

CC: Court file Cause No. 1019634

THE STATE OF TEXAS VS.

Jynnie Berry

10 19624

180TH D.C.

No Permission

## GENERAL ORDERS OF COURT

8-9-13

~~Defendant not present~~ appeared in person

with Counsel _Zack Berry_

_____ Appeared for the State

Court Reporter _____

Judge Presiding _Mark W. Baker_

At this time having reviewed all the evidence the Court orally Denied Petitioner's 1st Amended motion for Enhance DNA Testing

8-9-13 Petitioner filed Pro-se notice of Appeal of the 8-9-13 Oral Ruling on Petitioner forensic DNA testing

164

Cause No. 1019634

IMb/141480
APx 26
P8

APx 38

TYRONE BERRY                        §        IN THE DISTRICT COURT OF

v.                                  §        HARRIS COUNTY, TEXAS

THE STATE OF TEXAS                  §        180TH JUDICIAL DISTRICT

PETITIONER'S FIRST AMENDED

MOTION FOR FORENSIC D. N. A. TESTING

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TYRONE BERRY, PETITIONER in the above entitled and numbered

cause and pursuant to Chapter 64 of the Texas Code of Criminal Procedure, files this "First

Amended Motion for Forensic D. N. A. Testing," requesting this Honorable Court to grant

approval of D.N.A. testing of evidence previously obtained in this cause. In support whereof, the

PETITIONER would show the following:

**FILED**
Chris Daniel
District Clerk

JUL 2 0 2012

Time: _____ Harris County, Texas

I.

PETITIONER asserts that, as a person convicted of sexual assault, he has the right,

under Chapter 64 of the Texas Code of Criminal Procedure, to request that post-conviction

forensic D.N.A. testing be done for the following reason:

1. Some evidence was previously tested in May 2005, but now, in July 2012, there are better

ways to test for D. N. A. that could provide more accurate results than the results of the previous

test(s). Further, some of this evidence, namely buccal swabs, is purported to have been taken

from PETITIONER on March 29, 2005, were taken without the presence of PETITIONER'S

attorney, Rick Detoto, to observe and make certain that the "warrant" to take such evidence from

PETITIONER was a valid warrant, and further, to make certain that the methodology and

1

Complainant's Panties – Sperm Cell Fraction

♦ a mixture of DNA from at least two individuals was obtained from the sperm cell fraction of the panties

♦ the DNA profile of the defendant is consistent with the major component

♦ the defendant cannot be excluded as the DNA donor to the major component of the mixture contained from the sperm cell fraction of the panties

♦ the frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in 51,000,000,000,000,000 in African American, Caucasian and Hispanic populations

♦ the complainant cannot be excluded as a possible contributor to the minor component of this mixture

♦ alleles foreign to both the complainant and the defendant were observed in the minor component of this mixture.

*See May 31, 2005, Identigene Forensic Report #68272, attached hereto as State's Exhibit H.*

## V.

## The Defendant is Not Entitled to Forensic DNA Testing

According to TEX. CODE CRIM. PROC. art. 64.01, a convicted person may request forensic DNA testing only of evidence that was either 1) previously untested, or 2) previously tested, but could now be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test. TEX. CRIM. PROC. CODE art. 64.01. In this case, DNA testing was performed in 2005 by the Houston Police Department Crime Laboratory and Identigene. The defendant makes no showing that there are newer testing techniques available that would provide a reasonable likelihood of results that are more accurate and probative than the results generated previously.

Furthermore, to be entitled to any additional DNA testing the defendant must also show that by a preponderance of the evidence, the defendant would not have been convicted if exculpatory results had been obtained through additional DNA testing. TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A). The defendant cannot meet this burden. Even if the only remaining evidence were subjected to DNA testing, defendant fails to show, nor does he even allege, how any possible result would exculpate him from this crime.

7

119

matched the DNA profile from the complainant; and that the complainant cannot be excluded as the DNA donor to the epithelial cell fraction of the panties.

19.     The Court finds, based on the Identigene lab report, that a mixture of DNA from at least two individuals was obtained from the sperm cell fraction of the panties and that the DNA profile of the defendant is consistent with the major component of the mixture. The defendant cannot be excluded as the DNA donor to the major component of the mixture contained from the sperm cell fraction of the panties, and the frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in 51,000,000,000,000,000 in African American, Caucasian and Hispanic populations. The complainant cannot be excluded as a possible contributor to the minor component of this mixture. Alleles foreign to both the complainant and the defendant were observed in the minor component of this mixture.

20.     The Court finds that the defendant fails to show that the evidence in his case was either 1) previously untested, or 2) previously tested, but could now be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.

21.     The Court finds that the defendant fails to show, by a preponderance of the evidence, that the defendant would not have been convicted if exculpatory results were obtained through additional DNA testing.

22.     The Court finds that the defendant is not entitled to additional forensic DNA testing under Chapter 64, TEXAS CODE OF CRIMINAL PROCEDURE.

4

2. a buccal swab sample was taken from you and from this sample a full DNA profile for you was also obtained;

3. a mixture of male and female DNA was obtained from the sperm cell fraction of the vaginal swabs and you could not be excluded as a contributor to the mixture;

4. a mixture of male and female DNA was obtained from the sperm cell fraction of the panties alleged to have been worn by the complainant, and you again could not be excluded as the DNA donor;

5. although the report says DNA is obtained from at least two individuals, it means that DNA was definitely obtained from Brittney Smith and from you;

6. and, that you could "not be excluded as the DNA donor of the major component of the mixture obtained from the sperm cell fraction of the panties. The frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in 5.1 x $10^{16}$ in African American, Caucasian, and Hispanic populations (FBI database)." (This is like saying one chance out of several billion people)

The report says nothing about DNA from another male source being observed in any of the samples taken from the complainant.

Because of the report, I need to know from you whether there is another basis for attacking the DNA results, or if you have any facts that I can argue to make identity an issue and get new DNA testing done.

I have an unpublished opinion from the Court of Criminal Appeals on a Petition for Discretionary Review which I believe I can use to argue for new testing to be done. Therefore, it is important that you provide me with any facts that I can argue to the Judge of the 180th to get new testing done.

Also, I did see that you have alleged what could arguably be called a "set-up" by Sgt. Washington who was having an affair with your wife. Can you provide me with more information regarding the "set-up" so I can see if I can use that information?

I am also checking to see whether DNA testing techniques and methodology have changed sufficiently since 2005 so that I can also make the argument of newer and more accurate testing techniques require re-testing. Further, Identigene is no longer

No Information Regarding New Techniques Was Included In The Motion.

ALLELES FOREIGN TO BOTH BRITTNEY SMITH AND IPHONE DRAKE WERE OBSERVED IN THE MINOR COMPONENT OF THIS MIXTURE. OFFICIAL CLERK'S RECORD PAGE 144 "REPORT" FROM IDENTIGENE

2

Further, when the sample was taken from you (whether it was May or June 2005), were you in custody or out on bond? Did you see or get a copy of the search warrant (authorizing seizure/taking of the buccal swabs) that was signed by the Court in order to obtain the sample? Do you know why your attorney was not present? Was he in trial in another court? Did the officer give your attorney sufficient time to get to court for the taking of the swab or did he show up early before court begins and take the swab? Please provide me as much information as you can recall about what happened on this day. Depending on what you tell me happened, I may be able to use it to get new DNA testing for you. I have always been present when buccal swabs are taken from my client so that I can observe the procedure that officer uses and can make sure that no contamination occurs and nothing "shady" is done. I do not know whether the absence of your trial attorney alone is sufficient to get you new DNA testing, but I can add it to the list of reasons I am developing. _THE MOTION WAS FILED 07/20/12._

Also, as I indicated to you I would research the present methodology for DNA testing for any advances that have occurred since May 31, 2005 when this testing was done. I did find quite a few scientific papers that discussed contamination of the samples among other issues. When I read through the Identigene report in your case, I noticed that there was a statement regarding the testing done on the vaginal swabs which said there were: "…. Numerous possible additional alleles below threshold…" I do not know whether these alleles (like portions of chromosomes) are attributed to you or whether they are attributed to an unknown person(s); the report is unclear. It is my intent to argue that the presence of the alleles are indicative of contamination in the testing procedure and therefore you are entitled to new DNA testing.

I will keep working to try to get as many arguments as possible together to get you new DNA testing. _THE MOTION HAS ALREADY BEEN FILED_

I also wanted to let you know about a meeting I had with the District Attorney assigned to your case with respect to the DNA motions. He is obtaining additional documents and has requested specific information from HPD about the "property" or items that they may have retained for possible future DNA testing. He also indicated to me that he MIGHT (please note that this is not agreement on his part; only an indication that possibly/maybe) agree to future DNA testing. We are currently set for another status meeting at court on July 20, 2012, at which time I will know exactly where he stands, whether in agreement to or in opposition to future DNA testing. I will keep you informed if he agrees to DNA testing before that date and let you know the outcome of that meeting.

*Handwritten margin note (left side, vertical):* BLATANT LIE AS SURE NOT ONLY WAS THE MOTION ALREADY COMPLETED BUT DID NOT SUBMIT ANY W/MOTION.

*Handwritten margin note (lower left, vertical):* BLATANT LIE AS SURE NOT ONLY WAS THE MOTION ALREADY COMPLETED — IT WAS FILED ON THIS DAY.

*Handwritten margin note (right side, vertical):* THE MOTION WAS FILED ON THIS DATE. THEREBY STARTING THE "CLOCK" AT WHICH THE COURT MAY PROCEED AFTER 60 DAYS REGARDLESS OF THE STATE'S RESPONSE. 64.02 (A) STATE'S RESPONSE.

*Handwritten bottom right:* 7

| Court Number | Case Number | Defendant's Name | (Post-Conviction Mot. for DNA Testing) |
|---|---|---|---|
| 1804 | 1019634 | TYRONE BERRY | |

CORRESPONDENCE TO Δ @ ~~JAIL VISITS~~ TDCJ-ID : (5.75 HRS)

| DATE | INTERVIEW TIME - BEGIN | INTERVIEW TIME - END | WAIT TIME |
|---|---|---|---|
| 3-17-2012 | 4 PM - 5 PM | 3-17-2013 (4 PM - 5 PM) | |
| 5-15-2012 | 1 PM - 2:30 PM | 8-17-2013 (6:30 PM - 7:30 PM) | |
| 10-9-2012 | 3:30 PM - 4:15 PM | | |
| 12-17-2012 | 3 PM - 3:30 PM | | |

"STATUS" COURT ~~APPEARANCES~~ ~~WITNESS INTERVIEWS~~ → APPEARANCES (14)

| DATE | INTERVIEW TIME - BEGIN | | INTERVIEW TIME - END |
|---|---|---|---|
| 3-30-2012 ; 4-20-2012 ; 7-20-2012 ; 9-28-2012 ; 11-9-2012 ; 12-14-2012 | | | |
| & | | | |
| 2-8-2013 ; 3-8-2013 ; 4-19-2013 ; 5-17-2013 ; 6-21-2013 ; 7-12-2013 ; | | | |
| 7-19-2013 ; 8-9-2013 | | | |

### RECORDS RESEARCH (1.5 HRS)

| DATE | BEGIN TIME | END TIME | DESCRIPTION OF ACTIVITY |
|---|---|---|---|
| 2-14-2012 | 11:30a - | 1 PM | @ Dist. Clerk's Ofc to review Court file |
| | | | |
| | | | |
| | | | |

### LEGAL RESEARCH (2 HRS)

| DATE | BEGIN TIME | END TIME | GENERAL TOPIC |
|---|---|---|---|
| 3-28-2012 | 3 PM - 4 PM | | Research challenging identity Blackstock case (PD = 1639) 11-40-06 |
| 4-16-2012 | 12:45 p - 1:45 PM | | DNA testing / methodologies |
| | | | |
| | | | |
| | | | |

### OTHER (3.5 HRS)

| DATE | BEGIN TIME | END TIME | DESCRIPTION OF ACTIVITY |
|---|---|---|---|
| 7-18-2012 | 4 PM - 6:30 PM | | Prepare Δ's 1st Amended Motion for DNA Testing |
| 6-26-2013 | 6 PM - 7 PM | | Review State's Motion to Deny DNA Testing |
| | | | |
| | | | |

### PERSONAL INFORMATION

| Social Security Number (last 4 digits only) | Telephone Number | Bar Card Number |
|---|---|---|
| XXX - XX -7806 | (713) 468-3618 | 02667800 |

Mailing Address (Number, Street, Suite, City, State, Zip Code)
874 YORKCHESTER #123 HOUSTON TX 77079

### CERTIFICATION

I, LEAH M. BORG , swear or affirm that the Harris County Auditor may rely upon the information contained above to make payment according to the fee schedule adopted by the Board of District Judges Trying Criminal Cases pursuant to Texas Code of Criminal Procedure Art. 26.05. I further swear or affirm that I have not received nor will I receive anything of value for representing the accused, except as otherwise disclosed to the Court in writing.

SWORN ~~TO AND SUBSCRIBED~~ BEFORE ME ON THIS THE 05 DAY OF Sept A.D. 20 13

Approved _____

_____
Judge, Presiding

_____
District Clerk Deputy (Signature)

_____
Attorney at Law (Signature)

LEAH M. BORG
Attorney Name (print legibly)

COURT

APx
33

# GENERAL ORDERS OF THE COURT

DEFENDANT WAIVED ARRAIGNMENT AND FORMAL
READING OF THE INDICTMENT, IN OPEN COURT

PLEADED ___

~~Was waived by Defendant in person and in return to said court waiver against~~
~~the Court and consented to and approved in writing by said~~
~~said guilty in appearing to the Court in the State, t. ~~
~~of the consequences of said plea Defendant persists in pleading guilty or~~
~~judgment & plea entered; adjudged guilty, penalty, recommendation of the State~~ 10 yrs-TDCJ-ID

The court found the defendant guilty and assessed punishment: 10 yrs

Sentence to begin on ~~State~~ with 70 days credit.

"Appeal waived. No permission to appeal granted."

MAY 17 2013 Reat 6-14-BoCh____

JUN 21 2013 Reat 6-28-13 ONER

7-12-13 Reat 7-19-13 OTAR

7-19-13 Reat 8-8-13

8-8-13 Reat 8-9-13

8-9-13 Ct denied petitioners 1st amended motion for forensic DNA testing

APx
34

| THE STATE OF TEXAS VS. BERRY, TYRONE | Bond: $60,000 |
|---|---|

THE STATE OF TEXAS VS. BERRY, TYRONE
Cause No.: 101963401010-3   Court: 180th
Offense: SEX ASSLT CHILD 14-17          Level: 2nd Degree Felony
Charging Instrument: Felony Indictment

GENERAL ORDERS OF THE COURT

Bond: $60,000
Next Setting:
Case Disposition: Disposed
Case Status: Complete
Defendant Status: Disposed

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |
| 5/2/2006 | Plea Guilty And Sentenced, 4/20/2012 09:00 AM Other |
| 4/20/2012 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 4/20/2012 | Reset By Agreement Of Both Parties 7/20/2012 09:00 AM Other |
| 7/20/2012 | Reset By Agreement Of Both Parties, 9/28/2012 09:00 AM Other |
| 9/28/2012 | Reset By Court, 11/09/2012 09:00 AM Other |
| 11/9/2012 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 11/9/2012 | Reset By Court 2/08/2013 09:00 AM Other |
| 2/8/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 2/8/2013 | Continued 3/08/2013 09:00 AM Other |
| 3/8/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 3/8/2013 | Reset Upon Prosecutors Request, 4/19/2013 09:00 AM Other |
| 4/19/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 4/19/2013 | Reset By Court, 5/17/2013 09:00 AM Other |
| 5/17/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 5/17/2013 | Reset Upon Defense Request, 6/21/2013 09:00 AM Other |
| 6/21/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 6/21/2013 | Reset By Court, 7/12/2013 09:00 AM Other |
| 7/12/2013 | Defendant BERRY, TYRONE did not appear. |
| 7/12/2013 | Reset By Agreement Of Both Parties, 7/19/2013 09:00 AM Other |
| 7/19/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 7/19/2013 | Reset By Court 8/09/2013 09:00 AM Other |
| 8/9/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA
Motions

Dear Mr. Berry:

Enclosed please find a courtesy copy of the amended DNA motion which I filed on
your behalf. You will see that it is more precise and fact-specific than the motion
previously filed in this case.

As you know, the DA and I were set for a status conference in your case on
September 28, 2012. Unfortunately, when I arrived in court, I was informed that
the DA was not in town and therefore was unavailable for the status conference.

Your case has therefore been reset; the new date is Nov. 9, 2012. This is not a
hearing date-only a status conference date.

I still have no information from the DA as to whether the DNA samples previously
taken still exist; where such evidence is located if it does exist; or, whether the DA
will be willing to agree to new DNA testing.

I do suspect that the DA is still waiting on information from law enforcement
agencies to provide him with the proper affidavits regarding the location of and the
chain of custody regarding the evidence in this case. I also suspect he is still
waiting for the same from Sorenson Forensics (previously known as Identigene).

Until he gets these affidavits, the DA cannot take any position in your case, other
than to assert that everything was done properly and be opposed to new DNA

4

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880                    Dec. 17, 2012

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA
Motions

Dear Mr. Berry:

This is to let you know what happened with respect to our last scheduled court
appearance on Friday, Dec. 14, 2012.

On Thursday, Dec. 13th, I was called by the Court's coordinator and was advised
that the D. A. had indicated that he still has not received the affidavits in your case.
The coordinator said it was not necessary for the D. A. and I to go to court the next
day, since there was nothing that could be done. *Could Have Gone To TCCP 64.02*
*If State Has Not Responded After 60 Days Court May Proceed To 64.03 Regardless.*
Therefore, since we are still waiting on the affidavits from the various agencies
that handled the evidence in your case, your case was reset.

*Lie*  These affidavits are absolutely necessary because they are supposed to advise the
Court of several things regarding the evidence. For example: that the evidence still
exists, that the evidence is in good condition for the taking of additional DNA
samples, whether DNA was taken from the evidence, where the evidence is now
located, etc…

*Obviously Lying*  Obviously, until these agencies provide the affidavits on your case, we can't get
any relief, i.e. new DNA testing and you remain convicted.

I can imagine that you are concerned and wondering why it is taking the various
agencies so long. Frankly, I was concerned enough to speak with the Court's

*No Appearance was EVER Scheduled On This Da-*
*See Original Clerk's Record Page 165. On This Date Paid*
*This Fictious Date By Attorney Was On 11/9/12 At A*
*Time This "Next" Scheduled Court Appearance" Was Sch*
*For 2/8/13. Meaning & Explanation In This Letter Is &Li*

*Not According To TCCP*
*Art 64.02 (a).*

C

Apx 5/(b)

coordinator and I asked her whether she thinks this is unusual for it to take so long. The coordinator advised me that she has noticed that these DNA motions are taking a very long time and that your situation was not unusual with regards to length of time.

As I believe I indicated to you previously, I was surprised that you had not made parole before you sought new DNA testing … so, if you find out that you are not being released on parole because of this pending DNA motion, you will need to decide whether you want to continue pursuing new DNA testing or whether you want to discontinue our efforts and get released on parole. (I mention this because I have heard rumors in the past that pending post-conviction matters have delayed the release of inmates on parole. I do not know if this is true, it is just what I have heard.)

Our next court date is Feb. 8, 2013. Hopefully, at that time, the D. A. will have the affidavits and we can get the Court to order new DNA testing for you. Unfortunately, you will have to be patient for just a bit longer.

Please write if you have any questions or concerns. Further, if you learn that this matter is preventing your parole out and you decide to give up pursuing new DNA testing, you must advise me of that decision in writing.

Very truly yours,

Leah M. Borg

[margin handwritten left:] THE MOTION HAS BEEN FILE ... TCCP 51.... COURT MAY PROCEED WHERE RESPONSE FROM STATE AFTER 60 DAYS

[margin handwritten right top:] THIS LAWYER JUST ADVISED HER CLIENT TO MAKE A DECISION BASE A RUMOR.

[margin handwritten right bottom:] IT APPEARS THE ATTORNEY IS TRYING TO COAX HER CLIENT INTO DROPPING THE DNA TESTING.

**LEAH M. BORG
ATTORNEY AT LAW
874 YORKCHESTER NO. 123
HOUSTON, TEXAS 77079
TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

No DATE

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA
Motions

Dear Mr. Berry:

This is to inform you that I have been appointed by the Court to represent you
regarding the various DNA motions you have filed.

I have read through the documents you filed, as well as the Court's file in this case
and have read through several post-conviction files of yours regarding various
writs you have filed. I have done this to best understand any basis for post-
conviction DNA testing.

Of particular importance to me was your statement that your trial attorney had
advised you that the DNA testing revealed that there were several sperm donors in
the sample that was tested. If correct, this would be extremely important in getting
new testing done.

I have obtained a copy of the report from Identigene which did the DNA testing in
your case in order to ascertain whether there was more than one sperm donor.

The report from Identigene says that:

1. samples were taken from Brittney Smith and the panties which she was alleged
to have worn; from the buccal sample, a full DNA profile of Brittney Smith was
obtained;

1

_When State was Appointe She Received it in Complete Official Record"_

2. a buccal swab sample was taken from you and from this sample a full DNA profile for you was also obtained;

3. a mixture of male and female DNA was obtained from the sperm cell fraction of the vaginal swabs and you could not be excluded as a contributor to the mixture;

4. a mixture of male and female DNA was obtained from the sperm cell fraction of the panties alleged to have been worn by the complainant, and you again could not be excluded as the DNA donor;

5. although the report says DNA is obtained from at least two individuals, it means that DNA was definitely obtained from Brittney Smith and from you;

6. and, that you could "not be excluded as the DNA donor of the major component of the mixture obtained from the sperm cell fraction of the panties. The frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in 5.1 x $10^{16}$ in African American, Caucasian, and Hispanic populations (FBI database)." (This is like saying one chance out of several billion people)

The report says nothing about DNA from another male source being observed in any of the samples taken from the complainant.

Because of the report, I need to know from you whether there is another basis for attacking the DNA results, or if you have any facts that I can argue to make identity an issue and get new DNA testing done.

I have an unpublished opinion from the Court of Criminal Appeals on a Petition for Discretionary Review which I believe I can use to argue for new testing to be done. Therefore, it is important that you provide me with any facts that I can argue to the Judge of the 180th to get new testing done.

Also, I did see that you have alleged what could arguably be called a "set-up" by Sgt. Washington who was having an affair with your wife. Can you provide me with more information regarding the "set-up" so I can see if I can use that information?

I am also checking to see whether DNA testing techniques and methodology have changed sufficiently since 2005 so that I can also make the argument of newer and more accurate testing techniques require re-testing. Further, Identigene is no longer

2

based in Houston and has merged with a company based in Utah. Identigene is now known as Sorenson Forensics. I am hoping that I can also use that to your benefit and get new DNA testing done.

$Apx\ 37(e)$

Please write and give me whatever information you have or you think I should know. Also, if you have any questions, feel free to ask and I will try to answer them for you.

On April 20, 2012, the DA and I have a status meeting with the Court to see what is happening with your case and whether it looks like there is a basis for requiring new DNA testing.... this is not a hearing on you motion, but rather a meeting so the Court knows that we are working on your case. I anticipate that at the meeting the Court will likely give us an actual court date for the DA and I to make our arguments. I will certainly let you know when that is occurring.

I look forward to hearing from you.

Very truly yours,

Leah M. Borg

3

3

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit                              No DATE
1391 F. M. 3328
Tennessee Colony, Texas 75880

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA
Motions

Dear Mr. Berry:

Enclosed please find the writ documents you provided to me for review. You
understand that I am not appointed to represent you for the purpose of any pending
writ, but for the purpose of the DNA motion. In other words, I am trying to get
new DNA testing done for you.

I did find the State's proposed findings and your notes interesting, especially with
regard to Nos. 27 and 59-60.

I have a redacted copy of the DNA testing that was done by Identigene and have
read through the actual unredacted report. (I have not been able to get a copy of the
complete report yet because of privacy rights of Brittney Smith). With respect to
No. 27, it appears your trial attorney examined the report from Identigene and did
not notice that the testing done on Brittney Smith's samples were dated May 10,
2005, so when the report states that there was an "identifiable major male
component of unknown origin" in the sperm cell fraction of the panties, I believe it
means that they did not yet have a DNA sample with which to compare it since the
DNA sample taken from you was not tested until May 31, 2005, three weeks later.

With respect to Nos. 59-60, are you saying that the DNA sample (buccal swabs)
were taken from you at court without the presence of your attorney on June 30,
2005? This date is nearly one month from the date on the Identigene Report!

6

Further, when the sample was taken from you (whether it was May or June 2005), were you in custody or out on bond? Did you see or get a copy of the search warrant (authorizing seizure/taking of the buccal swabs) that was signed by the Court in order to obtain the sample? Do you know why your attorney was not present? Was he in trial in another court? Did the officer give your attorney sufficient time to get to court for the taking of the swab or did he show up early before court begins and take the swab? Please provide me as much information as you can recall about what happened on this day. Depending on what you tell me happened, I may be able to use it to get new DNA testing for you. I have always been present when buccal swabs are taken from my client so that I can observe the procedure that officer uses and can make sure that no contamination occurs and nothing "shady" is done. I do not know whether the absence of your trial attorney alone is sufficient to get you new DNA testing, but I can add it to the list of reasons I am developing. THE MOTION WAS FILED 07/20/12.

Also, as I indicated to you I would research the present methodology for DNA testing for any advances that have occurred since May 31, 2005 when this testing was done. I did find quite a few scientific papers that discussed contamination of the samples among other issues. When I read through the Identigene report in your case, I noticed that there was a statement regarding the testing done on the vaginal swabs which said there were: "…. Numerous possible additional alleles below threshold…" I do not know whether these alleles (like portions of chromosomes) are attributed to you or whether they are attributed to an unknown person(s); the report is unclear. It is my intent to argue that the presence of the alleles are indicative of contamination in the testing procedure and therefore you are entitled to new DNA testing.

I will keep working to try to get as many arguments as possible together to get you new DNA testing. THE MOTION HAS ALREADY BEEN FILED

I also wanted to let you know about a meeting I had with the District Attorney assigned to your case with respect to the DNA motions. He is obtaining additional documents and has requested specific information from HPD about the "property" or items that they may have retained for possible future DNA testing. He also indicated to me that he MIGHT (please note that this is not agreement on his part; only an indication that possibly/maybe) agree to future DNA testing. We are currently set for another status meeting at court on July 20, 2012, at which time I will know exactly where he stands, whether in agreement to or in opposition to future DNA testing. I will keep you informed if he agrees to DNA testing before that date and let you know the outcome of that meeting.

BLATANT LIE AS SURE NOT ONLY HAD MOTION ALREADY COMPLETED BUT DID NOT SUBMIT ANY W/MOTION. IT WAS FILED ON THIS DAY.

THE MOTION WAS FILED ON THIS DATE. THEREBY STARTING THE "CLOCK" AT WHICH THE COURT MAY PROCEED AFTER 60 DAYS REGARDLESS OF THE STATE'S RESPONSE. 64.02 (A) STATE'S RESPONSE.

**ATTORNEY FEES EXPENSE CLAIM**
**DISTRICT COURTS-APPEALS**
UNDER ARTICLE 26.05, CODE OF CRIMINAL PROCEDURE
AS AMENDED

Show only one defendant per claim.
Before payment can be authorized, each item must be completed legibly in ink.
Forward completed claim to the presiding judge for approval.

| Court No. | Defendant Name | Case Number(s) | Charge |
|---|---|---|---|
| 180th | TYRONE BERRY | 1019634 | Agg. Sex. Assault |

| POST CONVICTION PROCEEDINGS | HOURLY RATE | TOTAL (presumptive max.) | AMOUNT (Judge Completes) |
|---|---|---|---|
| **NON-CAPITAL APPEAL** | | | |
| Appeal, Preparation of Motion for New Trial | $75 | $2,250 | |
| Appeal-Trial > 5 days or Transcript > 800 Pages, Preparation of Motion for New Trial | $75 | $4,500 | |
| New Brief After PDR Granted | $75 | $1,500 | |
| **CAPITAL APPEAL** | | | |
| Appeal-Death Penalty Not Sought, Preparation of Motion for New Trial | $100 | $4,500 | |
| Appeal-Death Penalty Sought, Preparation of Motion for New Trial | $100 | $18,000 | |
| New Brief After PDR Granted | $100 | $2,000 | |
| **PETITION FOR DISCRETIONARY REVIEW** | | | |
| Non-Capital | $75 | $750 | |
| Capital | $100 | $1,000 | |
| **ORAL ARGUMENT** | | | |
| Court of Appeals | | | |
| Non-Capital | $75 | $450 | |
| Capital | $100 | $600 | |
| Court of Criminal Appeals | | | |
| Non-Capital | $100 | $600 | |
| Capital Appeal, Death Penalty Given | $100 | $1,500 | |
| Capital Appeal, Death Penalty Sought, Not Given | $100 | $600 | |
| Capital Appeal, Death Penalty Not Sought | $100 | $600 | |
| Travel Expenses | | | |
| In Austin (no receipts required) | | $200 | |
| In Courts of Appeals other than Houston: Prior approval of Judge required (receipts required) | | | |
| ✱ DNA MOTION 12.75 HRS + 14 "status of appearances | $75 | $750 | 956.25 |
| 11.07 WRIT OF HABEAS CORPUS | $75 | $2,250 | |
| HEARING WITH TESTIMONY | $350/day | | |
| OTHER | | | |
| | | TOTAL $ | 956.25 |

**PERSONAL INFORMATION**

Social Security Number (last 4 digits only): XXX - XX - 7806
Telephone Number: (713) 468-3618
Bar Card Number: 02467800

Mailing Address (Number, Street, Suite, City, State, Zip Code)
874 YORKCHESTER #123 HOUSTON TX 77079

**CERTIFICATION**

I, LEAH M. BORG, swear or affirm that the Harris County Auditor may rely upon the information contained above to make payment according to the fee schedule adopted by the Board of District Judges Trying Criminal Cases pursuant to Texas Code of Criminal Procedure Art. 26.05. I further swear or affirm that I have not received nor will I receive anything of value for representing the accused, except as otherwise disclosed to the court in writing; and I wrote this brief and I am solely responsible for its contents.
SWORN TO AND SUBSCRIBED BEFORE ME ON THIS THE 05 DAY OF Sept A.D. 20 13

Approved _____
Judge Presiding

_____
Deputy District Clerk (Signature)

_____ Attorney at Law (Signature)
LEAH M. BORG
Attorney Name (print legibly)

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

COURT

| Court Number | Case Number | Defendant's Name | (Post-Conviction |
|---|---|---|---|
| 1804 | 1019634 | TYRONE BERRY | Mot. for DNA Testing) APX |

32

CORRESPONDENCE TO ∆ @ JAIL VISIT(8) TDCJ-ID ; (5.75 HRS)

| DATE | INTERVIEW TIME - BEGIN | INTERVIEW TIME - END | WAIT TIME |
|---|---|---|---|
| 3-17-2012 | 4 PM - 5 PM | | 3-17-2013 (4 PM - 5 PM) |
| 5-15-2012 | 1 PM - 2:30 PM | | 8-17-2013 (6:30 PM - 7:30 PM) |
| 10-9-2012 | 3:30 PM - 4:15 PM | | |
| 12-17-2012 | 3 PM - 3:30 PM | | |

"STATUS" COURT APPEARANCES/WITNESS INTERVIEWS → APPEARANCES (14)

| DATE | INTERVIEW TIME - BEGIN | INTERVIEW TIME - END |
|---|---|---|
| 3-30-2012 ; 4-20-2012 ; 7-20-2012 ; | | 9-28-2012 ; 11-9-2012 ; 12-14-2012 |

& 2-8-2013 ; 3-8-2013 ; 4-19-2013 ; 5-17-2013 ; 6-21-2013 ; 7-12-2013 ; 7-19-2013 ; 8-9-2013

**RECORDS RESEARCH** (1.5 HRS)

| DATE | BEGIN TIME | END TIME | DESCRIPTION OF ACTIVITY |
|---|---|---|---|
| 2-14-2012 | 11:30a - 1 PM | | @ Dist. Clerk's Ofc to review court file |
| | | | |
| | | | |

**LEGAL RESEARCH** (2 HRS)

| DATE | BEGIN TIME | END TIME | GENERAL TOPIC |
|---|---|---|---|
| 3-28-2012 | 3 PM - 4 PM | | Research Challenging identity Blacklock case CPD-1639/1640-016 |
| 4-16-2012 | 12:45 p - 1:45 PM | | DNA testing / methodologies |
| | | | |
| | | | |

**OTHER** (3.5 HRS)

| DATE | BEGIN TIME | END TIME | DESCRIPTION OF ACTIVITY |
|---|---|---|---|
| 7-18-2012 | 4 PM - 6:30 PM | | Prepare ∆'s 1st Amended Motion for DNA Testing |
| 6-26-2013 | 6 PM - 7 PM | | Review State's Motion to Deny DNA Testing |
| | | | |
| | | | |

**PERSONAL INFORMATION**

| Social Security Number (last 4 digits only) | Telephone Number | Bar Card Number |
|---|---|---|
| XXX - XX - 7806 | (713) 468 - 3618 | 02667800 |

Mailing Address (Number, Street, Suite, City, State, Zip Code)
874 YORKCHESTER # 123. HOUSTON TX 77079

**CERTIFICATION**

I, LEAH M. BORG , swear or affirm that the Harris County Auditor may rely upon the information contained above to make payment according to the fee schedule adopted by the Board of District Judges Trying Criminal Cases pursuant to Texas Code of Criminal Procedure Art. 26.05. I further swear or affirm that I have not received nor will I receive anything of value for representing the accused, except as otherwise disclosed to the Court in writing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS THE 05 DAY OF Sept A.D. 20 13

Approved _____

_____
Judge, Presiding

_____
District Clerk Deputy (Signature)

_____
Attorney at Law (Signature)

LEAH M. BORG
Attorney Name (print legibly)

COURT

## GENERAL ORDERS OF THE COURT

DEFENDANT WAIVED ARRAIGNMENT AND FORMAL
READING OF THE INDICTMENT, IN OPEN COURT

PLEADED _____

Was waived by Defendant in person and in writing in open court waiver approved
by the Court and consented to and approved in writing by State. Defendant
adjudged guilty in appearing to the Court in the State, in
the consequences of said plea. Defendant persists in pleading guilty in
accordance given entered; adjudged guilty, penalty, recommendation of the State

> 10 yrs TDCJ ID

The court found the defendant guilty and assessed punishment at _10yrs_

Sentence to begin on _9-30-12_ with _70_ days credit.

"Appeal waived. No permission to appeal granted."

MAY 17 2013    Court 6-14 Both

JUN 2 1 2013    Court 6-28-13 OTHER

7-12-13    Court 7-19-13 OTHER

7-19-13    Court 8-8-13

8-8-13    Court 8-9-13

8-9-13    Ct denied petitioners 1st amended motion for forensic DNA testing

APx
34

| THE STATE OF TEXAS VS. BERRY, TYRONE | Bond: $60,000 |
| --- | --- |
| Cause No.: 101963401010-3   Court: 180th | Next Setting: |
| Offense: SEX ASSLT CHILD 14-17          Level: 2nd Degree Felony | Case Disposition: Disposed |
| Charging Instrument: Felony Indictment | Case Status: Complete |
| | Defendant Status: Disposed |

## GENERAL ORDERS OF THE COURT

| Docket Sheet Entries | |
| --- | --- |
| Date | Comment |
| 5/2/2006 | Plea Guilty And Sentenced, 4/20/2012 09:00 AM Other |
| 4/20/2012 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 4/20/2012 | Reset By Agreement Of Both Parties 7/20/2012 09:00 AM Other |
| 7/20/2012 | Reset By Agreement Of Both Parties, 9/28/2012 09:00 AM Other |
| 9/28/2012 | Reset By Court, 11/09/2012 09:00 AM Other |
| 11/9/2012 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 11/9/2012 | Reset By Court 2/08/2013 09:00 AM Other |
| 2/8/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 2/8/2013 | Continued 3/08/2013 09:00 AM Other |
| 3/8/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 3/8/2013 | Reset Upon Prosecutors Request, 4/19/2013 09:00 AM Other |
| 4/19/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 4/19/2013 | Reset By Court, 5/17/2013 09:00 AM Other |
| 5/17/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 5/17/2013 | Reset Upon Defense Request, 6/21/2013 09:00 AM Other |
| 6/21/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 6/21/2013 | Reset By Court, 7/12/2013 09:00 AM Other |
| 7/12/2013 | Defendant BERRY, TYRONE did not appear. |
| 7/12/2013 | Reset By Agreement Of Both Parties, 7/19/2013 09:00 AM Other |
| 7/19/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |
| 7/19/2013 | Reset By Court 8/09/2013 09:00 AM Other |
| 8/9/2013 | Defendant BERRY, TYRONE appeared with counsel BORG, LEAH M.. |

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA Motions

Dear Mr. Berry:

Enclosed please find a courtesy copy of the amended DNA motion which I filed on your behalf. You will see that it is more precise and fact-specific than the motion previously filed in this case.

As you know, the DA and I were set for a status conference in your case on September 28, 2012. Unfortunately, when I arrived in court, I was informed that the DA was not in town and therefore was unavailable for the status conference.

Your case has therefore been reset; the new date is Nov. 9, 2012. This is not a hearing date-only a status conference date.

I still have no information from the DA as to whether the DNA samples previously taken still exist; where such evidence is located if it does exist; or, whether the DA will be willing to agree to new DNA testing.

I do suspect that the DA is still waiting on information from law enforcement agencies to provide him with the proper affidavits regarding the location of and the chain of custody regarding the evidence in this case. I also suspect he is still waiting for the same from Sorenson Forensics (previously known as Identigene).

Until he gets these affidavits, the DA cannot take any position in your case, other than to assert that everything was done properly and be opposed to new DNA

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880          Dec. 17, 2012

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA Motions

Dear Mr. Berry:

This is to let you know <u>what happened</u> with respect to our <u>last scheduled court appearance</u> on Friday, Dec. 14, 2012.

On Thursday, Dec. 13th, I was called by the Court's coordinator and was advised that the D. A. had indicated that he still has not received the affidavits in your case. The coordinator said it was not necessary for the D. A. and I to go to court the next day, <u>since there was nothing that could be done.</u> *Could Have Gone To TCCP 64.02*
*If State Has Not Responded After 60 Days Court May Proceed To 64.03 Regardless.*
Therefore, since we are still waiting on the affidavits from the various agencies that handled the evidence in your case, your case was reset.

*Lie* These affidavits are <u>absolutely necessary because they are supposed to advise the</u> Court of several things regarding the evidence. For example: that the evidence still exists, that the evidence is in <u>good condition</u> for the taking of additional DNA samples, whether DNA was taken from the evidence, where the evidence is now located, etc...

*More Lying* <u>Obviously,</u> until these agencies provide the affidavits on your case, we can't get any relief, i.e. new DNA testing and you remain convicted.

I can imagine that you are concerned and wondering why it is taking the various agencies so long. Frankly, I was concerned enough to speak with the Court's

*No Appearance Was EVER Scheduled On This Date. See Original Clerk's Record Page 165. On This Date Paid That Fictitious Date By Attorney Was On 11/9/12 At 11 Time That "Next" Scheduled Court Appearance" Was Scheduled For 2/8/13. Meaning & Everything In This Letter Is A Lie*

*Not According To TCCP Art 64.02 (a).*

*C*

coordinator and I asked her whether she thinks this is unusual for it to take so long. The coordinator advised me that she has noticed that these DNA motions are taking a very long time and that your situation was not unusual with regards to length of time.

As I believe I indicated to you previously, I was surprised that you had not made parole before you sought new DNA testing ... so, if you find out that you are not being released on parole because of this pending DNA motion, you will need to decide whether you want to continue pursuing new DNA testing or whether you want to discontinue our efforts and get released on parole. (I mention this because I have heard rumors in the past that pending post-conviction matters have delayed the release of inmates on parole. I do not know if this is true, it is just what I have heard.)

Our next court date is Feb. 8, 2013. Hopefully, at that time, the D. A. will have the affidavits and we can get the Court to order new DNA testing for you. Unfortunately, you will have to be patient for just a bit longer.

Please write if you have any questions or concerns. Further, if you learn that this matter is preventing your parole out and you decide to give up pursuing new DNA testing, you must advise me of that decision in writing.

Very truly yours,

*[signature]*

Leah M. Borg

*[Handwritten margin note, left side, vertical:]* The Motion has been file and such such such TCCP 51 Miss Court may proceed which Response from State After 60 Days

*[Handwritten margin note, right side, top:]* This Lawyer just advised her client to make a decision base a rumor.

*[Handwritten margin note, right side, bottom:]* It appears the attorney is trying to coax her client into dropping the DNA testing.

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

No DATE

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA
Motions

Dear Mr. Berry:

This is to inform you that I have been appointed by the Court to represent you
regarding the various DNA motions you have filed.

I have read through the documents you filed, as well as the Court's file in this case
and have read through several post-conviction files of yours regarding various
writs you have filed. I have done this to best understand any basis for post-
conviction DNA testing.

Of particular importance to me was your statement that your trial attorney had
advised you that the DNA testing revealed that there were several sperm donors in
the sample that was tested. If correct, this would be extremely important in getting
new testing done.

I have obtained a copy of the report from Identigene which did the DNA testing in
your case in order to ascertain whether there was more than one sperm donor.

The report from Identigene says that:

1. samples were taken from Brittney Smith and the panties which she was alleged
to have worn; from the buccal sample, a full DNA profile of Brittney Smith was
obtained;

"When State Was Appointed She Received The Complete "Official Record"

1

2. a buccal swab sample was taken from you and from this sample a full DNA profile for you was also obtained;

Apx 37(d)

3. a mixture of male and female DNA was obtained from the sperm cell fraction of the vaginal swabs and you could not be excluded as a contributor to the mixture;

4. a mixture of male and female DNA was obtained from the sperm cell fraction of the panties alleged to have been worn by the complainant, and you again could not be excluded as the DNA donor;

5. although the report says DNA is obtained from at least two individuals, it means that DNA was definitely obtained from Brittney Smith and from you;

6. and, that you could "not be excluded as the DNA donor of the major component of the mixture obtained from the sperm cell fraction of the panties. The frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in 5.1 x $10^{16}$ in African American, Caucasian, and Hispanic populations (FBI database)." (This is like saying one chance out of several billion people)

The report says nothing about DNA from another male source being observed in any of the samples taken from the complainant.

Because of the report, I need to know from you whether there is another basis for attacking the DNA results, or if you have any facts that I can argue to make identity an issue and get new DNA testing done.

I have an unpublished opinion from the Court of Criminal Appeals on a Petition for Discretionary Review which I believe I can use to argue for new testing to be done. Therefore, it is important that you provide me with any facts that I can argue to the Judge of the 180th to get new testing done.

Also, I did see that you have alleged what could arguably be called a "set-up" by Sgt. Washington who was having an affair with your wife. Can you provide me with more information regarding the "set-up" so I can see if I can use that information?

I am also checking to see whether DNA testing techniques and methodology have changed sufficiently since 2005 so that I can also make the argument of newer and more accurate testing techniques require re-testing. Further, Identigene is no longer

2

No Information Regarding New Techniques Was Included In This Motion.

Alleles (Foreign Identifying Information) Were Observed In The Minor Component Of This Mixture... "Official Clerk's Record Page 144 "Report" From Identigene

Why is foreign identifying DNA evidence from another male found with minor component (source) not discussed here or argued?

based in Houston and has merged with a company based in Utah. Identigene is now known as Sorenson Forensics. I am hoping that I can also use that to your benefit and get new DNA testing done.

*Apx 37(e)*

Please write and give me whatever information you have or you think I should know. Also, if you have any questions, feel free to ask and I will try to answer them for you.

On April 20, 2012, the DA and I have a status meeting with the Court to see what is happening with your case and whether it looks like there is a basis for requiring new DNA testing... this is not a hearing on you motion, but rather a meeting so the Court knows that we are working on your case. I anticipate that at the meeting the Court will likely give us an actual court date for the DA and I to make our arguments. I will certainly let you know when that is occurring.

I look forward to hearing from you.

Very truly yours,

Leah M. Borg

3

*3*

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

No Date

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA Motions

Dear Mr. Berry:

Enclosed please find the writ documents you provided to me for review. You understand that I am not appointed to represent you for the purpose of any pending writ, but for the purpose of the DNA motion. In other words, I am trying to get new DNA testing done for you.

I did find the State's proposed findings and your notes interesting, especially with regard to Nos. 27 and 59-60.

I have a redacted copy of the DNA testing that was done by Identigene and have read through the actual unredacted report. (I have not been able to get a copy of the complete report yet because of privacy rights of Brittney Smith). With respect to No. 27, it appears your trial attorney examined the report from Identigene and did not notice that the testing done on Brittney Smith's samples were dated May 10, 2005, so when the report states that there was an "identifiable major male component of unknown origin" in the sperm cell fraction of the panties, I believe it means that they did not yet have a DNA sample with which to compare it since the DNA sample taken from you was not tested until May 31, 2005, three weeks later.

With respect to Nos. 59-60, are you saying that the DNA sample (buccal swabs) were taken from you at court without the presence of your attorney on June 30, 2005? This date is nearly one month from the date on the Identigene Report!

6

Further, when the sample was taken from you (whether it was May or June 2005), were you in custody or out on bond? Did you see or get a copy of the search warrant (authorizing seizure/taking of the buccal swabs) that was signed by the Court in order to obtain the sample? Do you know why your attorney was not present? Was he in trial in another court? Did the officer give your attorney sufficient time to get to court for the taking of the swab or did he show up early before court begins and take the swab? Please provide me as much information as you can recall about what happened on this day. Depending on what you tell me happened, I may be able to use it to get new DNA testing for you. I have always been present when buccal swabs are taken from my client so that I can observe the procedure that officer uses and can make sure that no contamination occurs and nothing "shady" is done. I do not know whether the absence of your trial attorney alone is sufficient to get you new DNA testing, but I can add it to the list of reasons I am developing. ~~The Motion Was Filed 07/20/12.~~

Also, as I indicated to you I would research the present methodology for DNA testing for any advances that have occurred since May 31, 2005 when this testing was done. I did find quite a few scientific papers that discussed contamination of the samples among other issues. When I read through the Identigene report in your case, I noticed that there was a statement regarding the testing done on the vaginal swabs which said there were: ".... Numerous possible additional alleles below threshold...." I do not know whether these alleles (like portions of chromosomes) are attributed to you or whether they are attributed to an unknown person(s); the report is unclear. It is my intent to argue that the presence of the alleles are indicative of contamination in the testing procedure and therefore you are entitled to new DNA testing.

I will keep working to try to get as many arguments as possible together to get you new DNA testing. The Motion Has Already Been Filed

I also wanted to let you know about a meeting I had with the District Attorney assigned to your case with respect to the DNA motions. He is obtaining additional documents and has requested specific information from HPD about the "property" or items that they may have retained for possible future DNA testing. He also indicated to me that he MIGHT (please note that this is not agreement on his part; only an indication that possibly/maybe) agree to future DNA testing. We are currently set for another status meeting at court on July 20, 2012, at which time I will know exactly where he stands, whether in agreement to or in opposition to future DNA testing. I will keep you informed if he agrees to DNA testing before that date and let you know the outcome of that meeting.

[left margin, handwritten] Blatant Lie As She Not Only Had Motion Already Completed It Was Filed On This Day.

[left margin, handwritten] But Did Not Submit Any W/Motion.

[right margin, handwritten] The Motion Was Filed On This Date. Thereby Starting The "Clock" At Which The Court May Proceed After 60 Days Regardless Of The State's Response. 64.02 (A) State's Response.

Another concern I had, which I mentioned to your mother, Ms. Berry, was how come you had not made parole on this case. It seems unusual to me that you have been in custody so long. My guess is that it is the nature of the offense that has caused TDC to keep you in so long, however, another attorney mentioned to me that he has heard that TDC will keep inmates in custody longer while post-conviction matters are pending. I do not know if this is a real policy of TDC or their customary pattern for denial of parole or whether this is just a rumor.

I would like to know why, if the Board of Pardons and Paroles has told you, you are still in custody and have not been released on parole. Please provide me any information you have so I can check this out. There may be something there I can use in trying to get you new DNA testing.

I hope this provides with enough information to understand what is happening with respect to your DNA motion. As for hiring me on the DNA motion, that is unnecessary... I have been appointed and will work just as hard to try to get you new testing as I would if you have hired me. Please be assured that I will do my best to get the new testing done.

Definitely write me with the answers/information that I have requested and let me know if you have any other questions.

Very truly yours,

Leah M. Borg

Enclosure

B

ATTORNEY AT LAW
874 YORKCHESTER NO. 123
HOUSTON, TEXAS 77079
TEL. & FAX: 713-468-3618

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA Motions

Dear Mr. Berry:

Enclosed please find a courtesy copy of the amended DNA motion which I filed on your behalf. You will see that it is more precise and fact-specific than the motion previously filed in this case.

As you know, the DA and I were set for a status conference in your case on September 28, 2012. Unfortunately, when I arrived in court, I was informed that the DA was not in town and therefore was unavailable for the status conference.

Your case has therefore been reset; the new date is Nov. 9, 2012. This is not a hearing date-only a status conference date.

I still have no information from the DA as to whether the DNA samples previously taken still exist; where such evidence is located if it does exist; or, whether the DA will be willing to agree to new DNA testing.

I do suspect that the DA is still waiting on information from law enforcement agencies to provide him with the proper affidavits regarding the location of and the chain of custody regarding the evidence in this case. I also suspect he is still waiting for the same from Sorenson Forensics (previously known as Identigene).

Until he gets these affidavits, the DA cannot take any position in your case, other than to assert that everything was done properly and be opposed to new DNA

testing. This position could very easily change though, depending on the information he gets from law enforcement and Sorenson Forensics. (I recently heard that the DA on your case had gone to TDC to obtain swabs from another individual for DNA testing, so I know that under the right circumstances, new DNA testing can be done for inmates out of Harris County, so please be patient and remain hopeful.)

If I get any new information from the DA prior to the next status conference, I will write and give you that information. For now, I have nothing new to tell you.

If you have any questions, please feel free to write.

Very truly yours,

Leah M. Borg

· Enclosure

P. S. You will see that, in the amended motion, I have requested that if we get new DNA testing, I specifically want to be present for the taking of the swabs. I know that the DA often goes with an officer to TDC for this purpose in order to avoid bringing an inmate back to Harris County. If you are OK with the swab being taken at TDC (with me present) or would prefer to be brought back to Harris County for the taking of the swabs, let me know your preference, so that I can argue that to the Judge, if necessary, on Nov. 9th.

ORIGINAL

1MV14985

P8

APX 38a

Cause No. 1019634

| | | |
|---|---|---|
| TYRONE BERRY | § | IN THE DISTRICT COURT OF |
| v. | § | HARRIS COUNTY, TEXAS |
| THE STATE OF TEXAS | § | 180TH JUDICIAL DISTRICT |

## PETITIONER'S FIRST AMENDED
## MOTION FOR FORENSIC D. N. A. TESTING

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TYRONE BERRY, PETITIONER in the above entitled and numbered cause and pursuant to Chapter 64 of the Texas Code of Criminal Procedure, files this "First Amended Motion for Forensic D. N. A. Testing," requesting this Honorable Court to grant approval of D.N.A. testing of evidence previously obtained in this cause. In support whereof, the PETITIONER would show the following:

FILED
Chris Daniel
District Clerk
JUL 20 2012
Time: _____
Harris County, Texas
Deputy

I.

PETITIONER asserts that, as a person convicted of sexual assault, he has the right, under Chapter 64 of the Texas Code of Criminal Procedure, to request that post-conviction forensic D.N.A. testing be done for the following reason:

1. Some evidence was previously tested in May 2005, but now, in July 2012, there are better ways to test for D. N. A. that could provide more accurate results than the results of the previous test(s). Further, some of this evidence, namely buccal swabs, is purported to have been taken from PETITIONER on March 29, 2005, were taken without the presence of PETITIONER'S attorney, Rick Detoto, to observe and make certain that the "warrant" to take such evidence from PETITIONER was a valid warrant, and further, to make certain that the methodology and

1

procedures utilized by H.P. D. Officer T. Guerrero in taking the swabs were correct and without question.

## II.

PETITIONER further asserts that this Honorable Court should ORDER new D. N. A. testing of all evidence from which D. N. A. may be obtained for the following reasons:

1. Evidence exists that by its nature permits D. N. A. testing, namely panties alleged to have been worn by the Complainant as well as vaginal swabs purported to have been taken from the Complainant;

2. The evidence was subjected to previous D. N. A. testing by techniques that are now superseded by more accurate techniques that are less prone to contamination from unknown sources;

3. The evidence, held by the Houston Police Department and/or Sorenson Forensics, formerly known as Identigene, should be in a condition making D. N. A. testing possible;

4. The chain of custody of the evidence, by the Houston Police Department and/or Sorenson Forensics and/or the Harris County District Clerk's Office, should be sufficient to establish that the evidence has not been substituted, tampered with, replaced, or altered in any material respect;

5. Identity was and remains an issue in the underlying criminal case, despite PETITIONER'S plea of guilty, because, as the lone accused in this case, exculpatory D. N. A testing would prove PETITIONER'S innocence ( See Blacklock v. State 235 S. W. 3d 231 (Tex. Crim. App. 2007);

2

6. The PETITIONER is presently in the custody of the Texas Department of Criminal Justice, serving his sentence in this case, and therefore, establishes by a preponderance of the evidence that his request for D. N. A. testing is not made to unreasonably delay the execution of sentence or administration of justice.

### III.

PETITIONER asserts that as further evidence in support of his "First Amended Motion for Forensic D. N. A. Testing" is Identigene's lab report # L05-3609, on the D. N. A. testing originally done in May 2005, specifically:

1. Testing done May 10, 2005; evidence obtained from the Complainant; the report states that "A mixture of male and female DNA from at least two individuals was obtained…" PETITIONER asserts that that the statement that DNA from **AT LEAST TWO INDIVIDUALS** is indicative of possibly more than two contributors and therefore contamination, especially in light of the fact that PCR testing was done and PCR testing is more susceptible to contamination. PETITIONER asserts that where there is a possibility of contamination, justice requires that new D. N. A testing be done.

2. Further in the report of May 10, 2005, is the statement that "Brittney Smith cannot be excluded as a possible contributor to the minor component of this mixture. Alleles foreign to Brittney Smith were observed in the minor component of this mixture." PETITIONER asserts that the presence of alleles foreign to the Complainant are also found in the minor component of the mixture along with Complainant's, are further evidence of contamination in the testing procedure, thereby necessitating new D. N. A testing.

3. Additionally, in the lab report dated May 31, 2005, the following statements are made: "A mixture of male and female DNA from at least two individuals was obtained from the sperm cell

3

fraction of the vaginal swabs [159081]. Tyrone Berry cannot be excluded as a possible contributor to this mixture. However, due to numerous possible additional alleles below threshold, statistical analysis will not be performed evaluating the probability of inclusion." PETITIONER asserts that these statements indicate that two or more individuals contributed to the mixture, and, since there are numerous additional alleles, it is highly likely that the previous D. N. A. testing that was done in 2005 by Identigene was contaminated. The interests of justice therefore require new D. N. A. testing be done.

IV.

PETITIONER requests that this Honorable Court order all entities in custody of evidence seized in this case, whether the Houston Police Department, Sorenson Forensics, the Harris County District Clerk's Office, or any other entity, presently unknown to PETITIONER, provide all evidence obtained from the Complainant and all other evidence from which D. N. A. may be obtained to the forensic laboratory designated by this Court, for new D.N. A. testing and provide to this Court and the attorneys for PETITIONER and the State, a written "inventory" or other written record and description of the evidence provided to the forensic laboratory for testing.

If the evidence requested herein cannot be presented for testing, the PETITIONER requests that this Court Order all entities (Houston Police Department, Sorenson Forensics, the Harris County District Clerk's Office, etc...) in possession of evidence seized in this case, including but not limited to the panties purported to have been worn by Complainant and the vaginal swabs purported to have been taken from the Complainant, explain in writing to this Court, why such evidence cannot be presented to this Court.

4

### V.

PETITIONER further requests that new buccal swabs from him be obtained pursuant to a new warrant signed by this Court and that the taking of such swabs be done only in the presence of his undersigned attorney of record, Leah M. Borg.

### VI.

PETITIONER therefore requests that this Court set this matter for a hearing thereon to determine:

1. that evidence still exists in a condition making D. N. A. testing possible and to determine the entities ( and contact information) in possession of all such evidence;

2. that the evidence in possession of such entities has been subjected to a chain of custody sufficient to establish that it has not been tampered with, replaced, or altered in any material respect;

3. that identity is an issue in the underlying criminal case;

4. that PETITIONER was the lone accused and as such, would not have been found guilty if exculpatory D. N. A. testing results would have been obtained;

5. the request for and performance of new D. N. A. testing would not unreasonably delay the execution of PETITIONER'S sentence or the administration of justice since PETITIONER is presently serving the sentence assessed in the underlying criminal case;

6. the Lab Report from Identigene, which performed the original D. N. A. testing in 2005, indicates the possibility, if not probability, of contamination in the testing procedures.

PETITIONER requests that this Court, should it determine and order that PETITIONER is not entitled to new D. N. A. testing and denies the relief requested herein, that this Court make

5

written findings of fact and conclusions of law at the conclusion of the hearing in order to preserve any issues for appellate review.

WHEREFORE, premises considered, the PETITIONER prays that this Court grant all relief requested herein and for such and other relief, whether general or special, at law or in equity, to which this Court deems PETITIONER justly entitled.

Respectfully submitted,

LEAH M. BORG
ATTORNEY FOR PETITIONER, TYRONE BERRY
874 YORKCHESTER NO. 123
HOUSTON, TEXAS 77079
TEL. & FAX: 713-468-3618
TEXAS BAR NO. 02667800

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and forgoing Motion was mailed/delivered to the Assistant District Attorney, Baldwin Chin, on the 20th day of July, 2012.

LEAH M. BORG

APX389

| TYRONE BERRY | § | IN THE DISTRICT COURT OF |
| v. | § | HARRIS COUNTY, TEXAS |
| THE STATE OF TEXAS | § | 180TH JUDICIAL DISTRICT |

## ORDER ON PETITIONER'S FIRST AMENDED
## MOTION FOR FORENSIC D. N. A. TESTING

On the _9th_ day of _August_ , 2012, came to be heard "Petitioner's

First Amended Motion for Forensic D.N.A. Testing" and the Court, having considered the

evidence and argument of Counsel, is of the opinion that such Motion shall be:

GRANTED                    DENIED

IT IS THEREFORE ORDERED THAT all entities in custody of evidence seized in this case, the

Houston Police Department, Sorenson Forensics, the Harris County District Clerk's Office,

Other: _____

Shall provide all such evidence to this Court or the forensic laboratory designated by this Court,

namely, _____

For new forensic D. N. A. testing.


IT IS FURTHER ORDERED THAT if the evidence cannot be presented for testing, each entity

in possession or custody of such evidence shall explain in writing to this Court why such

evidence cannot be presented for new D.N. A. testing.

7

IT IS FURTHER ORDERED THAT the State shall prepare a new warrant for the taking of a D. N. A. sample from PETITIONER TYRONE BERRY and that a copy of the warrant shall be timely provided to the attorney for PETITIONER.

IT IS FURTHER ORDRED THAT the taking of the D. N. A. sample from PETITIONER shall be conducted in the presence of the attorney of record for PETITIONER, Leah M. Borg.

IT IS FURTHER ORDERED THAT:

Signed _____AUG 0 9 2013_____, 2012.

_____

JUDGE PRESIDING    **Marc Brown**

13|996

8

Cause No. 1019634

| | | |
|---|---|---|
| TYRONE BERRY | § | IN THE DISTRICT COURT OF |
| v. | § | HARRIS COUNTY, TEXAS |
| THE STATE OF TEXAS | § | 180TH JUDICIAL DISTRICT |

## ORDER ON PETITIONER'S FIRST AMENDED
## MOTION FOR FORENSIC D. N. A. TESTING

On the __9th__ day of __August__ 2013, ~~2012~~, came to be heard "Petitioner's First Amended Motion for Forensic D.N.A. Testing" and the Court, having considered the evidence and argument of Counsel, is of the opinion that such Motion shall be:

GRANTED        ~~DENIED~~

IT IS THEREFORE ORDERED THAT all entities in custody of evidence seized in this case, the Houston Police Department, Sorenson Forensics, the Harris County District Clerk's Office, Other: _____

Shall provide all such evidence to this Court or the forensic laboratory designated by this Court, namely, _____

For new forensic D. N. A. testing.

IT IS FURTHER ORDERED THAT if the evidence cannot be presented for testing, each entity in possession or custody of such evidence shall explain in writing to this Court why such evidence cannot be presented for new D.N. A. testing.

7

Apx 38J

IT IS FURTHER ORDERED THAT the State shall prepare a new warrant for the taking of a D. N. A. sample from PETITIONER TYRONE BERRY and that a copy of the warrant shall be timely provided to the attorney for PETITIONER.

IT IS FURTHER ORDRED THAT the taking of the D. N. A. sample from PETITIONER shall be conducted in the presence of the attorney of record for PETITIONER, Leah M. Borg.

IT IS FURTHER ORDERED THAT:

Signed _____ AUG 0 9 2013 _____, 2012.

_____

JUDGE PRESIDING   Marc Brown

13|996

8

procedures utilized by H.P. D. Officer T. Guerrero in taking the swabs were correct and without

question.

II.

PETITIONER further asserts that this Honorable Court should ORDER new D. N. A. testing of all evidence from which D. N. A. may be obtained for the following reasons:

1. Evidence exists that by its nature permits D. N. A. testing, namely panties alleged to have been worn by the Complainant as well as vaginal swabs purported to have been taken from the Complainant;

2. The evidence was subjected to previous D. N. A. testing by techniques that are now superseded by more accurate techniques that are less prone to contamination from unknown sources;

3. The evidence, held by the Houston Police Department and/or Sorenson Forensics, formerly known as Identigene, should be in a condition making D. N. A. testing possible;

4. The chain of custody of the evidence, by the Houston Police Department and/or Sorenson Forensics and/or the Harris County District Clerk's Office, should be sufficient to establish that the evidence has not been substituted, tampered with, replaced, or altered in any material respect;

5. Identity was and remains an issue in the underlying criminal case, despite PETITIONER'S plea of guilty, because, as the lone accused in this case, exculpatory D. N. A testing would prove PETITIONER'S innocence ( See Blacklock v. State 235 S. W. 3d 231 (Tex. Crim. App. 2007);

2

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

No DATE

Re: Cause No. 1019634; 180th District Court of Harris County, Texas; DNA Motions

Dear Mr. Berry:

This is to inform you that I have been appointed by the Court to represent you regarding the various DNA motions you have filed.

I have read through the documents you filed, as well as the Court's file in this case and have read through several post-conviction files of yours regarding various writs you have filed. I have done this to best understand any basis for post-conviction DNA testing.

Of particular importance to me was your statement that your trial attorney had advised you that the DNA testing revealed that there were several sperm donors in the sample that was tested. If correct, this would be extremely important in getting new testing done.

I have obtained a copy of the report from Identigene which did the DNA testing in your case in order to ascertain whether there was more than one sperm donor.

The report from Identigene says that:

1. samples were taken from Brittney Smith and the panties which she was alleged to have worn; from the buccal sample, a full DNA profile of Brittney Smith was obtained;

*(handwritten in left margin: "When She Was Appointed She Received The Complete Official Record")*

1

Cause No. 1019634

| STATE OF TEXAS | § | IN THE 180th DISTRICT COURT |
| | § | |
| v. | § | OF |
| | § | |
| TYRONE BERRY, | § | HARRIS COUNTY, TEXAS |
| Defendant | | |

## STATE'S MOTION REQUESTING COURT TO DENY DNA TESTING

COMES NOW the State of Texas, by and through the undersigned Assistant District Attorney, and, in response to the defendant's request for post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure, respectfully requests that the Court deny DNA testing of evidence in the above-styled case and for good cause shows the following:

## I.

### Procedural History

On May 2, 2006, the defendant, Tyrone Berry, pled guilty to the felony offense of sexual assault of a child in cause number 1019634 in the 180th District Court of Harris County, Texas. Pursuant to a plea bargain agreement entered into after a jury had been seated and the presentation of evidence had commenced, the defendant was sentenced to ten (10) years confinement in the Texas Department of Criminal Justice – Institutional Division.

No direct appeal was taken in this case; however, the defendant has filed eight pro se applications for writ of habeas corpus, cause numbers 1019634-A through 1019634-H.

The defendant's initial application for writ of habeas corpus, cause number 1019634-A, was filed on October 27, 2009, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-08 (Tex. Crim. App. February 15, 2012).

The defendant's second application for writ of habeas corpus, cause number 1019634-B, was filed on November 25, 2009, while cause number 1019634-A was still pending, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-09 (Tex. Crim. App. February 15, 2012).

113

The defendant's third application for writ of habeas corpus, cause number 1019634-C, was filed on January 4, 2010, while cause numbers 1019634-A and 1019634-B were still pending, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-10 (Tex. Crim. App. February 15, 2012).

The defendant's fourth application for writ of habeas corpus, cause number 1019634-D, was filed on February 4, 2010, while cause numbers 1019634-A, 1019634-B and 1019634-C were still pending, and was denied without written order on January 18, 2012. *Ex parte Berry*, No. WR-73,517-06 (Tex. Crim. App. January 18, 2012).

The defendant's fifth application for writ of habeas corpus, cause number 1019634-E, was filed on February 15, 2010, while cause numbers 1019634-A, 1019634-B, 1019634-C and 1019634-D were still pending, and was denied without written order on January 18, 2012. *Ex parte Berry*, No. WR-73,517-07 (Tex. Crim. App. January 18, 2012).

The defendant's sixth application for writ of habeas corpus, cause number 1019634-F, was filed on September 17, 2010, while cause numbers 1019634-A, 1019634-B, 1019634-C, 1019634-D and 1019634-E were still pending, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-11 (Tex. Crim. App. February 15, 2012).

The defendant's seventh application for writ of habeas corpus, cause number 1019634-G, was filed on November 12, 2010, while cause numbers 1019634-A, 1019634-B, 1019634-C, 1019634-D, 1019634-E and 1019634-F were still pending, and was denied without written order on February 9, 2011. *Ex parte Berry*, No. WR-73,517-02 (Tex. Crim. App. February 9, 2011).

The defendant's eighth application for writ of habeas corpus, cause number 1019634-H, was filed on July 5, 2011, while cause numbers 1019634-A, 1019634-B, 1019634-C, 1019634-D, 1019634-E, 1019634-F and 1019634-G were still pending, and was dismissed as a subsequent writ on September 21, 2011. *Ex parte Berry*, No. WR-73,517-04 (Tex. Crim. App. September 21, 2011).

The defendant subsequently filed a motion for post-conviction forensic DNA testing, and the trial court appointed counsel to represent the applicant for the purpose of his motion.

2

## Applicable Law

Texas law provides that a convicted person may submit a motion seeking forensic DNA testing of evidence containing biological material. TEX. CODE CRIM. PROC. art. 64.01(a). The motion must be accompanied by an affidavit sworn to by the convicted person and contain statements of fact in support of the motion. *Id.* However, a convicted person may ONLY request forensic DNA testing of evidence that was secured in relation to the offense that is the basis of the challenged conviction and was in possession of the state during the trial of the offense, and said evidence either:

(1) was not previously subject to DNA testing; or

(2) although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.

*See* TEX. CODE CRIM. PROC. art. 64.01(b).

Further, the Court may order forensic DNA testing of evidence in the case of a convicted person ONLY IF:

(1) the Court finds that:

    a. the evidence still exists and is in a condition making DNA testing possible; and

    b. the evidence has been subjected to a chain of custody sufficient to establish that is has not been substituted, tampered with, replaced, or altered in any material aspect; and

    c. identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

    a. the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

    b. the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or the administration of justice.

*See* TEX. CODE CRIM. PROC. art. 64.03(a).

## Evidence in the State's Possession

The State respectfully requests that the Court take judicial notice, based on the official trial court records, that the above styled and numbered cause is associated with Houston Police Department incident report number 030415605N, Houston Police Department Crime Laboratory number L05-3609, and Identigene case number 67135.

According to the records of the Houston Police Department Property Room, the Houston Police Department Property Room is in possession of the following evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, and relating to incident report number 030415605:

- one sexual assault kit and clothing
- two buccal swabs from Tyrone Berry

*See April 22, 2013 affidavit of Joseph Hill, Houston Police Department Property and Evidence Records Custodian, attached hereto as State's Exhibit A.*

According to the records of the Houston Police Department Crime Laboratory, the Houston Police Department Crime Laboratory is in possession of the following evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, and relating to incident report number 030415605 and/or laboratory number L05-03609:

- one sealed white envelope containing:
  - one clear Ziploc bag labeled "2/3" containing:
    - one clear Ziploc bag containing:
      - one sealed brown envelope labeled "Item L: vaginal swabs #1-4; Item R: panties (cutting ~3"x~3") 1/3"
    - one sealed brown envelope labeled "staincard made from known blood (Item K) from compl. Brittany Smith; known 2/3"
- one parafilm tape-sealed microcentrifuge tube labeled "Berry Tyrone" said to contain "DNA extracts"

*See March 19, 2013 affidavit of Vanessa Alvarez, Houston Police Department Crime Laboratory Custodian of Records, attached hereto as State's Exhibit B.*

According to the records of the Harris County District Clerk's Office, the Harris County District Clerk's Office is not in possession of any evidence in connection with *The State of Texas v. Tyrone Berry*,

4

cause number 1019634. *See March 22, 2012 affidavit of Barbara Anderson, Senior Exhibits Clerk for the Harris County District Clerk's Office, attached hereto as State's Exhibit C.*

According to the records of the Harris County Sheriff's Office Property Room, the Harris County Sheriff's Office Property Room is not in possession of any property and/or evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, or relating to incident report number 30415605N. *See May 23, 2013 affidavit of Q. Thigpen, Harris County Sheriff's Office Property and/or Records Custodian, attached hereto as State's Exhibit D.*

## IV.

## Background

On May 16, 2005, the defendant was indicted in cause number 1019634 for the felony offense of sexual assault of a child, alleged to have been committed against fifteen year old Complainant, Brittany Smith, on or about February 25, 2005. On May 2, 2006, after a jury had been seated and the presentation of evidence had commenced, the defendant pled guilty to the offense of sexual assault of a child and, pursuant to a plea bargain agreement, was sentenced to ten (10) years confinement in the Texas Department of Criminal Justice – Institutional Division.

Prior to the defendant's plea of guilty, and in connection with the investigation of the offense in this case, the Houston Police Department Crime Laboratory analyzed the complainant's sexual assault kit for the presence of DNA. Specifically, on March 28, 2005, Juli Rehfuss, a chemist with the Houston Police Department Crime Laboratory, reported that "spermatozoa, cellular constituents of semen, were detected on the vaginal swabs (Item L) and the crotch area of the panties (Item R)." *See Supplement 14, Houston Police Department Incident Report Number 030415605N, attached hereto as State's Exhibit E.*

On March 29, 2005, the complainant's vaginal swabs, a cutting from the complainant's panties, a staincard made from the known blood of the complainant, and two buccal swabs containing the defendant's saliva samples were transferred to the Identigene laboratory for DNA analysis and comparison. *See Supplement 15, Houston Police Department Incident Report Number 030415605N, attached hereto as State's Exhibit F.*

5

117



On May 10, 2005, Identigene released a forensic laboratory report containing the results of the DNA analysis and comparison performed on the complainant's vaginal swabs, the complainant's panties, and the complainant's known DNA profile. *See May 10, 2005, Identigene Forensic Report #67135, attached hereto as State's Exhibit G.*

On May 31, 2005, Identigene released a follow-up laboratory report incorporating the results of the initial DNA analysis and comparison performed on the complainant's vaginal swabs, the complainant's panties, and the complainant's known DNA profile, with the results of the comparison and analysis performed on the defendant's known DNA profile. *See May 31, 2005, Identigene Forensic Report #68272, attached hereto as State's Exhibit H.*

Identigene's forensic DNA analysis and comparison of the complainant's vaginal swabs, the complainant's panties, the complainant's known DNA profile, and the defendant's known DNA profile yielded the following results:

### Complainant's Vaginal Swabs – Epithelial Cell Fraction
- a full, single-source DNA profile was obtained from the epithelial cell fraction of the vaginal swabs
- the DNA profile matched the DNA profile from the complainant
- the complainant cannot be excluded as the DNA donor to the epithelial cell fraction of the vaginal swabs

### Complainant's Vaginal Swabs – Sperm Cell Fraction
- a mixture of male and female DNA from at least two individuals was obtained from the sperm cell fraction of the vaginal swabs.
- the defendant cannot be excluded as a possible contributor to this mixture
- due to the numerous possible additional alleles below threshold, no statistical analysis was performed evaluating the probability of inclusion
- no conclusions were made regarding the inclusion or exclusion of the complainant to the mixture

### Complainant's Panties – Epithelial Cell Fraction
- the same full DNA profile that was obtained from the epithelial cell fraction of the vaginal swabs, plus multiple possible additional alleles below threshold, was obtained from the epithelial cell fraction of the panties
- the DNA profile matched the DNA profile from the complainant
- the complainant cannot be excluded as the DNA donor to the epithelial cell fraction of the panties

6

118

<u>Complainant's Panties – Sperm Cell Fraction</u>
- ♦ a mixture of DNA from at least two individuals was obtained from the sperm cell fraction of the panties
- ♦ the DNA profile of the defendant is consistent with the major component
- ♦ the defendant cannot be excluded as the DNA donor to the major component of the mixture contained from the sperm cell fraction of the panties
- ♦ the frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in 51,000,000,000,000,000 in African American, Caucasian and Hispanic populations
- ♦ the complainant cannot be excluded as a possible contributor to the minor component of this mixture
- ♦ alleles foreign to both the complainant and the defendant were observed in the minor component of this mixture.

*See May 31, 2005, Identigene Forensic Report #68272, attached hereto as State's Exhibit H.*

## V.

## <u>The Defendant is Not Entitled to Forensic DNA Testing</u>

According to TEX. CODE CRIM. PROC. art. 64.01, a convicted person may request forensic DNA testing <u>only</u> of evidence that was either 1) previously untested, or 2) previously tested, but could now be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test. TEX. CRIM. PROC. CODE art. 64.01. In this case, DNA testing was performed in 2005 by the Houston Police Department Crime Laboratory and Identigene. The defendant makes no showing that there are newer testing techniques available that would provide a reasonable likelihood of results that are more accurate and probative than the results generated previously.

Furthermore, to be entitled to any additional DNA testing the defendant must also show that by a preponderance of the evidence, the defendant would not have been convicted if exculpatory results had been obtained through additional DNA testing. TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A). The defendant cannot meet this burden. Even if the only remaining evidence were subjected to DNA testing, defendant fails to show, nor does he even allege, how any possible result would exculpate him from this crime.

7

119

## VI.

## Conclusion

Tyrone Berry, the convicted person in the above-styled case, has failed to meet the requirements of TEX. CODE CRIM. PROC. art. 64.03. The evidence in the defendant's case was tested prior to his trial and subsequent plea, and to near scientific certainty inculpated him in the offense for which he was charged. The defendant fails to show how any hypothetical DNA result would exculpate him from this crime or prove by a preponderance of the evidence that he would not have been prosecuted or convicted. As such, the applicant fails to carry his burden to obtain DNA testing in accordance with Chapter 64 of the Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the State of Texas respectfully requests that the Court deny DNA testing in cause number 1019634.

Respectfully submitted,

_____

Inger M. Hampton
Assistant District Attorney
Conviction Review Section
Harris County District Attorney's Office
1201 Franklin, Ste. 600
Houston, Texas 77002
(713) 755-1570
(713) 368-9225 fax
State Bar No. 24041051

8

**LEAH M. BORG**
**ATTORNEY AT LAW**
**874 YORKCHESTER NO. 123**
**HOUSTON, TEXAS 77079**
**TEL. & FAX: 713-468-3618**

Tyrone Berry
TDCJ # 1368050
George Beto Unit
1391 F. M. 3328
Tennessee Colony, Texas 75880

No DATE

Re: Cause No. 1019634; 180ᵗʰ District Court of Harris County, Texas; DNA Motions

Dear Mr. Berry:

This is to inform you that I have been appointed by the Court to represent you regarding the various DNA motions you have filed.

I have read through the documents you filed, as well as the Court's file in this case and have read through several post-conviction files of yours regarding various writs you have filed. I have done this to best understand any basis for post-conviction DNA testing.

Of particular importance to me was your statement that your trial attorney had advised you that the DNA testing revealed that there were several sperm donors in the sample that was tested. If correct, this would be extremely important in getting new testing done.

I have obtained a copy of the report from Identigene which did the DNA testing in your case in order to ascertain whether there was more than one sperm donor.

The report from Identigene says that:

1. samples were taken from Brittney Smith and the panties which she was alleged to have worn; from the buccal sample, a full DNA profile of Brittney Smith was obtained;

1

— WHEN STATE WAS APPOINTED SHE RECEIVED THE COMPLETE "OFFICIAL RECORD"

Cause No. 1019634

| | | |
|---|---|---|
| TYRONE BERRY | § | IN THE DISTRICT COURT OF |
| vs. | § | HARRIS COUNTY, TEXAS |
| THE STATE OF TEXAS | § | 180TH JUDICIAL DISTRICT |

### PETITIONER'S OBJECTIONS TO THE STATE OF TEXAS' CONTINUANCE RESETS AND MOTION TO PROCEED

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TYRONE BERRY, PETITIONER in the above entitled and numbered cause, and files this "Petitioner's Objections To The State Of Texas' Resets And Motion To Proceed, requesting this Honorable Court to grant this Motion. In support whereof, the PETITIONER shows the following:

I.

PETITIONER filed his original petition for forensic D.N.A. testing back on January 20, 2012. This Court appointed an attorney, Ms. Leah M. Borg, who subsequently filed an amended petition for forensic D.N.A. testing on July 20, 2012.

The Court scheduled several court appearances in 2012 but the State requested resets which were granted, including the scheduled appearance on December 14, 2012 due to the District Attorney having not received affidavits in regard to PETITIONER'S

case. The Court rescheduled the court appearance for February 8, 2013. The State again requested a reset and the Court reset the appearance for March. At the States request, the court reset appearances for April, and again for May when the State petitioned the court for another reset. In June of 2013 alone, PETITIONER'S cause was set for appearance three separate times with each being reset at the request of the State. The current scheduled court appearance is set for July 12, 2013. PETITIONER objects to futher resets and/or delays by the State.

## II.

PETITIONER asks this Court to grant this motion to proceed in light of the State's adequatee time it has had to prepare for the Court's July 12, 2013 appearance. Another continuance does nothing more than delay, and in fact, deny justice to PETITIONER who asserts that forensic D.N.A. testing will exonerate him of the charges he is currently serving time for.

WHEREFORE, premises considered, the PETITIONER prays that this Court grant all relief requested herein and for such other relief, to which this Court deems PETITIONER is justly entitled.

Respectfully submitted

*Tyrone Berry* 07-03-13

Tyrone Berry
3872 F.M. 350 South
Livingston, Texas 77351

Cause No. 1019634

| STATE OF TEXAS | § | IN THE 180th DISTRICT COURT |
| v. | § | OF |
| TYRONE BERRY, Defendant | § | HARRIS COUNTY, TEXAS |

## STATE'S MOTION REQUESTING COURT TO DENY DNA TESTING

COMES NOW the State of Texas, by and through the undersigned Assistant District Attorney, and, in response to the defendant's request for post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure, respectfully requests that the Court deny DNA testing of evidence in the above-styled case and for good cause shows the following:

### I.

### Procedural History

On May 2, 2006, the defendant, Tyrone Berry, pled guilty to the felony offense of sexual assault of a child in cause number 1019634 in the 180th District Court of Harris County, Texas. Pursuant to a plea bargain agreement entered into after a jury had been seated and the presentation of evidence had commenced, the defendant was sentenced to ten (10) years confinement in the Texas Department of Criminal Justice – Institutional Division.

No direct appeal was taken in this case; however, the defendant has filed eight *pro se* applications for writ of habeas corpus, cause numbers 1019634-A through 1019634-H.

The defendant's initial application for writ of habeas corpus, cause number 1019634-A, was filed on October 27, 2009, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-08 (Tex. Crim. App. February 15, 2012).

The defendant's second application for writ of habeas corpus, cause number 1019634-B, was filed on November 25, 2009, while cause number 1019634-A was still pending, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-09 (Tex. Crim. App. February 15, 2012).

113

The defendant's third application for writ of habeas corpus, cause number 1019634-C, was filed on January 4, 2010, while cause numbers 1019634-A and 1019634-B were still pending, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-10 (Tex. Crim. App. February 15, 2012).

The defendant's fourth application for writ of habeas corpus, cause number 1019634-D, was filed on February 4, 2010, while cause numbers 1019634-A, 1019634-B and 1019634-C were still pending, and was denied without written order on January 18, 2012. *Ex parte Berry*, No. WR-73,517-06 (Tex. Crim. App. January 18, 2012).

The defendant's fifth application for writ of habeas corpus, cause number 1019634-E, was filed on February 15, 2010, while cause numbers 1019634-A, 1019634-B, 1019634-C and 1019634-D were still pending, and was denied without written order on January 18, 2012. *Ex parte Berry*, No. WR-73,517-07 (Tex. Crim. App. January 18, 2012).

The defendant's sixth application for writ of habeas corpus, cause number 1019634-F, was filed on September 17, 2010, while cause numbers 1019634-A, 1019634-B, 1019634-C, 1019634-D and 1019634-E were still pending, and was denied without written order on February 15, 2012. *Ex parte Berry*, No. WR-73,517-11 (Tex. Crim. App. February 15, 2012).

The defendant's seventh application for writ of habeas corpus, cause number 1019634-G, was filed on November 12, 2010, while cause numbers 1019634-A, 1019634-B, 1019634-C, 1019634-D, 1019634-E and 1019634-F were still pending, and was denied without written order on February 9, 2011. *Ex parte Berry*, No. WR-73,517-02 (Tex. Crim. App. February 9, 2011).

The defendant's eighth application for writ of habeas corpus, cause number 1019634-H, was filed on July 5, 2011, while cause numbers 1019634-A, 1019634-B, 1019634-C, 1019634-D, 1019634-E, 1019634-F and 1019634-G were still pending, and was dismissed as a subsequent writ on September 21, 2011. *Ex parte Berry*, No. WR-73,517-04 (Tex. Crim. App. September 21, 2011).

The defendant subsequently filed a motion for post-conviction forensic DNA testing, and the trial court appointed counsel to represent the applicant for the purpose of his motion.

2

### III.

### Evidence in the State's Possession

The State respectfully requests that the Court take judicial notice, based on the official trial court records, that the above styled and numbered cause is associated with Houston Police Department incident report number 030415605N, Houston Police Department Crime Laboratory number L05-3609, and Identigene case number 67135.

According to the records of the Houston Police Department Property Room, the Houston Police Department Property Room is in possession of the following evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, and relating to incident report number 030415605:

- one sexual assault kit and clothing
- two buccal swabs from Tyrone Berry

*See April 22, 2013 affidavit of Joseph Hill, Houston Police Department Property and Evidence Records Custodian, attached hereto as State's Exhibit A.*

According to the records of the Houston Police Department Crime Laboratory, the Houston Police Department Crime Laboratory is in possession of the following evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, and relating to incident report number 030415605 and/or laboratory number L05-03609:

- one sealed white envelope containing:
  - one clear Ziploc bag labeled "2/3" containing:
    - one clear Ziploc bag containing:
      - one sealed brown envelope labeled "Item L: vaginal swabs #1-4; Item R: panties (cutting ~3"x~3") 1/3"
    - one sealed brown envelope labeled "staincard made from known blood (Item K) from compl. Brittany Smith; known 2/3"
- one parafilm tape-sealed microcentrifuge tube labeled "Berry Tyrone" said to contain "DNA extracts"

*See March 19, 2013 affidavit of Vanessa Alvarez, Houston Police Department Crime Laboratory Custodian of Records, attached hereto as State's Exhibit B.*

According to the records of the Harris County District Clerk's Office, the Harris County District Clerk's Office is not in possession of any evidence in connection with *The State of Texas v. Tyrone Berry*,

4

116

cause number 1019634. *See March 22, 2012 affidavit of Barbara Anderson, Senior Exhibits Clerk for the Harris County District Clerk's Office, attached hereto as State's Exhibit C.*

According to the records of the Harris County Sheriff's Office Property Room, the Harris County Sheriff's Office Property Room is not in possession of any property and/or evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, or relating to incident report number 30415605N. *See May 23, 2013 affidavit of Q. Thigpen, Harris County Sheriff's Office Property and/or Records Custodian, attached hereto as State's Exhibit D.*

**IV.**

**Background**

On May 16, 2005, the defendant was indicted in cause number 1019634 for the felony offense of sexual assault of a child, alleged to have been committed against fifteen year old Complainant, Brittany Smith, on or about February 25, 2005. On May 2, 2006, after a jury had been seated and the presentation of evidence had commenced, the defendant pled guilty to the offense of sexual assault of a child and, pursuant to a plea bargain agreement, was sentenced to ten (10) years confinement in the Texas Department of Criminal Justice – Institutional Division.

Prior to the defendant's plea of guilty, and in connection with the investigation of the offense in this case, the Houston Police Department Crime Laboratory analyzed the complainant's sexual assault kit for the presence of DNA. Specifically, on March 28, 2005, Juli Rehfuss, a chemist with the Houston Police Department Crime Laboratory, reported that "spermatozoa, cellular constituents of semen, were detected on the vaginal swabs (Item L) and the crotch area of the panties (Item R)." *See Supplement 14, Houston Police Department Incident Report Number 030415605N, attached hereto as State's Exhibit E.*

On March 29, 2005, the complainant's vaginal swabs, a cutting from the complainant's panties, a staincard made from the known blood of the complainant, and two buccal swabs containing the defendant's saliva samples were transferred to the Identigene laboratory for DNA analysis and comparison. *See Supplement 15, Houston Police Department Incident Report Number 030415605N, attached hereto as State's Exhibit F.*

5

On May 10, 2005, Identigene released a forensic laboratory report containing the results of the DNA analysis and comparison performed on the complainant's vaginal swabs, the complainant's panties, and the complainant's known DNA profile. *See May 10, 2005, Identigene Forensic Report #67135, attached hereto as State's Exhibit G.*

On May 31, 2005, Identigene released a follow-up laboratory report incorporating the results of the initial DNA analysis and comparison performed on the complainant's vaginal swabs, the complainant's panties, and the complainant's known DNA profile, with the results of the comparison and analysis performed on the defendant's known DNA profile. *See May 31, 2005, Identigene Forensic Report #68272, attached hereto as State's Exhibit H.*

Identigene's forensic DNA analysis and comparison of the complainant's vaginal swabs, the complainant's panties, the complainant's known DNA profile, and the defendant's known DNA profile yielded the following results:

### Complainant's Vaginal Swabs – Epithelial Cell Fraction
- a full, single-source DNA profile was obtained from the epithelial cell fraction of the vaginal swabs
- the DNA profile matched the DNA profile from the complainant
- the complainant cannot be excluded as the DNA donor to the epithelial cell fraction of the vaginal swabs

### Complainant's Vaginal Swabs – Sperm Cell Fraction
- a mixture of male and female DNA from at least two individuals was obtained from the sperm cell fraction of the vaginal swabs.
- the defendant cannot be excluded as a possible contributor to this mixture
- due to the numerous possible additional alleles below threshold, no statistical analysis was performed evaluating the probability of inclusion
- no conclusions were made regarding the inclusion or exclusion of the complainant to the mixture

### Complainant's Panties – Epithelial Cell Fraction
- the same full DNA profile that was obtained from the epithelial cell fraction of the vaginal swabs, plus multiple possible additional alleles below threshold, was obtained from the epithelial cell fraction of the panties
- the DNA profile matched the DNA profile from the complainant
- the complainant cannot be excluded as the DNA donor to the epithelial cell fraction of the panties

6

## VI.

### Conclusion

Tyrone Berry, the convicted person in the above-styled case, has failed to meet the requirements of TEX. CODE CRIM. PROC. art. 64.03. The evidence in the defendant's case was tested prior to his trial and subsequent plea, and to near scientific certainty inculpated him in the offense for which he was charged. The defendant fails to show how any hypothetical DNA result would exculpate him from this crime or prove by a preponderance of the evidence that he would not have been prosecuted or convicted. As such, the applicant fails to carry his burden to obtain DNA testing in accordance with Chapter 64 of the Code of Criminal Procedure.

WHEREFORE, PREMISES CONSIDERED, the State of Texas respectfully requests that the Court deny DNA testing in cause number 1019634.

Respectfully submitted,

Inger M. Hampton
Assistant District Attorney
Conviction Review Section
Harris County District Attorney's Office
1201 Franklin, Ste. 600
Houston, Texas 77002
(713) 755-1570
(713) 368-9225 fax
State Bar No. 24041051

8

APX 57

Kathleen O'Connor Powers,
Official Court Reporter
180th District Court
1201 Franklin, 18th Floor
Houston, Texas 77002

September 16, 2014

Tyrone Berry 1368050
Diboll CC S. First St.
Diboll TX 75941

RE:  Trial Court Cause No. 1019634, State of Texas v Tyrone Berry

Dear Mr. Berry:

In response to your inquiry postmarked 11 SEP 2014 and received in my office September 16, 2014, there is no reporter's record for August 9, 2013 for the above-referenced case.

Thank you,

Kathleen O'Connor Powers,
Official Court Reporter

CC:  Court file Cause No. 1019634

Aρ 58

SUPPLEMENT(S)

No-0014

Offense- SEXUAL ASSAULT (RAPE)(CHILD)(OVER 14 YR)/BY BODILY FORCE(JUV
                        Street location information
Number-     8000 Name-TIDWELL                 Type-RD       Suffix-W
Apt no-        Name-08000              Type-        Suffix-
Date of offense-02/25/05              Date of supplement-03/28/05
Compl(s) Last-SMITH          First-BRITTANY   Middle-SUSANNE
         Last-
                  Recovered stolen vehicles information
 Stored-                        by-               Ph#- (000) 000-0000
Officer1-JULI REHFUSS          Emp#-113315 Shift-1 Div/Station-CRIME LAB

                    SUPPLEMENT NARRATIVE


REFERENCE: L05-3609
SUSPECT(S): TYRONE BERRY

AT THE REQUEST OF OFFICER M. GALLAGHER, PR# 109111, THE FOLLOWING ITEMS WERE
ANALYZED:

ONE SEXUAL ASSAULT EVIDENCE KIT (BARCODE: RTTA) FROM COMPLAINANT BRITTANY SMITH
CONTAINING:

- ITEM A: VAGINAL SMEAR
- ITEM B: ANAL SMEAR
  ITEM C: ORAL SMEAR - NOT USED BY HOSPITAL
  ITEM E: PULLED HEAD HAIR - NOT USED BY HOSPITAL
  ITEM G: HEAD HAIR COMBINGS - NOT USED BY HOSPITAL
  ITEM H: PULLED PUBIC HAIR - NOT USED BY HOSPITAL
- ITEM J: PUBIC HAIR COMBINGS
- ITEM K: KNOWN BLOOD
- ITEM L: VAGINAL SWABS
- ITEM M: ANAL SWABS
  ITEM N: ORAL SWABS - NOT USED BY HOSPITAL
  ITEM O: KNOWN SALIVA SWABS - NOT USED BY HOSPITAL
  ITEM P: FINGERNAIL SCRAPINGS - NOT USED BY HOSPITAL
  ITEM Q: FINGERNAIL SWABS - NOT USED BY HOSPITAL
- ITEM R: UNDERGARMENTS BAG LABELLED "BLACK PANTIES" CONTAINING PANTIES
  ITEM S: DEBRIS COLLECTION ENVELOPE - NOT USED BY HOSPITAL

AND

ONE SEALED ENVELOPE (BARCODE: R300) LABELLED "2 BUCCAL SWABS FROM TYRONE BERRY"
- UNOPENED; NOT INVENTORIED

AND

ONE SEALED BOX (BARCODE: RTTC) LABELLED "CLOTHING (3 BAGS)" FROM COMPLAINANT

CERTIFICATE OF THE CLERK

THE STATE OF TEXAS

COUNTY OF HARRIS

IN THE 180TH JUDICIAL DISTRICT COURT

OF HARRIS COUNTY, TEXAS

I, Chris Daniel, District Clerk of Harris County, Texas, do hereby certify that the above & foregoing proceedings, instruments & other papers contained in Volume I Pgs. 1-166 inclusive, to which this certification is attached and made a part thereof, are true and correct copies of all proceedings, instruments and other papers specified by Rule 34.5 (a) and matter designated by the parties pursuant to Rule 34.5 (b) in Cause No. 1019634 Styled TYRONE BERRY vs. The State of Texas in said court.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Harris County, Texas on October 9, 2013.

Chris Daniel
Harris County District Clerk

By: /S/ N. Salinas, Deputy



Tuesday, May 10, 2005

APX 60

P# 303

5615 Kirby
Suite 800
Houston, TX 77005

1-800-DNA-TYPE
Fax 713-798-9515

www.identigene.com

FORENSIC REPORT: IDENTIGENE CASE NO. 67135

Houston Police Department
1200 Travis, 26th Floor
Houston, TX 77002
US

Reference #: L05-3609-20415605N

The following items were analyzed:

| Item Number | Description | Sample Type | Received From | Received On |
|---|---|---|---|---|
| 159080/159081 | Vaginal swabs | Evidence Sample | In person from T. Guerrero | 3/29/2005 |
| 159082/159083 | Panties | Evidence Sample | In person from T. Guerrero | 3/29/2005 |
| 159084 | Buccal swabs labeled "Brittney Smith" | Reference Sample | In person from T. Guerrero | 3/29/2005 |

For the Items listed above, DNA was extracted and amplified at thirteen polymorphic PCR loci (D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, TH01, TPOX, and CSF1PO) and Amelogenin. The DNA profiles of the evidence samples were compared to the DNA profile of the reference sample.

INTERPRETATION

The reference buccal swabs labeled "Brittney Smith" [159084] produced a full female DNA profile.

A full single-source female DNA profile was obtained from the epithelial fraction of the vaginal swabs [159080]. The same full female DNA profile with multiple possible additional alleles below threshold was obtained from the epithelial cell fraction of the panties [159082]. This profile matches the DNA profile obtained from the reference buccal swabs labeled "Brittney Smith" [159084] at all thirteen STR loci tested. Therefore, Brittney Smith cannot be excluded as the DNA donor to the epithelial fraction of the vaginal swabs [159080] or the epithelial cell fraction of the panties [159082].

A mixture of male and female DNA from at least two individuals was obtained from the sperm cell fraction of the vaginal swabs [159081]. No conclusions will be made regarding the inclusion or exclusion of Brittney Smith to this mixture.

A mixture of DNA from at least two individuals, with an identifiable major male component of unknown origin, was obtained from the sperm cell fraction of the panties [159083]. Brittney Smith cannot be excluded as a possible contributor to the minor component of this mixture. Alleles foreign to Brittney Smith were observed in the minor component of this mixture.

Extraction and PCR DNA controls were tested and gave the correct results.

| Sample | D3S1358 | vWA | FGA | D8S1179 | D21S11 | D18S51 | D5S818 | D13S317 | D7S820 | D16S539 | TH01 | TPOX | CSF1PO | AMEL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 159084 Reference buccal swabs labeled "Brittney Smith" | | | | | | | | | | | | | | |
| 159080 Epithelial fraction of the vaginal swabs | | | | | | | | | | | | | | |
| 159081 Sperm cell fraction of the vaginal swabs | | | | | | | | | | | | | | |
| 159082 Epithelial cell fraction of the panties | | | | | | | | | | | | | | |
| 159083 Sperm cell fraction of the panties | | | | | | | | | | | | | | |

* = Possible additional alleles below threshold    [ ] = Minor component of a mixture



IDG_67135
Accreditations/Certifications: AABB, NFSTC, ISO/IEC 17025, NYSDOH, TXDPS ASCLD-LAB

141

Thank you for this opportunity to assist you in this matter. Please make arrangements to pick up the above listed Items from Identigene at your earliest convenience. If you have any questions please feel free to call us at 713-798-9510.

Sincerely,

Robin DeVille Guidry
Senior Forensic DNA Analyst

Laura Gahn, Ph.D.
DNA Laboratory Director




Tuesday, May 31, 2005

P # 303   APX6Z

7400 Fannin
Suite 1250
Houston, TX 77054

1-800 DNA TYPE
Fox 713-798-9515

www.identigene.com

Houston Police Department
1200 Travis, 26th Floor
Houston, TX 77002
US

The following Items were analyzed:

| Item Number | Description | Sample Type | Received From | Received On |
|---|---|---|---|---|
| 159080/159081** | Vaginal swabs | Evidence Sample | In person from T. Guerrero | 3/29/2005 |
| 159082/159083** | Panties | Evidence Sample | In person from T. Guerrero | 3/29/2005 |
| 159084** | Buccal swabs labeled "Brittney Smith" | Reference Sample | In person from T. Guerrero | 3/29/2005 |
| 161926 | Buccal swabs labeled "Tyrone Berry" | Reference Sample | In person from T. Guerrero | 3/29/2005 |

For the item 161926, DNA was extracted and amplified at thirteen polymorphic PCR loci (D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, TH01, TPOX, and CSF1PO) and Amelogenin. The DNA profile of this reference sample was compared to the profiles previously reported May 10, 2005 in Identigene report #67135. **See Identigene report #67135.

## INTERPRETATION

The reference buccal swabs labeled "Brittney Smith" [159084] and reference buccal swabs labeled "Tyrone Berry" [161926] each produced a full DNA profile.

A full single-source female DNA profile was obtained from the epithelial fraction of the vaginal swabs [159080]. The same full female DNA profile with multiple possible additional alleles below threshold was obtained from the epithelial cell fraction of the panties [159082]. This profile matches the DNA profile obtained from the reference buccal swabs labeled "Brittney Smith" [159084] at all thirteen STR loci tested. Therefore, Brittney Smith cannot be excluded as the DNA donor to the epithelial fraction of the vaginal swabs [159080] or the epithelial cell fraction of the panties [159082].

A mixture of male and female DNA from at least two individuals was obtained from the sperm cell fraction of the vaginal swabs [159081]. Tyrone Berry cannot be excluded as a possible contributor to this mixture. However, due to the numerous possible additional alleles below threshold, statistical analysis will not be performed evaluating the probability of inclusion. No conclusions will be made regarding the inclusion or exclusion of Brittney Smith to this mixture.

A mixture of DNA from at least two individuals was obtained from the sperm cell fraction of the panties [159083]. The DNA profile obtained from the reference buccal swabs labeled "Tyrone Berry" [161926] is consistent with the major component. Therefore, Tyrone Berry cannot be excluded as the DNA donor to the major component of the mixture obtained from the sperm cell fraction of the panties [159083]. The frequency of the major component of this mixture from an unrelated individual chosen at random from the population at large is less than 1 in $5.1 \times 10^{14}$ in African American, Caucasian and Hispanic populations (FBI database). Brittney Smith cannot be excluded as a possible contributor to the minor component of this mixture. Alleles foreign to both Brittney Smith and Tyrone Berry were observed in the minor component of this mixture.

Extraction and PCR DNA controls were tested and gave the correct results.

JPY

| Sample | D3S1358 | vWA | FGA | D8S1179 | D21S11 | D18S51 | D5S818 | D13S317 | D7S820 | D16S539 | TH01 | TPOX | CSF1PO | AMEL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 161926 Buccal swabs labeled "Tyrone Berry" | | | | | | | | | | | | | | |
| 159084** Reference buccal swabs labeled "Brittney Smith" | | | | | | | | | | | | | | |
| 159080** Epithelial fraction of the vaginal swabs | | | | | | | | | | | | | | |
| 159081** Sperm cell fraction of the vaginal swabs | | | | | | | | | | | | | | |
| 159082** Epithelial cell fraction of the panties | | | | | | | | | | | | | | |
| 159083** Sperm cell fraction of the panties | | | | | | | | | | | | | | |

* = Possible additional alleles below threshold   [ ] = Minor component of a mixture   ** = See Identigene report #67135

Thank you for this opportunity to assist you in this matter. Please make arrangements to pick up the above listed items from Identigene at your earliest convenience. If you have any questions please feel free to call us at 713-798-9510.

Sincerely,

Jennifer Otto, M.S.
Forensic DNA Analyst

Robin DeVille Guidry
Senior Forensic DNA Analyst, Technical Reviewer

COPY

APx 63

SUPPLEMENT(S)

No-0015

Offense- SEXUAL ASSAULT (RAPE)(CHILD)(OVER 14 YR)/BY BODILY FORCE(JUV
Street location information
Number-    8000 Name-TIDWELL              Type-RD      Suffix-W
Apt no-      Name-08000                  Type-       Suffix-
Date of offense-02/25/05              Date of supplement-03/29/05
Compl(s) Last-SMITH          First-BRITTANY   Middle-SUSANNE
        Last-
Recovered stolen vehicles information
Stored-                    by-                Ph#- (000) 000-0000
Officer1-JULI REHFUSS        Emp#-113315 Shift-1 Div/Station-CRIME LAB

SUPPLEMENT NARRATIVE

DOCUMENTATION FOR TRANSFER OF EVIDENCE

REFERENCE: L05-3609

DATE OF RELEASE: ON 03/29/05 BY HPD, T. GUERRERO, PR# 121608

RECEIVING AGENCY: IDENTIGENE BY M. BUSSEY ON 03/29/05

DATE OF RETURN TO HPD:

DESCRIPTION AND CONDITION OF EVIDENCE:

1. SEALED ENVELOPE CONTAINING ITEM L: VAGINAL SWABS # 1-4 AND ITEM R: PANTIES,
   CUTTING -3" X -3"
2. SEALED ENVELOPE CONTAINING STAINGARD MADE FROM KNOWN BLOOD (ITEM K) FROM
   COMPLAINANT BRITTANY SMITH
3. SEALED ENVELOPE CONTAINING "2 BUCCAL SWABS FROM TYRONE BERRY" KNOWN REFERENCE
   SAMPLE  BARCODE: R300

DNA ANALYSIS REQUESTED


Supplement entered by = 113315
Date cleared- 03/10/05

137

Cause No. 1019634

APX 64

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 180th DISTRICT COURT |
| v. | § | OF |
| TYRONE BERRY,<br>Defendant | § | HARRIS COUNTY, TEXAS |

**FILED**
Chris Daniel
District Clerk

Time: _____ **SEP 16 2013**

By _____
Harris County, Texas

## STATE'S PROPOSED FINDINGS OF FACT
## ON THE COURT'S DENIAL OF DNA TESTING

Having reviewed the Defendant's motion for DNA testing of evidence, the State's motion requesting that this Court deny DNA testing, the DNA lab report from Identigene, and the official trial court records in cause number 1019634, the Court enters the following findings of fact:

### FINDINGS OF FACT

1. On May 2, 2006, the defendant, Tyrone Berry, pled guilty to the felony offense of sexual assault of a child in cause number 1019634 in the 180th District Court of Harris County, Texas.

2. Pursuant to a plea bargain agreement entered into after a jury had been seated and the presentation of evidence had commenced, the defendant was sentenced to ten (10) years confinement in the Texas Department of Criminal Justice – Institutional Division.

3. No direct appeal was taken in this case; however, the defendant has filed eight *pro se* applications for writ of habeas corpus, cause numbers 1019634-A through 1019634-H, all of which have been denied by the Texas Court of Criminal Appeals.

4. On February 9, 2012, the trial court appointed Leah Borg as counsel to represent the applicant for the purpose of filing a motion for forensic DNA testing under Chapter 64 of the TEXAS CODE OF CRIMINAL PROCEDURE.

5. On July 20, 2012, the defendant filed his first amended motion for forensic DNA testing.

6. The Court finds, based on the official trial court records, that the above styled and numbered cause is associated with Houston Police Department incident report number 030415605N, Houston Police Department Crime Laboratory number L05-3609, and Identigene case number 67135.

153

7. The Court finds that, according to the records of the Houston Police Department Property Room, the Houston Police Department Property Room is currently in possession of the following evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, and relating to incident report number 030415605:

- one sexual assault kit and clothing
- two buccal swabs from Tyrone Berry

8. The Court finds that, according to the records of the Houston Police Department Crime Laboratory, the Houston Police Department Crime Laboratory is currently in possession of the following evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, and relating to incident report number 030415605 and/or laboratory number L05-03609:

- one sealed white envelope containing:
  - one clear Ziploc bag labeled "2/3" containing:
    - one clear Ziploc bag containing:
      - one sealed brown envelope labeled "Item L: vaginal swabs #1-4; Item R: panties (cutting -3"x-3") 1/3"
    - one sealed brown envelope labeled "staincard made from known blood (Item K) from compl. Brittany Smith; known 2/3"
- one parafilm tape-sealed microcentrifuge tube labeled "Berry Tyrone" said to contain "DNA extracts"

9. The Court finds that, according to the records of the Harris County District Clerk's Office, the Harris County District Clerk's Office is not currently in possession of any evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634.

10. The Court finds that, according to the records of the Harris County Sheriff's Office Property Room, the Harris County Sheriff's Office Property Room is not currently in possession of any property and/or evidence in connection with *The State of Texas v. Tyrone Berry*, cause number 1019634, or relating to incident report number 30415605N.

11. The Court finds that prior to the defendant's plea of guilty, and in connection with the investigation of the offense in this case, the Houston Police Department Crime Laboratory analyzed the complainant's sexual assault kit for the presence of DNA.

12. The Court finds that on March 28, 2005, Juli Rehfuss, a chemist with the Houston Police Department Crime Laboratory, reported that "spermatozoa, cellular constituents of semen, were detected on the vaginal swabs (Item L) and the crotch area of the panties (Item R)."

13. The Court finds that on March 29, 2005, the complainant's vaginal swabs, a cutting from the complainant's panties, a staincard made from the known blood of the complainant, and two buccal swabs containing the defendant's saliva samples were transferred to the Identigene laboratory for DNA analysis and comparison.

14. The Court finds that on May 10, 2005, Identigene released a forensic laboratory report containing the results of the DNA analysis and comparison performed on the complainant's vaginal swabs, the complainant's panties, and the complainant's known DNA profile.

15. The Court finds that on May 31, 2005, Identigene released a follow-up laboratory report incorporating the results of the initial DNA analysis and comparison performed on the complainant's vaginal swabs, the complainant's panties, and the complainant's known DNA profile, with the results of the comparison and analysis performed on the defendant's known DNA profile.

16. The Court finds, based on the Identigene lab report, that a full, single-source DNA profile was obtained from the epithelial cell fraction of the complainant's vaginal swabs, that the DNA profile matches the DNA profile of the complainant, and that the complainant cannot be excluded as the DNA donor to the epithelial cell fraction of the complainant's vaginal swabs.

17. The Court finds, based on the Identigene lab report, that a mixture of male and female DNA was obtained from the sperm cell fraction of the complainant's vaginal swabs and the defendant cannot be excluded as a possible contributor to this mixture. Due to the numerous possible additional alleles below threshold, no statistical analysis was performed evaluating the probability of inclusion, and no conclusions were made regarding the inclusion or exclusion of the complainant to the mixture.

18. The Court finds, based on the Identigene lab report, that the same full DNA profile that was obtained from the epithelial cell fraction of the vaginal swabs, plus multiple possible additional alleles below threshold, was obtained from the epithelial cell fraction of the panties; that the DNA

3

155

## ORDER

THE CLERK IS ORDERED send a copy of this Court's findings of fact in cause numbers 709814 and the instant order to the Defendant's appointed counsel, Leah Borg, 874 Yorkchester, No. 123, Houston, Texas 77079; and to the attorney representing the State of Texas, Inger Hampton, 1201 Franklin, Suite 600, Houston, Texas 77002.

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE STATE'S PROPOSED FINDINGS OF FACT ON THE COURT'S DENIAL OF DNA TESTING.

Signed on this 16th day of September, 2013.

HONORABLE MARC BROWN
PRESIDING JUDGE, 180th DISTRICT COURT
HARRIS COUNTY, TEXAS

5

157

(STATE OF TEXAS)

(COUNTY OF HARRIS)

Before me, the undersigned authority, a Notary Public in and for Harris County, Texas, on this day personally appeared J. Hill, who being by me duly sworn, upon his oath deposes and says:

"My name is J. Hill. I am employed as the property and evidence records custodian for the Houston Police Department. In my capacity as property and evidence records custodian, I have care and custody of those records for the Houston Police Department, and certify that the following reflects the status of property and evidence related to Houston Police Department offense report #030415605, that is dated on February 25, 2005.

Records of the Houston Police Department Property Room reflect that property/or evidence was tagged in the Property Room concerning this case. Records were checked through the Evidence Management System, WinET computer system, active and closed out invoice files. Invoice records detail the following:

One sexual assault kit and clothing were tagged into the HPD Property Room on 2/28/05 by Officer R. Gonzales. The listed property is in the possession of HPD Property Room.

Two buccal swabs from Tyrone Berry were tagged into the HPD Property Room on 3/11/05 by Officer M. Gallagher. The listed property is in the possession of HPD Property Room.

I have read the above statement and find it to be true and correct to the best of my knowledge."

_____
J. Hill

Apx 69

**SWORN AND SUBSCRIBED** before me, under oath, on this the ___22ND___ day of April 2013.



Jose L. Rosas
NOTARY PUBLIC
STATE OF TEXAS
MY COMMISSION EXPIRES
10/19/2013

_____
NOTARY PUBLIC in and for the
state of Texas

My commission expires: ___10/19/2013___

Case Number 304151605 N

Suspect Name Tyrone Burry

Date Tagged 3-11-05    Time 1330

Compl./Owner Brittany Smith

Authorized By Upton    Emp.# 109701 Houston JUV    Division JUV

Officer's Name M Gallagher    Division JUV/SIU

Offense Sexual Assault - UN (Banion 2000 Tidwell)    Officer's Signature & Emp. #

Incident Type: Evid ☒  Found ☐  Safe Keeping ☐  Freezer ☐    Property Officer's Sign. & Emp. #

Bar Code Sticker    Description (Ourvelng, Make, Model, Serial#, Any Damage, etc.)

2 Buccal Swabs of my Swab collect from Juvenile
Tyrone Berry

* put in freezer *

SE4464
FZ03

AØx70

138

# Houston Police Department Property and Evidence Record

Page _1_ of _1_

**Case Number:** 0304/15 625 N

**Date Tagged:** 2-28-06  **Time:** 1430 hrs

**Suspect Name:**

**Compl/Owner:** Bethany Smith

**Authorized By:** _____ Emp.# _____ Division _____

**Officer's Name:** H. Gonzales  Division: _____

**Offense:** Sexual Assault  **Location:** 7908 Chris Bryp  93763

**Officer's Signature & Emp. #:** H. Gonzales Bp _____

**Incident Type:** Evid ☐ Found ☐ Safe Keeping (Jail) ☐ Invest ☐

**Property Officer's Sign. & Emp. #:** _____  64/02

| Bar Code Sticker | Description (Quantity, Make, Model, Serial#, Any Damage, etc.) |
|---|---|
| TV247 | Sexual Assault Kit (Taped)  1 X KN Dalley 1091/1 Juvenile |
| 242 | Clothing (3 Bags) X MS Dalley 1091/4 Juvenile |
| | |
| | |
| | |
| | |
| | |
| | Arx71 |
| | 139 |

**"EVIDENCE RECORDS AFFIDAVIT"**
Cause # 1019634 // Tyrone Berry

STATE OF TEXAS) (

COUNTY OF HARRIS) (

My name is Vanessa Alvarez. I am employed as the property and/or evidence records custodian for the Houston Police Department (HPD) Crime Laboratory.

My address and telephone number is: 1200 Travis, Room 2621
Houston, TX 77002
(713) 308-2600.

In my capacity as property and/or evidence records custodian, I have care and custody of those records for the HPD Crime Laboratory and I certify that the following reflects the status of property and/or evidence related to offense report #030415605 and/or L05-03609, dated 02/25/2005:

The following items are being stored in the Crime Laboratory:

One sealed white envelope containing
    One clear ziplock bag labeled "2/3" containing
        One clear ziplock bag containing
            One sealed brown envelope labeled "Item L: vaginal swabs #1-4;
            Item R: panties (cutting ~3" x ~3") 1/3"
            One sealed brown envelope labeled "staincard made from known blood
            (Item K) from compl. Brittany Smith; known 2/3"

One parafilm tape-sealed microcentrifuge tube labeled "Berry Tyrone" said to contain "DNA extracts"

*HPD Crime Laboratory records appear to reflect that the following evidence related to offense report # 030415605 and/or Lab # L05-03609 was received by the HPD Crime Laboratory on "03/22/05":*

- *"One sexual assault kit from complainant Brittany Smith*
- *One sealed envelope labeled '2 buccal swabs from Tyrone Berry' - unopened; not inventoried [by the HPD Crime Laboratory]*
- *One sealed box labeled 'clothing(3 bags)' from complainant Brittany Smith - unopened; not inventoried"*

*HPD Crime Laboratory records further appear to reflect that the above evidence was returned to the HPD Property Room by the HPD Crime Laboratory on "07/21/05".*

APX 73

"I have completed and read the above affidavit and have found it to be true and correct to the best of my knowledge."

SIGNED: _____
NAME

SWORN TO AND SUBSCRIBED before me the undersigned authority on this the

___19___ day of ___March___, 2013

CASSANDRA BRITTEN-McCLINTOCK
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 12/8/16

NOTARY PUBLIC FOR HARRIS COUNTY, TX

P

Apx 74

SUPPLEMENT(S)

No-0015

Offense- SEXUAL ASSAULT (RAPE)(CHILD)(OVER 14 YR)/BY BODILY FORCE(JUV
Street location information
Number-     8000 Name-TIDWELL               Type-RD      Suffix-W
Apt no-     Name-08000                 Type-         Suffix-
Date of offense-02/25/05               Date of supplement-03/29/05
Compl(s) Last-SMITH        First-BRITTANY   Middle-SUSANNE
        Last-
Recovered stolen vehicles information
 Stored-                    by-                    Ph#- (000) 000-0000
Officer1-JULI REHFUSS        Emp#-113315 Shift-1 Div/Station-CRIME LAB

SUPPLEMENT NARRATIVE

DOCUMENTATION FOR TRANSFER OF EVIDENCE

REFERENCE: L05-3609

DATE OF RELEASE: ON 03/29/05 BY HPD, T. GUERRERO, PR# 121608

RECEIVING AGENCY: IDENTIGENE BY M. BUSSEY ON 03/29/05

DATE OF RETURN TO HPD:

DESCRIPTION AND CONDITION OF EVIDENCE:

1. SEALED ENVELOPE CONTAINING ITEM L: VAGINAL SWABS # 1-4 AND ITEM R: PANTIES,
   CUTTING -3" X -3"
2. SEALED ENVELOPE CONTAINING STAINCARD MADE FROM KNOWN BLOOD (ITEM K) FROM
   COMPLAINANT BRITTANY SMITH
3. SEALED ENVELOPE CONTAINING "2 BUCCAL SWABS FROM TYRONE BERRY" KNOWN REFERENCE
   SAMPLE  BARCODE: R300

DNA ANALYSIS REQUESTED


Supplement entered by = 113315
Date cleared- 03/10/05

137

|||||| ||| || |||||| |||| || ||| || |||||| |||

*P 2*

*Apx 75*

# Houston Police Department
# Department Case Report

Department Case Number: 030415605

Related Case # 's:

## Case Information

Case Officer: [93762]
Offense Date/Time: 02/25/2005 - 14:32Hrs
Offense Location:
Offense Type: 02004 - Rape (Sexual Assault)
Expiration Date: 02/25/2015
Jurisdiction: City of Houston
Court Date:
Disposition:
Disposition Date:
Case Comments:

## Case Names

| Name Type: Complainant | | | | | |
|---|---|---|---|---|---|
| Name: BRITTANY, SMITH | Sex: | Race: | DOB: | Home Phone#: | |
| Address: | | | | ID#: | |
| Additional Name Information: | | | | SSN#: | |

| Name Type: Suspect | | | | | |
|---|---|---|---|---|---|
| Name: TYRONE, BERRY | Sex: | Race: | DOB: | Home Phone#: | |
| Address: | | | | ID#: | |
| Additional Name Information: | | | | SSN#: | |

## Case Items

**Item Number: R2ZZ\R300**

Container #: 26,940
Status/Location: Stored in Location - GS Row 30 Shelf F02
Collection Date/Time: 03/11/2005 - 13:57Hrs
Collected By:
Collection Location:
Packaging/Quantity/Item Type: The following item was collected: - 1 - BIOLOGICAL
Detail Description: 2- buccal swabs from tyrone berry      cm
Owner: SMITH BRITTANY
Serial #: NONE

Item Notes:

Process: for investigative purposes
Collection Purpose: Investigation

*Put hands on property 4-22-13*

**Item Number: RTT9\RTTA**

Container #:
Status/Location: Stored in Location - RK Row 01 Shelf P12
Collection Date/Time: 02/28/2005 - 14:32Hrs
Collected By:
Collection Location:
Packaging/Quantity/Item Type: The following item was collected: - 1 - RAPE / SEXUAL ASSAULT KIT
Detail Description: 1-αx100 sexual assault kit   dpn
Owner: SMITH BRITTANY
Serial #: NONE

Item Notes:

Process: Hold for investigative purposes
Collection Purpose: Investigation

*Put hands on property 4-22-13*



EX PARTE                              §        IN THE 180TH DISTRICT COURT

                                     §        OF

TYRONE BERRY,
Applicant                            §        HARRIS COUNTY, T E X A S

## STATE'S ORIGINAL ANSWER

The State of Texas, through its Assistant District Attorney for Harris County, files this, its

original answer in the above-captioned cause, having been served with an application for writ of

habeas corpus pursuant to Tex. Crim. Proc. Code art. 11.07 § 3 (Vernon Supp. 2009), and would

show the following:

### I.

Applicant is confined pursuant to the judgment and sentence of the 180th District Court of

Harris County, Texas, in cause number 1019634 (the primary case), where Applicant was convicted

pursuant to a plea of guilty for the felony offense of sexual assault of a child. The court assessed

punishment at ten (10) years confinement in the Texas Department of Criminal Justice –

Corrections Institutions Division. No direct appeal was taken.

Applicant's previous applications for writ of habeas corpus, cause numbers 1019634-A,

1019634-B, 1019634-C, 1019634-D, 1019634-E, and 1019634-F are currently pending.

### II.

The State of Texas denies the factual allegations made in the instant application, except

those supported by official court records and offers the following additional reply:

### REPLY TO APPLICANT'S FIRST THROUGH THIRD GROUNDS FOR RELIEF

Applicant alleges in his first through third grounds for relief that counsel was not present

when a DNA sample was taken from him. In his first ground for relief, Applicant alleges this to be



a violation of his Sixth and Fourteenth Amendment rights; in his second ground for relief, Applicant alleges that this violates his right to counsel; and in his third ground for relief, Applicant alleges that this caused his conviction to be obtained by error of the court and counsel.

Applicant fails to cite any authority for his claims that he has a right to have counsel present upon the ordering of a DNA test or the taking of a DNA sample. Furthermore, Applicant does not allege that the taking of the sample was improper or that it harmed him in any way. In addition, the record makes it clear that Applicant appeared with counsel on May 25, 2005 when the DNA test was ordered. *See State's Exhibit A, Docket Sheet Entry in cause number 1019634.* Applicant has the burden of alleging facts which if true would entitle him to relief. *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985). Applicant has not met his burden because he is unable to demonstrate that he was harmed in any way by the ordering of a DNA test or the taking of a DNA sample. Furthermore, Applicant fails to allege sufficient facts to prove that counsel was not present. Therefore, Applicant's first through third grounds for relief are without merit and should be denied.

### III.

Applicant raises questions of law and fact which can be resolved by the Court of Criminal Appeals upon review of official court records and without the need for an evidentiary hearing.

2

**IV.**

Service has been accomplished by sending a copy of this instrument to the following address:

> Mr. Tyrone Berry
> # 1368050, Beto Unit
> 1391 FM 3328
> Tennessee Colony, TX 75880

SIGNED this 14 day of December, 2010.

Respectfully submitted,

JOSHUA HILL
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-6657
Texas Bar I.D. #24049201

3

September 09 2014
Harris County District Clerk
P.O.Box 4651
Houston,Texas 77210-4651

Re: Tyrone Berry #1368050
COA No. 14-13-0084-CR 14th District
Trial Court #1019634 180th District

To The Honorable Staff Of The District Clerk's Office,
Greetings. I Hope This Letter Finds Each Member Of The Staff In The Best Of Health And Spirit. I Am Writing Today Concerning My Official Request For A Supplemental Clerk's Record To Be Transmitted To The 14th District Court Of Appeals At Your Earliest Possible Opportunity.

This Request Is Made Pursuant To The Texas Rules Of Appellate Procedure, Rule 34.5 (c), Supplementation, Which States: "If A Relevent Item Has Been Omitted From The Clerk's Record, The Trial Court, The Appellate Court, Or Any Party May By Letter Direct The Trial Court Clerk To Prepare, Certify And File In The Appellate Court A Supplement Containing The Omitted Item.

The Omitted Items Are The Post Conviction Applications For Writ Of Habeas Corpus Pursuant To The Texas Code Of Criminal Procedure Article 11.07 Cause Nos. 1019634 A. Through 1019634 H. Which Have All Been Purportedly Denied By The Texas Court Of Criminal Appeals. These Item All Contain Relevant Issues Necessary For The Appellant's Argument On Appeal. This Includes Each Application For The Writ, Any And All Responses From The State, And All Findings Of Fact And Conclusions Of Law And The Court's Order On

Each Application.

According To Rule 34.5 Clerk's Record, (a): "Contents. Unless The Parties Designate The Filings In The Appellate Record By Agreement Under Rule 34.2 The Record MUST Include Copies Of The Following":

(2): In Criminal Cases, The Indictment Or Information, Any Special Plea Or Defense Motion That Was Presented To The Court And Overruled; Any Written Waiver, Any Written Stipulation And, In Cases In Which A Plea Of Guilty Or Nolo Contendere Has Been Entered, Any Documents Executed For The Plea.

(6): Any Request For Findings Of Fact And Conclusions Of Law, Any Post Judgement Motion And The Court's Order On The Motion.

(b): Request For Additional Items (2): Request Must Be Specific: "A Party Requesting That An Item Be Included In The Clerk's Record Must Specifically Describe The Item So That The Clerk Can Readily Identify It. The Clerk Will Disregard A General Designation, Such As One For "All Papers Filed In The Case."

(4) Failure To Timely Request: "An Appellate Court Must Not Refuse To File The Clerk's Record Or A Supplemental Clerk's Record Because Of A Failure To Timely Request Items To Be Included In The Clerk's Record.

Please Note! There Is No "Agreed Record" Pursuant To Rule 34.2 Texas Rules Of Appellate Procedure, In Addition To The Omitted Items Requested Nos. (2) And (6) Of Rule 34.5 (a), The Appellant Is Requesting An Additional Item Under Rule 34.5 (b), Specifically The Actual "Order"

From The 180th District Court Rendered On May 25th, 2005. This Item Would Be An Order From The Court Ordering The Defendant, Tyrone Berry, To Submit To A DNA Sample Collection On That Day.

The Appellant Is In Possession Of Page 161 Of The Clerks Record Which Is A "Docket Sheet", Also Marked In Upper Right Hand Corner, "State's Exhibit A", And Under The Heading "General Orders Of The Court" On Line 2 Of This Document Is The "Date Stamp" Of May 25, 2005. On Line 4 Of This Document Is The Hand Written Notation, "DNA Test Ordered".

The Item Specifically Being Requested By This Appellant Is The <u>Actual Order</u> Itself, Pursuant To Rule 34.5 (b) Of The Texas Rules Of Appellate Procedure, In Addition To Omitted Items (2) And (6) Of Rule 34.5 (a).

The Appellant Wishes To Thank This Office In Advance For Their Prompt Attention To This Important And Urgent Legal Matter.

With Best Regards,

Tyrone Berry

Tyrone Berry #1368050
Diboll Correctional Center
1604 South First Street
Diboll, Texas 75941

cc: Clerk Of The 14th District COA
    Ann Lee Moseley Attorney At Law

Apx 78

STATE'S EXHIBIT
A
PENGAD 800-631-6989

MAY 1 6 2005    FELONY INDICTMENT

GENERAL ORDERS OF THE COURT

MAY 2 5 2005

THE DEFENDANT, _____ APPEARED
PERSON WITHOUT COUNSEL _____ DeSoto Court 6-30-05 NTRC

JUN 3 0 2005    THE DEFENDANT, _____ APPEARED
PERSON WITHOUT COUNSEL _____ Betro    RS 7/20 NTRC

DNA TEST ORDERED

JUL 2 0 2005

THE DEFENDANT, _____ APPEARED
PERSON WITHOUT COUNSEL _____ DeSoto Court 8-18-05 maturo    RS 7/20 disp

AUG 2 2 2005

8/8/5 per computer RS 8/22 nt

THE DEFENDANT, _____ APPEARED
PERSON WITHOUT COUNSEL _____ DeSoto    RS 9/5 PTMO

SEP 1 5 2005

JAN 2 7 2006

THE DEFENDANT, _____ APPEARED
IN PERSON WITH COUNSEL _____ DeSoto court 1-27-06 JTRC

THE DEFENDANT, _____ APPEARED
IN PERSON WITH COUNSEL _____ DeSoto court 5-1-06 JTRC

Apx 79

BRITTANY SMITH - UNOPENED; NOT INVENTORIED

RESULTS OF ANALYSIS:

NO SPERMATOZOA WERE DETECTED ON THE VAGINAL SMEAR (ITEM A) NOR THE ANAL SMEAR (ITEM B).

SPERMATOZOA, CELLULAR CONSTITUENTS OF SEMEN, WERE DETECTED ON THE VAGINAL SWABS (ITEM L) AND THE CROTCH AREA OF THE PANTIES (ITEM R).

NO ACID PHOSPHATASE, A NON SPECIFIC CONSTITUENT OF SEMEN, NOR P30, A SEMEN-SPECIFIC CONSTITUENT, WERE DETECTED ON THE ANAL SWABS (ITEM M).

NO TRACE EVIDENCE WAS OBSERVED IN THE PUBIC HAIR COMBINGS (ITEM J).

A STAINCARD WAS MADE FROM THE KNOWN BLOOD (ITEM K) FROM THE COMPLAINANT BRITTANY SMITH.

DISPOSITION OF EVIDENCE:

THE FOLLOWING ITEMS ARE BEING RETAINED FROZEN IN THE LABORATORY:

1. ITEM L: VAGINAL SWABS LABELLED SWABS # 1-4 BY ANALYST
2. ITEM R: CUTTING FROM THE CROTCH AREA OF THE PANTIES
3. STAINCARD MADE FROM KNOWN BLOOD (ITEM K) FROM THE COMPLAINANT BRITTANY SMITH
4. "2 BUCCAL SWABS FROM TYRONE BERRY" KNOWN SUSPECT REFERENCE SAMPLES; BARCODE: R300

ALL OTHER ITEMS OF EVIDENCE WILL BE RETURNED TO THE PROPERTY ROOM IN THE ORIGINAL PACKAGING.

Supplement entered by = 113315
Date cleared- 03/10/05

------------------------------------------------------------------------

END OF PAGE TWO

135
136 Sketch Exhibit

## ORDER

THE CLERK IS ORDERED send a copy of this Court's findings of fact in cause numbers 709814 and the instant order to the Defendant's appointed counsel, Leah Borg, 874 Yorkchester, No. 123, Houston, Texas 77079; and to the attorney representing the State of Texas, Inger Hampton, 1201 Franklin, Suite 600, Houston, Texas 77002.

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE STATE'S PROPOSED FINDINGS OF FACT ON THE COURT'S DENIAL OF DNA TESTING.

Signed on this 16th day of September, 2013.

HONORABLE MARC BROWN
PRESIDING JUDGE, 180th DISTRICT COURT
HARRIS COUNTY, TEXAS

5



Apx 81

CAUSE NO. 1019583

1019634

THE STATE OF TEXAS

VS.

Tyrone Berry
Defendant

CHARGE Sex Asslt child

180 DISTRICT COURT

OF HARRIS COUNTY, TEXAS.

## AGREED SETTING

The undersigned Counsel hereby agrees this case is reset for

PTMO

(Type of Setting)

to Sept 15, 2005

(Date)

_____
Attorney for the State

x _____
Defendant

Rick DeToto
(Print) Attorney for Defendant

RD
(Signature) Attorney for Defendant

712 Main St., 31T FC
(Street Address)

Houston      Tx      77002
(City)        (State)    (Zip)

(713) 228-8100
(Phone Number)

24005020
(Bar Card/SPN Number)

Motions must comply w/art 28.01 CCP

TO consider recommendations

APPROVED BY THE COURT:

_____
Judge Presiding

8-22-05
Date

F I L E D
CHARLES BACARISSE
District Clerk

AUG 2 2 2005

Time:_____
Harris County, Texas

By _____

DISTRICT CLERK

"As a condition of release on bond, all defendants will be required to submit to random screening for the presence of controlled substances. Refusal to submit to testing or positive test results will cause bond to be revoked."

15

| Sample | D3S1358 | vWA | FGA | D8S1179 | D21S11 | D18S51 | D5S818 | D13S317 | D7S820 | D16S539 | TH01 | TPOX | CSF1PO | AMEL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 161926<br>Buccal swabs labeled "Tyrone Berry" | | | | | | | | | | | | | | |
| 159084**<br>Reference buccal swabs labeled "Brittney Smith" | | | | | | | | | | | | | | |
| 159080**<br>Epithelial fraction of the vaginal swabs | | | | | | | | | | | | | | |
| 159081**<br>Sperm cell fraction of the vaginal swabs | | | | | | | | | | | | | | |
| 159082**<br>Epithelial cell fraction of the panties | | | | | | | | | | | | | | |
| 159083**<br>Sperm cell fraction of the panties | | | | | | | | | | | | | | |

\* = Possible additional alleles below threshold    [ ] = Minor component of a mixture    ** = See Identigene report #67135

Thank you for this opportunity to assist you in this matter. Please make arrangements to pick up the above listed items from Identigene at your earliest convenience. If you have any questions please feel free to call us at 713-798-9510.

Sincerely,

Jennifer Otto, M.S.
Forensic DNA Analyst

Robin DeVille Guidry
Senior Forensic DNA Analyst, Technical Reviewer

COPY

IDG_68272
Accreditations/Certifications: AABB, NFSTC, ISO/IEC 17025, NYSDOH, TXDPS ASCLD-LAB

2